### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**RICHARD JORDAN and RICKY CHASE**                                    *Plaintiffs*

**THOMAS EDWIN LODEN, JR.**                                    *Putative Intervenor*

*vs.*                                    **No.  3:15-cv-00295-HTW-LRA**

**MARSHALL L. FISHER, Commissioner,**                                    *Defendants*
**Mississippi Department of Corrections, in**
**his Official Capacity; EARNEST LEE**
**Superintendent, Mississippi State Penitentiary,**
**in his Official Capacity; THE MISSISSIPPI**
**STATE EXECUTIONER, in his Official**
**Capacity; an UNKNOWN EXECUTIONERS,**
**in their Official Capacities**

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

COME NOW Defendants Marshall Fisher, Commissioner of the Mississippi Department of Corrections, Earnest Lee, Superintendent of the Mississippi State Penitentiary at Parchman, the Mississippi State Executioner and Unknown Executioners (collectively referred to as "MDOC" or the "State Defendants") in their official capacities and file this Memorandum in support of their Motion to Dismiss and in opposition to Plaintiffs' Motion for Preliminary Injunction.

### INTRODUCTION AND BACKGROUND

Plaintiffs Richard Jordan and Ricky Chase, both of whom are MDOC inmates convicted of capital murder and sentenced to death, filed this 42 U.S.C. § 1983 suit challenging the constitutionality of MDOC's current lethal injection execution protocol.  All of their claims are

specifically based on the proposed use of compounded pentobarbital as the first drug in the three-drug protocol.  *See, e.g.*, Complaint, at ¶¶ 2-4.  Plaintiffs seek both a declaratory judgment stating that the use of compounded pentobarbital in a lethal injection execution violates the Eighth and Fourteenth Amendments to the United States Constitution, and an injunction prohibiting MDOC from executing them with compounded pentobarbital.  Although at this time neither Plaintiff's execution has been re-set by the Mississippi Supreme Court, they have filed a Motion for Preliminary Injunction asking this Court to enjoin the State Defendants from using compounded pentobarbital or a three-drug protocol during their executions.  *See* Doc. 21.

As discussed more fully below, this suit no longer involves an actual and ongoing Article III case or controversy between the parties, and should be dismissed.  Plaintiffs' claims concerning compounded pentobarbital  have been rendered moot because on June 8, 2015, MDOC destroyed its entire supply of pentobarbital, which expired on May 20, 2015, and MDOC's efforts to obtain a new supply of pentobarbital have proven completely unsuccessful.  *See* Exhibit 1 at ¶ 8, Declaration of MDOC Commissioner Marshall Fisher.  As such, before any execution may be carried out by the State Defendants, MDOC must amend its current lethal injection execution protocol to allow for the use of alternative drugs as the first drug in the current three-drug protocol.  Until the protocol has been amended, Plaintiffs' remaining method-of-execution claims are not ripe for adjudication.  Further, many of the issues Plaintiffs seek to re-litigate have been resolved by the courts.  *See Baze v. Rees*, 553 U.S. 35 (2008); *Thorson v. Epps*, 701 F.3d 444 (5th Cir. 2012).  For these reasons, this Court should dismiss Plaintiffs' Complaint, and deny their Motion for Preliminary Injunction, without prejudice.  However, if the Court elects not to dismiss the case, all proceedings in this matter should be stayed until MDOC has finalized any necessary amendments (caused by the lack of

availability of sodium thiopental and pentobarbital) to the protocol and Plaintiffs have amended their Complaint and Motion for Preliminary Injunction.

### Relevant Facts

Inmates convicted of capital murder and sentenced to death in Mississippi are executed by lethal injection. The statute which governs the manner in which lethal injection executions are carried out provides, in relevant part:

> The manner of inflicting the punishment of death shall be by continuous intravenous administration of a lethal quantity of an ultra short-acting barbiturate or other similar drug in combination with a chemical paralytic agent until death is pronounced[.]

Miss. Code Ann. § 99-19-51. Further, executions are carried out pursuant to a lethal injection protocol approved and adopted by the Commissioner of MDOC. *See* Exhibit 1 at ¶ 3. Prior to March 2011, the execution protocol required the sequential intravenous administration of three drugs: "(1) sodium pentothal (also known as sodium thiopental), an anesthetic; (2) pavulon (also known as pancuroniam bromide), a paralytic agent; and (3) potassium chloride, which stops the heart." *Mississippians Educating for Smart Justice, Inc. v. Mississippi Dept. of Corrections*, 98 So. 3d 459, 460 (Miss. 2012).

