# REVISED JUNE 27, 2016

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60604

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2016

Lyle W. Cayce
Clerk

RICHARD JORDAN; RICKY CHASE,

        Plaintiffs – Appellees,

THOMAS EDWIN LODEN, JR.,

        Intervenor – Appellee,

v.

COMMISSIONER MARSHALL L. FISHER, Commissioner, Mississippi Department of Corrections, in his Official Capacity; SUPERINTENDENT EARNEST LEE, Superintendent, Mississippi State Penitentiary, in his Official Capacity; THE MISSISSIPPI STATE EXECUTIONER, In his Official Capacity; UNKNOWN EXECUTIONERS, in their Official Capacities,

        Defendants – Appellants.

Appeals from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

We hereby withdraw our previous opinion of February 10, 2016 and substitute the following.[1]

Plaintiffs Richard Jordan and Ricky Chase and Intervenor Thomas Loden are prisoners awaiting execution in the state of Mississippi. They sued under § 1983 in federal district court seeking an injunction preventing the state from conducting executions with compounded pentobarbital. The district court granted a broad preliminary injunction. Because Mississippi's sovereign immunity prevents a federal court from enjoining state officials to follow state law, and because Plaintiffs[2] have not shown they are likely to succeed in establishing a violation of either their procedural or substantive due process rights, we VACATE the injunction and REMAND.

## I.

Richard Jordan was sentenced to death following his conviction on charges of kidnapping and murdering Edwina Marter on January 13, 1976. *Jordan v. State*, 786 So.2d 987, 997 (Miss. 2001). Ricky Chase was sentenced to death following his conviction on charges of murdering Elmer Hart during the course of a robbery. *Chase v. State*, 645 So.2d 829, 834 (Miss. 1994). Thomas Loden was sentenced to death following his conviction on charges of kidnapping, raping, and murdering Leesa Marie Gray. *Loden v. State*, 971 So.2d 548, 551–52 (Miss. 2007). All three await execution in the state of Mississippi. Jordan and Chase brought suit challenging the method by which Mississippi planned to execute them. Loden intervened, echoing their claims.

Mississippi law provides that "the manner of inflicting the punishment of death shall be by continuous intravenous administration of a lethal quantity

---

[1] Plaintiffs' petition for panel rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on rehearing en banc, Plaintiffs' petition for rehearing en banc is DENIED.

[2] We refer to Jordan, Chase, and Loden collectively as Plaintiffs. Loden is an intervenor but raises claims indistinguishable from those raised by Chase and Jordan.

No. 15-60604

of an ultra short-acting barbiturate or other similar drug in combination with a chemical paralytic agent until death is pronounced." Miss. Code Ann. § 99-19-51. At the time this lawsuit began, the state's lethal injection protocol called for the infusion of sodium pentothal or, if sodium pentothal could not be obtained, pentobarbital as the first drug in a three-drug cocktail. Plaintiffs sued various state officers seeking an injunction forbidding the use of pentobarbital as contrary to § 99-19-51's requirement of an "ultra short-acting barbiturate or other similar drug" and forbidding the use of compounded drugs which they alleged violated their Eighth and Fourteenth Amendment rights.

Immediately before the district court conducted a hearing on Plaintiffs' motion for a preliminary injunction, Mississippi substituted a revised lethal injection protocol that allowed it to use midazolam as the first drug in the three-drug cocktail if it could not obtain sodium pentothal or pentobarbital. The district court concluded Plaintiffs had demonstrated a substantial likelihood of success "at least, on their claim that Mississippi's failure to use a drug which qualifies as an 'ultra short-acting barbiturate or other similar drug' as required by Miss. Code Ann. § 99-19-51 violates Mississippi statutory law and the Due Process Clause of the Fourteenth Amendment."[3]  The court granted a sweeping preliminary injunction preventing Mississippi from using "pentobarbital, specifically in its compounded form, or midazolam" to execute any death row inmate and required the state to submit any other proposed method of execution for the court's approval. Mississippi appeals.[4]

--------

[3] The district court has not yet considered the Plaintiffs' First Amendment access to courts claim, Eighth Amendment cruel and unusual punishment claim, and Fourteenth Amendment notice claim. These claims may be considered in the first instance on remand.

