## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**RICHARD JORDAN and RICKY CHASE**                              *Plaintiffs*

**THOMAS EDWIN LODEN, JR. and**
**ROGER ERIC THORSON**                                         *Intervenors*

*vs.*                                              **No. 3:15-cv-00295-HTW-LRA**

**MARSHALL L. FISHER, Commissioner,**
**Mississippi Department of Corrections, in**
**his Official Capacity; EARNEST LEE**
**Superintendent, Mississippi State Penitentiary,**
**in his Official Capacity; THE MISSISSIPPI**
**STATE EXECUTIONER, in his Official**
**Capacity; an UNKNOWN EXECUTIONERS,**
**in their Official Capacities**                                 *Defendants*

---

### DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendants Marshall L. Fisher, in his official capacity as Commissioner of the Mississippi Department of Corrections ("MDOC"), Earnest Lee, the Superintendent of the Mississippi State Penitentiary ("MSP"), the Mississippi State Executioner (collectively referred to as the "State"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 33, submit the following Responses to Plaintiffs' First Set of Interrogatories.

### GENERAL OBJECTIONS AND LIMITATIONS

The following General Objections and Limitations apply to and are incorporated in each individual Response, whether or not expressly incorporated by reference in such Response:

1.      The State objects to each Instruction, Definition, and Interrogatory to the extent that it purports to impose obligations that exceed or differ from those imposed by the Federal Rules of Civil



Procedure, the Local Uniform Civil Rules of the United States District Court for the Southern District of Mississippi, or other applicable law or rules. The State further objects to the Definitions and Instructions as vague, ambiguous, overly broad, and unduly burdensome.

2.      The State objects to the Interrogatories to the extent that they seek information that is not relevant to a claim or defense of any party or proportional to the needs of the case, considering the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues. The State further objects to the Interrogatories to the extent that they seek information the likely benefit of which is outweighed by the burden or expense of producing said information.

3.      The State objects to the Interrogatories to the extent that they seek information that could lead to the identification of the State Executioner, his Deputies, the other members of the Execution Team, and any former member of the Execution Team. Disclosure of such information could subject the affected individuals to annoyance, embarrassment, oppression, harassment, and retaliation, including potentially endangering the safety and/or well being of such individuals. Further, the identities of these individuals are confidential and protected from disclosure by the amendments to Miss. Code Ann. § 99-19-51 enacted by Miss. S.B. 2237.

4.      The State objects to the Interrogatories to the extent that they seek information that could lead to the identification of any person or entity that has supplied drugs to MDOC for use in lethal injection executions. Disclosure of such information could subject the affected individuals and entities to annoyance, embarrassment, oppression, harassment, and retaliation, including potentially endangering the safety and/or well being of such individuals and entities. Further, the identities of any current or former supplier of lethal injection drugs to MDOC is confidential and

protected from disclosure by the amendments to Miss. Code Ann. § 99-19-51 enacted by Miss. S.B. 2237.

5.     The State objects to the Interrogatories to the extent that they seek information that could lead to the identification of any current or former MDOC employee and/or agent responsible for the procurement, transportation, storage, inventory and control of stocks of lethal injection drugs. Disclosure of such information could subject the affected individuals to annoyance, embarrassment, oppression, harassment, and retaliation, including potentially endangering the safety and/or well being of such individuals. Further, the identities of individuals who have been or are directly or indirectly involved in the procurement, transportation, storage, inventory and control of stocks of lethal injection drugs are confidential and protected from disclosure by the amendments to Miss. Code Ann. § 99-19-51 enacted by Miss. S.B. 2237.

6.     The State objects to the Interrogatories to the extent they seek information that could lead to the identification of any current or former MDOC employees and/or agents involved in assisting with executions in any capacity or assigned to specific duties related to an execution. Disclosure of such information could subject the affected individuals to annoyance, embarrassment, oppression, harassment, and retaliation, including potentially endangering the safety and/or well being of such individuals. Further, the identities of any current or former individuals involved in assisting with an execution in any capacity are confidential and protected from disclosure by the amendments to Miss. Code Ann. § 99-19-51 enacted by Miss. S.B. 2237.

