**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| **RICHARD JORDAN and RICKY CHASE,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **THOMAS EDWIN LODEN, Jr.,** | ) | |
| **ROGER THORSON, and** | ) | |
| **ROBERT SIMON,** | ) | |
| | ) | |
| **Intervenors,** | ) | |
| | ) | |
| ***v.*** | ) | **Civil Action No. 3:15-cv-00295** |
| | ) | |
| **PELICIA HALL, Commissioner,** | ) | |
| **Mississippi Department of Corrections, in** | ) | |
| **her Official Capacity, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY RESPONSE
PURSUANT TO RULE 37**

## I. INTRODUCTION

Mississippi currently proposes to execute Plaintiffs Richard Jordan and Ricky Chase and

Intervenors Thomas Loden, Roger Thorson, and Robert Simon by the serial intravenous injection

of three drugs: (1) either compounded pentobarbital or midazolam, (2) a chemical paralytic agent,

and (3) potassium chloride.[1] In this civil action, Plaintiffs and Intervenors challenge the use of

compounded pentobarbital or midazolam in a three drug protocol and the three drug protocol itself.

---

[1] See Dkt. 38 (Notice of Lethal Injection Protocol Change) and 38-2 (amended protocol).

The controlling precedent requires Plaintiffs to prove that Defendants' protocol poses a "substantial risk of serious harm," and that there is a "known, available alternative" that reduces or eliminates that risk. *Glossip v. Gross*, 135 S. Ct. 2726, 2737-38 (2015). In this case, the First Amended Complaint alleges that the "the use of an FDA-approved, ultra short-acting barbiturate in a single-drug protocol is a feasible and available alternative which would significantly reduce the substantial risk of severe pain presented by Mississippi's current procedure."[2] Plaintiffs further allege that if no FDA-approved, ultra short-acting barbiturate is available, then other "known, available alternatives" to Mississippi's three drug protocol would be a single-drug protocol using, in descending order:

- an FDA-approved short- or intermediate-acting barbiturate;[3]

- an ultra short-acting barbiturate compounded by a duly licensed compounding pharmacy and tested for integrity, purity and potency by a laboratory unaffiliated with the compounding pharmacy industry or by a department of corrections;[4] or

- a short- or intermediate-acting barbiturate compounded by a duly licensed compounding pharmacy and tested for integrity, purity and potency by a laboratory unaffiliated with the compounding pharmacy industry or by a department of corrections.[5]

Defendants contend that Plaintiffs' proposed alternatives are not "available" to MDOC,[6] although the States of Texas, Missouri, and Georgia have all executed prisoners with a single dose of pentobarbital from 2014 to the present.[7] Indeed, 48 of the 64 executions from January 2015 to

---

[2] First Amended Complaint, Dkt. 50, at ¶¶224, 249.
[3] Id. at ¶¶225, 249.
[4] Id. at ¶226, 249.
[5] Id. at ¶227, 249.
[6] Id. at ¶186.
[7] Id. at ¶198-88.

the present have involved a single-drug protocol using pentobarbital, including seven pentobarbital-only executions in 2017.[8]

It is therefore a central issue in this case whether execution by a single dose of pentobarbital or another barbiturate is a "known, available alternative" to Defendants' current method of execution. To prepare to present this issue at trial, Plaintiffs have diligently sought discovery from Defendants regarding their efforts to secure pentobarbital. The obvious question is, what are Texas, Missouri, and Georgia doing to obtain a sufficient supply of pentobarbital to execute 48 prisoners since January 2015, and why can Mississippi not obtain the drug (or any barbiturate) during that same time?

Defendants have stonewalled Plaintiffs' attempts to determine exactly who, what, when, and how MDOC has attempted to secure lethal injection drugs. This obstruction takes three forms: (1) reliance on the provisions of Miss. Code Ann. § 99-19-51(6) and (7) (enacted in 2016) to either heavily redact discoverable documents or refuse to produce them at all; (2) the use of lawyers from the Attorney General's Office in the process of soliciting or completing the purchase of execution drugs on behalf of MDOC, and then claiming the attorney-client privilege with respect to the lawyers' communications and documentation; and (3) violation of this Court's Agreed Supplemental Scheduling Order [Dkt. 107] by failing to disclose the existence of discoverable documents and the identity of persons with discoverable information, so as to prevent Plaintiffs and Intervenors from even litigating their right to the documents.

The troubling nature of the last of these three tactics should not escape the Court's attention. As is demonstrated in the Rule 37 Motion, Defendants failed to comply with this Court's Order

---

[8] See Execution List 2017, Death Penalty Information Center, https://deathpenaltyinfo.org/execution-list-2017 (last reviewed 8/13/17); Execution List 2016, Death Penalty Information Center, https://deathpenaltyinfo.org/execution-list-2016 (last reviewed 8/13/17); Execution List 2015, Death Penalty Information Center, https://deathpenaltyinfo.org/execution-list-2015 (last reviewed 8/13/17).

requiring supplementation of all discovery by March 24, 2017; the failure included thirteen separate email communications between a lawyer acting at the direction of the Commissioner of Corrections and a lethal injection supplier. By the time Defendants responded to Plaintiffs' second set of discovery on June 26, 2017, the existence of a full years' worth of email communications was disclosed for the first time in this litigation. Even then, only the existence was disclosed – the actual emails themselves have yet to be seen by Plaintiffs and their counsel.

The bad faith involved in Defendants' obfuscation is demonstrated by two other sets of facts: first, lawyers from the Attorney General's Office working for MDOC falsely responded to requests from Plaintiffs' counsel under the Mississippi Public Records Act, explicitly stating that there were no written communications in the possession of MDOC with  any lethal injection drug suppliers from March 1, 2016 through April 5, 2017.

Second, counsel for Defendants misrepresented facts known to the Attorney General's Office in two separate status conferences before this Court. On May 31, 2017, counsel told the Court that they did not know whether MDOC had obtained a new supply of execution drugs; in fact, a member of that Office had received emails from a lethal injection drug supplier throughout late April and on May 1 and 12, 2017, while at the same time MDOC received the drugs on May 4 and 12, 2017.

Then, on July 28, 2017, the Court was told that the emails had not been disclosed to Plaintiffs previously because "we had not identified those documents . . . [a]nd once we identified them, we produced them in a timely fashion." In fact, the undisclosed emails were sent or received by a member of the Office of the Attorney General. In that context, the excuse that the emails were unknown to Defendants' current counsel is difficult to accept.

In both civil and criminal cases, Federal law endorses "the fundamental maxim that the public has a right to every man's evidence" and thus "we start with the primary assumption that there is a general duty to give what testimony one is capable of giving . . . ." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996), *quoting United States v. Bryan*, 339 U.S. 323, 331 (1950), quoting 8 J. Wigmore, EVIDENCE §2192, p. 64 (3d ed. 1940). But these Defendants refuse to provide basic discovery necessary to determine the identity of material witnesses and the content of writings which could establish Plaintiffs' claims or refute MDOC's defenses. Thus, Plaintiffs respectfully move this Court for an Order compelling Defendants to disclose information responsive to Plaintiffs' Interrogatories Nos. 18-22 and Request for Production of Documents No. 17, and specifically, to identify every person named by pseudonym in Defendants' answers, and produce every document, in unredacted form, responsive to Request No. 17, including but not limited to the documents currently listed in Defendants' privilege logs as set forth specifically in the Motion.

