# EXHIBIT A TO SUBPOENA DUCES TECUM FOR DEPOSITION OF ALABAMA DEPARTMENT OF CORRECTIONS

## I. DEFINITIONS

a. **"Communication" and/or "communications."** This term refers to all means and types of correspondence, including letters, communications, facsimile, electronic mail, and electronic text messages whether in SMS or MMS form.

b. **"The Department"** means the Alabama Department of Corrections.

c. **"Document" and/or "documents."** These terms mean and include any documents or electronically stored information, including but not limited to all communications (as separately defined above), reports, memoranda, writings, statements, invoices, receipts, graphs, charts, data compilations, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, catalogs, manuals, handbooks, drawings, studies, bulletins, announcements, pamphlets, brochures, minutes, notes, diaries or diary entries, calendars, schedules, tapes, sound or video recordings, contracts, agreements, tabulations, and any other written, typewritten, printed, drawn, photographic, and recorded matter not specified above which is in the possession, custody, or control of the Department, its attorneys, agents, representatives, employees, or any other person or entity acting in their interest or on their behalf.

d. **"Lethal Injection Protocol(s)" and/or "Lethal Injection Procedure(s)."** These terms mean any policy or procedure promulgated by the Department to govern the execution of a prisoner. These terms include not only the documents which set forth the identity, dosage, and order of the drugs used in the lethal injection execution, but also documents which set forth the logistical steps taken by the department and its officers, agents, employees, and/or attorneys in the days leading up to an execution.

e. **"Policy or procedure," "policies," and "procedures."** These terms refer to both written or formal rules, as well as practices, customs, policies, and usages that may not have been officially approved, reduced to writing, or otherwise formalized.

f. **"Relating to," and/or "regarding."** These terms shall include the following: referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, or bearing upon.

g. **Singular and Plural Usage.** In this pleading, each singular word shall include its plural and vice versa, and the words "and" and "or" shall be construed disjunctively or conjunctively as necessary to make the request inclusive rather than exclusive.

## II. DOCUMENTS TO BE PRODUCED

1. All documents concerning the circumstances or details of executions in Alabama conducted using midazolam (either purchased in injectable form or API purchased for compounding into injectable form) from January 1, 2010 to present.

2. All documents concerning the circumstances or details of executions in Alabama conducted using pentobarbital from January 1, 2010 to present.

3. All chronological logs or other documents which disclose the timing of the administration of lethal injection drugs in all executions from January 1, 2010 to the present.

4. All documents, whether created contemporaneously with any particular execution or not, which describe or evince the actual process of each of the lethal injection executions from January 1, 2010 to the present.

5. All documents, whether created contemporaneously with any particular execution or not, which constitute, describe or evince any evaluations or other examinations into any problems encountered in any lethal injection executions from January 1, 2010 to the present.

6. Any autopsies, toxicology screens, or other post-mortem tests or examinations of the condemned prisoner after any execution from January 1, 2010 to present.

7. Any document containing a list of persons present from the news media or as counsel to the condemned at the execution from January 1, 2010 to present.

8. All documents, whether created contemporaneously with any particular execution or not, which constitute, describe or evince the possibility of modifying the Department's execution procedures or protocol from January 1, 2010 to present.

9. All documents, whether created contemporaneously with any particular execution or not, which constitute, describe or evince concerns about the use of midazolam or any other drug in executions.

10. All documents from January 1, 2010 to the present related to attempts of any kind, whether successful or not, to secure or purchase midazolam (either in manufactured form or midazolam compounded from API) for use in executions.

11. All documents from January 1, 2010 to the present related to attempts of any kind, whether successful or not, to secure or purchase pentobarbital (either Nembutal or pentobarbital compounded from API) for use in executions.

12. All drug labels and package inserts for any drug purchased or obtained by the Department, from January 1, 2010 to the present, for use in lethal injection executions.

13. All documents setting forth the Department's lethal injection protocols or procedures in force from January 1, 2010 to the present.

