IN THE UNITED DEFENDANTSS DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RICHARD JORDAN and
RICKY CHASE                                                    PLAINTIFFS

VS.                                      CIVIL ACTION NO.: 3:15CV295HTW-LRA

PELICIA D. HALL, Commissioner,
Mississippi Department of Corrections;
MARSHAL TURNER, Superintendent,
Mississippi Defendants Penitentiary; THE
MISSISSIPPI DEFENDANTS EXECUTIONER,
And UNKNOWN EXECUTIONERS                                       DEFENDANTS

ROBERT SIMON; THOMAS EDWIN
LODEN, JR. and ROGER ERIC THORSON                             INTERVENORS

---

## MEMORANDUM OPINION AND ORDER

Filed pursuant to 28 U.S.C. §1331[1], 42 U.S.C. §1983[2], 28 U.S.C. §1367(a)[3], and Article

3, Sections 14[4], 24[5], and 28[6] of the Mississippi Constitution, on April 16, 2015, this death-

---

[1] 28 U.S.C. §1331: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[2] Title 42 U.S.C.A. §1983: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[3] 28 U.S.C. §1367(a): (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

[4] MS Const. Art. 3, § 14: No person shall be deprived of life, liberty, or property except by due process of law.

[5] MS Const. Art. 3, § 24: All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.

[6] MS Const. Art. 3, § 28: Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed.

penalty action centers on Mississippi's execution protocol. When Plaintiffs initially filed this challenge, Mississippi utilized the lethal injection protocol, adopted in March, 2012, calling for the sequential injection of three drugs, the first being "an ultra short-acting barbiturate or other similar drug." Sodium pentothal was originally used as the first drug, until that drug became unavailable. Later, the Defendants resorted to pentobarbital, and eventually to midazolam as the first drug.

This Court, then, permitted the Plaintiffs herein to amend their complaint to attack the use of that drug. Plaintiffs filed their Amended Complaint on September 28, 2015 [Docket No. 50]. The Defendants submitted their answer on October 26, 2015 [Docket No. 51].

Plaintiffs' Amended Complaint, in summarized form, attacked the amendment to Mississippi's protocol, which allows for the use of pentobarbital as the first drug in the three-drug series where sodium pentothal is unavailable. Plaintiffs allege, in their amended complaint,

> "Pentobarbital – even in its FDA-approved form – is not classified as an ultra short-acting barbiturate. Rather it is classified as a short- or intermediate-acting barbiturate. This classification recognizes the slower speed of onset of pentobarbital when compared to an ultra short-acting barbiturate.
> While the Mississippi statute provides for use of an "ultra short-acting barbiturate or other similar drug," pentobarbital is not sufficiently similar to an ultra short-acting barbiturate as to be considered an "other similar drug" within the meaning of a statute. This is true even for FDA-approved pentobarbital, let alone for compounded pentobarbital made from unknown active pharmaceutical ingredients, as MDOC (Mississippi Department of Corrections) intends to now use."

[Docket No. 50, p.48].

Plaintiffs further contend, in summary, that Defendants' "failure to use an ultra short-acting barbiturate as required by Miss. Code Ann. §99-19-51 creates an unacceptable risk of severe pain and serious harm in violation of the Eighth Amendment, and violates Plaintiffs' due process guarantees under the Fourteenth Amendment." [Docket No. 50, p. 49].

For relief, Plaintiffs ask this Court to:

"Grant a declaratory judgment that neither pentobarbital nor midazolam are ultrashort acting barbitures or other similar drugs and are therefore not permitted for lethal injection executions in Mississippi;

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs with any drug which is not an ultra short-acting barbiturate;

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs with either compounded pentobarbital or midazolam, which are neither ultra-short acting barbiturates nor similar to ultra short-acting barbiturates;

Grant a declaratory judgment that the words "in combination with a chemical paralytic agent" in Miss. Code Ann. §99-19-51 violate the Eighth and Fourteenth Amendment to the United States Constitution;

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs with compounded drugs;

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs with a three-drug series which includes a chemical paralytic agent and potassium chloride;

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs until such time as Defendants can demonstrate the integrity, purity, potency, and legality of any and all controlled substances they intend to use for Plaintiffs' executions;

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs without providing full and complete information about the drugs that Defendants intend to use in their execution, within sufficient time for Plaintiffs to raise any statutory or constitutional challenges to the use of said drugs.

Grant preliminary and permanent injunctive relief to enjoin the Defendants, their officers, agents, employees, and all persons acting in concert with them from executing Plaintiffs until such time as Defendants can demonstrate that measures are in place to allow for Plaintiffs' execution in a manner that complies with the Eighth and Fourteenth Amendments to the United States Constitution;

Award costs and attorney's fees pursuant to 42 U.S.C. §1988; and

Grant any such other relief that this Court determines to be just and proper in these premises."

[Docket No. 50, pp. 56-58].

The Plaintiffs herein are Richard Jordan and Ricky Chase, both of whom are presently on

death row at the Mississippi State Penitentiary located in Parchman, Mississippi. The Defendants

are Pelicia D. Hall, Commissioner, Mississippi Department of Corrections; Marshal Turner, Superintendent, Mississippi State Penitentiary; the Mississippi State Executioner; and Unknown Executioners. The Intervenors in this case are Robert Simon[7], Thomas Edwin Loden, Jr.[8], and Roger Eric Thorson[9].

