IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| RICHARD JORDAN and RICKY CHASE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| THOMAS EDWIN LODEN, Jr.,<br>ROGER THORSON, and<br>ROBERT SIMON, | )<br>)<br>)<br>) |
| Intervenors, | )<br>) |
| *v*. | ) Civil Action No. 3:15-cv-00295 |
| PELICIA HALL, Commissioner,<br>Mississippi Department of Corrections, in<br>her Official Capacity, et al. | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION
## FOR CONTINUANCE OF TRIAL SETTING

### I. INTRODUCTION

Plaintiffs Richard Jordan and Ricky Chase seek a continuance of the August 27, 2018 trial setting in this case in light of the grant of certiorari by the United States Supreme Court in <u>Bucklew v. Precythe</u>, No. 17-8151. In granting review, the Supreme Court added an additional Question Presented: "whether petitioner met his burden under <u>Glossip v. Gross</u>, 576 U.S. ___ (2015), to prove what procedures would be used to administer his proposed alternative method of execution, the severity and duration of pain likely to be produced, and how they compare to the State's method of execution." **Defendants do not oppose the relief sought in this Motion.** All Intervenors join this Motion.

1

On April 9, 2018, this Court entered the following text-only Docket Order: "Jury Trial set for 8/27/2018 09:30 AM in Courtroom 6A (Jackson) Wingate before District Judge Henry T. Wingate. Pretrial Conference set for 8/7/2018 09:00 AM in Courtroom 6A (Jackson) Wingate before District Judge Henry T. Wingate."[1]

But in light of the grant of review in Bucklew, Plaintiffs believe that it would be a waste of judicial resources to conduct the trial of this case prior to receiving the guidance of the Supreme Court regarding one of the most heavily contested issues in this case: what constitutes the requisite showing that an alternative is known, available, and will reduce the risks posed by an intended method of execution.

Plaintiffs also note that this Court has not yet ruled on the discoverability of documents withheld from production to Plaintiffs by Defendants on the basis of attorney-client privilege or work product. The Court ordered these documents to be submitted for in camera review;[2] Defendants have submitted these documents for the Court's review.[3]

## II. THE SECOND PRONG OF THE GLOSSIP TEST (THE "KNOWN, AVAILABLE ALTERNATIVE") IS A CENTRAL ISSUE IN THIS CASE.

This lawsuit challenges the manner in which Defendants plan to implement the death penalty in Mississippi. Defendants currently propose to execute Plaintiffs and Intervenors by the serial intravenous injection of three drugs: (1) either compounded pentobarbital or midazolam, (2) a chemical paralytic agent, and (3) potassium chloride.[4] In this civil action, Plaintiffs and

---

[1] Plaintiffs assume that the setting of a "Jury Trial" was an error created by the ECF System, given that no party has requested a jury in this case.
[2] ECF 168 at 24.
[3] ECF 169.
[4] See ECF 38 (Notice of Lethal Injection Protocol Change) and ECF 38-2 (amended protocol). Defendants have implemented a more recent protocol, which is attached as Exhibit A to this motion.

Intervenors challenge the use of compounded pentobarbital or midazolam in a three drug protocol and the three drug protocol itself.[5]

The controlling precedent requires Plaintiffs to prove that Defendants' protocol poses a "substantial risk of serious harm," and that there is a "known, available alternative" that reduces or eliminates that risk. Glossip v. Gross, 135 S. Ct. 2726, 2737-38 (2015).

In this case, the First Amended Complaint alleges that the "the use of an FDA-approved, ultra short-acting barbiturate in a single-drug protocol is a feasible and available alternative which would significantly reduce the substantial risk of severe pain presented by Mississippi's current procedure."[6]

Plaintiffs further allege that if no FDA-approved, ultra short-acting barbiturate is available, then other "known, available alternatives" to Mississippi's three drug protocol would be a single-drug protocol using, in descending order:

- an FDA-approved short- or intermediate-acting barbiturate;[7]

- an ultra short-acting barbiturate compounded by a duly licensed compounding pharmacy and tested for integrity, purity and potency by a laboratory unaffiliated with the compounding pharmacy industry or a department of corrections;[8] or

