IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **RICHARD JORDAN and RICKY CHASE,** | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| **THOMAS EDWIN LODEN, Jr., ROGER THORSON,  and ROBERT SIMON,** | )<br>)<br>)   Civil Action No. 3:15-cv-00295<br>) |
| **Intervenors,** | )<br>) |
| ***v.*** | )<br>) |
| **PELICIA HALL, Commissioner, Mississippi Department of Corrections, in her Official Capacity, et al.,** | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

### PLAINTIFFS' NOTICE OF DECISION IN *BUCKLEW v. PRECYTHE* AND MOTION FOR STATUS CONFERENCE

PLAINTIFFS Richard Jordan and Ricky Chase, by and through their counsel of record, hereby notify the Court that on April 1, 2019, the United States Supreme Court decided *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019). *Bucklew* became final on April 26, 2019, when no party in Bucklew requested rehearing as allowed by Supreme Court Rule 44. This Court ordered the parties to provide notice within thirty days of the date when Bucklew became final. Order of July 27, 2018 [ECF No. 175]. This Notice is filed within that time period.

For the reasons stated below, Plaintiffs also move the Court to set a status conference to discuss the entry of a new Scheduling Order to govern the continuing proceedings in this case.

1

**A. The opinion in *Bucklew v. Precythe* refined the Eighth Amendment jurisprudence governing method-of-execution challenges.**

1. As the parties anticipated, *Bucklew* has provided significant guidance to the Court and the parties with respect to the Eighth Amendment standards governing this civil action. In *Bucklew*, the Court reaffirmed the rule from *Glossip* and the Chief Justice's plurality opinion in *Baze v. Rees*, 553 U.S. 35, 61 (2008) (plurality), that "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125, *citing Glossip*, 135 S. Ct. at 2732-33, and *Baze*, 553 U.S. at 52. Put another way, "[t]he Eighth Amendment does not come into play unless the risk of pain associated with the State's method is 'substantial when compared to a known and available alternative.'" *Bucklew*, 139 S. Ct. at 1125, *quoting Glossip*, 135 S. Ct. at 2738, *citing Baze*, 553 U.S. at 61.

2. However, *Bucklew* has made far clearer than *Baze* or *Glossip* that the alternative-method prong is not meant to be an insuperable hurdle:

> Finally, the burden Mr. Bucklew must shoulder under the *Baze-Glossip* test can be overstated. An inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law. . . . . So, for example, **a prisoner may point to a well-established protocol in another State as a potentially viable option**. Of course, in a case like that a court would have to inquire into the possibility that one State possessed a legitimate reason for declining to adopt the protocol of another . . . . In light of this, we see little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative . . . .

*Bucklew*, 139 S. Ct. at 1128-29 (emphasis added).[1]

---

[1] Justice Kavanaugh wrote separately to emphasize his agreement with the proposition that "the burden of the alternative-method requirement can be overstated." *Id*. at 1136. In particular, Justice Kavanaugh noted that all nine Justices agreed that the alternative method proposed by a method-of-execution plaintiff need not be authorized under the law of the state where the plaintiff is awaiting execution. *Id*.

2

3. Several issues pertinent to the current litigation were discussed in *Bucklew*. First, what has been discussed as two separate "elements" or "prongs" of the *Baze/Glossip* test are more clearly described as a single, comparative test in *Bucklew*. Thus, *Bucklew* reads the Chief Justice's concurrence in *Baze* as teaching that in an Eighth Amendment method-of-execution challenge, "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125, *citing Baze*, 553 U.S. at 52, and *Glossip*, 135 S. Ct. at 2732-38. In the next paragraph, the *Bucklew* Court holds directly that:

> The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is "substantial when compared to a known and available alternative."

*Bucklew*, 139 S. Ct. at 1125, *citing Glossip*, 135 S. Ct. at 2738, and *Baze*, 553 U.S. at 61.

4. Consistent with this approach, the Court began its analysis "with the question of a proposed alternative method," *Bucklew*, 139 S. Ct. at 1129-30. The Court framed the next step in the analysis as follows: "Even if a prisoner can carry his burden of showing a readily available alternative, he must still show that it would significantly reduce a substantial risk of severe pain." *Id*. at 1130, *citing Glossip*, 135 S. Ct. at 2737-38, and *Baze*, 553 U.S. at 52.

5. Second, as quoted above, in considering the proposed alternative method, the Court held that the plaintiff "may point to a well-established protocol in another State as a potentially viable option." *Id*.

