IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
SIXTH DIVISION

JACK JONES, MARCEL WILLIAMS,
FRANK WILLIAMS, JASON McGEHEE,
DON DAVIS, BRUCE WARD, STACEY
JOHNSON, ALVIN JACKSON and
KENNETH WILLIAMS                                          PLAINTIFFS

VS.                      NO. CV-2010-1118

RAY HOBBS, Director, Arkansas
Department of Correction, and
ARKANSAS DEPARTMENT OF CORRECTION                         DEFENDANTS

---

ORAL DEPOSITION OF WENDY KELLEY

FEBRUARY 23, 2011

---

BUSHMAN COURT REPORTING
620 WEST THIRD STREET
SUITE 302
LITTLE ROCK, AR. 72201
(501) 372-5115
www.BUSHMANREPORTING.COM

ORIGINAL

1  chemicals?
2  A   They contacted my director.
3          MR. CORDI: I'm going to object to this
4      line of questioning, it's beyond the scope of
5      discovery. I'm not instructing Ms. Kelley not
6      to answer, but can I have a standing objection
7      to questions about the ADC providing lethal
8      injection drugs to other states? Just a
9      standing objection to it being beyond the
10     scope?
11         MR. BRADEN: Sure.
12         MR. CORDI: Thank you.
13 Q   And I guess, from your handwritten notes here, you
14     provided Oklahoma with five grams; is that right?
15 A   Yes.
16 Q   Did they pay for them?
17 A   No.
18 Q   Have you provided lethal injection chemicals to any
19     other state?
20 A   Yes.
21 Q   Is that Mississippi?
22 A   Mississippi and Tennessee.
23 Q   And did they pay for those drugs?
24 A   No.
25 Q   Did any person you provided these drugs to have any


1    sort of prescription?
2    A    Not that I'm aware of.
3    Q    Do they have DEA numbers?
4    A    I don't know.
5    Q    Did you ask for a DEA number?
6    A    No.
7    Q    Do you know if the director asked if they had DEA
8    numbers?
9    A    I don't know.
10   Q    Do you know if the Department of Correction has
11   rules or regulations about disposing of State-owned
12   property?
13   A    Yes, we do.
14   Q    Were those rules followed when you provided drugs
15   to Oklahoma, Mississippi, and Tennessee?
16   A    I don't recall consulting with the rules.
17   Q    But those drugs were State property at the time?
18   A    Yes.
19              MR. CORDI:  I'm going to object to the
20         form.  When you say "rule," I don't understand
21         if that's a statute or a regulation.
22              MR. BRADEN:  Well, I understand your
23         objection, but I think everybody knows what I
24         mean by the question.  There's rules of
25         disposing of property.

```
 1                THE WITNESS:  I assumed you were talking
 2           about ADC rules, because that's what I think
 3           you asked me.
 4                MR. BRADEN:  Right.
 5                THE WITNESS:  And there are ADC rules.
 6      Q    Have you ever gotten chemicals from other state
 7   agencies?
 8      A    From other states?
 9      Q    Uh-huh.
10      A    Yes.
11      Q    And was that Tennessee?
12      A    Yes.
13      Q    And why did you get chemicals from them?
14                MR. CORDI:  Same standing objection to
15           questions about the ADC obtaining lethal
16           injection drugs from other states.  I
17           respectfully submit that to be beyond the scope
18           of discovery.  But I'm not instructing you not
19           to answer, I'm just making an objection.
20      A    Because we had a scheduled execution and we
21   couldn't obtain them through the manufacturer or a local
22   pharmacy, and the director contacted Tennessee and made
23   arrangements, and I contacted them and told them when I
24   would be there.
25      Q    Did you pay for them?
```

1  A   No.
2  Q   Did you have a prescription?
3  A   No.
4  Q   Did you have your DEA number yet?
5  A   I don't remember.  I think so, but I don't
6  remember.  I can look through the exhibits and answer
7  that question, if you want me to.
8  Q   No, that's okay.
9  A   I also obtained some from Texas.
10 Q   Looking at the logs here, as best as I can tell,
11 you obtained chemicals from Tennessee and you've given
12 chemicals to Tennessee; is that right?
13 A   Yes.
14 Q   In kind of layman's terms, is that kind of a
15 payback or a trade, so to speak, or was it each time
16 there was a need for them, at each location?
17 A   Each time there was a need for them.  And as best
18 I'm aware, the agreement my director had with other
19 directors any time there was an exchange was that there
20 would be a payback when needed.
21 Q   So who arranges these transfers, the directors?
22 A   They have to authorize them, yes.
23 Q   Is there anything in writing about that?
24 A   No.
25 Q   So these are all done verbally?

