IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RICHARD JORDAN, RICKY CHASE,**
**ROBERT SIMON, and ERIC THORSON**                               **PLAINTIFFS**

**VS.**                        **CIVIL ACTION NO.: 3:15-CV-295-HTW-LRA**

**TOMMY TAYLOR, Interim**
**Commissioner, Mississippi Department**
**of Corrections; MARSHAL TURNER,**
**Superintendent, Mississippi State**
**Penitentiary; THE MISSISSIPPI STATE**
**EXECUTIONER; and UNKNOWN**
**EXECUTIONERS**                                                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER ON DISCOVERY MOTIONS**

This matter came before the Court on several discovery motions filed by the parties. The Court has carefully studied those motions and the related responses and, for the reasons that follow, will issue partial rulings on some of the matters therein. The remainder of the issues raised will be further considered after oral argument.

**Defendants' Motion to Establish Deposition Protocols and to Clarify Existing Protective Order (Doc. #180):** This Motion targets any proposed depositions of employees of the Mississippi Department of Corrections (MDOC), or employees of the Office of the Attorney General (AG), who have been identified as having participated in the State's efforts to obtain lethal injection drugs. Highly protective of the identities of those persons, as well as the identities of any suppliers of those drugs, the Defendants are sensitive to any depositional procedure which would compromise these identities, or open any investigative doorways leading to the revelations of these identities. The Plaintiffs, on the other hand, object to any procedure that would prevent

1

their interaction with the deponents and/or curtail their ability to ask follow-up questions, or render the depositional process burdensome or time consuming.

Based on the parties' arguments, this Court has identified three possible approaches: (1) depositions (interrogatories) by the use of written questions; (2) telephonic depositions, with certain safeguards; and (3) in-person depositions, where the deponent would be shielded from view and his or her voice would be electronically altered. Each approach has advantages and disadvantages; still, on balance, the Court finds that telephonic depositions will be the best answer. This approach will allow the Defendants to protect their witnesses' identities, but will give the Plaintiffs an opportunity to interact in real time with the deponents. This process was used by agreement in a similar litigation in Missouri. *Ringo v. Lombardi*, No. 09-4095-cv-c-NKL, 2010 WL 3310240, at *6 (W. D. Mo., Aug. 19, 2010). This approach also has been utilized in other sensitive litigation posing similar concerns. *Beaulah v. Ellerbie*, 2005 WL 8165508, at *3 (M. D. Ga. Dec. 23, 2005) (telephone deposition to protect identity of confidential informant); *Borzillieri v. American Nat. Red Cross*, 139 F.R.D. 284, 289 (W.D.N.Y. 1991) (telephonic deposition to protect identity of donors of tainted blood). *Beaulah* is particularly instructive for its thoughtful construction of the mechanics for such a deposition.

Unless otherwise persuaded that telephonic depositions best balance the interests of all of the parties, the Court finds that this is the Court's choice from among the three alternatives. The precise process for the telephonic depositions must now be outlined; accordingly, this Court is open to suggestions from the parties as to how those depositions should proceed.

The Court will set a deadline for any suggestions from the parties. Thereafter, the Court will allow oral arguments on such.

The parties are advised to confer on any suggestions to determine if a joint recommendation can be reached.

The holding in *Beaulah* is a good resource for fashioning the parameters of the telephonic depositions. Additionally, the parties should consider the feasibility of using a voice-altering device.

**Motion to Depose Lay Witnesses and for 30(b)(6)[1] Depositions (Doc #182):**

The Plaintiffs want to depose a 30(b)(6) witness for MDOC; prior MDOC Commissioners Marshall Fisher and Pelicia Hall; Mississippi State Penitentiary (MSP) Superintendent Marshal Turner; MDOC employees previously identified as DOC 1, DOC 2, and DOC 3; Mississippi State Attorney General (AG) office employee AG 1; and anyone else involved in the procurement or attempted procurement of lethal injection drugs. The Defendants object. The objection, though, seems to be more against the scope of the examinations, rather than the examinations themselves.