When the only American manufacturer of sodium thiopental decided to cease production because it "did not want the drug used in executions," MDOC, along with many other states, turned to pentobarbital as a replacement for sodium thiopental.[1] *Id.*; *see Pavatt v. Jones*, 627 F.3d 1336, 1338 n. 1 (10th Cir. 2010) (noting that because "sodium thiopental is now effectively unobtainable anywhere . . . states . . . have simply revised their existing three-drug protocols by substituting

---

[1] Hospira, Inc., the American manufacturer of sodium thiopental, halted production "after months of pressure by activists through a new campaign aimed at pressuring pharmaceutical companies whose products are used in lethal injections." Nathan Koppel, *Drug Halt Hinders Executions in the U.S.*, The Wall Street Journal (Jan. 22, 2011), on.wsj.com/1C7ehOd.

pentobarbital for sodium thiopental").  In 2011, MDOC amended the protocol to allow for the use of pentobarbital.  *Id.*  Therefore, the current protocol calls for the administration of "sodium pentothal" as the first drug, but expressly provides that "[i]n the event of an unavailability of a sufficient quantity of sodium pentothal from available sources, a sufficient quantity of pentobarbital will be acquired and administered in the place of sodium pentothal." Exhibit 1 at ¶ 6.

MDOC "has been and remains unable to obtain sodium pentothal for use in executions." *Id.* at ¶ 7.  Accordingly, since 2011, MDOC has used pentobarbital to carry out executions without any complications.  Shortly after MDOC switched to pentobarbital, the manufacturer of Nembutal, the only FDA-approved name brand of injectable pentobarbital, blocked the sale of the drug to States for use in executions.  *See* Complaint, at ¶¶ 61-63; David Jolly, *Danish Company Blocks Sale of Drug for U.S. Executions*, N.Y. Times (July 1, 2011), nyti.ms/1HOSzj2.  As a result, MDOC was forced to obtain pentobarbital from another source.

On May 20, 2012, MDOC purchased pentobarbital from a licensed compounding pharmacy located in Grenada, Mississippi.  *See* Complaint, at ¶ 89.  On May 20, 2015, MDOC's "entire supply" of pentobarbital obtained from that source expired.  Exhibit 1 at ¶ 5.  As explained in Commissioner Fisher's declaration, MDOC has a policy and practice of destroying "lethal injection drugs when the expiration date of each unit of those drugs has passed." *Id.* at ¶ 4.  Pursuant to that policy and practice, Commissioner Fisher "requested that MDOC's supply of pentobarbital be destroyed using the incinerator located at the Mississippi Bureau of Narcotics." *Id.* at ¶ 5.  On June 8, 2015, MDOC's entire supply of pentobarbital was taken, per Commissioner Fisher's request, to the Mississippi Bureau of Narcotics and destroyed in its incinerator.  *Id.*

As set forth in Commissioner Fisher's declaration, "MDOC has made numerous attempts to

secure a new supply of pentobarbital from multiple sources." *Id.* at ¶ 8.   However, MDOC's exhaustive attempts to locate a new supplier of pentobarbital have proved "wholly unsuccessful." *Id.*   Consequently, it is Commissioner Fisher's testimony that "MDOC has been unable to obtain a new supply of pentobarbital, in any form whatsoever, for use in executions, and MDOC does not anticipate being able to obtain a new supply of pentobarbital, in any form whatsoever." *Id.* at ¶ 9. Given the unavailability of the two anesthetic drugs that the current form of MDOC's lethal injection execution protocol mandates be administered first during an execution, MDOC cannot carry out an execution under the current protocol. *Id.* at ¶ 10.   Therefore, before any additional executions may be carried out, MDOC's current lethal injection execution protocol must be amended to allow for the substitution of other drugs which will satisfy the requirement in Miss. Code Ann. § 99-19-51 for the administration of an 'ultra short-acting barbiturate or other similar drug' followed by the administration of a 'chemical paralytic agent. *Id.*

By law, the State of Mississippi may not execute a prisoner sentenced to death until the Mississippi Supreme Court has granted the State's motion to set (or reset) an execution date and issued a death warrant. *See* Miss. Code Ann. § 99-19-106.   Due to the fact that the MDOC has not been able to obtain one of the three drugs necessary to carry out an execution under the current protocol, the State will not file a motion with the Supreme Court asking it to set (or reset) an execution date for any inmate, including Plaintiffs, until MDOC has selected a new drug or drugs as an alternative for sodium pentothal and pentobarbital and finalized necessary amendments to the lethal injection protocol.   If this Court decides not to dismiss Plaintiffs' Complaint, the State Defendants will provide notice to the Court as soon as any necessary amendments to the protocol have been finalized and the State files a motion to reset an execution date with the Mississippi

5

Supreme Court.  Until the protocol has been officially amended, there is no actual Article III case or controversy ripe for decision, there is nothing for this Court to decide, and no need for an injunction.  Federal courts do not issue speculative, advisory opinions.