[4] Mississippi asserts that, as it no longer has pentobarbital and is currently unable to obtain more, there is no live controversy regarding pentobarbital and the issue is moot. Because other states retain access to pentobarbital it seems possible that Mississippi could regain access in the future. We are reluctant to conclude the issue is moot because we are not convinced "subsequent events [have] made it absolutely clear that the allegedly wrongful

3

No. 15-60604

## II.

In order to obtain a preliminary injunction, the party seeking the injunction must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013). "A preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009). A district court's decision to grant a preliminary injunction is reviewed for abuse of discretion. *Id.* The district court's "findings of fact 'are subject to a clearly-erroneous standard of review,' while conclusions of law 'are subject to broad review and will be reversed if incorrect.'" *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).

"To assess the likelihood of success on the merits, we look to standards provided by the substantive law." *Sepulvado*, 729 F.3d at 418 (quoting *Janvey*, 647 F.3d at 596). Plaintiffs face a challenge here. Mississippi's sovereign immunity prevents a federal court from issuing an injunction against state officials solely to require them to adhere to state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106–07 (1984) ("[I]t is difficult to think of a

---

behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

No. 15-60604

greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Plaintiffs' claims seeking enforcement of § 99-19-51 may only proceed in federal court if a provision of federal law or the United States Constitution creates a right to the enforcement of § 99-19-51.[5]

Section 1983 provides a cause of action against state actors for plaintiffs who suffer "deprivation of any rights, privileges or immunities secured by the Constitution and laws" at the hands of those acting with the authority of a state. 42 U.S.C. § 1983. Here Plaintiffs assert that Mississippi's intention to execute them using pentobarbital or midazolam violates the Fourteenth Amendment's due process clause. The guarantee of due process enshrined in the Fourteenth Amendment has two components—(1) a guarantee of procedural protections when a state seeks to deprive an individual of protected liberty or property interests, and (2) a substantive protection against conduct that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). The first component of the due process clause requires a two-step analysis: first a court must determine whether the plaintiff has a protected liberty or property interest and then the court must determine whether the state has provided adequate procedures for the vindication of that interest. *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005). The second component of the due process clause does not rest on state law. According to the Supreme Court, this component provides substantive rather than merely procedural protections and comes into play when "the behavior of the governmental officer is so egregious, so outrageous,

---

[5] A plaintiff can sometimes avoid the jurisdictional bar posed by sovereign immunity by suing a state officer and challenging the actions of that officer as prohibited by federal law and therefore *ultra vires. Ex Parte Young*, 209 U.S. 123 (1908). So long as the plaintiff seeks prospective injunctive relief, a federal court may consider whether the state officer's actions are forbidden by federal law. *Edelman v. Jordan*, 415 U.S. 651 (1974).

No. 15-60604

that it may fairly be said to shock the contemporary conscience" regardless of whether the behavior in question conforms or fails to conform to state laws. *County of Sacramento*, 523 U.S. at 862 n.8.

Because the district court was not clear as to which aspect of the due process clause Mississippi's protocol violates, we examine both prongs.[6] We ask, first, whether Mississippi's alleged departure from the state law governing its lethal injection protocol violates Plaintiffs' procedural due process rights and, second, whether the same alleged departure from state law violates Plaintiffs' substantive due process rights.

### A.

We begin by examining whether Plaintiffs can show Mississippi's proposed method of execution violates the procedural protections of the Fourteenth Amendment because it fails to conform to state law. The Fourteenth Amendment's right to procedural due process guarantees citizens the protection of adequate procedures before allowing a state to deprive them of their property, liberty, or life. Liberty interests protected by the Fourteenth Amendment "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted); *accord Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974). The Supreme Court recognizes a narrow category of state-created liberty interests that:

> will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,

---

[6] The district court did not reach Plaintiffs' remaining claims alleging a violation Plaintiffs' right to fair notice of Mississippi's method of execution, alleging a violation of Plaintiffs' Eighth Amendment rights arising from Mississippi's failure to use a one-drug protocol, and alleging a violation of Plaintiffs' right of access to courts. Therefore we do not address those claims here. *See Sepulvado*, 729 F.3d at 417.