7.     The State objects to the Interrogatories to the extent they seek information that could jeopardize institutional security at MDOC facilities, including the safety and/or well-being of MDOC

3

employees. The State further objects to the Interrogatories to the extent they seek information that could adversely affect the State's ability to obtain drugs for use in executions.

8. The State objects to the Interrogatories to the extent they seek information protected by the attorney/client privilege, the work product doctrine, or other applicable privilege. The State further objects to the extent answering the Interrogatories would require disclosure of the mental impressions, conclusions, opinions of defense counsel, and/or prematurely disclose the trial strategies of defense counsel. Should any such disclosure by the State occur, it is inadvertent and shall not constitute a waiver of any privilege.

9. The State objects to each Interrogatory that is overly broad, unduly burdensome, vague, and/or ambiguous.

10. The State incorporates all other documents, objections and/or limitations asserted in all of its other filings and discovery responses in this action. The fact that such contentions, objections, and/or limitations may not be repeated here shall not be deemed a waiver of any kind.

11. The State reserves the right to supplement or modify these Responses and Objections to the Interrogatories if it discovers any additional responsive information or documents, and as other facts emerge from the discovery process, or if otherwise appropriate under the Federal Rules of Civil Procedure.

12. No objection or limitation, or lack thereof, made in these Responses and Objections shall be deemed (i) an admission by the State as to the existence or non-existence of the information sought; or (ii) a waiver of the State's right to assert such objection or limitation at any future time in connection with the Interrogatories or otherwise. In responding to these Interrogatories, the State

neither waives nor intends to waive, and expressly reserves, any and all objections to relevance, competence, susceptibility to discovery, materiality or admissibility of any information provided.

13.     All of these General Objections and Limitations shall be deemed to be incorporated within the Responses and Objections to specific Interrogatories that follow, even where not further referred to in such Responses. The failure to include any General Objection in any specific Response does not waive any General Objection to that Interrogatory.

14.     The State is not responding to Plaintiffs' First Set of Interrogatories on behalf of any Unknown Executioners, as no such parties have been identified or joined as parties in this proceeding.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**: If Defendants contend that the use of midazolam in lethal injection executions complies with the language in Miss. Code Ann. § 99-19-51 requiring an "ultra short-acting barbiturate or other similar drug," state all facts supporting this contention, identify all documents which support this contention, and identify all persons within the employ of MDOC with discoverable knowledge of any facts supporting this contention.

**RESPONSE TO INTERROGATORY NO. 1:** The State objects to this Interrogatory on the ground that it seeks information only relevant to Count II of the First Amended Complaint, which the Fifth Circuit has held is barred by the State's sovereign immunity and not actionable under the Fourteenth Amendment. The State further objects to this Interrogatory in that it seeks information that is protected by the attorney client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. As such, unless and until the Fifth Circuit's decision is reversed or vacated on

5

rehearing, the State will not respond to this Interrogatory. Should the Fifth Circuit hold that this claim is not barred by the State's sovereign immunity and is therefore actionable under the Fourteenth Amendment, the State reserves the right to supplement this response and supplement its privilege log.

**INTERROGATORY NO. 2:** If Defendants contend that the use of pentobarbital compounded from API in lethal injection executions complies with the language in Miss. Code Ann. § 99-19-51 requiring an "ultra short-acting barbiturate or other similar drug," state all facts supporting this contention, identify all documents which support this contention, and identify all persons within the employ of MDOC with discoverable knowledge of any facts supporting this contention.