Plaintiffs also seek sanctions as a result of Defendants' failure to disclose, for over a year, the existence of communications with lethal injection drug suppliers that are a critical part of this Court's adjudication of Claims I and III of the First Amended Complaint. As one such sanction, the Court should grant an extension of the discovery and motions deadlines set forth in this Court's Agreed Supplemental Scheduling Order [Dkt. 107], due to Defendants' failure to timely provide discovery regarding their attempts to secure execution drugs. An extension of discovery and motions deadlines is also required by Plaintiffs' need to take discovery regarding additional methods of execution enacted by the Mississippi Legislature at the request of Defendants' counsel on April 5, 2017.

## II. FACTUAL BACKGROUND

Plaintiffs' *Rule 37 Motion to Compel Discovery Responses and for Sanctions, Including Extension of Discovery and Motion Deadlines* details the manner in which the discovery issues arose, and their relevance to this litigation generally.

On May 25, 2017, Plaintiffs Richard Jordan and Ricky Chase, through counsel, served on Defendants a set of Requests for Admissions, with accompanying interrogatories and requests for production of documents. On June 26, 2017, Defendants, through counsel, provided responses to these discovery requests.

Having reviewed the responses and identified deficits in the production, counsel for Plaintiffs conferred with counsel for Defendants in good faith. Resolution could not be achieved, and Plaintiffs now move this Court pursuant to Fed. R. Civ. P. 37 for an order to compel.

The following sections outline Plaintiffs' specific objections to Defendants' responses and the reasons this Court should compel the responses and documents sought.

## III.  OBJECTIONS TO DISCOVERY RESPONSES

### A. INTERROGATORY NO. 18

#### 1. Plaintiffs' Interrogatory No. 18:

Describe all efforts by MDOC to purchase any of the following, whether in manufactured (FDA-approved) form, compounded from API, or the API itself: pentobarbital, midazolam, any chemical paralytic agent, and/or potassium chloride. Also, identify all persons with discoverable knowledge of these efforts, identify all documents containing discoverable information regarding these efforts, and identify all communications related to those efforts.

#### 2. Defendants' Objections and Answer to Interrogatory No. 18:

Defendants object to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents who have obtained and/or transported and/or attempted to obtain or transport lethal injection drugs on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (2) it seeks information that could lead to the identification of individuals or entities that

have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (3) it seeks information that is confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51; and (4) it seeks information that is protected by the attorney/client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.

Without waiving, and subject to those objections, Defendants respond as follows: Since June 2016, AG 1, acting on behalf of MDOC and at the direction of the Commissioner of MDOC, contacted Supplier 1 and inquired if it could obtain and would supply any of the referenced drugs to the State for use in executions. Supplier 1 obtained and then supplied MDOC with 80 units of midazolam, 6 units of vecuronium bromide, and 20 units of rocuronium bromide. An employee of MDOC ("MDOC3") picked up the drugs from Supplier 1 and transported the drugs to MSP. Supplier 1 notified AG 1 that Supplier 1 could not obtain potassium chloride at a concentration suitable for use in executions. Thereafter, AG 1, acting on behalf of MDOC and at the direction of the Commissioner of MDOC, requested that a member of the Execution Team ("SE 1") obtain potassium chloride from a supplier. SE 1 subsequently obtained 17 units of potassium chloride from Supplier 2. MDOC3 picked up the drug from Supplier 2 and transported the drug to MSP. The only documents in the possession, control, or custody of Defendants reflecting these efforts to obtain lethal injection drugs since June 2016 are emails between AG 1 and Supplier 1 and MDOC's drug inventory logs. Defendants are producing redacted copies of drug inventory logs covering the time period from January 7, 2016 through June 5, 2017. Defendants are withholding the emails because they would disclose the identity of Supplier 1 in violation of Miss. Code Ann. § 99-19-51, and could subject Supplier 1, the owner(s) of Supplier 1, and Supplier 1's employees to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being. See Defendants' Second Supplemental Privilege Log, which is being produced.

### 3. Defendants' Second Supplemental Privilege Log

The Second Supplemental Privilege Log referenced by Answer to Interrogatory No. 18

lists 35 documents which are being withheld or redacted on grounds of "Institutional

Security/Section 99-19-51." That objection is defined in the Log as follows:

> For reasons of institutional security, including the safety and/or well-being of MDOC employees and/or agents responsible for the procurement, transportation, storage, inventory and control of stocks of lethal injection drugs, the persons or entities supplying lethal injection drugs to MDOC; as well as the State Executioner and members of the Execution Team; the names of all such persons or entities, the lot numbers of the specific drugs included in the inventory, and any other information which might identify a specific individual or entity has been redacted.

Disclosure of the unredacted information could subject the affected individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation including potentially endangering the safety and/or well-being of such persons or entities, and/or impacting institutional security at MDOC facilities, and/or impacting the ability of the State to obtain drugs necessary for carrying out executions. Further, the identities of these individuals or entities are protected from disclosure by Miss. Code Ann. § 99-19-51. In this privilege log, for purposes of conserving space, hereinafter these grounds for protection/privilege shall simply be referred to by the phrases "Institutional. Security" and "Section 99-19-51."

On the basis of this objection, Defendants have withheld, in their entirety, the following emails, MDOC # 1246-1263:[9]

7/6/16:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

7/11/16:    AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs. (with attachment)"

7/11/16:    Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

7/11/16:    AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

7/11/16:    Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

7/11/16:    AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

7/28/16:    AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

8/1/16:     Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

8/1/16:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

8/8/16:     Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

11/29/16:   AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

1/31/17:    AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."[10]

---

[9] The emails are disclosed and described in Exhibit 23, Defendants' Second Supplemental Privilege Log, at 4-7.

[10] Note that each of these first **twelve** emails were documents responsive to attorney Emily Washington's January 3, 2017 public records request to MDOC. Exhibit 8. But even after a follow-up request, the existence of any such documents was denied by MDOC counsel Baughn. Exhibits 14-16. While this Court does not sit to resolve disputes under Mississippi's Public Records Act, MDOC's denial of any written contacts with lethal injection drug suppliers to counsel for Plaintiffs in this action is indicative of Defendants' bad faith in this case. Furthermore, while counsel for Defendants stated at the status hearing before this Court on July 27, 2017, that these records were not in the possession of MDOC, Defendants' interrogatories assert otherwise: "The only documents in the possession, control, or custody of Defendants reflecting these efforts to obtain lethal injection drugs since June 2016 are emails between AG1 and Supplier 1 and MDOC's drug inventory logs." Defendants' Responses and Objections to Plaintiffs' Second Set of Interrogatories at 6, attached as Exhibit 21. The named Defendants in this case are all employees of MDOC, the agency to whom the public record request was directed.