14. All documents related to the process, if any, by which the Department determined that a three-drug series including the use of midazolam, a paralytic agent and potassium chloride, would be the method of lethal injection executions, including, but not limited to:

    a. Any studies conducted by or for the Department regarding the use of a three drug series including the use of midazolam, a paralytic agent and potassium chloride, as a method of execution.

    b. Any studies or other information known to the Department, whether conducted by or for the Department itself, regarding the use of a three-drug series including the use of midazolam, a paralytic agent and potassium chloride, as a method of execution.

    c. Any communications, whether written or oral, on paper or transmitted electronically or digitally, between any officer, agent, employee or attorney for the Department and any other person, corporation or other entity regarding the use of a three-drug series including midazolam, the use of a paralytic agent and potassium chloride, as a method of execution.

15. All documents related to the Department's potential use of any drug (including, but not limited to, pentobarbital or midazolam) compounded from API for use in lethal injection executions from January 1, 2010 to the present, including, but not limited to the following:

    a. Any studies, reports, memoranda, or analyses authored by, commissioned by, or received by the Department related to the use of any drug (including, but not limited to, pentobarbital or midazolam) compounded from API for purposes of lethal injection;

    b. Any communications between the Department or any other person (including but not limited to pharmaceutical companies, pharmacies, compounding pharmacies, distributors of pharmaceuticals, hospitals, medical facilities, college or university faculty, or officers, agents, employees, or attorneys for the corrections departments in other states), related to the use of any drug (including, but not limited to, pentobarbital or midazolam) compounded from API in executions by lethal injection;

    c. Any documents (including, but not limited to, communications between or among employees of the Department), related to, regarding, or discussing whether the use of any drug (including, but not limited to, pentobarbital or midazolam)

      compounded from API comports with the Eighth Amendment prohibition against cruel and unusual punishment;

    d. The methods by which the Department stores API for use in compounding any drug (including, but not limited to, pentobarbital or midazolam) prior to its compounding for use in lethal injection executions;

    e. All documents related to the process of compounding of any drug (including, but not limited to, pentobarbital or midazolam) for use in lethal injection executions, including any contracts with persons or entities for the compounding of the API into the injectable form of the drug, any procedures or protocols of the person or entity responsible for compounding the API into the injectable form of the drug, and all test protocols, testing results, or representations of test results provided to the Department by the person or entity responsible for compounding the API into the injectable form of the drug.

    f. Any documents related to or discussing any and all potential changes to the Department's lethal injection procedures or protocol that might or would be necessitated by the use of drugs compounded from API for use in lethal injection executions; and

    g. Any documents related to or discussing any and all potential changes to the identity, training, and qualifications of the personnel assigned to conduct lethal injection executions that might or would be necessitated by the use of pentobarbital or midazolam compounded from API as the first drug in the execution series.

16. All documents related to process, if any, by which the Department determined that midazolam would be used in lethal injection executions. This topic includes, but is not limited to:

    a. Any studies conducted by or for the Department regarding the use of midazolam in lethal injection executions.

    b. Any studies or other information known to the Department, whether conducted by or for the Department itself, regarding the use of midazolam in lethal injection executions.

    c. Any communications, whether written or oral, on paper or transmitted electronically or digitally, between any officer, agent, employee or attorney for the Department and any other person, corporation or other entity regarding the use of midazolam in lethal injection executions.

**17.** From January 1, 2010 to the present, all documents related to and/or evincing any training attended by the Department's officers, employees, agents, or attorneys related to the conduct of executions by lethal injection. This request includes, but is not limited to, the following:

    a. Any documents provided to the Department's officers, employees, agents, or attorneys during or as a result of any such training;
    b. Any syllabi, training description, or schedule of any such training; and
    c. The names and qualifications of the persons who conducted or taught at any such training.

**18.** From January 1, 2010 to the present, all documents related to the supply or inventory of drugs purchased, procured, held or stored, by the Department for use in lethal injection executions, including, but not limited to, all logs or inventory lists maintained by the Department with respect to such drugs.

**19.** All communications from January 1, 2010 to the present between the Department, or any employee of, or attorney for, the Department, with any employee of, or attorney for, the corrections department or attorney general's office of any other jurisdiction, including but not limited to Mississippi or Texas, related to the selection, purchase, or exchange of drugs for purposes of lethal injection executions.