Before this Court for rulings are four motions vital to the progress of this litigation: the Defendants' Motion for Protective Order [Doc. #125]; the Plaintiffs' Motion to Compel and for Sanctions [Doc. #127]; the Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. #129]; and the Plaintiffs' Motion for Amendment to Scheduling Order [Doc. #130].

On November 8, 2017, this Court permitted oral arguments on all of these motions. By scheduling these arguments, the Court granted the Plaintiffs' Motion for Oral Argument [Doc. #150], as was announced at the beginning of the hearing.

Having read the submissions and heard the argument of counsel, this Court is of the opinion, for the following reasons that the Defendants' Motion for Protective Order should be granted. The Plaintiffs' Motion to Compel should be granted in part and denied in part as to compelling production, but denied as to the award of sanctions. The Plaintiffs' Motion for Leave to File Second Amended Complaint should be denied, and the Plaintiffs' Motion for Amendment to Scheduling Order should be granted in part and denied in part.

## I.     BACKDROP

Lethal injection has been the method of execution in Mississippi since the 1984 amendment of Miss. Code Ann. §99-19-51 (1972). This lawsuit was filed in April, 2015. Its

---

[7] Intervenor Robert Simon, Jr. is a prisoner under sentence of death at the Mississippi State Penitentiary at Parchman, Mississippi.
[8] Intervenor Thomas Edwin Loden, Jr. is a United States citizen, currently incarcerated under a sentence of death at the Mississippi State Penitentiary in Parchman, MS.
[9] Intervenor Roger Eric Thorson is a prisoner under sentence of death at the Mississippi State Penitentiary at Parchman, Mississippi.

original basis was the Plaintiffs' attack on Mississippi's then-current lethal injection protocol, adopted in March, 2012. That protocol called for the sequential injection of three drugs, the first being "an ultra short-acting barbiturate or other similar drug." The second drug to be administered, either pavulon or vecuronium bromide, causes paralysis. The third drug is potassium chloride, which causes cardiac arrest.

Originally, the Defendants used sodium pentothal as the first drug; however, that drug ultimately became unavailable to the Defendants. The 2012 amendment permitted the use of pentobarbital; that drug, too, ultimately became unavailable, in injectable form, to the Defendants. Even so, Plaintiffs herein in their original Complaint alleged that pentobarbital was not "an ultra-short-acting barbiturate or similar drug." The Defendants were able to procure pentobarbital in a powder form, but this powder form, said Plaintiffs, could not be reliably compounded into a form for injection. The Defendants later announced that they had changed the execution protocol to provide for the use of midazolam as the first drug. In response, the Plaintiffs sought this Court's permission to, and were granted permission to amend their Complaint to attack the use of that drug.

In spring, 2017, the Mississippi Legislature amended § 99-19-51 to provide that the first drug administered during the lethal injection process would be "an appropriate anesthetic or sedative." The amendment also provided for additional methods of execution. The first method continues to be by lethal injection, as described. If this method is held to be unconstitutional by a court of competent jurisdiction, or is otherwise unavailable, the method of execution is nitrogen hypoxia[10]. If this method is held to be unconstitutional by a court of competent jurisdiction, or is

---

[10] Nitrogen hypoxia during an execution "would be induced by having the condemned prisoner breathe a gas mixture of pure nitrogen." https://www.theatlantic.com/politics/archive/2015/03/can-executions-be-more-humane/388249/

otherwise unavailable, the method of execution is by electrocution. If this method is held to be unconstitutional by a court of competent jurisdiction, or is otherwise unavailable, the method of execution is by firing squad. The statute does not define the circumstances under which a method of execution would be "unavailable."

The amendment further provides that the identities of members of the execution team, the suppliers of lethal injection chemicals, and witnesses to an execution are to remain confidential. This portion of the amendment was an obvious response to the focused concentration of anti-death penalty litigators to destroy any enthusiasm of these persons to participate in any phase of the death penalty procedure.

## II.     Motion to Compel/Motion for Protective Order

The Plaintiffs' Motion to Compel and the Defendants' Motion for Protective Order are two sides of the same coin. Both stem from the Plaintiffs' discovery requests that could identify the parties which supply execution drugs to the Defendants, as well as the identity of the state employees involved in the purchases. The Defendants argue that since this information is protected under Miss. Code Ann. § 99-19-51, good cause exists for the entry of a protective order under Fed. R.Civ. P. 26[11]. The Plaintiffs disagree, contending that the information they

---

[11] Fed. R. Civ. P. 26: (c) Protective Orders. (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(A) forbidding the disclosure or discovery;
(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery;
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
(E) designating the persons who may be present while the discovery is conducted;
(F) requiring that a deposition be sealed and opened only on court order;
(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

seek is not statutorily protected and, additionally, that the Defendants have failed to show they are entitled to a protective order under Rule 26.

In their first set of Interrogatories and Requests for Production, the Plaintiffs asked the Defendants to identify all communications regarding the purchase of lethal injection drugs and produce any documents related to those communications. The Defendants responded with the dates and general content of the communications requested, identifying the participants only by initials and numbers, except where a participant was the Commissioner of the Mississippi Department of Corrections or her corollary in another state. The Defendants also provided redacted copies of purchase orders and other documents related to some of those communications.