- a short- or intermediate-acting barbiturate compounded by a duly licensed compounding pharmacy and tested for integrity, purity and potency by a laboratory unaffiliated with the compounding pharmacy industry or a department of corrections.[9]

Defendants contend that Plaintiffs' proposed alternatives are not "available" to MDOC,[10] although the States of Texas, Missouri, and Georgia have all executed prisoners with a single dose

---

[5] ECF 50, First Amended Complaint.
[6] Id. at ¶¶ 224, 249.
[7] Id. at ¶¶ 225, 249.
[8] Id. at ¶¶ 226, 249.
[9] Id. at ¶¶ 227, 249.
[10] Id. at ¶ 186.

of pentobarbital from 2014 to the present.[11] 12 executions have been conducted in 2018 to date. Of those 12 executions, nine (9) executions have been conducted by two separate states (Texas and Georgia) using a single dose of pentobarbital.[12]

It is therefore a central issue in this case whether execution by a single dose of pentobarbital or another barbiturate is a "known, available alternative" to Defendants' current method of execution.

### III. THE IMPORTANCE OF BUCKLEW TO THIS CASE

What constitutes a "known, available alternative" is not articulated in Glossip. Bucklew is the first case since Glossip in which the Supreme Court has granted certiorari to further explain its holding. In the time between the release of Glossip and the grant in Bucklew, the Courts of Appeals and the District Courts have applied multiple, different criteria in adjudicating whether a condemned prisoner has met the second prong.

Of particular importance to this case, two panels of the Eleventh Circuit have held that a showing that other jurisdictions have access to compounded pentobarbital is sufficient to demonstrate that use of that drug is a "known, available alternative."[13] But other panels of that same Court have held that this showing is insufficient to meet the condemned prisoner's burden.[14]

---

[11] Id. at ¶ 187-90.
[12] See Death Penalty Information Center, Execution List 2018, https://deathpenaltyinfo.org/execution-list-2018 (last checked July 12, 2018)
[13] Grayson v. Warden, Comm'r, Ala. Dep't of Corr., 869 F.3d 1204, 1226 (11th Cir. 2017); Lee v. Comm'r, Ala. Dep't of Corr., 2018 WL 1920341 at *3 (11th Cir. 2018).
[14] Brooks v. Warden, 810 F.3d 812, 820 (11th Cir. 2016), cert. denied sub nom. Brooks v. Dunn, 136 S. Ct. 979 (2016); Arthur v. Comm'r, Alabama Dep't of Corr., 840 F.3d 1268, 1301-02 (11th Cir. 2016), cert. denied sub nom. Arthur v. Dunn, 137 S. Ct. 725 (2017).

On a separate aspect of Glossip's second prong, the Eleventh Circuit has held that an alternative not authorized by statute cannot be considered a feasible alternative.[15] The infirmity of this addition to the second prong was highlighted in Justice Sotomayor's dissent in the denial of certiorari in Arthur v. Dunn, 137 S. Ct. 725 (2017):

> The decision below permits a State, by statute, to bar a death-row inmate from vindicating a right guaranteed by the Eighth Amendment. Under this view, even if a prisoner can prove that the State plans to kill him in an intolerably cruel manner, and even if he can prove that there is a feasible alternative, all a State has to do to execute him through an unconstitutional method is to pass a statute declining to authorize any alternative method. This cannot be right.[16]

The Eleventh Circuit has also stated that Glossip requires the proposed alternative to be capable of implementation "relatively easily and reasonably quickly."[17] The Eighth Circuit concurs with this interpretation of Glossip's second prong.[18] But the Sixth Circuit has interpreted the standard as being "able to obtain the [alternative] drugs with ordinary transactional effort."[19]

The Fifth Circuit has not adopted the various interpretations set forth by the Eleventh, Eighth, or Sixth Circuits. In fact, the Fifth Circuit has said little about the second Glossip prong; that Court's leading opinion to date, affirming a district court's order of dismissal at the pleadings stage, held that merely stating that "there are FDA-approved barbiturates that could be administered with appropriate safeguards" was insufficient to satisfy Glossip without "further factual enhancement."[20]