6. Third, the Court in *Bucklew* imposed an important restriction on a State's claim that it is unable to procure the alternative execution drugs asserted by the condemned prisoners under *Baze* and *Glossip*. In discussing the "legitimate reasons why a State might choose, consistent with the Eighth Amendment, not to adopt a prisoner's preferred method of execution," the *Bucklew*

Court stated that "a State can't be faulted for failing to use lethal injection drugs that it's unable to procure through **good-faith efforts**." *Bucklew*, 139 S. Ct. at 1125, *citing Glossip*, 135 S. Ct. at 2737-38 (emphasis added).[2]

7. And finally, the Court in *Bucklew* stressed the significance of extensive discovery on both sides of the test. It pointed out that, after Mr. Bucklew had complied with the district court's order to plead an alternative method, that court had given the plaintiff "**extensive discovery** to explore the viability of that alternative." *Bucklew*, 139 S. Ct. at 1129 (emphasis added).

8. And when the Supreme Court turned to its analysis of the State's existing method, it stressed that:

> Moreover, to the extent the record is unclear on any of these issues, Mr. Bucklew had ample opportunity to conduct discovery and develop a factual record concerning exactly what procedures the State planned to use.

*Id*. at 1131. It quoted the Eighth Circuit's observation that Mr. Bucklew "never urged the district court to establish a suitable fact-finding procedure to define the as-applied lethal injection protocol the State intends to use." *Id*. at 1131, *quoting Bucklew v. Precythe*, 883 F. 3d 1087, 1095-96 (8th Cir. 2018).

9. As will be discussed below, these holdings in *Bucklew* are significant modifications of the standard governing this civil action.

---

[2] *See also Abdur'Rahman v. Parker*, 558 S.W.3d 606, 623 (Tenn. 2018) (discussing need for state to show "ordinary transactional effort" to secure alternative in order to defeat plaintiffs' claim); *In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (same), *cert. denied sub nom. Otte v. Morgan*, 137 S. Ct. 2238 (2017).

### B. *Bucklew*'s teachings provide significant guidance to the Court regarding further proceedings in this case.

10.     As the Court is aware, the Plaintiffs in this case allege that the substantial risk of serious pain presented by Mississippi's use of a three-drug execution protocol³ could be reduced by employing a one-drug protocol (a fatal dose of pentobarbital) such as that used by jurisdictions such as Georgia,⁴ Missouri,⁵ and Texas. First Amended Complaint, ECF No. 50, at 34-35. ¶¶187-190, 41-42, ¶¶222-229, 45-46, ¶¶248-251. *See also id*. at 50-52, ¶¶276-281.

11.     Defendants in this case have asserted that they are unable to secure pentobarbital, in either manufactured or compounded form, and therefore cannot adopt the one-drug protocol presented by Plaintiffs.⁶

---

³ The risks presented by the three-drug protocol are alleged at length in the First Amended Complaint, ECF No. 50, at 12-13, ¶¶56-67. The controlling opinion in *Baze* held that, unless the first drug in the series sufficiently anesthetizes the prisoner, these second two drugs will cause serious harm and severe pain. Chief Justice Roberts wrote that "[i]t is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium As Plaintiffs have repeatedly asserted bromide and pain from the injection of potassium chloride." *Id*., 553 U.S. at 53, 128 S. Ct. at 1533 (Roberts, C.J.).

⁴ In June 2016, Plaintiffs noticed the Rule 30(b)(6) deposition of the Georgia Department of Corrections, in an attempt to gain discovery on Georgia's one-drug protocol, including that state's success in purchasing pentobarbital. ECF No. 74. Georgia resisted the subpoena. The District Court for the Northern District of Georgia found the discovery requests relevant to Plaintiffs' case, but quashed the deposition notice and subpoena duces tecum, enforcing Georgia's Lethal Injection Secrecy Act. *Georgia Dep't of Corr. v. Jordan*, No. 16-2582, 2016 WL 9776069 at *2 (N.D. Ga. Oct. 20, 2016) ("The requested information is relevant to the claims asserted in the underlying action because it goes to the heart of what Jordan and Chase must prove to successfully prosecute their cases."). The Eleventh Circuit Court of Appeals affirmed. *Jordan v. Comm'r, Miss. Dep't of Corr*., 908 F.3d 1259 (11th Cir. 2018). A petition for rehearing and for rehearing *en banc* is pending.

⁵ In May and June of 2016, Plaintiffs noticed the Rule 30(b)(6) deposition of the Missouri Department of Corrections, in an attempt to gain discovery on Missouri's one-drug protocol, including that state's success in purchasing pentobarbital. ECF Nos. 72, 81. Missouri resisted the subpoena. The District Court for the Western District of Missouri denied the Department's motion to quash, holding that Plaintiffs' discovery requests were "directly relevant" to their burden in the civil action in this Court. *See* Exhibit A, Order, Missouri Dep't of Corr. v. Jordan and Chase, No. 16-9005 (W.D. Mo. July 14, 2016). A panel of the Eighth Circuit Court of Appeals affirmed. *In re Missouri Dep't of Corr*., 661 Fed.Appx. 453 (8th Cir. 2016). On rehearing, the Court of Appeals vacated those orders and ruled that the district court must quash Plaintiffs' deposition notice and accompanying subpoena duces tecum. *In re Missouri Dep't of Corr*., 839 F.3d 732 (8th Cir. 2016), *cert. denied*, *Jordan v. Missouri Dep't of Corr*., 137 S. Ct. 2180 (2017).