1  A    As far as I know.
2  Q    So there's no documentation or e-mails or memos or
3  anything about these various transfers?
4  A    I have it all in a log book.
5  Q    When did you obtain drugs from Texas?
6  A    It's going to take me a minute to figure it out.
7  It was in April of 2010.
8  Q    And how much did you obtain from them?
9  A    I don't remember which sheet is which, I'm sorry.
10 Q    And was that arranged through Mr. Hobbs and whoever
11 the director is of the Texas Department of Correction?
12 A    In Texas, there is a Department of Criminal
13 Justice, I think, and then there is a director for the
14 correctional piece of it, and it was the director for
15 the correctional piece.  I don't remember what his title
16 is.
17 Q    Did you go to Texas and pick them up?
18 A    Yes, I did.
19 Q    And where did you pick them up, Huntsville?
20 A    At the Walls; is that where they did executions
21 there?
22 Q    I believe, but I don't know for sure.  I believe
23 it's in Huntsville.
24 A    I went wherever they had them.
25 Q    Had they ever got any from you?

1  A   No.
2  Q   So Mississippi, Tennessee, and Oklahoma are the
3  only places that have got chemicals from you, or from
4  the Arkansas Department of Correction?
5  A   Yes.
6  Q   And just to be clear, you have obtained chemicals
7  outside of the distributors and so forth from Tennessee
8  and Texas, correct?
9  A   Yes.
10 Q   Any other governmental agency?
11 A   No.
12 Q   Do you still have any of the drugs that you
13 obtained from Texas and Tennessee on hand?
14 A   No.
15 Q   Have they been used, or have they expired and then
16 been disposed of?
17 A   They were provided to other states.  I don't have
18 them.
19 Q   Who's Julie Radovic, mentioned on Page 64 of your
20 documents?
21 A   I think she's who had to set up my account with
22 Hospira.
23 Q   But that's different than the sales person you've
24 discussed that with?
25 A   Right.  I never met her.  I never had any

PATIENT: Dock
DRUG/STR: Pentothal, 1g Lot 75-295-DK Exp 3/1/2011
DIRECTIONS: For injection
DOCTOR: ___  DOSAGE ROUTE: ___

PHARMACY: ___
RX# ___ RX DATE ___
RX# ___ RX DATE ___
RX# ___ RX DATE ___

TRANSFERRED FROM PAGE ___ QTY ___

| DATE | TIME | QTY ON HAND | AMOUNT USED | RCD FROM PHARM | TOTAL REM | NURSE'S SIGNATURE |
|---|---|---|---|---|---|---|
| 4/8/10 | 1500 | | | | | |
| 4/28/10 | 1625 | 6 | | 6 | | [signature] |
| 5/5/10 | 1408 | | | | | [signature] compounded Mississippi |
| 8/20/10 | 1617 | 0 | | | | [signature] to Larry Norris |

*[Rotated 90° — medication administration record]*

| DATE | TIME | QTY ON HAND | AMOUNT USED | RCD FROM PHARM | TOTAL REM | NURSE'S SIGNATURE |
|---|---|---|---|---|---|---|
| 4/8/10 | 1500 | | | 12 | | |
| 4/29/10 | 1625 | 12 | | | | Wendy Kelley |
| 5/5/10 | 1408 | | 12 provided Mississippi | | | Wendy Kelley |
| 2/20/10 | 1617 | 0 | | | | Wendy Kelley to Darwin Ramirez [signature] |

PATIENT: [illegible]
DRUG/STR: Pentobarbital 500 mg/12 [illegible] Lot# 75-580-OK Exp 3/1/2011
DIRECTIONS: injectable
DOCTOR: 
DOSAGE ROUTE: 

PHARMACY
RX# ___ RX DATE ___
RX# ___ RX DATE ___
RX# ___ RX DATE ___