The Court has carefully reviewed the issues raised by this Motion and the Response and Reply. Embedded in this motion are a number of questions and considerations: ramification of the Court's earlier Protective Order; caselaw regarding the Plaintiffs' burden of proof; time periods that may impact current issues; and identification of deponents with personal and/or

---

[1] Rule 30(b)(6) of the Federal Rules of Civil Procedure allows a party to depose a corporation, government agency, or other agency, as follows: "*Notice of Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules."

admissible knowledge of the subject matter.  The Court finds that these interrelated, central issues would be better addressed by a scheduled oral argument.

**Motion to Supplement Expert Disclosure (Doc. #184):**

By this Motion, the Plaintiffs seek to:

- Supplement the designation of Dr. Craig Stevens on the pharmacology of midazolam, to include further reports that have been disclosed to the Defendants in other litigation;

- Withdraw the designation of Mark Heath, M.D;

- Designate two new experts – Gail Van Norman, M.D. and Alan Kaye, M.D.;

- Withdraw the designation of Deborah Denno, J.D.; and

- Designate Eric Berger, J.D.

With regard to the supplementation of Dr. Stevens's report, the Plaintiffs argue that significant developments have occurred relative to available data on midazolam. According to Plaintiffs, Dr. Stevens can address these developments.  Defendants, say Plaintiffs, will not suffer any prejudice since Defendants already have the supplemental material.  The Court agrees and permits this supplementation. This Court will establish a deadline for such and this supplementation will be permitted, to be done by a deadline that will be established.

The Court has much more difficulty with Plaintiffs' request to withdraw Dr. Heath and replace him with Dr. Van Norman and Dr. Kaye.  Defendants object, arguing that Plaintiff's request should be denied because Dr. Van Norman's report covers the same issues and reaches the same substantive conclusions as  Dr. Stevens' supplemental report. Plaintiffs, argue Defendants, offer no explanation for the proposed late substitution, and offer "possibly scheduling conflicts" as an insufficient justification for untimely designating Dr. Kaye as an additional witness.

Whether to exclude the testimony of a witness designated after the deadline is governed by the four factors of *Geiserman*: namly, the importance of the witness's testimony; the prejudice to the opposing party of allowing the witness to testify; the possibility of curing such prejudice by granting a continuance; and the explanation, if any, for the party's failure to comply with the discovery order. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990); *Brumfield v. Hollins,* 551 F.3d 322, 330 (5th Cir. 2008).  Here, Plaintiffs have not provided any explanation why they wish to withdraw Dr. Heath; accordingly, the Court denies the request.

Even had this Court permitted a substitution for Dr. Heath, this Court would not have permitted one anesthesiologist to be replaced by two.  Such a substitution would require the Defendants to prepare for two witnesses, for the sole purpose of insuring that the Plaintiffs would have an expert if Dr. Van Norman was unavailable to give live testimony at trial.  At any rate, this part of the Motion will be denied.

Finally, the Plaintiffs want to replace Professor Deborah Denno with Professor Eric Berger.  Both are attorneys and, at least with respect to Professor Berger, the testimony is intended to establish to the Court the "evolving standards of decency" that have developed in the law and, according to Professor Berger, mandate the use of the Plaintiffs' preferred method of execution.  The Court agrees with the Defendants that this testimony is unnecessary.

"[M]erely being a lawyer does not disqualify one as an expert witness." *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997); however, the Court, not the experts, determines the legal solution to any issue.  *United States vs. Olivero*, 275 F.3d 1299, 1306-07 (11th Cir. 2001); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).  A quick Westlaw search for the term "evolving standards of decency" turned up seventy cases from the United States Supreme Court containing this term.  Many of those cases expound on the theory at length, and counsel may be

5

assured that the Court has read most, if not all, of them. This is a matter for which no expert testimony is required.