## ARGUMENT

### I.      Dismissal is Appropriate Because There is No Article III Case or Controversy

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction.  Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Indeed, because "[j]urisdiction is power to declare the law," if a court lacks jurisdiction, it may only do one thing: "announc[e] the fact and dismiss[ ] the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

The United States Constitution, Article III, section 2, clause 1, requires an actual case or controversy to sustain federal jurisdiction.  *Amar v. Whitley*, 100 F.3d 22, 23 (5th Cir. 1996).  "The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government." *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The question of Article III justiciability is of critical importance and "not merely a troublesome hurdle to be overcome if possible so as to reach the merits of the lawsuit." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476 (1982).  The burden of establishing federal jurisdiction rests on the party seeking the federal forum.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint

alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Montez v. Department of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (internal citations omitted); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez*, 392 F.3d at 149.

### A.      Plaintiffs' Claims Have Been Rendered Moot.

"It is well-settled, that mootness is a threshold jurisdictional inquiry." *Louisiana Environmental Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004) (citation omitted). The mootness doctrine "goes to the heart" of a "court's Article III jurisdiction." *Esfeller v. O'Keefe*, 391 Fed. App'x 337, 340 (5th Cir. 2010) (citation omitted). "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir.1990). "In general, a claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Louisiana Environmental Action Network*, 382 F.3d at 581 (internal quotations and citation omitted). "If a dispute has been resolved, or *if it has evanesced because of changed circumstances*, it is considered moot." *Id.* (emphasis added; citation omitted).

A constitutional challenge to a state's lethal injection protocol becomes moot when the state amends its protocol or when one of the drugs required by the protocol is no longer available, thus necessitating an amendment to the protocol. *See Ringo v. Lombardi*, 677 F.3d 793, 797-98 (8th Cir. 2012); *Cooey v. Strickland*, 588 F.3d 921, 923 (6th Cir. 2009) (challenge to Ohio's lethal injection

7

protocol mooted when protocol was amended).  In *Ringo v. Lombardi*, the several death-row inmates challenged Missouri's lethal injection protocol, specifically the requirement that sodium thiopental be administered during their executions.  677 F.3d at 797.  During the pendency of the case, the only domestic manufacturer of sodium thiopental, Hospira, Inc., stopped producing the drug.  *Id.*  As a result, the Missouri Department of Corrections was "unable to obtain sodium thiopental or a substitute for more than a year," and therefore could not "carry out the challenged protocol as written [.]" *Id.*  After the district court granted summary judgment to Missouri, on appeal, the Eighth Circuit raised the issue of mootness *sua sponte*.  *See id.* at 796.

Although the plaintiffs "concede[d] the factual developments in the case permit[ted] a reasonable inference that Missouri w[ould] change the protocol and the drugs used," they argued that their claims were not moot because Missouri might obtain a "very similar drug" that would present the same problems as sodium thiopental.  *Id.* at 797.  The Eighth Circuit rejected this argument, reasoning that the inmates' arguments were too speculative to avoid mooting the case:

> If the DOC does indeed obtain a different drug or otherwise modifies its protocol, any analysis we would conduct based on the existing protocol and the use of sodium thiopental as an anesthetic would become merely an academic exercise. . . . While any replacement drug the DOC might obtain may be similar—it also may not. We cannot know until the drug is acquired. "[S]uch speculative contingencies afford no basis for our passing on the substantive issues the appellants would have us decide." *Hall v. Beals*, 396 U.S. 45, 49, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969) (per curiam).
>
> The barriers and uncertainty facing Missouri's lethal-injection protocol deprive appellants' claims of the immediacy and the reality required to establish "a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." *Id.* at 48, 90 S.Ct. 200. Appellants' claims are moot.

*Id.* at 798.

This case is not only squarely on point with *Ringo*, it even presents more compelling

evidence of mootness.  MDOC's "entire supply" of compounded pentobarbital discussed throughout

Plaintiffs' Complaint has been destroyed because it expired on May 20, 2015.  Exhibit 1, at ¶ 5.

Further, MDOC has been unable to acquire a new supply of pentobarbital, in any form whatsoever,

despite making numerous attempts to find a supplier, and, importantly, does not expect to be able

to acquire a new supply of pentobarbital, in any form whatsoever, for use in upcoming executions.

*Id.* at ¶ 9.  Finally, the State Defendants have affirmatively represented to the Court that due to the

unavailability of sodium pentothal and pentobarbital, MDOC's current lethal injection execution

protocol will have to be amended to allow for the use of alternative drugs as the first drug

administered under the protocol, "before any additional executions may be carried out."  *Id.* at ¶ 10.