6

No. 15-60604

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).

Plaintiffs argue that they have a liberty interest created by state law, specifically § 99-19-51, and that it prevents the state from executing them using any drugs other than "an ultra short-acting barbiturate or other similar drug" as the first drug in a three-drug cocktail. However, even if the revised lethal injection protocol does not conform to § 99-19-51, "a mere error of state law is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)). Plaintiffs contend that § 99-19-51 creates a liberty interest because it places "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (1989); *accord Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989); *Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (state created liberty interest in prison regulations characterized by "repeated use of explicitly mandatory language"). The Supreme Court, however, later expressly rejected the "substantive limitations" test used in *Olim*, *Hewitt*, and *Thompson*, reasoning that it "create[d] disincentives for States to codify prison management procedures" and "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Sandin*, 515 U.S. at 482; *accord Wilkinson*, 545 U.S. at 222–23 (recognizing *Sandin*'s rejection of the *Hewitt–Olim* standard). Instead, the Court now relies on *Sandin*'s test to determine whether a state law or procedure gives rise to a liberty interest, asking whether the state's proposed deviation from policy "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483.

Therefore, in order to establish a liberty interest arising from § 99-19-51, Plaintiffs must show that execution with pentobarbital or midazolam would

7

No. 15-60604

"impose atypical and significant hardship" on them beyond the ordinary for those facing execution. *Sandin*, 515 U.S. at 484. The Court has recognized such hardship in a very small number of cases generally related to extensive solitary confinement or imprisonment beyond the term permitted by state law. *See, e.g.,* *Wilkinson v. Austin*, 545 U.S. 209 (2005) (prisoners had a liberty interest in the state's decision to confine them in a supermax facility with highly restrictive solitary confinement conditions); *Hicks v. Oklahoma*, 447 U.S. 343 (1980) (prisoner had liberty interest in serving only ten years in prison rather than the forty years he was sentenced to under a habitual offender statute subsequently held to be unconstitutional); *Vitek v. Jones*, 445 U.S. 480, 491 (1980) (prisoner had liberty interest in remaining in prison rather than a mental hospital); *Washington v. Harper*, 494 U.S. 210, 221 (1990) (prisoner had liberty interest in avoiding involuntary administration of antipsychotic medication).

Here, however, Mississippi's statutory requirements and the associated lethal injection protocol are not "atypical ... in relation to the ordinary" in comparison with other states' execution protocols. The three-drug protocol and the particular drugs Mississippi proposes to use (midazolam, a paralytic, and potassium chloride) are typical for those states that use lethal injection and were recently upheld in the face of a constitutional challenge. *Glossip v. Gross*, 135 S. Ct. 2726, 2735 (2015) (describing Oklahoma's three-drug lethal injection protocol as midazolam, a paralytic, and potassium chloride). Because Plaintiffs have failed to demonstrate Mississippi's intent to "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, they have not established that the state's revised protocol invades a protected liberty interest.

Even if § 99-19-51 were to create a liberty interest, the right it creates would be subject only to procedural protection. State law is not a source of

No. 15-60604

liberty interests that are substantively protected by the Fourteenth Amendment; rather, it gives rise to interests that are promised procedural protections by the Fourteenth Amendment. *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) ("Whatever liberty interest exists is, of course, a state interest created by California law. ... [When] a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication. ... No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement."); *Wilkinson,* 545 U.S. at 224–25 (holding state law gave rise to a liberty interest and rejecting the suit after determining the state's procedures satisfied the procedural requirements of *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Marsh v. County of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012) ("A state official's failure to comply with state law that gives rise to a liberty or property interest may amount to a procedural (rather than substantive) due process violation.").

Our sister circuit has concluded that state post-conviction relief petitions satisfy a prisoner's right to seek proper enforcement of a state's method-of-execution law. *Pavatt v. Jones*, 627 F.3d 1336, 1341 (10th Cir. 2010). We agree. Mississippi provides an adequate forum for the vindication of Plaintiffs' rights that arise from state law. Mississippi's post-conviction relief statute explicitly empowers prisoners to challenge their sentence as "imposed in violation of the ... Constitution or laws of Mississippi." Miss. Code Ann. § 99-39-5(1). If Plaintiffs wish to protest that Mississippi's revised lethal injection protocol is an unlawful deviation from Mississippi's laws, Mississippi's courts are the appropriate venue for their suit.