**RESPONSE TO INTERROGATORY NO. 2:** The State objects to this Interrogatory on the ground that it seeks information only relevant to Count II of the First Amended Complaint, which the Fifth Circuit has held is barred by the State's sovereign immunity and not actionable under the Fourteenth Amendment. The State further objects to this Interrogatory in that it seeks information that is protected by the attorney client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. As such, unless and until the Fifth Circuit's decision is reversed or vacated on rehearing, the State will not respond to this Interrogatory. Should the Fifth Circuit hold that this claim is not barred by the State's sovereign immunity and is therefore actionable under the Fourteenth Amendment, the State reserves the right to supplement this response and supplement its privilege log.

**INTERROGATORY NO. 3:** If Defendants contend that the use of FDA-approved pentobarbital complies with the language in Miss. Code Ann. §99-19-51 requiring an "ultra short-acting barbiturate or other similar drug," state all facts supporting this contention, identify all documents which support this contention, and identify all persons within the employ of MDOC with discoverable knowledge of any facts supporting this contention.

**RESPONSE TO INTERROGATORY NO. 3:** The State objects to this Interrogatory on the ground that it seeks information only relevant to Count II of the First Amended Complaint, which the Fifth Circuit has held is barred by the State's sovereign immunity and not actionable under the Fourteenth Amendment. The State further objects to this Interrogatory in that it seeks information that is protected by the attorney client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. As such, unless and until the Fifth Circuit's decision is reversed or vacated on rehearing, the State will not respond to this Interrogatory. Should the Fifth Circuit hold that this claim is not barred by the State's sovereign immunity and is therefore actionable under the Fourteenth Amendment, the State reserves the right to supplement this response and supplement its privilege log.


**INTERROGATORY NO. 4:** Describe MDOC's "numerous attempts to secure a new supply of pentobarbital from multiple sources" as testified to in ¶ 8 of the Declaration of Marshall Fisher (Document No. 25-1). For each such attempt, provide the date of the attempt, state the means by which such attempt was made, identify all persons contacted by Defendants (or anyone acting on

behalf of any Defendant in any such attempt), state the response or result of the attempt, and identify all documents known to Defendants (including, but not limited to, internal MDOC communications) which are related to each such attempt or otherwise evince each such attempt.

**RESPONSE TO INTERROGATORY NO. 4:** The State objects to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents who attempted to secure a new supply of pentobarbital on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (2) it seeks information that could lead to the identification of individuals or entities that have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being ; (3) it seeks information that is made confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51, as amended by Miss. S.B. 2237; and (4) it seeks information that is protected by the attorney/client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.

Without waiving, and subject to those objections, the State responds as follows: In 2014, a member of the Attorney General's Office ("AG1"), acting on behalf of MDOC, called licensed compounding pharmacies in the State of Mississippi and asked whether they would supply pentobarbital to MDOC for use in executions. The pharmacies stated that they would only be willing to provide pentobarbital to MDOC if their identities remained confidential. AG1 informed the pharmacies that MDOC could not guarantee that their identities would not be disclosed because there was no law in place to prevent the disclosure of their identities. AG1 has no specific recollection of

8

the exact dates and times of these conversations. In June 2015, an employee of MDOC ("MDOC1") contacted four licensed compounding pharmacies located in Mississippi and asked if they would provide pentobarbital to MDOC. None of the pharmacies were able to supply pentobarbital to MDOC. MDOC1 sent an email to Commissioner Fisher and Chief of Staff Pelicia Hall on June 22, 2015, informing them that the pharmacies could not provide MDOC with pentobarbital.

**INTERROGATORY NO. 5**:  Identify any and all communications from 2009 to the present between any Defendant, or anyone acting on behalf of any Defendant, with any employee of, or attorney for, any pharmaceutical company, pharmacy, compounding pharmacy, pharmaceutical distributor, hospital, medical facility, department of corrections in states other than Mississippi, or any other person regarding the purchase of drugs for lethal injection executions.