2/21/17:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."[11]

4/17/17:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

4/24/17:     Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

4/25/17:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

4/26/17:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

4/27/17:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

5/1/17:      AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

5/11/17:     Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

5/12/17:     AG 1 sends email to Supplier 1 "re: status of efforts to obtain drugs."

5/12/17:     Supplier 1 sends email to AG 1 "re: status of efforts to obtain drugs."

On this same objection, Defendants have redacted MDOC #1094-1106, documents stated by Defendants to be responsive to Interrogatory No. 18 and Request for Production No. 17.

### 4.  Reasons for Compelling Further Response to Interrogatory No. 18

#### a.  *Defendants' Assertion of a Privilege for "Institutional Security"*

In their objections, Defendants rely heavily on the May 2016 amendments to Miss. Code Ann. § 99-19-51, the state method of execution statute which was amended in May of 2016[12] to provide for certain secrecy provisions related to lethal injection executions. The secrecy provisions, now codified as Miss. Code Ann. § 99-19-51(6) and (7), are as follows:

> (6)(a) The Commissioner of Corrections shall select an execution team to assist the executioner and his deputies. This team, including the State Executioner and his deputies who are responsible for the administration of lethal chemicals, shall consist of those persons, such as medical personnel, who provide direct support for the administration of lethal chemicals. This team shall also include those individuals involved in assisting in the execution in any capacity, as well as those personnel assigned to specific duties related to an execution.

---

[11] Note that each of these first **thirteen** emails were documents responsive to Plaintiffs' June 2016 Interrogatories 5 and 12 and Request for Production of Documents 2, 3, and 8. Defendants' failure to supplement their discovery responses by March 24, 2017 to identify these communications is a violation of this Court's March 1, 2017 Agreed Supplemental Scheduling Order [Doc. 107].

[12] SB 2237, 2016 Legislative Session. See http://billstatus.ls.state.ms.us/2016/pdf/history/SB/SB2237.xml (last checked July 24, 2017).

(b) For the purposes of this section, "supplier of lethal injection chemicals" means a supplier or suppliers of lethal injection chemicals located within the State of Mississippi.

(c) The identities of all members of the execution team, a supplier of lethal injection chemicals, and the identities of those witnesses listed in Section 99-19-55(2) who attend as members of the victim's or the condemned person's immediate family shall at all times remain confidential, and the information is exempt from disclosure under the provisions of the Mississippi Public Records Act of 1983.

(7) Notwithstanding any provision of law to the contrary, any portion of any record of any kind that could identify a person as being a current or former member of an execution team or a current or former supplier of lethal injection chemicals, or those witnesses listed in Section 99-19-55(2) who attend as members of the victim's or the condemned person's immediate family, shall at all times be confidential, exempt, and protected from disclosure, but the remainder of the record shall not be protected unless otherwise provided by law. A court shall preserve the secrecy of all confidential and exempt information described in this section by reasonable means, which may include granting protective orders, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose such information without prior court approval.

### b. *The identities of "AG1" and "MDOC3" are not protected from disclosure.*

In their response to Interrogatory No. 18, Defendants use the terms "AG1" and "MDOC3" to refer to two individuals who, on behalf of MDOC, solicited and contracted for the purchase of lethal injection drugs, and then obtained and transported those drugs. Similarly, in the documents identified in the Second Supplemental Privilege Log, the identities of several MDOC employees are redacted. Because one of the central issues in this case is whether the alternative execution protocol suggested by Plaintiffs (which is to a significant respect being employed currently in Missouri, Texas, and Georgia) is "available" to Mississippi, the efforts of "AG1" and "MDOC3" and the work of the various "unidentified supply clerk/administrators" are highly probative to Plaintiffs' case.

Defendants rely on Miss. Code Ann. § 99-19-51(6) and (7) to justify non-disclosure of the specific identities of these individuals. This raises three critical issues: first, whether Section 99-19-51(6) and (7) is an enforceable privilege in a Federal civil rights case; second, if the statute applies, whether "AG1" and "MDOC3" are properly members of the "execution team;" and third, again only if the statute applies, whether these identities can be disclosed subject to a protective order narrowly designed to meet the terms of Section 99-19-51(7).

1) **Plaintiffs' necessity for securing evidence known by the individuals designated as AG1, MDOC3, and "unidentified MDOC supply clerk/administrator."**

In *Glossip v. Gross*, 135 S.Ct. 2726, 2738 (2015), the Supreme Court made clear that death-sentenced prisoners challenging their jurisdiction's method of execution in a Section 1983 civil action have a "burden of establishing that any risk of harm [is] substantial when compared to a known and available alternative method of execution." Plaintiffs have pled that use of a barbiturate in a single-drug protocol eliminates the risks associated with a three-drug protocol using midazolam. See First Amended Complaint at ¶¶247-50.

Defendants have denied these allegations. MDOC contends that Plaintiffs' proposed alternative is not "available" under *Glossip*, asserting that it cannot obtain a supply of any barbiturate for use in executions. For example, in his declaration,[13] Commissioner Fisher testified that "MDOC has made numerous attempts to secure a new supply of pentobarbital from multiple sources. To date, all of MDOC's efforts to obtain a new supply of pentobarbital have been wholly unsuccessful."[14] Further Commissioner Fisher declared: "MDOC has been unable to obtain a new supply of pentobarbital, in any form whatsoever, for use in executions, and MDOC does not

---

[13] Declaration of Marshall Fisher, Dkt. 25-1 at 2-4.
[14] Id. at ¶8.

anticipate being able to obtain a new supply of pentobarbital, in any form whatsoever."[15] "Because of the unavailability of sodium thiopental and pentobarbital, . . . MDOC's current lethal injection execution protocol must be amended to allow for the substitution of other drugs which will satisfy the requirement in Miss. Code Ann. § 99-19-51 . . . ."[16]

Defendants' answer to Interrogatory 18 indicates that, since June 2016, two persons were used by MDOC to attempt to secure execution drugs: AG 1 and MDOC 3. Both of these individuals have highly relevant information regarding the quality and substance of the attempts made by Defendants to purchase pentobarbital or any other barbiturate. Plaintiffs are entitled to depose both of these individuals to show to the Court, at the trial of this case, that with appropriate, diligent efforts Mississippi could obtain pentobarbital and employ it in a single-drug protocol as Missouri, Georgia, and Texas have done,. That is one of the central issues in this case. Likewise, the unnamed administrators or supply clerks who document the drugs are persons who Plaintiffs have a right to depose, in order to determine MDOC's methods of transportation and storage of execution drugs.

### 2) Section 99-19-51(6) is not enforceable as an absolute privilege in a Federal civil rights case.

Defendants assert that Miss. Code Ann. § 99-19-51(6) constitutes a privilege which erects a barrier against the identification of AG1, MDOC3, and the MDOC employees whose names are redacted in the documents produced by MDOC. But it is far from given that this statute is enforceable as a privilege in a case brought under this Court's Federal question jurisdiction.