The Plaintiffs thereafter served a second set of discovery requests aimed at discovering whether any communications with potential drug suppliers had occurred since those documented earlier. The interrogatory and response are quoted below:

> **INTERROGATORY NO. 18**: Describe all efforts by MDOC to purchase any of the following, whether in manufactured (FDA-approved) form, compounded from API, or the API itself: pentobarbital, midazolam, any chemical paralytic agent, and/or potassium chloride. Also, identify all persons with discoverable knowledge of these efforts, identify all documents containing discoverable information regarding these efforts, and identify all communications related to those efforts.

> **RESPONSE TO INTERROGATORY NO. 18**: Defendants object to this Interrogatory for the following reasons: (1) it seeks the disclosure of the identities of MDOC employees and/or agents who have obtained and/or transported and/or attempted to obtain or transport lethal injection drugs on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (2) it seeks information that could lead to the identification of individuals or entities that have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being ; (3) it seeks information that is confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51; and (4) it seeks information that is protected by the attorney/client

privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys.

Without waiving, and subject to those objections, Defendants respond as follows: Since June 2016, AG1, acting on behalf of MDOC and at the direction of the Commissioner of MDOC, contacted Supplier 1 and inquired if it could obtain and would supply any of the referenced drugs to the State for use in executions. Supplier 1 obtained and then supplied MDOC with 80 units of midazolam, 6 units of vecuronium bromide, and 20 units of rocuronium bromide. An employee of MDOC ("MDOC3") picked up the drugs from Supplier 1 and transported the drugs to MSP. Supplier 1 notified AG1 that Supplier 1 could not obtain potassium chloride at a concentration suitable for use in executions. Thereafter, AG1, acting on behalf of MDOC and at the direction of the Commissioner of MDOC, requested that a member of the Execution Team ("SE1") obtain potassium chloride from a supplier. SE1 subsequently obtained 17 units of potassium chloride from Supplier 2. MDOC3 picked up the drug from Supplier 2 and transported the drug to MSP. The only documents in the possession, control, or custody of Defendants reflecting these efforts to obtain lethal injection drugs since June 2016 are emails between AG1 and Supplier 1 and MDOC's drug inventory logs. Defendants are producing redacted copies of drug inventory logs covering the time period from January 7, 2016 through June 5, 2017. Defendants are withholding the emails because they would disclose the identity of Supplier 1 in violation of Miss. Code Ann. § 99-19-51, and could subject Supplier 1, the owner(s) of Supplier 1, and Supplier 1's employees to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being. See Defendants' Second Supplemental Privilege Log, which is being produced.

[Exh. B, Defs.' Resp. and Obj. to Pls.' Second Set of Interr at 5-6].

Request for Production 17 of Plaintiffs' Second Set of Requests for Production and

MDOC's response read as follows:

**REQUEST NO. 17**: Produce all documents identified in your Answer to Interrogatories 18-22.

**RESPONSE TO REQUEST NO. 17**: Defendants object to this Request in that it seeks documents that are protected by the attorney-client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. Defendants further object to this Request on the grounds that: (1) it seeks documents which identify or may be used to identify MDOC employees and/or agents who have obtained and/or transported and/or

attempted to obtain or transport lethal injection drugs on behalf of MDOC, which could subject those individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being; (2) it seeks documents which identify or may be used to identify individuals or entities that have supplied lethal injection drugs to MDOC and subject those individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or well being ; and (3) it seeks information that is confidential and protected from disclosure by Miss. Code. Ann. § 99-19-51.

[Docket No. 126, pp. 2-4].

Plaintiffs were, predictably, not satisfied with Defendants' responses. Additionally, in their correspondence with Defendants, Plaintiffs' counsel further asserted that, in response to Request 17, MDOC should have produced "any drug labels or package inserts for the newly acquired supplies of midazolam, rocuronium bromide, vecuronium bromide, and potassium chloride." [*Id.* at 2]. Lastly, Plaintiffs' counsel objected to MDOC's refusal to provide them with copies of emails between AG1 and Supplier 1:

Communications with Supplier 1. Defendants state (in response to Interrogatory No. 18) that they are "withholding the emails because they would disclose the identity of Supplier 1 in violation of Miss. Code Ann. § 99-19-51." Plaintiffs dispute the applicability of the secrecy provisions in Miss. Code Ann. § 99-19-51 to discovery in this federal civil rights action. That objection aside, Defendants have no basis for withholding the emails - and their contents - in their entirety. Plaintiffs would ask that all correspondence with Supplier 1, as detailed in the Second Supplemental Privilege Log, be provided. To the extent Defendants seek to rely on the secrecy provisions of Miss. Code Ann. § 99-19-51, redactions should be made such that the content of the communications may be provided to Plaintiffs.

[Docket No. 126, p. 5].

In light of the amendment to the method of execution statute, this Court held a status conference on May 31, 2017. At that hearing, counsel for the Defendants announced that they had been told that the Department of Corrections might have procured the drugs necessary to conduct executions. The Defendants subsequently provided supplemental discovery responses

that revealed that indeed communications had occurred after the initial discovery responses. The Defendants then produced documents pertaining to some requests, but some were redacted. Other documents were withheld, but generally described in a privilege log.