---

[15] Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 868 (11th Cir. 2017), cert. denied sub nom. Boyd v. Dunn, 138 S. Ct. 1286 (2018).
[16] Arthur, supra, 137 S.Ct. at 729.
[17] Boyd, supra.
[18] McGehee v. Hutchinson, 854 F.3d 488, 493 (8th Cir.), cert. denied, 137 S. Ct. 1275 (2017)
[19] In re Ohio Execution Protocol, 860 F.3d 881, 891 (6th Cir.), cert. denied sub nom. Otte v. Morgan, 137 S. Ct. 2238 (2017).
[20] Whitaker v. Collier, 862 F.3d 490, 495 (5th Cir. 2017). In Whitaker, the Texas prisoners challenged the State's one-drug protocol because it used compounded, rather than FDA-approved, pentobarbital.

In this context, the United States Supreme Court has granted certiorari in Bucklew v. Precythe, No. 17-8151, a method of execution challenge under the Eighth Amendment and 42 U.S.C. § 1983. The case will be heard in the October 2018 Term. A briefing schedule has been set. Bucklew will be the first case the Supreme Court has heard since its elucidation of the two-prong test in Glossip.

Although two of the three questions presented by Mr. Bucklew focus on narrower issues related to his as-applied challenge to Missouri's method of execution, the Supreme Court, in granting certiorari, added a broader issue regarding the second prong of Glossip v. Gross, 135 S.Ct. 2726 (2015).

As stated above, through this additional Question Presented, the Supreme Court has decided to clarify Glossip's second prong by establishing how a condemned prisoner must prove "what procedures would be used to administer his proposed alternative method of execution, the severity and duration of pain likely to be produced, and how they compare to the State's method of execution."

Given this broad additional question which the Supreme Court considers essential to the case, it is clear that several of the open questions related to the application of Glossip's second prong will be decided in Bucklew.

Plaintiffs and Intervenors are preparing for the current August 27 trial date. However, in Plaintiffs' view, it would conserve judicial resources for the Court to await the directives of the Supreme Court in Bucklew. On its own initiative, the Supreme Court has decided to clarify the nature of the proof necessary for a condemned prisoner to establish the second Glossip prong. There is a significant risk that any trial conducted in August would have to be repeated after the decision in Bucklew, wasting the time and resources of the Court, the parties, and all counsel.

By awaiting the Supreme Court's decision in Bucklew, this Court will have preserved scarce judicial resources and will be able to adjudicate the evidence in this case on the sure footing of the Supreme Court's resolution of the open questions related to the second prong of the Glossip standard.[21]

For these reasons, Plaintiffs respectfully request that this Court continue the August 27, 2018 trial setting for a date to be determined by the Court after the ruling in Bucklew.

Respectfully submitted,

*/s/ James W. Craig*
James W. Craig, MSB # 7798
Emily M. Washington (pro hac vice)
The Roderick & Solange MacArthur Justice Center
4400 South Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org

Dated: July 12, 2018

---

[21] The continuance requested by Plaintiffs is very similar to the conduct of recent litigation in the Southern District of Mississippi regarding a state statute restricting abortion providers to those who held admitting privileges at a hospital. Jackson Women's Health Organization, et al. v. Mary Currier, M.D., M.P.H., et al., Civ. Action No. 3:12-cv-436-DPJ-FKB. After a grant of preliminary injunction was affirmed on appeal, the case was held in abeyance as a Texas case presenting similar issues was considered by the Fifth Circuit and the Supreme Court. Whole Women's Health v. Hellerstedt, 136 S. Ct. 2292 (2016). Proceedings in the Southern District of Mississippi resumed, and in March of this year, Judge Jordan issued the Court's opinion, relying specifically on the Supreme Court's decision. Docket No. 215, Jackson Women's Health Organization, et al. v. Mary Currier, M.D., M.P.H., et al., Civ. Action No. 3:12-cv-436-DPJ-FKB.

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed this pleading with the Electronic Case Filing System of the United States District Court for the Southern District of Mississippi and have thereby served all counsel of record for the Defendants and Intervenors in this case.

This, the 12th day of July, 2018.

*/s/James W. Craig*