⁶ *See*, *e.g*., Declaration of Marshall Fisher (6/22/15), ECF No. 25-1 at 2-4 (Defendants' first allegation of the unavailability of pentobarbital).

12. Plaintiffs contest that Defendants have made "good-faith efforts" to obtain pentobarbital. This is one of the central issues in this case. Accordingly, Plaintiffs have diligently sought discovery from Defendants on this issue.[7]

13. Then-Commissioner Marshall Fisher allegedly contacted his counterparts in various death penalty jurisdictions in October and November 2015 and March and April 2016 seeking pentobarbital and was unsuccessful in doing so.[8] However, during the same time that Mr. Fisher claimed to be making contacts with other corrections agencies, the Virginia Department of Corrections successfully secured pentobarbital from the Texas Department of Criminal Justice.[9] Mississippi had successfully engaged in a similar state-to-state transfer, obtaining pentobarbital from the Arkansas Department of Corrections in May 2010.[10]

14. As Plaintiffs have repeatedly noted, other jurisdictions have obtained pentobarbital sufficient to execute condemned prisoners with a one-drug protocol. From 2015 to the present, seventy (70) executions have been conducted with a single fatal dose of pentobarbital: forty-three (43) in Texas, eighteen (18) in Georgia, eight (8) in Missouri, and one in South Dakota.[11] MDOC's failure to secure pentobarbital is an issue for discovery and trial in this case.

---

[7] *See* Chronology of Information Requested and Received from Defendants Regarding Attempts to Procure Execution Drugs, ECF No. 127-28.

[8] MDOC's Second Supplemental Answers to Interrogatories, ECF No. 167-1 at 7 (11/10/17). The interrogatory lists the corrections departments contacted, but is silent on the number of attempts, the method of communication, and most importantly, the substance of any of the communications. As is discussed below, it is a known practice for corrections departments which conduct lethal injection executions to transfer drugs to each other when needed. Exactly how Fisher failed where his counterpart in Virginia succeeded is an issue the Plaintiffs are entitled to explore under *Bucklew*.

[9] First Amended Complaint, ECF No. 50, at 35 ¶190. From February 2017 through the present, Plaintiffs have litigated their right to discovery from the officials of the Virginia Department of Corrections about the state-to-state transfer of pentobarbital from Texas. The United States Court of Appeals affirmed the district court's grant of the Virginia department's motion to quash. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019). Plaintiffs intend to seek certiorari review of this decision.

[10] Exhibit B, Excerpts from the Deposition of Wendy Kelley in *Jones v. Hobbs*, No. CV-2010-1118 (Pulaski Cty. Cir. Ct. Feb. 23, 2011) at 68-73 and Exhibit (ADC Log Book Pages, May 2010).

[11] Execution Lists (2015, 2016, 2017, 2018, and 2019), Death Penalty Information Center, https://deathpenaltyinfo.org/execution-list-2019, https://deathpenaltyinfo.org/execution-list-2018, https://deathpenaltyinfo.org/execution-list-2017, https://deathpenaltyinfo.org/execution-list-2016, https://deathpenaltyinfo.org/execution-list-2015 (last reviewed May 27, 2019).

15. MDOC has also represented that in August 2017, current Commissioner Hall wrote a letter that was posted on the listserv of the Association of State Correctional Administrators (ASCA) seeking sources of pentobarbital, and in response, one of her counterparts in an unidentified state[12] gave Ms. Hall contact information for a supplier in Mississippi, identified by MDOC only as "Supplier 3."[13] According to MDOC:

> Supplier 3 stated that it could obtain, and would be willing to provide, compounded pentobarbital to MDOC for use in executions, but only if its identity remained confidential. Supplier 3 also stated that if it provided pentobarbital to MDOC, it would prepare a sufficient quantity of the drug at its facility to carry out one execution, only after an execution date has been set, and would then deliver the compounded drug to MDOC.[14]

16. Despite this, MDOC claimed that Supplier 3 was not a source of pentobarbital for Plaintiffs' executions as of November 7, 2017:

> Since October 5, 2017, MDOC Commissioner Hall has made multiple, repeated attempts to contact Supplier 3 by telephone to follow up regarding the possibility of Supplier 3 supplying MDOC with compounded pentobarbital for use in executions. To date, Supplier 3 has not made any response whatsoever to any of these attempted communications. Based on the lack of response from Supplier 3, Commissioner Hall can no longer consider Supplier 3 to be a potential source of compounded pentobarbital.[15]