**Joint Motion for Modification of Revised Scheduling Order (Doc. #196):**

The parties jointly request:

- Suspending all deadlines, including the trial date;

- Setting a 90-day discovery period, to commence upon the entry of the orders regarding discovery; and

- Holding a status conference during the discovery period to re-set the deadlines and the trial date.

The ruling on this Motion is dependent upon the Court's resolution of the outstanding issues raised by the other Motions; therefore, the Court will make the necessary adjustments to the schedule during the telephonic conference with the parties.

A final matter is the issue of whether the Plaintiffs are necessary parties to this telephonic conference, a matter which is left to the discretion of the Court. *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977) (citing 18 U.S.C. § 2241(c)(5)). More than fifty years ago, the Supreme Court held that prisoners do not have a due process right to conduct oral argument on appeal:

> [A] prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate court. The absence of that right is in sharp contrast to his constitutional prerogative of being present in person at each significant stage of a felony prosecution, and to his recognized privilege of conducting his own defense at the trial. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right [of] parties in all the courts of the United States to plead and manage their own causes personally.

*Price v. Johnston*, 334 U.S. 266, 285–86 (1948), *overruled on other grounds*, *McCleskey v. Zant*, 499 U.S. 467 (1991) (quotation marks and citations omitted). Lower courts have extended this holding to civil cases. *See American Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 62 (8th Cir.1988) ("Civil rights plaintiffs generally have no constitutional right to be present at the trial

of their claims, [l]et alone the right to personally attend a pretrial conference.") (citations omitted); *Holt v. Pitts*, 619 F.2d 558, 560 (6th Cir.1980) ("Generally speaking, prisoners who bring civil actions, including prisoners who bring actions under the civil rights statute, 42 U.S.C. § 1983, have no right to be personally present at any stage of the judicial proceedings."); *see also Hawkins v. Maynard*, 89 F.3d 850, 1996 WL 335234, at *1 (10th Cir. June 18, 1996) (unpublished) ("A prisoner does not have an absolute right to be present at his civil trial or pretrial proceedings."). Logically, these same principles extend to a prisoner's request to participate by telephone. *Hernandez v. United States*, 2000 WL 744148 (S.D.N.Y. June 8, 2000).

In the civil trial context, the Fifth Circuit has explained that "a prisoner has no constitutional right to be present, or to testify, at his own civil trial." *Latiolais v. Whitley* 93 F.3d 205, 208 (5th Cir. 1996). But the Fifth Circuit has also made it clear that "the district court may not summarily exclude a prisoner-plaintiff from the trial of his civil rights lawsuit." *Id*. Instead, the district court must consider factors such as "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *Id*. The right of a prisoner to attend a pretrial or preliminary proceedings is substantially less.

The Court is of the opinion that the presence of the inmate Plaintiffs, either personally or by telephone, is not necessary for this conference. Ideally, their attorneys would notify the Court that they have agreed to waive any right to be present. In setting the telephonic conference, the Court will also set a deadline for the Plaintiffs to notify the Court of their intent in that regard.

IT IS, THEREFORE, ORDERED, as follows:

1. The Court will hold a telephonic conference on these Motions on Monday, April 27, 2020, at 10:00 a.m.

2. The Plaintiffs' Motion to Supplement Expert Testimony is granted, as to their request to supplement the expert report of Dr. Stevens.  It is denied as to their request to withdraw Dr. Heath and replace him with Dr. Van Norman and Dr. Kaye.  It is denied as to their request to substitute Professor Berger for Professor Denno.

3. The parties shall provide any supplemental information on deposition protocol by Friday, April 24, at 12:00 p.m.  No extensions of this deadline will be granted.

4. The Plaintiffs shall inform the Court by Monday, April 20, whether they intend to waive the presence of the inmate parties at the telephonic conference.  No extensions of this deadline will be granted.

IT IS SO ORDERED, this the 17th day of April, 2020.

**/s/HENRY T. WINGATE**
UNITED STATES DISTRICT JUDGE