In light of this evidence, there can be no question that Plaintiffs' constitutional challenges to the use

of pentobarbital, in particular compounded pentobarbital, under the current version of MDOC's

lethal injection protocol are now moot.

All of Plaintiffs' claims are specifically related to MDOC's current lethal injection protocol

and the use of compounded pentobarbital during their executions.[2]  As demonstrated above, there

is no longer a "live" controversy or dispute between the parties concerning the use of compounded

pentobarbital pursuant to the current protocol.  MDOC has destroyed its entire supply of

compounded pentobarbital and has been unable acquire a new supply of pentobarbital, in any form,

---

[2] Plaintiffs' Complaint asserts five separate causes of action.  Count I alleges that the MDOC's use of compounded pentobarbital under the current three-drug protocol constitutes cruel and unusual punishment, in violation of the United States Constitution and the Mississippi Constitution.  Count II alleges that MDOC's use of compounded pentobarbital violates Miss. Code Ann. § 99-19-51 because it is not an "ultra short-acting barbituate," and as such violates the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, as well as Plaintiffs' Fourteenth Amendment right to be executed in accordance with state law.  Count III asserts that MDOC's current three-drug protocol violates the Eighth Amendment because "evolving standards of decency" have led other states "have abandoned this method in favor of a single-drug, anesthetic-only protocols."  Counts IV and V allege that the State Defendants' failure to disclose all relevant information about the pentobarbital that will be used during their executions violates the United States Constitution and the Mississippi Constitution.

for use in executions.  Accordingly, there is no realistic possibility that pentobarbital will be used during Plaintiffs' executions.  Any argument to the contrary is too speculative to save Plaintiffs' claims from a finding of mootness.  Moreover, because the State Defendants have announced that no executions will be carried out until the current lethal injection protocol is amended to allow for the use of alternative drugs as the first drug in the three-drug protocol, Plaintiffs' claims that the current protocol is constitutionally infirm are also moot.

A ruling on Plaintiffs' claims, as currently pled, would be nothing more than an advisory opinion on a question that has been rendered moot by recent developments: whether it would be constitutional to execute Plaintiffs with compounded pentobarbital under MDOC's current lethal injection protocol.  Article III of the United States Constitution precludes this Court from issuing such an opinion.  *E.g.*, *C&H Nationwide, Inc. v. Norwest Bank Texas NA*,  208 F.3d 490, 493 (5th Cir. 2000) (citation omitted) ("Federal courts are not in the business of rendering advisory opinions.").  Therefore, this Court should conclude that this case no longer presents a "live" case or controversy within the meaning of Article III and dismiss Plaintiffs' Complaint as moot.

**B.      The Issues Raised Are Not Ripe For Adjudication Because the Necessary Amendments to MDOC's Lethal Injection Protocol Have Not Been Finalized**

The other side of the justiciability coin is ripeness, which also "originate[s] in Article III's 'case' or 'controversy' language[.]"  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352  (2006).  "The basic rationale behind [the] ripeness doctrine is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements, when those disagreements are premised on contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 72 (1993) (internal quotations and citation omitted)).  "The ripeness doctrine counsels against premature adjudication by distinguishing matters

that are hypothetical or speculative from those that are poised for judicial review." *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005).

The ripeness doctrine is intended to "protect [government] agencies from judicial interference until an administrative decision has been formalized[.]" *Abbot Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "Determining whether a claim is ripe for judicial review requires the evaluation of (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286-87 (5th Cir. 2012) (quoting *Abbott Labs.*, 387 U.S. at 149).

To the extent any of Plaintiff's claims are not moot, they are not ripe for adjudication because MDOC's current lethal injection protocol must be amended before any executions may be carried out, and no amendments have been finalized. Exhibit 1, at ¶ 10. A constitutional challenge filed before a specific method of execution has been chosen is not ripe. *See LaGrand v. Stewart*, 170 F.3d 1158, 1159 (9th Cir.1999). In the absence of a final amended protocol establishing the method of execution that will MDOC will use in the future, the issues raised in Plaintiffs' Complaint are not ready for judicial review. Resolution of whether any amendments to MDOC's lethal injection protocol are constitutional must wait until the protocol has been officially amended. Further, premature adjudication would unnecessarily interfere with MDOC's decision-making process before the amended protocol has been formalized. In sum, because the resolution of the issues raised in this case depends upon future factual developments, there is no ripe controversy for this Court to decide. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (stating that a "case is not ripe if further factual development is required"). To the extent their claims

are not moot, Plaintiffs seek relief based on hypothetical situations and speculation, and their claims are not yet justiciable.