## B.

Plaintiffs also argue that Mississippi's intention to execute them in a manner other than that described by § 99-19-51 "shocks the conscience" and that they are entitled to substantive enforcement of § 99-19-51 regardless of

9

the state post-conviction relief procedures available to them. This argument sounds in substantive due process. According to the Supreme Court, "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento*, 523 U.S. at 845. The Court has held that executive action violates a citizen's substantive due process rights when the action "shocks the conscience." *Id.* at 846. The Court's test for the substantive component of the due process clause prohibits "only the most egregious official conduct," *id.*, and will rarely come into play. At the same time that the Court announced the "shocks the conscience" test it counseled judges against "drawing on our merely personal and private notions [to] disregard the limits that bind judges in their judicial function." *Rochin v. California*, 342 U.S. 165, 170–71 (1952).

Plaintiffs base their substantive due process argument on *Hicks v. Oklahoma* and its progeny and argue that execution under the revised protocol "shocks the conscience." *County of Sacramento*, 523 U.S. at 846. This argument mixes the substantive and procedural prongs of due process and misunderstands *Hicks*. Hicks was convicted of heroin distribution, an offense that carried a minimum sentence of ten years, but was sentenced to a mandatory forty years in prison because of a state habitual offender statute. *Hicks*, 447 U.S. at 344. After Hicks's sentencing, the Oklahoma Court of Criminal Appeals declared the state's habitual offender statute unconstitutional. *Id.* Hicks challenged his sentence, asserting that it was unconstitutionally imposed because the instructions given to his jury (requiring a minimum sentence of forty years) were based on an unconstitutional statute. *Id.* Hicks asserted that his sentencing itself was unconstitutional; he did not assert—as Plaintiffs do—that the state intended to carry out a constitutional sentence in an unconstitutional manner. *Hicks* and its progeny are squarely focused on correcting the imposition of an

No. 15-60604

impermissible sentence at trial. *Hicks,* 557 U.S. at 346; *Burge v. Butler* 867 F.2d 247, 248–50 (5th Cir. 1989) (requiring resentencing for a prisoner sentenced to life without parole under a sentencing statute passed after he had committed his crimes). *Hicks* and *Burge* would be relevant if Plaintiffs argued their death sentences were unlawful, but these cases provide no support for Plaintiffs' challenge to the proposed method of execution. Plaintiffs were sentenced to death and it is a death sentence that Mississippi plans to impose.

## III.

Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their claims because they have not established a liberty interest in the enforcement of § 99-19-51 and because they have not shown that Mississippi's alleged deviation § 99-1-51 would "shock the conscience." Therefore, the district court abused its discretion by granting an injunction.[7]

We VACATE the district court's injunction and REMAND to the district court for proceedings consistent with this opinion.

---

[7] The district court, having found Plaintiffs were likely to succeed on the merits, concluded without analysis that they satisfied prongs three and four of the test for a preliminary injunction. The Supreme Court requires that, in addition to considering Plaintiffs interests in obtaining an injunction, we also consider the public's interest in the enforcement of state law and the validation of a jury verdict. *Hill,* 547 U.S. at 584 ("[A] stay of execution is an equitable remedy. It is not available as a matter of right."); *See also Town of Castle Rock v. Gonzales,* 545 U.S. 748, 765 (2005) ("[t]he serving of public rather than private ends is the normal course of the criminal law because criminal acts, 'besides the injury [they do] to individuals, … strike at the very being of society; which cannot possibly subsist, where actions of this sort are suffered to escape with impunity.'" (quoting 4, William Blackstone, Commentaries *5)). Because we conclude Plaintiffs have not shown a likelihood of success on the merits, we need not determine whether the district court exceeded its equitable power by failing to consider the public interests at stake. *See Hill,* 547 U.S. at 584 ("[E]quity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts."); *Lewis v. Casey,* 518 U.S. 343, 386 (1996) (Thomas, J., concurring) (emphasizing the state's sovereign interest in overseeing the state penal system).