**RESPONSE TO INTERROGATORY NO. 5:** The State objects to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents responsible for procuring lethal injection drugs on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (2) it seeks information that could lead to the identification of individuals or entities that have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being ; (3) it seeks information that is made confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51, as amended by Miss. S.B. 2237; (4) it seeks information that is not relevant to any claim or defense of any party and not proportional to the needs of the case; (5) it seeks information whose likely benefit is

9

outweighed by the burden or expense of producing said information; (6) it is overly broad in scope and unduly burdensome; and (7) it seeks information that is protected by the attorney/client privilege, and the work product doctrine.

Without waiving, and subject to those objections, the State responds as follows:

(1)     In March 2011, an employee of MDOC ("MDOC 2") contacted two Mississippi pharmacies and obtained price quotes for Nembutal. The pharmacy that quoted the lower price supplied MDOC with Nembutal, as well as Pavulon and Diazepam.

(2)     In June 2011, MDOC2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of Pavulon and Diazepam on behalf of MDOC.

(3)     In August 2011, MDOC2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of Pavulon on behalf of MDOC.

(4)     In February 2012, MDOC2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of potassium chloride, Pavulon, vecuronium bromide, and Valium on behalf of MDOC.

(5)     In May 2012, a member of the Execution Team contacted another Mississippi pharmacy and asked if it would consider supplying MDOC with pentobarbital. The pharmacy indicated that it would be willing to provide pentobarbital to MDOC. AG1 then called the pharmacy about the acquisition of pentobarbital for MDOC. Subsequently, MDOC2 contacted the pharmacy and arranged a purchase of pentobarbital on behalf of MDOC.

(6)     In June 2012, MDOC2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of vecuronium bromide and Valium on behalf of MDOC.

(7)     In May 2013, MDOC2 contacted the pharmacy that supplied MDOC with pentobarbital in 2012 and arranged a purchase of vecuronium bromide and potassium chloride on behalf of MDOC.

(8)     In December 2013 MDOC2 contacted the pharmacy that supplied MDOC with pentobarbital in 2012 and arranged a purchase of vecuronium bromide on behalf of MDOC.

(9)     In 2014, AG1 spoke with the attorney for the pharmacy that supplied MDOC with pentobarbital in 2012. The attorney informed AG1 that the pharmacy was not willing to continue supplying MDOC with lethal injection drugs.

(10)    In July 2014, MDOC2 contacted another Mississippi pharmacy and arranged for a purchase of potassium chloride on behalf of MDOC. MDOC2 also arranged for a separate purchase of vecuronium bromide from a different Mississippi pharmacy in July 2014.

(11)    In July 2015, AG1 contacted a Mississippi pharmacy and asked if it would supply MDOC with Midazolam. The pharmacy provided 290 50mg/10ml units of Midazolam to MDOC.

(12)    In October 2015, MDOC1 contacted the pharmacy that had provided vecuronium bromide to MDOC in July 2014 and asked if it would provide pentobarbital to MDOC for use in executions. The pharmacy called MDOC1 back a week later and stated that it would not be able to accommodate MDOC's request.

(13)    In October and November 2015, and March and April 2016, Commissioner Fisher contacted the Commissioners/Directors of the Departments of Corrections for the following states: Louisiana, Colorado, Ohio, Tennessee, Virginia, South Carolina, Idaho, Texas, and Georgia. Commissioner Fisher asked the officials if their agencies would provide pentobarbital to MDOC. The officials that had a supply of pentobarbital said they would not transfer any pentobarbital to MDOC. Further, none of the officials would identify the pharmacies from which they had obtained pentobarbital or any pharmacy that would be willing to sell pentobarbital to MDOC.

**INTERROGATORY NO. 6:**  Describe the process by which Defendants, or any one of them, determined to use midazolam as the first drug in the execution series set forth in Miss. Code Ann. § 99-19-51, including, but not limited to, the consideration of any studies, reports, memoranda, or analyses related to any comparison of midazolam and the class of drugs known as "ultra short-acting barbiturates."