Fed.R.Evid. 501 provides, in pertinent part, that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." But where the lawsuit involves a violation of Federal law, as Plaintiffs' does, "common law--as interpreted by United States courts

---

[15] Id. at ¶ 9.
[16] Id. at ¶ 10.

in the light of reason and experience--governs a claim of privilege." *Id.*; *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992).

Federal law, as declared by the Supreme Court, frowns on the creation of new privileges. As the Supreme Court has recognized, the common law position is simple: "'For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. . . [It] start[s] with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'" *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (*quoting United States v. Bryan*, 339 U.S. 323, 331 (1950)).

The Supreme Court has accordingly instructed that new privileges should neither be "lightly created nor expansively construed." *United States v. Nixon*, 418 U.S. 683 (1974). Citing Nixon, the Fifth Circuit directs that "where there is no compelling justification for a new privilege, the vital truth-seeking function of our justice system must carry the day." *In re Dinnan*, 661 F.2d 426, 430 (5th Cir. 1981). Such privileges "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* at 429-30.

It would be particularly troublesome to allow a state secrecy statute to frustrate discovery in a Federal civil rights case. *See Dominguez-Silva v. Harvey*, Civil Action No. 3:04-CV-135-JTC, 2006 WL 826091, at *1 (N.D. Ga. Mar. 23, 2006) (holding that the federal law of privilege governs where plaintiff brings a claim under § 1983). As another district court has persuasively noted:

> [I]n a civil rights case brought under federal statutes, questions of privilege are resolved by federal law. State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases. It obviously would make no sense to permit state law to determine what evidence is discoverable

> in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987).

Miss. Code Ann. § -19-51(6) and (7) is a recent creature of state law, and it has no analogue either in federal statutory law or federal common law. Federal courts are generally "hostil[e]" to recognizing new federal evidentiary privileges. *See In re Int'l Horizons, Inc.*, 689 F.2d 996, 1003-04 (11th Cir. 1982) ("Rule 501 clearly provides federal courts with the statutory power to recognize new or 'novel' evidentiary privileges. However, 'there has been a notable hostility on the part of the (federal) judiciary to . . . new privileges.'" (*quoting In re Dinnan*, 661 F.2d 426, 430 (5th Cir. 1981)).

Plaintiffs' position is similar to that of the Petitioner in *Herbert v. Lando*, 441 U.S. 153 (1979). Herbert was a public figure who brought a defamation action against CBS, the Atlantic Monthly, and individual journalists and publishers for allegedly depicting him as a liar covering up his deficient performance as a commanding officer in Vietnam. Recognizing that he was required to prove actual malice under the standard of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), Herbert deposed publisher Lando and sought an order to compel answers to questions that, in Lando's view, violated the First Amendment by inquiring into his editorial decisions and communications. The district court ruled that Herbert's questions were of central importance to the issue of malice, and denied Lando's motion to quash. *Herbert*, 441 U.S. at 157-58. The Court of Appeals reversed the district court and entered a protective order barring the discovery. *Id.* at 158.

14

The Supreme Court reversed. Central to the Court's holding was its recognition that constitutional law could not require the heavy burden of proof in libel cases in *New York Times v. Sullivan* without providing a means for a defamation plaintiff to secure evidence, through discovery, to meet that burden:

> In the first place, it is plain enough that the suggested privilege for the editorial process would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice as required by New York Times. . . . To erect an impenetrable barrier to the plaintiff's use of such evidence on his side of the case is a matter of some substance . . . .
> *Herbert*, 441 U.S. at 170.

The same is true here. *Glossip* requires Plaintiffs to demonstrate that their proposed alternative to MDOC's execution protocol is "known and available." As in *Herbert*, "the suggested privilege for [the purchase of lethal injection drugs] would constitute a substantial interference with the ability of a [method-of-execution] plaintiff to establish the [availability of their alternative execution method] as required by [*Glossip*]." It would "erect an impenetrable barrier" to Plaintiffs' ability to secure evidence to make out a claim under *Glossip*.

### 3) The identities of AG1 and MDOC 3, the unidentified MDOC administrator(s) and unidentified MDOC supply clerks are not protected from disclosure by Miss. Code Ann. Section 99-19-51(6) and (7).

Even should this Court find Miss. Code Ann. § 99-19-51 to be applicable, that statute only protects the disclosure of the identities of (a) members of the execution team designated by the Commissioner of Corrections, (b) a supplier or suppliers of lethal injection chemicals located within the State of Mississippi, and (c) family member witnesses at executions.

Neither AG1 nor MDOC3 are members of the execution team designated by the Commissioner. Nor are the "unidentified MDOC administrators" or "unidentified MDOC supply clerks" referenced in the Second Supplemental Privilege Log. From at least 2002 to the present

day, the Commissioner of Corrections, through the execution protocol, has designated the members of the execution team as including:

> The execution team will consist of an Executioner, two Deputy Executioners, a Recorder, and a six-man escort/restraining team. Execution team members will report to the Executioner.[17]

This definition was re-adopted on July 28, 2015, after this suit was filed. Under the statute, on the express terms of the MDOC Capital Punishment Procedures approved by the Commissioner, no protection from disclosure is given to the individuals whose identities are currently concealed.

### 4)  The identity of "suppliers of lethal injection chemicals" are only protected if the supplier is located in Mississippi.

The statute similarly limits the definition of "supplier of lethal injection chemicals" as "a supplier or suppliers of lethal injection chemicals located within the State of Mississippi." Thus while the statute provides for the confidentiality of "a supplier of lethal injection chemicals," this provision does not extend to manufacturers or suppliers located outside the state. To the extent Defendants' rely on Miss. Code Ann. § 99-19-51(6) and (7) to withhold the identities of "Supplier 1" and Supplier 2," Plaintiffs request an in camera inspection of any record or document which provides for the identity of and location of these suppliers, such that the Court may determine if they are located within the State. To the extent "Supplier 1" and "Supplier 2" are individuals or entities located outside the State of Mississippi, there is no basis for Defendants' reliance on Miss. Code Ann. § 99-19-51 to prevent disclosure.

---

[17] See Exhibits 22-26.

Moreover, the actual drugs at issue – pentobarbital, midazolam, paralytic agents, and potassium chloride – are not manufactured in Mississippi. Thus, some supplier in the chain of sellers of execution drugs to MDOC must be outside the State of Mississippi.

**5) The statute does not allow an entire document to be withheld if protected information can be redacted.**

The statute makes clear that only the language naming the protected person or supplier is shielded from disclosure:

> [A]ny portion of any record of any kind that could identify a person as being a current or former member of an execution team or a current or former supplier of lethal injection chemicals, or those witnesses listed in Section 99-19-55(2) who attend as members of the victim's or the condemned person's immediate family, shall at all times be confidential, exempt, and protected from disclosure, **but the remainder of the record shall not be protected unless otherwise provided by law**.[18]

Defendants have withheld, in their entirety, the emails listed on pages 4-7 of the Second Supplemental Privilege Log, designated as MDOC # 1246-63. Miss. Code Ann. § 99-19-51(7) specifically states that "the remainder of the record (that is, everything but the protected identity) shall not be protected." Thus, even if the Court finds that the secrecy statute is applicable in this Federal action, Defendants were obligated to produce redacted copies of the emails. They have not done so.