Contending that the non-disclosure was lawful and appropriate, the Defendants justified their actions under an entitlement of "Institutional Security," more fully defined as follows:

> For reasons of institutional security, including the safety and/or well-being of MDOC employees and/or agents responsible for the procurement, transportation, storage, inventory and control of stocks of lethal injection drugs to MDOC; as well as the State Executioner and members of the Execution Team; the names of all such persons or entities, the lot numbers of the specific drugs included in the inventory, and any other information which might identify a specific individual or entity has been redacted. Disclosure of the unredacted information could subject the affected individuals or entities to annoyance, embarrassment, oppression, harassment, retaliation including potentially endangering the safety and/or well-being of such persons or entities, and/or impacting institutional security at MDOC facilities, and/or impacting the ability of the State to obtain drugs necessary for carrying out executions. Further, the identities of these individuals or entities are protected from disclosure by the amendments to Miss. Code Ann. §99-19-51 enacted by Miss. S.B. 2237. In this privilege log, for purposes of conserving space, hereinafter these grounds for protection/privilege shall simply be referred to by the phrases "Institutional Security" and "S.B. 2237."

Mississippi's statute on methods of execution also includes the provision on which the Defendants rely. Specifically, § 99-19-51 states:

> 6)(a) The Commissioner of Corrections shall select an execution team to assist the executioner and his deputies. This team, including the Defendants Executioner and his deputies who are responsible for the administration of lethal chemicals, shall consist of those persons, such as medical personnel, who provide direct support for the administration of lethal chemicals. This team shall also include those individuals involved in assisting in the execution in any capacity, as well as those personnel assigned to specific duties related to an execution.

> (b) For the purposes of this section, "supplier of lethal injection chemicals" means a supplier or suppliers of lethal injection chemicals located within the Defendants of Mississippi.

> (c) The identities of all members of the execution team, a supplier of lethal injection chemicals, and the identities of those witnesses listed in Section 99-19-

55(2) who attend as members of the victim's or the condemned person's immediate family shall at all times remain confidential, and the information is exempt from disclosure under the provisions of the Mississippi Public Records Act of 1983.[1]

(7) Notwithstanding any provision of law to the contrary, any portion of any record of any kind that could identify a person as being a current or former member of an execution team or a current or former supplier of lethal injection chemicals, or those witnesses listed in Section 99-19-55(2) who attend as members of the victim's or the condemned person's immediate family, shall at all times be confidential, exempt, and protected from disclosure, but the remainder of the record shall not be protected unless otherwise provided by law. A court shall preserve the secrecy of all confidential and exempt information described in this section by reasonable means, which may include granting protective orders, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose such information without prior court approval.

In announcing that they had received execution drugs, the Defendants also informed the Court and Plaintiffs' counsel that the supplier of those drugs had insisted that any disclosure of its identity to anyone would result in a future refusal to provide them. The Supplier submitted a Declaration to that effect. [Docket No. 125, Exhibit 1]. That threat is the primary basis for Defendants' refusal to disclose any information that could be traced back to that supplier.

Claiming a need to insure the safety of the employees who had participated in the effort to obtain those drugs, Defendants also refused to identify these persons based on the confidentiality statute cited above. According to the Defendants, the "execution team" referred to in 6(a) must include individuals who assist an execution in any capacity, as well as those assigned to specific duties related to an execution. That group would include employees of the Mississippi Department of Corrections, or the Attorney General's Office who spoke, or attempted to speak, with potential suppliers of lethal injection drugs. The Plaintiffs argue that, even if all of those groups are protected, the statute itself contemplates that a court might allow disclosure, but under the terms of a protective order, or by other means.

The Plaintiffs further contend that this statute, §99-19-51, does not govern the confidentiality issue in federal court. The Defendants counter that they are not relying solely on this statute, but argue that the statute is certainly one evidentiary resource which could bear on the issue of whether a protective order should be entered under Fed.R.Civ.P. 26. By a protective order, the Defendants mean an order precluding discovery on these issues altogether. As an alternative, the Plaintiffs argue that a protective order limiting the scope of disclosure is a viable option.

This Court is persuaded that the Mississippi confidentiality statute is owed some consideration here. *Buford v. Holladay*, 133 F.R.D. 487, 492-93 (S.D. Miss. 1990) ("This Court initially notes that, as in all federal court cases, the discovery process and the privileges that may be asserted during the course of discovery are governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. [Cites omitted.] This does not mean, however, that state privilege rules should be ignored."); *Coughlin v. Lee*, 946 F.2d 1152, 1159-60 (5th Cir. 1991) (considering Louisiana law on confidentiality, but recognizing that federal law controls).

The most persuasive authority here, however, is Fed. R. Civ. P. 26(c). That guiding Rule provides that a court may issue a protective order precluding or limiting discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." In analyzing a request for a protective order, the court "'must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party.'" *Cazorla v. Koch Foods*, 838 F.3d 540, 555 (5th Cir. 2016) (quoting 6 James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 26.101[1][c] (3d ed. 2011). The court should also "weigh relevant public interests in this analysis." *Cazorla*, 838 F.3d at 555. The burden is on the Defendants to prove their entitlement to a protective order, although

there is some authority that the burden is lessened when the information sought is particularly sensitive. *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (citing *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985) (holding that party seeking tax returns must show relevance and compelling need).