17. On November 15, 2017, MDOC revised its Lethal Injection Protocol an additional time. They filed the protocol, not in this case, but in Richard Jordan's state statutory challenge to the proposed use of midazolam as the first of three execution drugs.[16]

---

[12] *See* Redacted Memo to File, ECF No. 161-4. Defendants redacted the name and state of the department of corrections official who contacted Ms. Hall.
[13] *Id*. at 10, 167-1 at 10.
[14] *Id*.
[15] MDOC's Second Supplemental Answers to Interrogatories in *Jordan v. Hall*, Docket No. 167-1 at 12 (November 7, 2017).
[16] Exhibit C, MDOC Revised Execution Protocol (November 15, 2017). At that point, discovery was closed pending this Court's ruling on the various discovery motions which were adjudicated before the grant of certiorari in *Bucklew*. ECF No. 168.

18. At the time that the parties jointly agreed to request a stay of proceedings in this case, they had outstanding proposed depositions of various lay and expert witnesses.[17] But Defendants had not supplemented their discovery responses in light of the revisions to the lethal injection protocol or any updated information on attempts to secure execution drugs.

19. As the parties awaited the ruling in *Bucklew*, Plaintiffs had last received supplementation of discovery from Defendants on November 7, 2017.[18] During the interim, MDOC has revised its Lethal Injection Protocol, but apparently has not secured new stores of execution drugs since its last purchase of May 2017.[19] Plaintiffs require further, updated information regarding the current method of execution Defendants intend to utilize.

20. After *Bucklew* was argued in the Supreme Court, but before the opinion was issued, Plaintiffs reached out to Defendants seeking agreement to supplement discovery and proceed on some depositions during the interim. Specifically, on December 27, 2018, undersigned counsel wrote:

> As you know, this case has been stayed pending the U.S. Supreme Court's final judgment in *Bucklew v. Precythe*, No. 17-8151. We believe that it would be expedient to plan discovery as the parties await the decision in *Bucklew*. To that end, we propose that Plaintiffs-Intervenors and Defendants agree to supplement outstanding discovery responses by January 31, and that we exchange possible deposition dates during the Spring.[20]

---

[17] *See* ECF Nos. 100-02, 134-36, 153-57.
[18] ECF No. 167-1.
[19] See Exhibit D, MDOC Response to Public Records Request (January 4, 2019), and Exhibit E, MDOC Response to Public Records Request (May 13, 2019). MDOC's supplies of vecuronium bromide and potassium chloride have expired, as have most of MDOC's current stock of midazolam. The remainder of MDOC's midazolam supply will expire at the end of this week (June 1, 2019). Exhibit E at 19.
[20] Exhibit F, Letter from J. Craig and E. Washington to J. Davis, P. Barnes and W. Minor (December 27, 2018).

21. Defendants rejected this offer:

> In response to your letter, we intend to fully comply with the Court's July 27, 2018 order [Doc. 175], which stayed and administratively closed this case until the Supreme Court's decision in *Bucklew* becomes final.[21]

### C. A status conference should be scheduled to advise the Court regarding entry of a new Scheduling Order in this case.

22. To Plaintiffs, the way forward in this case post-*Bucklew* is clear. Plaintiffs have diligently sought discovery necessary to prove both the substantial risk of Defendants' execution protocol, and an alternative mirroring the well-established protocols of Georgia, Missouri, and Texas. Plaintiffs have also diligently sought discovery from Defendants regarding their alleged good-faith efforts to secure pentobarbital for use in the alternative protocol asserted by Plaintiffs. However, Plaintiffs have not yet received the "extensive discovery" cited by the Supreme Court in *Bucklew*.

23. Therefore, Plaintiffs propose that this Court schedule a status conference and, at that conference, re-set discovery deadlines to permit (1) supplementation of discovery responses, (2) fact and expert depositions, and (3) further proceedings for third-party discovery from corrections departments outside of Mississippi, and set dates for trial preparation filings and trial itself.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court schedule a status conference to determine the "suitable fact-finding procedure" for discovery on both prongs of *Glossip* as refined by *Bucklew*, and to set a new trial date after the close of such discovery.

---

[21] Exhibit G, Email from W. Minor to J. Craig and E. Washington (January 17, 2019).

Respectfully submitted,

*/s/ James W. Craig*
James W. Craig, MSB # 7798
Emily M. Washington (pro hac vice)
Roderick & Solange MacArthur Justice Center
4400 South Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org

Dated: May 28, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I have filed this pleading with the Electronic Case Filing System of the United States District Court for the Southern District of Mississippi and have thereby served all counsel of record for the Defendants and Intervenors in this case.

This, the 28th day of May, 2019.

*/s/James W. Craig*