Additionally, dismissing Plaintiffs' claims will not result in harm to Plaintiffs. Their executions have not been scheduled, and the State has announced that it will not file a motion to re-set their execution dates with the Mississippi Supreme Court until MDOC has amended and finalized its lethal injection protocol. Undoubtedly Plaintiffs will challenge any amendments to the protocol, and they will have ample time to file another § 1983 suit and request a preliminary injunction once that has occurred. Any hardships that would be created by delaying judicial review are thus speculative at best. Therefore, dismissal of Plaintiffs' unripe claims is warranted.

## II.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

At the outset, it is important to note that this suit is but one aspect of an assault on the death penalty, including an ongoing global strategy to choke off the supply of drugs for use in executions. Because they have been unsuccessful in having capital punishment declared unconstitutional, anti-death penalty advocates have turned their efforts to preventing the various States from obtaining the ultra short-acting barbiturates and other similar drugs necessary to sedate prisoners before the other drugs required by an execution protocol are administered.[3]  As a result of these efforts, sodium

---

[3]  During the course of a public records lawsuit filed last year, Plaintiffs' counsel was able to identify the State's supplier of pentobarbital because of insufficiently redacted information. After Plaintiffs' counsel revealed the identity of the compounding pharmacy that supplied MDOC's lethal injection drugs, through documents found on a State transparency website, it identified the supplier in court documents and media reports, and consequently the pharmacy refused to supply any additional drugs to the State. *See Roderick & Solange MacArthur Justice Center, et al. v. Mississippi Department of Corrections*, Docket No. 25CH1:14-cv-000261, Chancery Court of Hinds County, Mississippi. Plaintiffs' counsel filed a second public records suit against MDOC in February 2015. MDOC's appeal in the second public records lawsuit brought by Plaintiffs' counsel to identify the suppliers of lethal injection drugs to the State is pending in the Mississippi Supreme Court, *Mississippi Department of Corrections v. Roderick & Solange MacArthur Justice Center*, No. 2015-CA-00431-SCT (Miss. S. Ct.). In that case, the chancellor ordered MDOC to produce documents reflecting the identity of drug suppliers to Plaintiffs' attorneys. However, on June 5, 2015, the Mississippi Supreme Court granted MDOC's motion to stay the effect of that order pending the outcome of MDOC's appeal. *See Order Entered Motion # 2015 - 1591, Mississippi Department of Corrections v. Roderick &*

thiopental and pentobarbital are no longer available for use in executions. *See Chavez v. Florida SP Warden*, 742 F.3d 1267, 1274 n. 1 (11th Cir. 2014) ("[I]t is clear that sodium thiopental and pentobarbital are not available and feasible alternatives to Florida's 2013 Protocol. Both drugs were once widely used in lethal injection protocols across the country, but they became unavailable for that use after their manufacturers, because of opposition to the death penalty, refused to let the drugs be used in executions."); Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy*, 95 B.U. L. Rev. 427, 429-30, 436-41 (2015) (describing "dramatically successful" strategy of capital punishment opponents to eliminate availability of lethal injection drugs such as sodium thiopental and pentobarbital at the source).

Justice Alito recently described the attack on the supply of lethal injection drugs by capital punishment opponents as "a guerilla war against the death penalty which consists of efforts to make it impossible for the States to obtain drugs that could used to carry out capital punishment with little, if any, pain[]." Transcript of Oral Argument at 15, *Glossip v. Gross*, 574 U.S. ___, No. 14-7955 (U.S. Apr. 29, 2015). Justice Scalia then commented: "the States have gone through two different drugs [sodium pentothal and pentobarbital], and those drugs have been rendered unavailable by the abolitionist movement putting pressure on the companies that manufacture them so that the States cannot obtain those two other drugs." *Id.*

Now that the anti-death penalty forces have made it virtually impossible for the State to acquire sodium thiopental or pentobarbital, Plaintiffs attempt to rely on the unavailability of those drugs as grounds for enjoining their executions. *See* Complaint, at ¶¶ 153-54, 183-86. Specifically,

---

*Solange MacArthur Justice Center*, No. 2015-CA-00431-SCT (Miss. S. Ct. Jun. 5, 2015).

they contend that "[t]he use of an FDA-approved, ultra short-acting barbituate in a single-drug protocol is a feasible and available alternative which would significantly reduce the substantial risk of severe pain presented by Mississippi's current procedure." *Id.* at 165.  However, their Complaint makes clear that the use of FDA-approved sodium thiopental or pentobarbital is not a feasible alterative because departments of corrections can no longer purchase these drugs. *See id.* at ¶¶ 52-70.