**RESPONSE TO INTERROGATORY NO. 6:**      The State objects to this Interrogatory to the extent it seeks information protected by the attorney/client privilege, the work product doctrine,

and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. The State further objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome.

Without waiving, and subject to those objections, the State responds as follows: MDOC's decision to adopt midazolam as the first drug in its lethal injection protocol was based on the United States Supreme Court's decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), upholding the constitutionality of Oklahoma's three-drug protocol, which uses midazolam as the first drug.

**INTERROGATORY NO. 7:** Describe the process by which Document No. 38-1 (MDOC Policy/SOP Request Form dated 7-28-2015) and Document No. 38-2 (MDOC's Amended Injection Protocol) came to be drafted, studied, considered, and adopted by Defendants, including, but not limited to, the consideration of any and all potential changes to MDOC's lethal injection procedures or MDOC's lethal injection protocol that might or would be necessitated by the use of midazolam as the first drug in the execution series.

**RESPONSE TO INTERROGATORY NO. 7:** The State objects to this Interrogatory to the extent it seeks information protected by the attorney/client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. The State further objects to this Interrogatory as vague, ambiguous, overly broad, and unduly burdensome.

Without waiving, and subject to those objections, the State responds as follows: MDOC engaged in privileged communications with counsel about amending its lethal injection protocol to authorize the use of a different anesthetic after it became apparent that MDOC would be unable to

12

acquire a new supply of pentobarbital. After consulting with counsel, MDOC decided to amend the

protocol to permit the use of midazolam as the first drug, in light of the Supreme Court's decision in

*Glossip*. MDOC determined that the protocol should require the use of 500 milligrams of

midazolam because that is the amount that Oklahoma uses and the Supreme Court upheld the

constitutionality of Oklahoma's lethal injection protocol. Subsequently, MDOC amended the

protocol by inserting language authorizing the use of midazolam on page 5 of the

protocol.

**INTERROGATORY NO. 8:** Identify all persons involved in the process by which Document No.

38-1 (MDOC Policy/SOP Request Form dated 7-28-2015) and Document No. 38-2 (MDOC's

Amended Injection Protocol) came to be drafted, studied, considered, and adopted by Defendants.

**RESPONSE TO INTERROGATORY NO. 8:** Commissioner Marshall Fisher, MDOC Chief of

Staff Pelicia Hall, Deputy Commissioner Jerry Williams, MDOC attorney Corrie Cockrell, and

Special Assistant Attorney General Jason Davis.

**INTERROGATORY NO. 9**: List the position and/or job description of all members of the MDOC

"execution team" (including, but not limited to, each MDOC employee currently assigned or

anticipated to play any role in performing the tasks set forth in MDOC's lethal injection procedures

or protocols), and for each such position or job description:

     (a)     state the role played by the incumbent of the position;

     (b)     state any qualifications or training required by MDOC for such position; and

     (c)     identify the persons currently assigned to each such position, and describe the

13

qualifications and training possessed by each such person.

**RESPONSE TO INTERROGATORY NO. 9:** The State objects to this Interrogatory for the following reasons: (1) the issue of whether the members of the Execution Team are sufficiently qualified and have received appropriate training to administer lethal injection drugs was resolved in the State's favor by the Fifth Circuit in *Thorson v. Epps*, 701 F.3d 444 (2012); (2) it seeks the disclosure of the identities of the State Executioner, the members of the Execution Team, and MDOC employees involved in assisting with executions and assigned to specific duties related to executions, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (3) it seeks the disclosure of information which could jeopardize institutional security at MSP; (4) it seeks information that is made confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51, as amended by Miss. S.B. 2237; (5) it seeks information that is not relevant to any claim or defense of any party and not proportional to the needs of the case; (6) it seeks information whose likely benefit is outweighed by the burden or expense of producing said information; and (7) it is overly broad in scope and unduly burdensome.