**6) The statute favors disclosure of protected information under a protective order.**

If, contrary to Plaintiffs' primary argument, this Court holds that Section 99-19-51(6) and (7) are applicable in this case, and even if this Court finds that certain identities are protected by that statute, the information in its entirety should be produced to Plaintiffs and Intervenors, but under a protective order:

---

[18] Miss. Code Ann. § 99-19-51(7) (emphasis added).

A court shall preserve the secrecy of all confidential and exempt information described in this section by reasonable means, which may include granting protective orders, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose such information without prior court approval.[19]

If the statute is applicable, Plaintiffs are agreeable to entry of a protective order narrowly drawn to meet the terms of this statutory language.

**B.  INTERROGATORY NO. 22**

**1.  Plaintiffs' Interrogatory No. 22:**

Describe all efforts by MDOC to develop or implement a protocol for executions by firing squad and all efforts to purchase equipment or supplies for use in executions by firing squad. Also, identify all persons with discoverable knowledge of these efforts; identify protocols or plans for the execution of offenders by means of the firing squad currently under review or promulgated by the MDOC; and identify all communications related to those efforts.

**2.  Defendants' Objection and Answer to Interrogatory No. 22:**

Defendants object to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents who have purchased or attempted to purchase equipment or supplies for use in executions, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (2) it seeks information that could lead to the identification of individuals or entities that have provided equipment or supplies to MDOC for use in executions and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (3) it seeks information that is confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51; and (4) it seeks information that is protected by the attorney/client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.

Without waiving, and subject to those objections, Defendants respond as follows: None to date, except that MDOC has begun reviewing protocols and procedures implemented by at least one other state which authorizes the use of the firing squad as a method of execution.  See partially redacted copy of the Utah Technical Manual for executions, including by firing squad, which is being produced.

---

[19] Miss. Code Ann. §99-19-51(7).

### 3. Plaintiffs' Objection to Defendants' Answer to Interrogatory No. 22

In response to Interrogatory No. 22, regarding the Department's development or implementation of a protocol for executions by firing squad, Defendants did not identify all (or any) persons with discoverable knowledge of these efforts, as required by the interrogatory.

For example, Defendants indicate that they have "begun reviewing protocol and procedures implemented by at least one other state which authorizes the use of the firing squad as a method of execution," and provided a partially redacted copy of the Utah Department of Corrections' technical manual for executions. This response does not identify who obtained the protocol, who instructed that the protocol be obtained, who has reviewed the protocols and procedures, who has been in contact with Utah's Department of Corrections and who at the Utah DOC was contacted, or any other persons with discoverable knowledge relative to this interrogatory.

Defendants' answer does not provide any legitimate basis for refusing to identify persons knowledgeable about MDOC's efforts to develop a protocol for executions by firing squad. There has been no showing that any persons involved in the development of the protocol, or the purchase of materials related to executions by firing squad, are members of the execution team designated by the Commissioner.

Thus, Plaintiffs request that this Court order Defendants to make a complete answer to Interrogatory 22, identifying all persons with discoverable knowledge of MDOC's attempts to develop a protocol for executions by firing squad, and the purchase of materials for such executions. If the Court deems necessary, Plaintiffs are willing to receive this discovery under the terms of a protective order narrowly tailored to the terms of Miss. Code Ann. § 99-19-51(7).

### C. INTERROGATORIES 20 AND 21

### 1. Plaintiffs' Interrogatories 20 and 21:

**Interrogatory No. 20**: Describe all efforts by MDOC to develop or implement a protocol for executions by nitrogen hypoxia and all efforts to purchase equipment or supplies for use in executions by nitrogen hypoxia. Also, identify all persons with discoverable knowledge of these efforts, identify all documents containing discoverable information regarding these efforts, identify protocols or plans for the execution of offenders by means of nitrogen hypoxia currently under review or promulgated by the MDOC; and identify all communications related to those efforts.

**Interrogatory No. 21**: Describe all efforts by MDOC to develop or implement a protocol for executions by electrocution and all efforts to purchase equipment or supplies for use in executions by electrocution. Also, identify all persons with discoverable knowledge of these efforts, identify all documents containing discoverable information regarding these efforts; identify protocols or plans for the execution of offenders by means of electrocution currently under review or promulgated by the MDOC; and identify all communications related to those efforts.

### 2.   Defendants' Answer and Objection to Interrogatories 20 and 21:

**Response to Interrogatory No. 20:** Defendants object to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents who have purchased or attempted to purchase equipment or supplies for use in executions, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (2) it seeks information that could lead to the identification of individuals or entities that have provided equipment or supplies to MDOC for use in executions and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (3) it seeks information that is confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51; and (4) it seeks information that is protected by the attorney/client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.

Without waiving, and subject to those objections, Defendants respond as follows: None to date.

**Response to Interrogatory No. 21:** Defendants object to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents who have purchased or attempted to purchase equipment or supplies for use in executions, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (2) it seeks information that could lead to the identification of individuals or entities that have provided equipment or supplies to MDOC for use in executions and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; (3) it seeks information that is confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51; and (4) it seeks information that is protected by the attorney/client privilege, the

work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.

Without waiving, and subject to those objections, Defendants respond as follows: None to date.

### 3. Plaintiffs' Objections to Defendants' Answers to Interrogatories 20 and 21

This Court can make short work of Defendants' objections, for nothing in Section 99-19-51(6) and (7) protects the identities of suppliers of materials or information for executions by nitrogen hypoxia or electrocution. That statute only protects members of the execution team as designated by the Commissioner, and suppliers of lethal injection chemicals located in the State of Mississippi. Thus Defendants' objections should be overruled.

And although Defendants have given sworn answers that no work has been done to develop protocols for execution by nitrogen hypoxia or electrocution, in light of Defendants' wholesale failure to discharge their duty to supplement discovery and misrepresentations regarding same, Plaintiffs ask this Court to enter an order stating that Defendants must, within thirty days of obtaining information that is requested by these two interrogatories, supplement their answers to Interrogatories 20 and 21 and the accompanying Request for Production of Documents 17.

### D. REQUEST FOR PRODUCTION OF DOCUMENTS NO. 17

### 1. Plaintiffs' Request for Production of Documents No. 17:

Produce all documents identified in your Answer to Interrogatories 18-22.

### 2. Defendants' Objection and Response to Production of Documents No. 17:

Defendants object to this Request in that it seeks documents that are protected by the attorney-client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.  Defendants further object to this Request on the grounds that: (1) it seeks documents which identify or may be used to identify MDOC employees and/or agents who have obtained and/or transported and/or attempted to obtain or transport lethal injection chugs on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering

their safety and/or well-being; (2) it seeks documents which identify or may be used to identify individuals or entities that have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being; and (3) it seeks info1mation that is confidential and protected from disclosure by Miss. Code. Ann. §99-19-51.