Here, the Plaintiffs argue that they need information on the Defendants' efforts to obtain execution drugs to support their argument that pentobarbital is actually "available." Their claim is that Mississippi officials have not made a good faith effort to obtain pentobarbital, particularly since other states have been able to procure it. The Defendants, on the other hand, argue that they will suffer extreme prejudice and hardship if this information on their efforts is released.

The United States Supreme Court has recognized the problems created by the disclosure of this type of information:

> *Baze* cleared any legal obstacle to use of the most common three-drug protocol that had enabled States to carry out the death penalty in a quick and painless fashion. But a practical obstacle soon emerged, as anti-death-penalty advocates pressured pharmaceutical companies to refuse to supply the drugs used to carry out death sentences. The sole American manufacturer of sodium thiopental, the first drug used in the standard three-drug protocol, was persuaded to cease production of the drug. After suspending domestic production in 2009, the company planned to resume production in Italy. Koppel, Execution Drug Halt Raises Ire of Doctors, Wall Street Journal, Jan. 25, 2011, p. A6. Activists then pressured both the company and the Italian Government to stop the sale of sodium thiopental for use in lethal injections in this country. Bonner, Letter from Europe: Drug Company in Cross Hairs of Death Penalty Opponents, N.Y. Times, Mar. 30, 2011; Koppel, Drug Halt Hinders Executions in the U.S., Wall Street Journal, Jan. 22, 2011, p. A1. That effort proved successful, and in January 2011, the company announced that it would exit the sodium thiopental market entirely. See Hospira, Press Release, Hospira Statement Regarding Pentothal ™ (sodium thiopental) Market Exit (Jan. 21, 2011).
>
> After other efforts to procure sodium thiopental proved unsuccessful, States sought an alternative, and they eventually replaced sodium thiopental with pentobarbital, another barbiturate. In December 2010, Oklahoma became the first State to execute an inmate using pentobarbital.

See Reuters, Chicago Tribune, New Drug Mix Used in Oklahoma Execution, Dec. 17 2010, p. 41. That execution occurred without incident, and States gradually shifted to pentobarbital as their supplies of sodium thiopental ran out. It is reported that pentobarbital was used in all of the 43 executions carried out in 2012. The Death Penalty Institute, Execution List 2012, online at www.deathpenalty info.org/execution–list–2012 (all Internet materials as visited June 26, 2015, and available in Clerk of Court's case file). Petitioners concede that pentobarbital, like sodium thiopental, can "reliably induce and maintain a coma-like state that renders a person insensate to pain" caused by administration of the second and third drugs in the protocol. Brief for Petitioners 2. And courts across the country have held that the use of pentobarbital in executions does not violate the Eighth Amendment. See, *e.g., Jackson v. Danberg,* 656 F.3d 157 (C.A.3 2011); *Beaty v. Brewer,* 649 F.3d 1071 (C.A.9 2011); *DeYoung v. Owens,* 646 F.3d 1319 (C.A.11 2011); *Pavatt v. Jones,* 627 F.3d 1336 (C.A.10 2010).

Before long, however, pentobarbital also became unavailable. Anti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it for use in executions. See Bonner, *supra*. That manufacturer opposed the death penalty and took steps to block the shipment of pentobarbital for use in executions in the United States. Stein, New Obstacle to Death Penalty in U.S., Washington Post, July 3, 2011, p. A4. Oklahoma eventually became unable to acquire the drug through any means. The District Court *2734 below found that both sodium thiopental and pentobarbital are now unavailable to Oklahoma. App. 67–68.

Glossip v. Gross, 135 S. Ct. 2726, 2733–34 (2015).

For these reasons, other courts have also protected this type of information from disclosure. Earlier, counsel for Plaintiffs in this case served subpoenas on the correctional departments of several Defendants to discover the identities of their suppliers. Missouri, Virginia, Alabama, and Ohio come to mind.

Missouri: The Missouri Department of Corrections, among others, sought court protection from the subpoenas, and that dispute went to the Eighth Circuit Court of Appeals. As is the case here, Missouri's Department of Corrections claimed that its drug supplier had announced that it would refuse to supply further drugs if its identity was disclosed to anyone. In light of this potential elimination of Missouri's supplier, the court granted Missouri's request for relief. In so doing, the Eighth Circuit noted that compelling Missouri to identify its supplier

"will not help the inmates establish the existence of an available alternative method of execution." *In re Missouri Dep't of Corrections*, 839 F.3d 732, 736 (8th Cir. 2016). Moreover, as shown, eliminating that supplier as a source for execution drugs would cause an undue burden on Missouri, justifying protection under Fed.R.Civ.P. 45[12]. Requiring confidentiality by means of a protective order to limit disclosure is not a satisfactory solution, both because the supplier would not sell any more drugs if its identity was disclosed to *anyone,* as well as the risk, perhaps particularly great in this type of litigation, that an unintended disclosure to persons not directly related to this lawsuit would occur. *Id.* at 737.

Virginia: A similar request was made by subpoena to the Virginia Department of Corrections, which filed a motion to quash. Although the situation was slightly different, the test was the same. There, the Department of Corrections refused to provide information that would disclose the name of its supplier or the members of its execution team. The district court granted the motion to quash, holding that "disclosures pursuant to a subpoena that impede a state's ability to carry out executions constitute an undue burden." *In re: Virginia Dep't of Corrections v. Jordan*, 2017 WL 5075252 at *5 (E.D. Va. Nov. 3, 2017).