In order to prevail on an Eighth Amendment challenge to a State's lethal injection protocol, a plaintiff must must (1) "establish[] that the State's lethal injection protocol creates a demonstrated risk of severe pain," and (2) "show that the risk is substantial when compared to the *known and available* alternatives." *Baze v. Rees*, 553 U.S. 35, 61 (2008) (emphasis added). Additionally, a plaintiff must show that the alternative is "*feasible, readily implemented*, and in fact [would] significantly reduce a substantial risk of severe pain." *Id.* at 52 (emphasis added). "[C]apital punishment is constitutional. It necessarily follows that there must be a means of carrying it out." *Id.* at 47. "The existence of [a feasible] alternative method of execution, therefore, is a necessary element of an Eighth Amendment claim, and this element – like any element of a claim – must be pleaded adequately." *Zink v. Lombardi*, 783 F.3d 1089, 1103 (8th Cir. 2015); *cf. Valle v. Singer*, 655 F.3d 1223, 1237 (11th Cir. 2011) (rejecting plaintiff's Eighth Amendment claim because he "failed to proffer any alternative procedure or drug, and failed to show that any such alternative procedure or drug is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'").

Because Plaintiffs have not pleaded or identified a *feasible, readily implemented* alternative to MDOC's current lethal injection protocol, they fail to state a valid Eighth Amendment claim.

14

Indeed, the fact that the only alternative method they have identified is clearly infeasible, given the allegations in their Complaint, shows that this case is not a narrow challenge to a particular drug or method of execution, but rather a full frontal assault on the ability of the State to carry out the death penalty.  As such, this Court should dismiss Plaintiffs' Eighth Amendment claims.

Moreover, Plaintiffs' claim that the State Defendants' continued use of a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution also fails as a matter of established law.  Complaint, at ¶¶ 182-95.  Plaintiffs allege that the use of a three-drug protocol "runs contrary to the trend towards single-drug, anesthetic-only protocols employed successfully by other states in recent years."  *Id.* at ¶ 187.  They claim that the "trend towards abandonment of the three-drug protocol is evidence of the evolving standards of decency which inform the Eighth Amendment." *Id.* at ¶ 191.  Plaintiffs' contention that a one-drug protocol is constitutionally mandated now that several states have adopted such a protocol is without merit for at least four reasons.

First, in *Baze v. Rees*, the United States Supreme Court upheld the constitutionality of Kentucky's three-drug protocol, which called for the administration of a sodium thiopental, followed by pancuronium bromide and potassium chloride.  553 U.S. at 44.  Further, it held that a "State with a lethal injection protocol substantially similar to the protocol we uphold" would be constitutional. *Id.* at 61.  In so holding, the Court rejected the petitioners' argument that the Eighth Amendment required Kentucky to a adopt a "one-drug protocol that dispenses with the use of pancuronium and potassium chloride," concluding that " a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative."  *Id.* at 51.  To hold otherwise, the Court observed, "would threaten to transform courts into boards of inquiry

charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology" and "would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures[.]" *Id.*

*Baze* therefore stands for the proposition that a three-drug protocol substantially similar to Kentucky's is constitutional, and that the Eighth Amendment does not mandate that States adopt a one-drug, anesthetic-only protocol. MDOC's current three-drug protocol is substantially similar to the three-drug protocol approved in *Baze*. Although MDOC substituted pentobarbital for sodium thiopental in 2011, the substitution of one anesthetic for another, does not give rise to a viable Eighth Amendment challenge. MDOC's current protocol is therefore constitutional under *Baze*.

Second, in *Baze*, the Supreme Court noted that it "ha[d] never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment." *Id.* at 48 (citing *Wilkerson v. Utah*, 99 U.S. 130 (1879) (upholding constitutionality of execution by firing squad); *In re Kemmler*, 136 U.S. 436 (1890) (noting that electrocution was adopted as a more human method of execution). Because the Supreme has never held any method of execution unconstitutional, and has specifically upheld the use of a three-drug lethal injection protocol, Plaintiffs fail to state a plausible claim for relief that MDOC's current three-drug protocol is unconstitutional.

Third, the question of whether Mississippi's current three-drug protocol is constitutional has already been resolved by the Fifth Circuit. In *Thorson v. Epps*, 701 F.3d 444, 448 (5th Cir. 2012), the Fifth Circuit confirmed that Mississippi's lethal injection protocol for executions does not violate the Eighth Amendment and is constitutional. In fact, the Fifth Circuit observed that Mississippi had

16

chosen the three-drug lethal injection method and procedure to render executions more humane, and

that there was no evidence that any problems had ever occurred during a lethal injection execution

in Mississippi:

> Mississippi has chosen, by both method of execution and the procedure for administration of the lethal injections, to alleviate cruelty and reduce "harm" in capital punishment. "Given what our cases have said about the nature of the risk of harm that is actionable under the Eighth Amendment, a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Baze*, 553 U.S. at 51, 128 S. Ct. at 1531.