Without waiving, and subject to those objections, the State responds as follows: The lead paramedic on the Execution Team has administered the IV lines and prepared the syringes for the last 16 executions without incident. The assistant paramedic has participated in the last 11 executions. Both paramedics have over twenty years of experience. These two individuals are the same paramedics that the Fifth Circuit described as "highly trained" professionals in *Thorson v. Epps*, 701 F.3d 444 (2012).

**INTERROGATORY NO. 10:** Describe the manner in which execution drugs have been stored by Defendants from 2001 to the present, and identify any documents describing any requirements or protocols for the storage of execution drugs.

**RESPONSE TO INTERROGATORY NO. 10:** The State objects to this Interrogatory for the following reasons: (1) it seeks information that could lead to the disclosure of the identity of a member of the Execution Team and subject that individual to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (2) it seeks the disclosure of information which could jeopardize institutional security at MSP; (3) it seeks information that is made confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51, as amended by Miss. S.B. 2237; (4) it seeks information that is not relevant to a claim or defense of any party and not proportional to the needs of the case; (5) it seeks information whose likely benefit is outweighed by the burden or expense of producing said information; and (6) it is overly broad in scope.

Without waiving, and subject to those objections, the State responds as follows: Prior to June 2014, the lethal injection drugs were stored and maintained in a secure location by a member of the Execution Team. In June 2014, the lethal injection drugs were brought to MSP by a member of the Execution Team and stored in Unit 17. In 2015, the lethal injection drugs were moved to the MSP Medical Facility and are now stored in the locked drug room located inside of the secured Pharmacy. Additionally, the drugs are locked in a drug box inside of the drug room, the door to which is locked at all times. The MSP personnel who work in the Pharmacy do not have access to the locked drug room or the locked drug box. There are a special set of keys needed to open the drug

room and the drug box. Besides Superintendent Lee, only two employees at MSP have access to these keys. The lethal injection drugs are inventoried monthly. The drug inventory logs that will be produced are the only MDOC documents that relate to the storage of the lethal injection drugs.

**INTERROGATORY NO. 11**: Describe the process by which Defendants currently plan, or planned in the past, to have API for any drug (including, but not limited to, pentobarbital) compounded for use in lethal injection executions in Mississippi, including, but not limited to, the identity of all persons assigned, contracted with, or contemplated by Defendants to perform the compounding.

**RESPONSE TO INTERROGATORY NO. 11:** The State objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad in scope, and uses undefined terms. In particular, the terms "API" and "compounded" are undefined. Moreover, the State objects to the use of the term "compounded" to the extent it is meant to include reconstituting a drug or converting a drug into injectable form in accordance with the package insert or directions provided by the drug's manufacturer. The State further objects to this Interrogatory on the grounds that it calls for speculation by asking the State how it intends to "compound" drugs that it may obtain in the future.

Without waiving, and subject to those objections, the State responds as follows: MDOC does not currently have in its possession any "API" or any drugs that would need to be "compounded" before being administered to a condemned inmate. MDOC has been unable to procure a new supply of pentobarbital from a licensed compounding pharmacy. As such, MDOC plans on using Midazolam in future executions, not "compounded" drugs.

**INTERROGATORY NO. 12**: Identify any and all communications from 2009 to the present

between any Defendant, or any employee of, or attorney for, MDOC, with any employee of, or

attorney for, the corrections department or attorney general's office of any other jurisdiction related

to the selection, purchase, or exchange of drugs for purposes of lethal injection executions.

**RESPONSE TO INTERROGATORY NO. 12:** The State objects to this Interrogatory to the

extent it seeks information protected by the attorney/client privilege, the work product doctrine,

and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal

theories of defense counsel and MDOC's attorneys. The State further objects to this Interrogatory as

overly broad in scope and unduly burdensome.

Without waiving, and subject to those objections, the State responds as follows: Please see

the Response to Interrogatory No. 5.