Without waiving, and limited by those objections, please see documents Bates-numbered MDOC001094 through MDOC001245, which are being produced. See also Defendants' Second Supplemental Privilege Log, which is being produced.

### 3. Plaintiffs' Objection to Defendants' Response to Request No. 17

Plaintiffs object to the response provided by Defendants to Request No. 17 on the following grounds:

### a. *Failure to Identify Persons and Entities Based on Section 99-19-51(6) and (7)*

Plaintiffs incorporate their argument with respect to the applicability and scope of Miss. Code Ann. §99-19-51(6) and (7). This Court should order production of unredacted copies of all documents in the following Bates-number ranges: MDOC # 1246-1264.

As stated above, Defendants have not provided any copies whatsoever of the twenty-two emails between AG1 and Supplier 1. Defendants state (in response to Interrogatory No. 18) that they are "withholding the emails because they would disclose the identity of Supplier 1 in violation of Miss. Code Ann. § 99-19-51." As discussed above, even if the statute is applicable, Defendants have no basis for withholding the emails – and their contents – in their entirety. Plaintiffs object to the non-production of all correspondence between AG1 and Supplier 1, as detailed in the Second Supplemental Privilege Log.

If the Court determines that the secrecy provisions of Miss. Code Ann. § 99-19-51(6) and (7) are applicable in this litigation, at a minimum, redactions should be made such that the content of the communications may be provided to Plaintiffs. Moreover, as stated above, if the Court

deems necessary, Plaintiffs are willing to receive completely unredacted emails under the terms of a protective order narrowly tailored to the terms of Miss. Code Ann. §99-19-51(7).

> **b.  *Defendants have not produced all drug inventory logs.***

Defendants have provided some supply inventory forms and a chemical room access log. While Defendants' response to Interrogatory No. 18 indicates that Defendants are "producing redacted copies of drug inventory logs covering the time period from January 7, 2016 through June 5, 2017," the forms and the log provided are for limited dates within this range. Plaintiffs object that the remainder of the documents responsive to this request are missing from Defendants' production.

> **c.  *Defendants have not provided any proof of purchase for the lethal injections drugs which were in MDOC custody as of May 4, 2017.***

From prior productions, Plaintiffs are aware that MDOC maintains other records relative to the purchase of drugs for use in lethal injection executions – which were not provided by Defendants in response to Request for Production of Documents No. 17, including but not limited to invoices, receipts of sale, receiving reports, purchase requisition forms, purchase orders, and payment vouchers. Such records would indicate dates of purchase, dates of receipt of the drugs at the Department, and the payment(s) provided for these purchases. Plaintiffs object that these documents, clearly responsive to this request, are missing from Defendants' production.

> **d.  *Defendants have not produced unredacted drug labels and package inserts.***

Defendants have not provided any drug labels or package inserts for the newly-acquired supplies of midazolam, rocuronium bromide, vecuronium bromide, and potassium chloride. Defendants have also not provided any documentation as to the expiration dates of the newly acquired drugs. As stated above, there are no FDA-approved manufacturers of these drugs located in Mississippi. Therefore, even if Section 99-19-51 applies in a federal civil rights action, that

statute would not authorize the failure to produce these records. Defendants have not produced documents related to the purchase of potassium chloride

Defendants state (in response to Interrogatory No. 18) that potassium chloride was obtained from Supplier 2. However Defendants have provided no documents, nor listed any documents in the privilege log, regarding this transaction. Records of communication with Supplier 2, as well as records of the purchase and transport of potassium chloride from Supplier 2, should be required to be produced.

### E. INTERROGATORIES 5 AND 12

#### 1. Plaintiffs' Interrogatory Nos. 5 and 12

**Interrogatory 5:** Identify any and all communications from 2009 to the present between any Defendant, or anyone acting on behalf of any Defendant, with any employee of, or attorney for, any pharmaceutical company, pharmacy, compounding pharmacy, pharmaceutical distributor, hospital, medical facility, department of corrections in states other than Mississippi, or any other person regarding the purchase of drugs for lethal injection executions.

**Interrogatory 12:** Identify any and all communications from 2009 to the present between any Defendant, or any employee of, or attorney for, MDOC, with any employee of, or attorney for, the corrections department or attorney general's office of any other jurisdiction related to the selection, purchase, or exchange of drugs for purposes of lethal injection executions.

#### 2. Defendants' Answer to Interrogatories 5 and 12

**Pertinent Language in Answer to Interrogatory 5**:

Without waiving, and subject to those objections, the State responds as follows:

(1)     In March 2011, an employee of MDOC ("MDOC 2") contacted two Mississippi pharmacies and obtained price quotes for Nembutal. The pharmacy that quoted the lower price supplied MDOC with Nembutal, as well as Pavulon and Diazepam.

(2)     In June 2011, MDOC 2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of Pavulon and Diazepam on behalf of MDOC.

(3)     In August 2011, MDOC 2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of Pavulon on behalf of MDOC.

(4)     In February 2012, MDOC 2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of potassium chloride, Pavulon, vecuronium bromide, and Valium on behalf of MDOC.

(5)     In May 2012, a member of the Execution Team contacted another Mississippi pharmacy and asked if it would consider supplying MDOC with pentobarbital. The pharmacy indicated that it would be willing to provide pentobarbital to MDOC. AG 1 then called the pharmacy about the acquisition of pentobarbital for MDOC. Subsequently, MDOC 2 contacted the pharmacy and arranged a purchase of pentobarbital on behalf of MDOC.

(6)     In June 2012, MDOC 2 contacted the pharmacy that supplied MDOC with Nembutal in March 2011 and arranged a purchase of vecuronium bromide and Valium on behalf of MDOC.

(7)     In May 2013, MDOC 2 contacted the pharmacy that supplied MDOC with pentobarbital in 2012 and arranged a purchase of vecuronium bromide and potassium chloride on behalf of MDOC.

(8)     In December 2013 MDOC 2 contacted the pharmacy that supplied MDOC with pentobarbital in 2012 and arranged a purchase of vecuronium bromide on behalf of MDOC.

(9)      In 2014, AG 1 spoke with the attorney for the pharmacy that supplied MDOC with pentobarbital in 2012. The attorney informed AG 1 that the pharmacy was not willing to continue supplying MDOC with lethal injection drugs.

(10)    In July 2014, MDOC 2 contacted another Mississippi pharmacy and arranged for a purchase of potassium chloride on behalf of MDOC. MDOC 2 also arranged for a separate purchase of vecuronium bromide from a different Mississippi pharmacy in July 2014.

(11)    In July 2015, AG 1 contacted a Mississippi pharmacy and asked if it would supply MDOC with Midazolam. The pharmacy provided 290 50mg/10 ml units of Midazolam to MDOC.

(12)    In October 2015, MDOC 1 contacted the pharmacy that had provided vecuronium bromide to MDOC in July 2014 and asked if it would provide pentobarbital to MDOC for use in executions.  The pharmacy called MDOC 1 back a week later and stated that it would not be able to accommodate MDOC's request.