Alabama: In a case out of Alabama that did not involve these Plaintiffs, the district court limited discovery of the supplier of lethal injection drugs, instead requiring the State to produce a "general description" of its efforts to obtain pentobarbital, identifying whether it had been successful in obtaining the drug, and, if not, why not. *Arthur v. Commissioner, Alabama Dep't of Corrections*, 840 F.3d 1268, 1304-05 (11th Cir. 2016). The Eleventh Circuit affirmed the

---

[12] Fed. R. Civ. P. 45: d) Protecting a Person Subject to a Subpoena; Enforcement. (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

lower court, stating, "This information was precisely what Arthur needed to prove his Eighth Amendment claim." 840 F.3d at 1305. In that case, Thomas D. Arthur, a death row inmate who brought § 1983 action against Commissioner of Alabama Department of Corrections, challenged the State's method of execution under Eighth and Fourteenth Amendments. Refusing to expand the scope of discovery, the court found that the prisoner "has given us no reason to think that the ADOC[13] lied or presented false evidence either during discovery or at trial and, indeed, the district court noted that the ADOC had claimed to produce everything of relevance." *Id.*

Ohio: Similarly, the Sixth Circuit has affirmed a district court's limitation of discovery in a challenge to a lethal injection protocol. After explaining the analysis that should be conducted when considering a protective order, the court said, "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016). Reviewing evidence of pressure applied to pharmacies supplying lethal injection drugs, the district court found that the potential harm and prejudice to those pharmacies was demonstrated by the evidence provided by the State. If the drugs thereby became unavailable, "Defendants will suffer an undue burden and prejudice in effectuating Ohio's execution protocol and practices." *Id.* at 239 (citing *Cooey v. Strickland*, 604 F.3d 939, 946 (6th Cir. 2010)). Moreover, even though the district court used the State's law on confidentiality of information regarding lethal injection, "this result does not federalize the Ohio secrecy law as a common-law privilege for immunity. The district court referenced the statute as an evidentiary data point for analysis only." *Id.*

With regard to the identity of people involved in the execution process, the Court's analysis is based on the balancing required by Rule 26(c), regardless of whether those people

---

[13] Alabama Department of Corrections.

would be covered under the Mississippi statute. Many of the cases cited above considered protecting the identities of execution team members to be akin to protecting the identities of suppliers. *In re Ohio Execution* Protocol, 845 F.3d at 238-39; *In re Missouri Dep't of* Corrections, 839 F.3d at 737; *In re Virginia Dep't of* Corrections, 2017 WL 5075252 at **19-22. In conducting this analysis, this Court believes that an opinion from the Supreme Court of Tennessee best explains the problem:

> Any constitutionally valid means of execution requires the participation of numerous individuals (collectively, "the Participants"). Nevertheless, the execution of condemned inmates remains a highly divisive and emotionally charged topic in Tennessee. Revealing the identities of the Participants, even subject to a protective order, creates a risk that the Participants would be deterred from performing their lawful duties.

*West v. Schofield*, 460 S.W.3d 113, 128 (Tenn. 2015) (*West I*).

Here, the Plaintiffs say that they need information on suppliers and personnel to show that their alternative execution drug, pentobarbital, is available. The Defendants counter that the Plaintiffs could themselves obtain information to support that claim by simply creating a list of pharmacies and calling them to determine whether any would be willing to sell pentobarbital to the Mississippi Department of Corrections for use in executions. As the Eleventh Circuit held, "The evidentiary burden is on [the Plaintiff] to show that 'there is now a source for pentobarbital that would sell it to the ADOC for use in executions.'" *Arthur v. Commissioner, Alabama Department of Corrections,* 840 F.3d 1268, 1302 (11th Cir. 2016). The burden is not on the Department of Corrections to show that it cannot acquire the drug. *Id*. at 1303.

The Court has reviewed these arguments and the applicable law and is of the opinion that, on balance, the hardship to the Defendants of preventing them from obtaining lethal execution drugs outweighs the Plaintiffs' need for this information, which could be gathered by other means. Entry of a protective order merely limiting the dissemination of information is an

unsatisfactory alternative, as the drug supplier has made it clear that it will discontinue selling the necessary drugs if its identity is revealed. There is no allowance for revelation by court order. Moreover, the inherent danger and hardship that would follow even an inadvertent disclosure convince the Court that it must protect the information at issue from discovery. For these reasons, the Defendants are entitled to withhold from discovery any material that would identify suppliers of lethal injection drugs or persons involved in the execution process.

Some material may have been withheld that does not fall within either of these categories, withheld perhaps under a claim of attorney-client privilege. The Plaintiffs argue that Defendants took an unnecessarily broad view of this privilege. To the extent that material was withheld on the basis of the attorney-client privilege that is not otherwise protected, the Defendants should submit that material to the Court for *in camera* inspection.

Plaintiffs' remaining discovery requests were aimed at obtaining information on Mississippi's three statutory alternatives to lethal injection: however, those requests presently are irrelevant, as claims based on these alternatives are not ripe, as will be more fully explained below.

### III.     Motion to Amend Complaint/Motion to Amend the Scheduling Order

These Motions are based on the Plaintiffs' argument that they should be permitted to challenge the above-mentioned three alternative methods of execution recently approved by the Mississippi Legislature. As grounds for that argument, they assert that if they are not permitted to show that those alternatives are unavailable, they would be precluded from advancing the non-statutory method of execution by a single drug injection that they propose. They further argue that failing to attack these other methods at this juncture may bar them from making a future attack because the statute of limitations will have run on their claims.