> An additional, salient comparison with *Raby* must be noted. In that case, Raby attempted, unsuccessfully, to prove the inadequacy of Texas's lethal injection protocol with evidence of alleged errors during executions that had been carried out under the protocol. Here, Thorson offered no evidence of any instance of maladministration or suffering during any of more than a dozen executions conducted in Mississippi under the protocol he attacks. Yet such evidence, if it existed, would have been readily accessible through eyewitness accounts. Thorson's theoretical complaint necessarily fails under *Raby*.

*Id.* Additionally, the Fifth Circuit noted that "*Baze* was not meant to be a blueprint of the only

sanctioned lethal injection protocol and should not be read as such." *Id.*

Fourth, Plaintiffs' objections to MDOC's decision to continue using a three-drug protocol

instead of adopting a one-drug protocol like some other States have been consistently rejected by

courts as inadequate to sustain an Eighth Amendment challenge. *See, e.g.*, *Pardo v. Palmer*, 500

Fed. App'x 901, 904 (11th Cir. 2012) ("Even if nine of our sister states have adopted a one-drug

protocol, it is not our role to transform ourselves into a board of inquiry charged with determining

the best practices for executions.") (quoting *Baze*, 553 U.S. at 51); *Ferguson v. Warden, Florida*

*State Prison*, 493 Fed. App'x 22, 25 (11th Cir. 2012) (same); *Jackson v. Danberg*, 656 F.3d 157, 165

(3d Cir. 2011) (rejecting a claim that Delaware was required to adopt a single-drug protocol because

a state is not "compelled to change its lethal injection protocol simply because another state has

elected to do so"); *Chavez v. Palmer*, 2014 WL 521067, at \*19 (M.D. Fla. Feb. 10, 2014) ("Even if fourteen states have adopted a one-drug protocol, a decision from this Court finding the Florida Department of Corrections must adopt a one-drug protocol would transform this Court into a board of inquiry considering the best practices for a state's execution process, something which this Court cannot do."). For these reasons, Plaintiffs' claim that the Eighth Amendment mandates that MDOC adopt a one-drug, anesthetic-only protocol is foreclosed by controlling precedent and relevant case law, and should therefore be dismissed.

Finally, even if Plaintiffs' challenge to the proposed use of compounded pentobarbital is somehow not moot, their allegations that the use of compounded pentobarbital violates the Eighth Amendment are insufficient to state a plausible claim for relief. The Fifth Circuit has repeatedly rejected claims, virtually identical to ones made here by Plaintiffs, that the use of compounded drugs in executions violates the Eighth Amendment. *See e.g., Ladd v. Livingston*, 777 F.3d 286, 289 (5th Cir. 2015) (rejecting plaintiff's argument "that compounded drugs are unregulated and subject to quality and efficacy problems" because it "is essentially speculative, and the Supreme Court has held that 'speculation cannot substitute for evidence that the use of the drug is 'sure or very likely to cause serious illness and needless suffering.'") (quoting *Brewer v. Landrigan*, --- U.S.----, 131 S.Ct. 445, 445(2010) (mem.)); *Whitaker v. Livingston*, 732 F.3d 465, 469 (5th Cir. 2013) ("The demonstrated risk of pain is merely the risk concomitant with any use of drugs—that they might fail or cause side effects from contamination or a lack of potency. Plaintiffs have not shown that the risk of such contamination is substantially greater than from a customary pharmacy or from any other source that the state could use for its drugs, as required by *Baze*.").

To prevail on a claim that compounded drugs are sure or very likely to inflict needless pain

and suffering, Fifth Circuit precedent requires that a plaintiff "offer some proof that the state's own process—that its choice of pharmacy, that its lab results, that the training of its executioners, and so forth, are suspect." *Whitaker*, 732 F.3d at 468. "[H]ypothetical possibilities that the process was defective" are insufficient to establish an Eighth Amendment violation. *Id.* All that Plaintiffs allege is that compounding pharmacies "generally do not have the facilities to test chemicals for identity, potency, purity, and contamination," and therefore the pentobarbital obtained by MDOC from a compounding pharmacy "could very well be counterfeit, contaminated, or substandard." Complaint, at ¶ 103, 108. Their Complaint is devoid of any specific facts regarding the pharmacy from which MDOC obtained the pentobarbital or the process that was used to make the drug. Therefore, the Complaint merely offers hypothetical possibilities that the pentobarbital is defective.