**INTERROGATORY NO. 13**: With respect to the equipment and materials discussed in MDOC's

Lethal Injection Protocols or Procedures, identify any and all purchases of said equipment and

materials by MDOC from 2001 to the present, and describe how such equipment and materials is

stored, maintained, checked, and/or inspected before use.

**RESPONSE TO INTERROGATORY NO. 13:**    The State objects to this Interrogatory for the

following reasons: (1) it seeks information that could lead to the disclosure of the identities of

members of the Execution Team and the MDOC employees responsible for providing the equipment

and materials needed to carry out executions to the Execution Team and subject those individuals to

annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering

their safety and/or well being; (2) it seeks the disclosure of information which could jeopardize

institutional security at MSP; (3) it seeks information that is made confidential and protected from

disclosure by Miss. Code. Ann. § 99-19-51, as amended by Miss. S.B. 2237; and (4) it seeks information that is not relevant to a claim or defense of any party and not proportional to the needs of the case; and (5) it is overly broad in scope and unduly burdensome.

Without waiving, and subject to those objections, the State responds as follows: MDOC does not purchase equipment and materials specifically for use in executions. All of the equipment and materials needed for an execution are obtained from the Pharmacy at MSP prior to a scheduled execution and provided to the lead paramedic on the Execution Team for inspection. Moreover, the members of the Execution Team conduct an equipment check and inventory of all materials necessary to carry out the execution at least 24 hours before the execution. Because MDOC does not account for the equipment and materials needed for executions separately from identical equipment and materials used by the MSP Pharmacy, it is impossible to specifically identify purchases of equipment and materials for use in executions.

**INTERROGATORY NO. 14:** Identify all persons known to you who allege to have been threatened, harassed, or otherwise harmed as a result of their current, past, or potential involvement with executions in Mississippi, identify all documents which relate to or refer to any such allegation, and describe the result of any investigation into any such allegations.

**RESPONSE TO INTERROGATORY NO. 14:** The State objects to this Interrogatory on the grounds that it seeks information that is not relevant to a claim or defense of any party and not proportional to the needs of the case. Moreover, the State objects to this Interrogatory as vague and ambiguous.

Without waiving, and subject to those objections, the State responds as follows: The

pharmacy that supplied MDOC with pentobarbital in May 2012 and its owners were harmed when they were forced to incur significant legal expenses in order to respond to a document subpoena served on them by Plaintiffs' counsel. Further, they were harmed when the pharmacy was identified as a supplier of lethal injection drugs in court papers and media reports and disparaged as an herbal remedy shop.

**INTERROGATORY NO. 15:** Identify all persons who, on behalf of the Mississippi Department of Corrections or the Mississippi Attorney General's Office, have contacted any member or employee of the Mississippi State Legislature regarding potential legislation related in any way to executions in Mississippi, from 2013 to the present, and identify all documents related to potential legislation regarding executions in Mississippi from 2013 to the present.

**RESPONSE:** The State objects to this Interrogatory on the grounds that it seeks information protected by the attorney/client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. The State further objects to this Interrogatory because it seeks information that is not relevant to a claim or defense of any party and not proportional to the needs of the case; and it is overly broad in scope.

Without waiving, and subject to those objections, the State responds as follows: Commissioner Marshall Fisher, MDOC Chief of Staff Pelicia Hall, and Special Assistant Attorney General Jason Davis provided testimony to various legislative committees regarding proposed legislation related to executions. Additionally, Special Assistant Attorney General Blake Bee

contacted members or employees of the Mississippi Legislature regarding proposed legislation related to executions.

**INTERROGATORY NO. 16:** Identify all persons known to you who, on behalf of the Mississippi Department of Corrections or the Mississippi Attorney General's Office, communicated with any member or employee of the Mississippi State Legislature with respect to the 1994 and 1998 amendments to Miss. Code Ann. § 99-19-51 (Laws, 1994, ch. 479, § 1; Laws, 1998, ch. 404, § 1), and identify all documents related to the 1994 and 1998 amendments.