(13)    In October and November 2015, and March and April 2016, Commissioner Fisher contacted the Commissioners/Directors of the Departments of Corrections for the

following states: Louisiana, Colorado, Ohio, Tennessee, Virginia, South Carolina, Idaho, Texas, and Georgia. Commissioner Fisher asked the officials if their agencies would provide pentobarbital to MDOC. The officials that had a supply of pentobarbital said they would not transfer any pentobarbital to MDOC. Further, none of the officials would identify the pharmacies from which they had obtained pentobarbital or any pharmacy that would be willing to sell pentobarbital to MDOC.

**Pertinent Language in Answer to Interrogatory No. 12:** Without waiving, and subject to these objections, the State responds as follows: Please see Response to Interrogatory No. 5.

### 3. Plaintiffs' Objections to Defendants' Answers.

#### a. *Failure to Identify Persons and Entities Based on Section 99-19-51(6) and (7)*

Plaintiffs incorporate their argument with respect to the applicability and scope of Miss.

Code Ann. § 99-19-51(6) and (7).

### F. REQUEST FOR PRODUCTION OF DOCUMENTS NOS. 2, 3, AND 8

### 1. Plaintiffs' Request for Production of Documents Nos. 2, 3 and 8

**Request 2**:    Produce all documents identified in your answers to Plaintiffs' First Set of Interrogatories.

**Request 3**:    Produce all documents which you contend support the sworn answers given to Plaintiffs' First Set of Interrogatories.

**Request 8:**    Produce all documents from 2010 to the present, including communications with other persons and/or internal MDOC communications, related to attempts of any kind, whether successful or not, to secure or purchase pentobarbital (either Nembutal or pentobarbital compounded from API) for use in executions by MDOC.

### 2. Defendants Responses to Request for Production of Documents 2, 3 and 8

**Response to Request No. 2**: The State will produce documents responsive to this Request.

**Response to Request No. 3:** The State will produce documents responsive to this Request.

**Response to Request No. 8:** The State objects to this Request in that it seeks documents that are protected by the attorney-client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. The State further objects to this

Request on the grounds that: (1) it seeks documents which identify or may be used to identify MDOC employees and/or agents who have obtained or attempted to obtain pentobarbital on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being;(2) it seek documents which identify or may be used to identify individuals or entities that have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well-being ; (3) it seeks information that is made confidential and protected from disclosure by Miss. Code. Ann.§ 99-19-51, as amended by Miss. S.B. 2237; and (4) it is overly broad in scope and unduly burdensome.  Without waiving, and subject to those objections, the State will produce any relevant, non-privileged documents responsive to this Request with all confidential information redacted.

Defendants also supplied a Revised Supplemental Privilege Log[20] detailing the documents redacted or withheld under a claim of privilege or under the work product doctrine. In this 106 page Supplemental Privilege Log, submitted with the June 3, 2016 production of documents, 180 pages of documents were withheld or redacted on grounds of "Institutional Security/SB 2237." [21]

### 3.  Plaintiffs' Objections to Defendants' Response

#### a.  *Failure to Identify Persons and Entities Based on Section 99-19-51(6) and (7)*

Plaintiffs incorporate their argument with respect to the applicability and scope of Miss. Code Ann. § 99-19-51(6) and (7).

#### b.  *No Communications Between MDOC and Execution Drug Suppliers Were Identified in Defendants' June 2016 Supplemental Privilege Log.*

In Defendants' June 2016 production of documents, no communications between MDOC or its employees, agents, or attorneys and any lethal injection supplier (as referenced in subparts 9-13 of Answer to Interrogatory 5) were produced. Moreover. no communications between MDOC or its employees, agents, or attorneys and any lethal injection supplier (as referenced in subparts

---

[20] Exhibit 6, Defendants' June 9, 2016 Revised First Supplemental Privilege Log.
[21] Exhibit 6 at 2-20 (MDOC # 176-78, 183, 185-343), 70-72 (MDOC # 626-28, 631-35, 640-42), 100-02 (MDOC # 786-90), 104-05 (MDOC # 645).

9-13 of Answer to Interrogatory 5) were referenced as being in existence, but withheld from production pursuant to any claim that the documents were protected from disclosure by any privilege or the work product doctrine. The documents identified in the June 2016 log as being sent from or received by "Unidentified pharmacy" are described as invoices, purchase orders, inventory forms, or reports. No letters, emails, or other forms of communication between MDOC and lethal injection drug suppliers were identified.

The Court should order fully unredacted copies of documents in the following Bates-number ranges: MDOC # 176-78, MDOC # 183, MDOC # 185-343, MDOC # 626-28, MDOC # 631-35, MDOC # 640-42, MDOC # 645, MDOC # 786-90, MDOC # 1094-1106.

### c. *The attorney-client privilege does not protect the communications of a lawyer providing non-legal services as an employee or agent of a State agency.*

In both sets of interrogatory answers, Defendants stated that an individual identified only as "AG1" was involved, at the direction of the Commissioner, in the process of shopping for, and purchasing, execution drugs. The attorney-client privilege protects only communications made with respect to providing legal services for a client; that is, "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

The privilege does not permit a party to use an attorney for non-legal functions, such as locating sellers of products on behalf of a client, and thereafter making a purchase from one or more of the sellers. *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 856 F.3d 356, 364-65 (5th Cir. 2017) (business assistance by a lawyer does not create privileged communication). Nor do facts become privileged simply because the client tells the attorney or the attorney tells the client. *Levingston v. Allis-Chalmers Corp.*, 109 F.R.D. 546, 551 (S.D. Miss. 1985).

Because AG1, the lawyer who assisted MDOC with the purchase of execution drugs, is not identified, it is difficult, in the absence of review of the actual documents, to determine whether Defendants' have withheld documents under attorney-client privilege which are actually the mere reporting about drug purchases by AG1 (or, for that matter, a non-lawyer).

Documents which have been withheld on grounds of attorney-client privilege, but which evince a non-legal discussion of attempts to purchase execution drugs from potential suppliers, are MDOC # 516, 571, 595, 596, 617-18, 626, 631, 640, 654-58, 659, 660, 661, 690-94, 696-97, 702, 706, 719-23, 740-41, 742, 743, 745, 756, 770, 775-767, 786-90.

Indeed, the following documents do not appear to be sent by or to an attorney at all: MDOC # 361, 626, 641-42, 661, 685, 690-94, 702, 706, 719-23, 756, 770, 775-76, 786-89. One prominent example of a document not protected by the privilege is MDOC # 641-42, a document denominated as "notes reflecting attempts to secure pentobarbital from other Departments of Corrections," authored by former Commissioner Fisher and with no recipient.  This document is also withheld under the attorney-client privilege. The privilege does not protect this document – highly probative to this case – from disclosure.

Unless Defendants can satisfy the Court that these documents are communications for the purpose of rendering professional legal service by an attorney to the client, the documents referenced above should be ordered to be produced in unredacted form.