Mississippi's general statute of limitations requires that an action be filed within three years of the accrual of the right of action. Richard Jordan has been on Mississippi's death row since 1976. At his fourth and final trial in 1998, he was sentenced to death by lethal injection, and that conviction and sentence became final in 2002. Ricky Chase has been on death row since 1989, having been sentenced to die by lethal injection. His conviction and sentence became final in 1995. Thomas Loden has been on death row since 2001; his conviction and sentence became final in 2008. Roger Thorson has been on death row since 1988; his conviction and sentence became final, after a second trial, in 2005. Robert Simon has been on death row since 1990; his conviction and sentence became final in 1997. The original Complaint in this case was filed on April 16, 2015.

Since lethal injection in the mid 1980's became the statutory method for executions in Mississippi, the Department of Corrections has changed its protocol several times. Included in the exhibits presented in this case are the protocols that existed in 2002, 2005, 2011, 2012, and 2015. The 2011 amendment permitted the Department of Corrections to substitute pentobarbital in place of sodium pentothal, if that drug was unavailable, and to substitute vecuronium bromide for pavulon, if that drug was unavailable. The original Complaint in this case was based on the 2012 protocol. The 2015 amendment added midazolam as a substitute for pentobarbital if pentobarbital was unavailable, and the Plaintiffs were permitted to amend their Complaint to add a claim based on that change.

Now the Plaintiffs want to amend again to add the three new methods of execution – nitrogen hypoxia, electrocution, and firing squad. In adding the three alternative methods of execution to its statute, the Legislature provided that, after lethal injection, no method could be used unless the one preceding it was "held unconstitutional by a court of competent jurisdiction

*or is otherwise unavailable*." While the failure to define "or is otherwise unavailable" does not create a model of statutory clarity,[14] the Court disagrees with the argument made during the oral hearing on November 8, 2017, that the Mississippi Department of Corrections has unfettered authority to declare a method unavailable without judicial intervention. At the current time, lethal injection by the means described in § 99-19-51 has been declared neither unconstitutional nor unavailable. The Defendants have stated that Mississippi now has the drugs to conduct an execution pursuant to the statute, that no protocol has been established for execution by nitrogen hypoxia, and that the time it would take to develop a protocol for a yet untried method of execution would allow the Plaintiffs ample time to mount a challenge to it.

The Tennessee Supreme Court dealt with this question under a similar set of facts. *West v. Schofield*, 468 S.W.3d 482, 491 (Tenn. 2015). The Tennessee statute in question provided for alternative methods of execution if the preceding method was declared unconstitutional by a court of competent jurisdiction, or where the Commissioner of Correction certified to the government that the proceeding method was unavailable. As neither contingency had occurred, the alternative methods were not ripe for adjudication "because they involve a method of execution that does not now presently apply to the inmates and will never apply to them unless one of two statutory contingencies occurs in the future." *Id*. at 492.

The Plaintiff's claim here that they cannot show that the single-drug execution method is readily available unless they first litigate the other three methods is based on a case out of the Eleventh Circuit, *Arthur v. Commissioner, Alabama Dep't of Corrections*, 840 F.3d 1268 (11th Cir. 2017). *Arthur* was a case out of Alabama, which provided for lethal injection with a three-drug cocktail. The protocol provided that the first drug was sodium thiopental; it was later

[14] This language is apparently patterned after the Oklahoma statute enumerating execution methods. Okla. Stat., tit. 22, § 1014 (2017)

20

changed to pentobarbital, and finally to midazolam.  Arthur asked that the protocol be changed to a single-drug injection of pentobarbital or sodium thiopental, similar to the Plaintiffs' request in this case.  The court held that the single-drug injection was not a feasible alternative to the use of midazolam and that Arthur had failed to show that the use of midazolam created a substantial risk of severe pain.  *Id*. at 1315.

Alabama's statute allowed a choice between lethal injection and electrocution.  If lethal injection and electrocution were both found unconstitutional, prisoners "shall be executed by any constitutional method of execution."  *Id*. at 1274; Ala. Code Ann. §15-18-82.1(c).  Arthur asked, if his single-drug claim was rejected, to be executed by a third method -- firing squad.  The court held that Arthur could not impose upon the Defendants of Alabama a method of execution not permitted by statute.  In explaining why firing squad was not an acceptable or available method of execution, the court noted that neither of the statutorily permitted modes had been declared unconstitutional.  *Id*. at 1316.  This is not the primary holding in *Arthur*, but dicta.  Even the Plaintiffs have admitted that this is an "alternate holding," and there is no indication that it has been adopted by any other Circuit.

Additionally, as the United States Supreme Court has held, "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United* States, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985)).  Where a case is abstract, or hypothetical, it is not ripe.  *TOTAL Gas & Power North America, Inc. v. Federal Energy Regulatory Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017).  In determining ripeness, a court should consider whether the issues are fit for judicial consideration and whether withholding a

judgment on the issues will cause hardship. *Choice, Inc. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

At this time, nitrogen hypoxia appears to be little more than a theory. It seems that no state has actually used it, and the Mississippi Department of Corrections has not developed a protocol for it or for the other two alternatives. Any general challenge to this execution method would, of necessity, be abstract. Moreover, the Plaintiffs will not be harmed by waiting until a protocol has been established for the use of this alternative. Because the other means of execution are not currently available in Mississippi, a challenge to them is not ripe. *See also, Alley v. Little*, 452 F.3d 621, 625 (6th Cir. 2006) (where method of execution was not determined until prisoner chose between two alternatives, his claim was not ripe until the alternatives presented and a choice made).