Recently, in *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. Mar. 6, 2015), the Eighth Circuit affirmed the dismissal of a challenge to Missouri's use of compounded pentobarbital in its lethal injection protocol in which the plaintiffs in that case relied on the same sort of allegations of potential problems at compounding pharmacies in general. The Eighth Circuit held that "[t]he prisoners' allegations are limited to descriptions of hypothetical situations in which a potential flaw in the production of the pentobarbital or in the lethal-injection protocol could case pain. This speculation is insufficient to state an Eighth Amendment claim." 783 F.3d at 1101. This Court should reach the same conclusion.

## III.   Plaintiffs Have Clearly Failed to Meet Their Burden of Persuasion On *Any* of the Four Requirements For A Preliminary Injunction

A preliminary injunction is an extraordinary remedy that should not be granted unless the movant has clearly carried its burden of persuasion on all four requirements. *E.g.*, *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). To obtain

this extraordinary remedy, the applicant bears the burden of showing: (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (citation omitted).

Plaintiffs fail to show a substantial likelihood of success on the merits of their claims for the same reasons that their Complaint should be dismissed. This suit does not present a justiciable case or controversy, given that there is no realistic expectation that pentobarbital, in any form whatsoever, will be used during any upcoming executions, and given that any of Plaintiffs' remaining method-of-execution claims will not be ripe until the current lethal injection protocol has been amended. Moreover, Plaintiffs cannot demonstrate a substantial threat of irreparable harm if they are denied injunctive relief. As discussed above, no executions can be carried out under MDOC's current lethal protocol because MDOC has been unable to obtain sodium pentothal or pentobarbital. Before any death row inmate may be executed, including Plaintiffs, MDOC must amend its lethal injection protocol to authorize the use of alternative drugs in place of sodium pentothal and pentobarbital. Because MDOC has not amended its lethal injection protocol, and the alternative drugs have not been selected, any assertion that the method of execution that will be authorized by the amended protocol creates a substantial risk of inflicting unnecessary pain and suffering is pure speculation, and thus insufficient to show a substantial threat of irreparable injury. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient [to establish irreparable harm]; there must be more than an unfounded fear on the part of the applicant.").

Finally, the third and fourth factors for a preliminary injunction weigh against granting a preliminary injunction. Plaintiffs cannot show that the threatened injury to them outweighs the injury to the State Defendants if they are enjoined, since Plaintiffs are not likely to suffer any harm in the absence of a preliminary injunction. Once MDOC amends its lethal injection and the State files a motion to re-set Plaintiffs' executions with the Mississippi Supreme Court, Plaintiffs can either file another suit challenging the amended protocol (if this Court grants the State Defendants' Motion to Dismiss) or amend their Motion for Preliminary Injunction. Either way, Plaintiffs will have an adequate opportunity to vindicate their constitutional rights before any execution is carried out. Additionally, the public interest would be disserved by the entry of a preliminary injunction enjoining Plaintiffs' executions until the Court can rule on the merits of their claims. The Supreme Court has recognized that both the "State and the victims of crime have an important interest in the timely enforcement of a [death] sentence," and that federal courts considering whether to enjoin an execution must be "sensitive to the State's strong interest in enforcing its criminal judgments without undue interference[.]" *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (citation omitted). Because Plaintiffs cannot carry their burden of persuasion on any of the four preliminary injunction factors, the Motion for Preliminary Injunction should be denied.

## **CONCLUSION**

FOR THESE REASONS, the State Defendants respectfully request that Plaintiffs' Complaint be dismissed without prejudice, or in the alternative that Plaintiffs' Motion for Preliminary Injunction be denied; or, in the further alternative, that the Court stay all proceedings in this matter, including, but not limited to, its consideration of Plaintiffs' Motion for Preliminary Injunction, until MDOC has finalized any necessary amendments to its lethal injection execution protocol.

21

**THIS** the 22nd day of June, 2015.

Respectfully submitted

**JIM HOOD**
ATTORNEY GENERAL
STATE OF MISSISSIPPI


By:   s/ *Jason L. Davis*
Jason L. Davis, MSB No. 102157
Paul E. Barnes, MSB No. 99107
Wilson Minor, MSB No. 102663
SPECIAL ASSISTANT ATTORNEYS GENERAL
ATTORNEYS FOR DEFENDANTS

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Telefax: (601) 359-3796
jdavi@ago.state.ms.us

**CERTIFICATE OF SERVICE**

This is to certify that I, Jason L. Davis, Special Assistant Attorney General for the State of Mississippi, have electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

    James W. Craig
    Emily M. Washington
    4400 South Carrollton Ave.
    New Orleans, LA 70119

This the 22nd day of June, 2015.

                    s/ *Jason L. Davis*