**RESPONSE TO INTERROGATORY NO. 16:** The State objects to this Interrogatory because it seeks information that is not relevant to a claim or defense of any party and not proportional to the needs of the case; and it is overly broad in scope and unduly burdensome.

Without waiving, and subject to those objections, the State responds as follows: The State is unable to identify any individual who communicated with members or employees of the Mississippi Legislature on behalf of MDOC or the Attorney General's Office regarding the 1994 and 1998 amendments to Miss. Code Ann. § 99-19-51. Further, the State is unable to identify any documents related to the 1994 and 1998 amendments of Miss. Code Ann. § 99-19-51.

**INTERROGATORY NO. 17:** State the contents of all drug labels and package inserts for the 290 units of midazolam obtained by MDOC in 2015, as well as all drug labels and package inserts for any other drugs (contemplated for use or intended for use in lethal injection) in the possession of MDOC.

**RESPONSE TO INTERROGATORY NO. 17:**  The State objects to this Interrogatory for the

20

following reasons: (1) it seeks information that could lead to the identification of the pharmacy that supplied Midazolam to MDOC and subject the pharmacy, its owner(s), and its employees to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (2) it seeks information that is made confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51, as amended by Miss. S.B. 2237; (3) it seeks the disclosure of information that could adversely affect the State's ability to obtain drugs for use in executions; and (4) it seeks information that is not relevant to a claim or defense of any party and not proportional to the needs of the case.

Without waiving, and subject to those objections, the State responds as follows: MDOC purchased 290 50mg/10ml units of Midazolam in July 2015. The manufacturer of the Midazolam is FDA-approved. The expiration date for the drug is May 2017.

RESPECTFULLY SUBMITTED, this the 3rd day of June, 2016.

**AS TO OBJECTIONS ONLY:**

By:   **JIM HOOD**
      ATTORNEY GENERAL
      STATE OF MISSISSIPPI

By:   /s Wilson Minor
      Jason L. Davis, MSB No. 102157
      Paul E. Barnes, MSB No. 99107
      Wilson Minor, MSB No. 102663
      SPECIAL ASSISTANT ATTORNEYS GENERAL
      ATTORNEYS FOR DEFENDANTS

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-6279
Telefax: (601) 359-2003
wmino@ago.state.ms.us

## ACKNOWLEDGMENT

I, Marshall Fisher, declare under penalty of perjury under the laws of the United States of America that the above and foregoing responses to interrogatories are true and correct as therein stated. Executed on this the 3rd day of June , 2016.

Marshall Fisher
**Marshall Fisher**

## CERTIFICATE OF SERVICE

This is to certify that I, Wilson Minor, Special Assistant Attorney General for the State of

Mississippi, sent a copy of the foregoing document via U.S. Mail upon the following counsel of

record:

James W. Craig
Emily M. Washington
RODERICK AND SOLANGE
MACARTHUR JUSTICE CENTER
4400 South Carrollton Ave.
New Orleans, LA 70119
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org
ATTORNEYS FOR PLAINTIFFS
RICHARD JORDAN AND RICKY CHASE

Stacy Ferraro
STACY FERRARO, ATTORNEY AT LAW
239 N. Lamar Street, Ste. 604
Jackson, MS 39201
lifestoryms@gmail.com
ATTORNEY FOR INTERVENOR
THOMAS EDWIN LODEN, Jr.

James Davis
Law Office of Jim Davis
1904 24th Avenue
Gulfport, MS 39502
JamesLDavisIII@aol.com

Richard F. Klawiter
Matt Klepper
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Nicholas F. Aldrich, Jr.
Schwabe, Williamson & Wyatt, P.C.
1211 SW Fifth Ave., Suite 1900
Portland, Oregon 97204
ATTORNEYS FOR INTERVENOR

ROGER ERIC THORSON

This the 3rd day of June, 2016.

/s Wilson Minor
Wilson Minor