### G.  THE UNKNOWN EXECUTIONERS SHOULD RESPOND TO DISCOVERY.

On May 28, 2015, all Defendants (including the Mississippi State Executioner and the Unknown Executioners) filed an Answer and Defenses to the Complaint [Dkt. 19]; similarly, on October 26, 2015, all Defendants (including the Mississippi State Executioner and the Unknown Executioners) filed an Answer and Defenses to the First Amended Complaint. Dkt. 51. All

Defendants (including the Mississippi State Executioner and the Unknown Executioners) filed a motion to dismiss the original Complaint on June 22, 2015. Dkt. 24. In both answers, Defendants asserted insufficiency of service of process as the Ninth Defense. But no Defendant has filed a motion to be dismissed on that ground.

But the Unknown Executioners have failed totally to respond to discovery. In their Answers to Plaintiffs' Second Set of Interrogatories, Defendants state:

> The State is not responding to Plaintiffs' Second Set of Interrogatories on behalf of any Unknown Executioners, as no such parties have been identified or joined as parties in this proceeding. [22]

Similar language is used in Defendants' responses to Plaintiffs other discovery requests.[23]

Having answered the Complaint and the First Amended Complaint, and having not moved to be dismissed from this case for two and a half years, the Unknown Executioners are likely barred from moving to dismiss on grounds of insufficiency of service of process "by failing to pursue the defense after including it in an answer." *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc*., 104 Fed. Appx. 376, 379-80 (5th Cir. 2004). In that case, the Fifth Circuit cited, with approval a Seventh Circuit case finding waiver after two and a half years of litigation, where the Rule 12 defense was raised only in the defendant's answer, not by a separate motion. *Id*. at 381, *citing Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993).

Whether or not their defense of insufficiency of service of process is waived, the Unknown Executioners are certainly in this case, with counsel, at the present. They should be ordered to respond to Plaintiffs' discovery.

---

[22] Exhibit 16 at 5 ¶14.
[23] Exhibit 17, Defendants' Objections and Responses to Plaintiffs' Second Set of Requests for Production of Documents at 5 ¶14; Exhibit 15, Responses and Objections to Requests for Admission at 5 ¶14.

## IV.    DEFENDANTS' CONDUCT IS SANCTIONABLE.

Fed.R.Civ.P. 37(b) authorizes the Court to grant sanctions for a party's failure to comply with a court order; Rule 37 (c) permits the Court to grant sanctions for the failure of a party to supplement an earlier discovery request. Both provisions apply here.

"A party's failure to supplement an earlier discovery response is sanctionable under Rule 37(c)." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011) (quoting James W. Moore, et al., 6 MOORE'S FEDERAL PRACTICE, Civil § 26.132 (3d ed. 1997)).

The most egregious misconduct in this case is Defendants' utter failure to supplement their discovery responses by March 24, 2017 as required in this Court's March 1, 2017 Order. Dkt. 107. The supplementation deadline was an essential part of the schedule in which discovery is to be completed by September 1, 2017. Plaintiffs did not receive the discovery to which they were entitled until June 26, 2017; and only then, because Plaintiffs served a second set of discovery requests which overlapped the first set. *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988) ("once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by ... failing to examine records within its control"); *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D.Cal. 2006) (holding that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production).

Moreover, this entire line of conduct was evidently taken in bad faith. In January, February and April 2017, MDOC gave false and misleading responses to the Public Records Act requests sent to it by Plaintiffs' counsel. Defendants' counsel told this Court on May 31, 2017, that it was not certain that lethal injection drugs had been received by MDOC, when, in fact, they not only

had been earlier that month, by an attorney for MDOC – "AG1" – was receiving emails from the supplier contemporaneously with the delivery.

This same AG1 corresponded with lethal injection suppliers over twenty times from June 2016 through June 2017, yet this Court was advised by Defendants' counsel (also employed by the Attorney General's Office) that the emails had not been located until their June 2017 production.

Defendants' obstreperous conduct to prevent the discovery of individuals and information relevant to this case includes: (a) the use of "Institutional Security" privilege objections based on a state statute that does not apply in this Federal action, and even if it did, does not protect the information sought; (b) the use of the attorney-client privilege to prevent discovery of documents and information created or received by a lawyer acting in a non-legal role as purchaser of execution drugs for MDOC; and (c) the use of the attorney client privilege to prevent discovery of documents created and exchanged by non-lawyers.

Plaintiff seek simple sanctions from this Court. First, because of Defendants' obstruction of the discovery process, Plaintiffs seek an extension of the discovery deadline, currently set for September 1, 2017. This is a fair request. The question whether a one-drug protocol using pentobarbital or another barbiturate is a "known, available alternative" is one of the two most central issues in this case. Defendants assert that they have attempted to secure pentobarbital but have been unable to do so.

In this context, Plaintiffs were entirely unaware of the correspondence between AG 1 and Supplier 1 until June 26, 2017. They have been precluded from even knowing who might be deposition or trial witnesses in this matter.

Defendants will not be unduly prejudiced by this relief. Indeed, just today, the State of Mississippi, through one of their attorneys in this action, has moved for an extension in state court litigation related to Plaintiff Richard Jordan.  The State has filed a similar request in separate state court litigation related to Intervenor Thomas Loden. Despite the shrill cries of counsel opposite protesting delay in this case, the fact is that the State of Mississippi will not be able to set any execution dates for the near future.

Additionally, because, at the request of the Attorney General, the Mississippi Legislature has radically rewritten the method of execution statute, this Court will be handicapped from adjudicating this case without discovery and litigation of the three additional methods authorized by the new statute.

In addition to an extension of discovery, Plaintiffs seek an award of attorney fees and costs, and an order from this Court warning that the more severe sanctions of Rule 37(b)(2) (A) will be considered if further obstruction of discovery is forthcoming.

## V. RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court grant the following relief in an appropriate Order:

Compelling full and complete answers to Plaintiffs Interrogatories Nos. 5, 12, 18, and 22;

Compelling Defendants to supplement their answers to Plaintiffs Interrogatories Nos. 5, 12, and 18-22 no later than thirty (30) days from the receipt of information or documents responsive to these interrogatories;

Compelling Defendants to make a complete and thorough response to Request for Production of Documents No. 17, with unredacted information and documents;

Compelling Defendants to produce full, unredacted copies of all MDOC documents referenced in this Motion;

Extending discovery in this matter to a date to be determined later by this Court;

Directing Defendants to pay Plaintiffs' reasonable attorney fees and costs in bringing this Motion;

And such other relief and/or sanctions that this Court deems appropriate and necessary in these premises.

Respectfully submitted,

/s/ James W. Craig
James W. Craig, MSB # 7798
Emily M. Washington (pro hac vice)
The Roderick & Solange MacArthur Justice Center
4400 South Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org

Dated: August 14, 2017


## CERTIFICATE OF SERVICE

I hereby certify that I have filed this pleading with the Electronic Case Filing System of the United States District Court for the Southern District of Mississippi, and have thereby served counsel of record for the Defendants and Intervenor in this case.

This, the 14th day of August, 2017.


/s/James W. Craig

34