The Plaintiffs also argue that the limitations period may run on their claims regarding the other methods of execution if those claims are not brought before the Court in this case. It is this Court's opinion that, for the same reasons that the claim is not ripe, the limitations period has not begun on alternative execution methods. While the methods have been approved by statute, there is no protocol setting forth how executions by these methods would proceed.

Unfortunately, many courts discussing this issue, including the Fifth Circuit, have used the terms "statute" and "protocol" interchangeably. *See, e.g., Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008). In Mississippi, while the protocol for lethal injection has been amended several times, the statute has only been amended twice – once in 1998 to describe the drugs to be used in the execution and not again until 2016, when the current confidentiality provisions were added. The actual method of execution was not amended until 2017. If adoption of a statute was the trigger for beginning the limitations period on lethal injection challenges, the Plaintiffs' 2015

filing would have been barred. The Complaint itself, however, states that it is based on the change in the lethal injection *protocol*, and the Court is of the opinion that Plaintiffs' cause of action accrued when the protocol was changed.

An instructive discussion of the distinction between statute and protocol is in the dissenting opinion in another Eleventh Circuit case, *McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008) (Wilson, J., dissenting):

> Callahan's § 1983 action is not based on the fact of his death sentence or even on the fact that he is to be executed by lethal injection. Rather, Callahan is asserting that the specific lethal injection protocol presently employed by Alabama is likely to cause him undue pain and suffering when his execution is carried out. This claim could have begun to accrue only (1) when Callahan knew or had reason to know the details of Alabama's lethal injection protocol and (2) when his execution became imminent.

> Contrary to the majority's conclusion, neither of these circumstances existed in July of 2002. Although Alabama adopted lethal injection as its sole method of execution at that time, its specific protocol is neither fixed by law nor readily accessible. The protocol is a creature of regulation, not statute, and thus it is subject to change at any time by the Alabama Department of Corrections. As is the case in other states, "[n]o statutory framework determines when or how such changes may occur. Nor is there a framework governing when, or even if, such changes will be publicized." *Cooey v. Strickland,* 479 F.3d 412, 427 (6th Cir.2007) (Gilman, J., dissenting). Indeed, it appears that Alabama has revised the protocol on a number of previous occasions, and there is reason to believe that its efforts to promulgate these changes have been inadequate. *See Jones v. Allen,* 483 F.Supp.2d 1142, 1146 n. 2 (M.D.Ala.2007) (noting that Alabama defendants "admitted that earlier revisions to the protocol were made ... but that after diligent search they [were] unable to locate the version of the protocol that existed before such changes were made"). Adding to this uncertainty, the State of Alabama keeps the specifics of its lethal injection protocol a secret. *Siebert v. Allen*, 2007 WL 3047086, at *1 (M.D. Ala. Oct. 17, 2007). I thus cannot accept the majority's conclusion that Callahan's cause of action began to accrue five years before his execution date was set, during which time Alabama could, and in fact did, amend its lethal injection protocol [footnote omitted].

> A better approach would be to fix the date of accrual when Callahan knew or had reason to know the details of the protocol to be used in his execution and when his habeas challenge to his sentence was exhausted.

Id. at 1178. This Court agrees that the limitations period for a claim based on nitrogen hypoxia cannot begin to run until the cause of action accrues, which will be the adoption of protocol for an execution based on the method. Similarly, a cause of action cannot accrue based on execution by electrocution or firing squad until a protocol is in place. That being the case, the Motion for Leave to File Second Amended Complaint will be denied.

The Motion for Amendment to Scheduling Order, however, rests on two grounds – the request to amend the Complaint to add the three new execution methods and a request to extend deadlines in the case based upon the recent discovery disputes. The Court is of the opinion that the Motion should be granted for the second reason. Accordingly, the Court will extend the discovery deadline in this case to July 28, 2018, with an Order to follow setting the remaining deadlines consonant with this extension.

<u>CONCLUSION</u>

**IT IS, THEREFORE, ORDERED AS FOLLOWS:**

1. The Defendants' Motion for Protective Order [Doc. #125] is hereby **granted**, as set forth above.

2. The Plaintiffs' Motion to Compel [Doc. #127] is hereby **granted in part and denied in part**, with the Defendants to submit any documents described above that were withheld only on grounds of attorney/client privilege to the Court for *in camera* review on or before April 28, 2018.

3. The Plaintiffs' Motion for Leave to File Amended Complaint [Doc. #129] is hereby **denied.**

4.  The Plaintiffs' Motion for Amendment to Scheduling Order [Doc. #130] is hereby

    **granted in part and denied in part**.  The discovery deadline in this matter is

    extended to July 28, 2018, with other deadlines to be re-set by later Order.

**IT IS SO ORDERED**, this the __29____ day of March, 2018.

<br>

                                             __s/ HENRY T. WINGATE_____
                                             /s/ Henry T. Wingate
                                             District Judge