IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **RICHARD JORDAN and RICKY CHASE** | **PLAINTIFFS** |
| **THOMAS EDWIN LODEN, JR.,** **ROGER ERIC THORSON, and** **ROBERT SIMON, JR.** | **INTERVENORS** |
| VS. | No. 3:15-cv-00295-HTW-LRA |
| **BURL CAIN, Commissioner,** Mississippi Department of Corrections, in his Official Capacity; **MARC MCCLURE,** Superintendent, Mississippi State Penitentiary, in his Official Capacity; **THE MISSISSIPPI STATE EXECUTIONER,** in his Official Capacity; an **UNKNOWN EXECUTIONERS,** in their Official Capacities | **DEFENDANTS** |

**STATE DEFENDANTS' RESPONSE TO MOTION FOR ORDER
UNDER THE ALL WRITS ACT PRESERVING THIS COURT'S ABILITY TO
RENDER FULL JUDGMENT, OR, IN THE ALTERNATIVE, FOR TEMPORARY
RESTRAINING ORDER OR PRELIMINARY INJUNCTION BASED ON COUNT
THREE OF THE FIRST AMENDED COMPLAINT**

COME NOW, Defendants Burl Cain, in his official capacity as Commissioner of the Mississippi Department of Corrections ("MDOC"), Marc McClure, in his official capacity as the Superintendent of the Mississippi State Penitentiary ("MSP"), and the Mississippi State Executioner, in his official capacity (collectively referred to as "the State"), by and through undersigned counsel, and responds to Plaintiffs' and Plaintiff-Intervenor, Thomas Edwin Loden, Jr.'s motion for an order under the All Writs Act preserving this Court's ability to render full judgment, on, in the alternative, for temporary restraining order or preliminary injunction based on Count Three of the First Amended Complaint, as follows:

1

## STATEMENT OF FACTS

In 2000, Loden kidnapped sixteen-year-old Leesa Marie Gray after discovering her stranded on the side of the road. *Loden v. State*, 971 So. 2d 548, 552 (Miss. 2007) ("Loden I"). He spent the next four hours repeatedly raping and sexually battering Leesa before suffocating and manually strangling her. *Id.* Loden videotaped various portions of the torture he inflicted on Leesa. *Id.* He was indicted for capital murder, rape, and four counts of sexual battery. *Id.* Loden waived his right to a jury for guilt and sentencing determinations and pleaded guilty to all six charges. *Id.* The Circuit Court of Itawamba County accepted his plea and held a sentencing hearing. *Id.* Loden waived cross-examination of all the State's witnesses, waived objections to all the State's exhibits, and did not offer any mitigation evidence. *Id.* The circuit court sentenced Loden to death, finding that all four factors under Mississippi Code Annotated section 99-19-101(7) were satisfied and "that sufficient aggravating circumstances existed, and that the mitigating circumstances do not outweigh the aggravating circumstances and that the death penalty should be imposed." *Id.* (internal quotation marks omitted). The circuit court also sentenced Loden to thirty years in the custody of the Mississippi Department of Corrections for rape and thirty years for each of his four sexual battery convictions. *Loden v. State,* 264 So. 3d 707, 709 (Miss. 2018) ("Loden VI"). The circuit court ordered his sentences to run consecutively. *Id.*

## PROCEDURAL HISTORY

In his current motion, Loden spends considerable time discussing the procedural history of the case now before this Court. Most of his recitation is largely irrelevant and is meant to present this case as procedurally complicated. However, the relevant facts regarding the procedural history of this case insofar as they pertain to Loden are relatively simple.

The Mississippi Attorney General's Office has filed a motion before the Mississippi Supreme Court to set Plaintiff Loden's execution date.  Prior to the State filing its motion, Loden intervened in this lawsuit filed by two other condemned inmates (Richard Jordan and Ricky Chase originally filed the suit; Robert Simon, Roger Thorson, and Loden intervened in the case).  The case now before this Court is styled as a Complaint for Preliminary and Permanent Injunctive Relief under 42 U.S.C. §1983.  It does not challenge the death penalty sentence that each Plaintiff and Intervenor has received.  Instead, the Plaintiffs challenge the manner in which the State plans to carry out their executions.  Specifically, the Plaintiffs claim that Mississippi's death penalty protocol violates the Eighth Amendment ban against cruel and unusual punishment.

Mississippi's lethal injection protocol provides for the use of Midazolam as the first drug if sodium pentothal or pentobarbital cannot be obtained. After MDOC revised the protocol to allow for the use of Midazolam because it could no longer obtain pentobarbital or sodium pentothal, this Court granted a preliminary injunction preventing MDOC from conducting executions with compounded pentobarbital or midazolam.  The Fifth Circuit reversed and vacated the injunction. *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016).

Loden has challenged his conviction and sentence many times. The Mississippi Supreme Court rejected all of his claims on direct appeal in *Loden I*. The Mississippi Supreme Court also denied Loden's petition for post-conviction relief, *Loden v. State*, 43 So. 3d 365 (Miss. 2010) ("Loden II"); his successive petition for post-conviction relief, *Loden v. State*, 222 So. 3d 312 (Miss. 2017) ("Loden V"); and his second successive petition for post-conviction relief in Loden VI.  The United States District Court for the Northern District of Mississippi rejected Loden's federal habeas petition, *Loden v. Epps*, 2013 WL 5243670, Civil Action No. 1:10CV311-NBB (N.D. Miss. 2013) ("Loden III"), and the Fifth Circuit affirmed, *Loden v. McCarty*, 778 F.3d 484

(5th Cir. 2015) ("Loden IV").  With the Mississippi Supreme Court's 2018 denial of Loden's second successive petition for post-conviction relief, Loden's pursuit of state and federal relief from his death penalty sentence came to an end.

There is nothing pertaining to the case now before this Court which would impede setting Loden's execution.  This case simply challenges the manner in which MDOC will carry out Plaintiffs' and Intervenors' executions. Plaintiffs and Intervenors admit that MDOC can no longer obtain sodium pentothal.  First Am. Compl. at ¶ 77. They claim that, because three other States have carried out executions using pentobarbital in a single-drug protocol, MDOC can obtain pentobarbital, and the use of pentobarbital in a single-drug protocol constitutes a feasible and available alternative to MDOC's three-drug protocol. *Id.* at ¶¶ 187-90.  However,  MDOC has made multiple attempts to obtain pentobarbital but has been able to acquire pentobarbital in any form. *See* Defendants' Sixth Supplemental Responses and Objections to Plaintiffs' Interrogatories at pp. 11-18, attached hereto as Exhibit 1.  Accordingly,  MDOC will  carry out Loden's execution with Midazolam as the first drug, followed by the sequential administration of vecuronium bromide and potassium chloride.

Loden now seeks an order from this Court requiring the Attorney General to withdraw the Motion to Set Execution Date currently pending before the Mississippi Supreme Court, or in the alternative prohibiting MDOC from executing him or any of the other Plaintiffs in this matter until the litigation is completed.  While Loden seeks to enjoin the State to withdraw its motion to set an execution date, the substance of Loden's motion actually seeks to stay his execution.  Loden claims that this Court may grant such relief pursuant to the All Writs Act, 28 U.S.C. §1651(a).

For the reasons set forth below, Loden is wrong.  The All Writs Act cannot be used to circumvent the requirements of Rule 65 of the Federal Rules of Civil Procedure.  Because Loden

has not shown a significant possibility of success on the merits of his claim that the State's use of Midazolam would violate his Eighth Amendment rights, this Court should deny his motion.

## ARGUMENT

### A. The State's and Loden's Participation in this Lawsuit Gains Loden Nothing

The fact that Loden is an Intervenor in the case now before this Court gains him nothing. In *Glossip v. Gross,* 576 U.S. 863 (2015), Charles Warner was one of Oklahoma four death penalty inmates who moved for a preliminary injunction to block their execution. Oklahoma nonetheless successfully executed him before the conclusion of the litigation in *Glossip. Glossip,* 576 U.S. at 871-72.

The fact that Oklahoma executed Charles Warner while he was seeking a preliminary injunction to block his execution does not appear to have disturbed the United States Supreme Court. This fact merely earned a parenthetical mention in the Supreme Court's analysis. *Glossip,* 576 U.S. at 871-72. The fact that Loden would be executed before the conclusion of this case should also not concern this Court.

### B. The All Writs Act Cannot Be Used to Stay a State Execution

The All Writs Act states, "the Supreme Court and all Courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Loden correctly points out that the All Writs Act must be read along with the Anti-Injunction Act which bars a federal court from enjoining a proceeding in a state court unless that action is "expressly authorized by Acts of Congress, or where necessary in aid of jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2238. Under the Anti-Injunction Act, any doubts about the propriety of a federal injunction should be resolved in favor of permitting the state courts to proceed, and the explicit wording of the Act

implies as much. *Smith v. Bayer Corporation,* 564 U.S. 299, 307 (2011); *Apkim Corporation v. McCall,* 888 F.3d 129, 143 (5th Cir. 2018); *United States v. Billingsley,* 615 F. 3d 404, 409 (5th Cir. 2010). The core message of the Anti-Injunction Act is one of respect for state courts. *Bayer Corporation,* 564 U.S. at 306; *IDs Property Casualty Insurance Company v. Meeks,* 537 Fed. Appx. 513, 517 (5th Cir. 2013).

"The All Writs Act provides 'power to a federal court to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Moore v. Tangipahoa Par. Sch. Bd.*, 507 Fed. App'x 389, 396 (5th Cir. 2013) (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977)). In order for this Court to grant Loden relief under the All Writs Act, Loden must carry his burden of satisfying three independent requirements. *See Moore*, 507 Fed. App'x at 396 ("Three elements must be satisfied for a district court to act pursuant to [the All Writs Act], and the burden of establishing them in the district court is on the Petitioners.") (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)).

First, he must show that he "ha[s] no other adequate means to attain the relief he desires." *Moore*, 507 F. App'x at 397 (quoting *Cheney*, 542 U.S. at 380). "When alternative means of relief are available, the court should not issue a writ." *Moore*, 507 F. App'x at 397. Loden cannot meet that requirement. He has an adequate and alternative means of obtaining the relief he desires: filing a motion for preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Indeed, the Fifth Circuit has held that "the All Writs Act does not free a district court from the restraints of Rule 65," and that "Rule 65 provides sufficient protection for the jurisdiction of the district court." *Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir.

6

1979). Accordingly, Loden cannot perform an end-run around Rule 65 by seeking relief under the All Writs Act.

Second, he "must meet [his] burden of showing that [his] right to issuance of the writ is clear and indisputable." *Moore*, 507 F. App'x at 397 (quoting *Cheney*, 542 U.S. at 381). To meet his burden, he is required to demonstrate that the State's filing of a motion to set his execution date constitutes a "direct affront" to an order entered by this Court. *Id.* (citing *United States v. Hall*, 472 F.2d 261, 262-64 (5th Cir. 1972) (upholding injunction under All Writs Act prohibiting member of militant group from violating order entered in school desegregation case). Loden has plainly failed to satisfy this requirement. This Court has not entered any order prohibiting Defendants from executing Loden. Further, the State's motion to set Loden's execution date does not represent a "direct affront" to any order of this Court. Last, Loden cannot establish that he is clearly entitled to a writ because he has presented no evidence that he is substantially likely to succeed on his Eighth Amendment method-of-execution claim. *Cf. Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (vacating injunction under All Writs Act where there was no evidence or findings by district court that sheriffs had committed constitutional violations or violated consent decree).

Third, Loden must show that a writ "is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. "[T]he authority under the All Writs Act 'is to be used sparingly and only in the most critical and exigent circumstances.'" *Moore*, 507 F. App'x at 398 (quoting *Wisc. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004)). Here, there are no exigent circumstances "to warrant the 'extraordinary remedies' provided by the All Writs Act." *Moore*, 507 F. App'x at 398. This case has been pending for more than six years. Plaintiffs and Intervenors have had more than sufficient time to gather evidence to support their Eighth Amendment claim. Loden has not

offered any reason why he cannot obtain the relief he seeks by filing a proper motion for injunctive relief under Rule 65.

In any event, the United States Supreme Court directly addressed the issue of whether the All Writs Act can be used to enjoin a death penalty inmate's execution in *Dunn v. McNabb,* 138 S.Ct. 369 (2017). In *Dunn,* the Court held, "inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. . . . The All Writs Act does not excuse a court from making these findings." *Dunn,* 138 S.Ct. at 369 (citation omitted). Accordingly, the Supreme Court vacated the injunction entered under the All Writs Act because the district court "enjoined respondent's execution without finding that he has a significant possibility of success on the merits." *Id. See also Lecroy v. United States,* 975 F. 3d 1192, 1197 (11th Cir. 2020) (All Writs Act cannot be used to evade the requirements for a preliminary injunction).

*Dunn* relied upon *Hill v. McDonough,* 547 U.S. 573 (2006), as controlling the issue of whether a death penalty inmate could obtain an injunction under the All Writs Act absent a showing of a significant possibility of success on the merits. In *Hill,* a death row inmate filed a §1983 action challenging the constitutionality of Florida's three-drug protocol. *Hill,* 547 U.S. at 578. The inmate sought to enjoin the State from executing him. *Id.* Justice Kennedy, writing for the Court, ruled that the filing of a §1983 action did not entitle a complainant to an order staying an execution as a matter of course. *Hill,* 547 U.S. at 584. Instead, like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id.*

The United States Court of Appeals for the Sixth Circuit examined the application of the All Writs Act to an inmate's challenge to a State's death penalty protocol in *Cooey II v. Strickland,* 589 F. 3d 210 (6th Cir. 2009). There, an inmate moved to stay his execution under the All Writs Act. *Cooey II,* 589 F. 3d at 218. The prisoner argued that that the Court could stay his execution without a showing of a likelihood of success on the merits because the All Writs Act looked to the exercise of the Court's jurisdiction which would be lost upon the execution of the inmate. *Cooey II,* 589 F. 3d at 234. The Sixth Circuit rejected the inmate's argument finding that ". . . there is no reason why the All Writs Act can or should be used to thwart the proper application of the TRO factors." *Id.*

Other federal courts of appeal have ruled that the All Writs Act cannot be used to stay a prisoner's execution without meeting the requirements of a preliminary injunction. In *Lambert v. Buss,* 498 F. 3d 446 (7th Cir. 2007), a condemned prisoner sought to avoid his execution by invoking the All Writs Act. *Lambert,* 498 F. 3d at 454. The United States Court of Appeals for the Seventh Circuit rejected the prisoner's position and held, "there is no reason why the All Writs Act can or should be used to thwart the proper application of the factors associated with the issuance or denial of a preliminary injunction. The same is true, of course, of the Anti-Injunction Act. . ." *Id.*

Plaintiff Loden cites dictum from several cases, *ITT Community Development Corporation v. Barton* ("an injunction against state court proceedings is proper when it is 'directed at conduct which, left unchecked, would have the practical effect of diminishing the court's power to bring the litigation to a natural conclusion"), *Newby v. Enron Corporation* ("Injunctions authorized by the language in both statutes may be issued when 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the

9

federal court's flexibility and authority to decide that case'), and *In re Baldwin-United Corporation (Single Premium Deferred Annuities Insurance Litigation)* ("even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case"). However, Loden does not explain *how* this Court would be prevented from bringing the case now before this Court to a natural conclusion, *how* this Court's flexibility and authority to decide this case would be impaired, or how this Court's jurisdiction would be affected. The case at bar will continue should Loden be executed because there are several other Plaintiffs. *See Ringo v. Lombardi*, 2009 WL 1406980, at *1 (W.D. Mo. May 19, 2009) ("[T]his lawsuit may proceed even in Skillicorn's absence. Therefore, his execution will not interfere with the Court's jurisdiction to determine whether the declaration of law sought by the Plaintiffs should be granted."). Nor does Loden address the authority from the United States Supreme Court that has rejected the very argument he is making in his motion.

Moreover, *Newby v. Enron Corporation, In re Baldwin-United Corporation (Single Premium Deferred Annuities Insurance Litigation)* and *Valley v. Rapides Parish School Board*, cases principally relied upon by Loden to support his argument that an injunction in this matter can be issued pursuant to the All Writs Act, are factually distinguishable from the case before this Court. Specifically, *Newby* and *Baldwin-United* both are multi-district litigation cases that do not involve one State's effort to carry out a criminal sentence while *Valley* is a school desegregation case involving an entire school district and also does not involve the death penalty.

### C. Plaintiff Loden Must Prove the Requirements of a Stay Before Obtaining Relief

Loden argues that, even if the All Writs Act does not authorize this Court to enjoin the State from setting an execution date, Count III of the Amended Complaint provides ample justification for the entry of a preliminary injunction. Count III of the Amended Complaint challenges the State's use of a three-drug protocol in carrying out executions. It is alleged that the State's three-drug protocol, in which Midazolam is first administered, followed by a paralytic agent and potassium chloride, violates the Eighth Amendment ban against cruel and unusual punishment. Again, Loden is wrong.

In *Nelson v. Campbell,* 541 U.S. 637 (2004), the United States Supreme Court definitively ruled that the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right. *Nelson,* 541 U.S. at 649. The United States Court of Appeals for the Fifth Circuit has ruled that a stay of execution is an equitable remedy not available as a matter of right. *Buntion v. Lumpkin,* 31 F.4th 952 (5th Cir. 2022). Instead, an inmate must satisfy the four factor test announced by the United States Supreme Court in *Nken v. Holder,* 556 U.S. 418 (2009): (1) whether the Complainant has made a strong showing of likely success on the merits, (2) whether the Complainant will be irreparably injured in the absence of a stay, (3) whether a stay would injure other interested parties, and (4) where the public interest lies. *Buntion,* 31 F.4th at 958. *See also, United States v. Vialva,* 976 F. 3d 458, 460-61 (5th Cir. 2020) (same); *Crutsinger v. Davis,* 936 F. 3d 265, 271 (5th Cir. 2019) (same). In the case now before this Court, Loden does not challenge his death penalty sentence. Rather, he challenges the manner in which his execution will be carried out as violative of the Eighth Amendment. However, he cannot show a likelihood of success that the manner in which the State plans to carry out his sentence violates the Eighth Amendment.

11

In order to prevail on his Eighth Amendment challenge to Mississippi's protocol, Loden must satisfy two requirements: (1) he must establish that the "State's method of execution presents a substantial risk of serious harm – severe pain over and above death itself" and, (2) he must "identify an alternative method that is feasible, readily implemented, and in fact significantly reduces the risk of harm involved" and that the State has refused to adopt without a legitimate penological reason. *Nance v. Ward,* 142 S.Ct. 2214, 2220 (2022); *Glossip,* 576 U.S. at 877-78; *Baze v. Rees,* 553 U.S. 35 (2008). As to the second requirement, the Supreme Court has observed that there is "little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative—assuming, of course, that the inmate is more interested in avoiding unnecessary pain than in delaying his execution." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1128-29 (2019). Here, Plaintiff Loden cannot satisfy either of these requirements.

In *Glossip,* the United States Supreme Court upheld the use of Oklahoma's three-drug death penalty protocol. Like Mississippi's three-drug protocol, Oklahoma's protocol sanctioned the use of Midazolam followed by a paralytic agent and potassium chloride. *Glossip,* 576 U.S. at 871. When upholding Oklahoma's use of Midazolam in executions, Justice Alito, writing for the Court, noted, "this Court has never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment." *Glossip,* 576 U.S. at 869. *See also Bucklew,* 139 S.Ct. at 1124 (United States Supreme Court has yet to hold a State's method of execution qualifies as cruel and unusual punishment).

*Glossip* upheld the constitutionality of a three-drug death penalty protocol and the use of Midazolam. *Bucklew* followed *Glossip* and provides additional support for the constitutionality of Mississippi's death penalty protocol. This Court should follow *Glossip* and *Bucklew* and uphold Mississippi's use of Midazolam in its three drug protocol. The United States Supreme Court has

12

ruled that the use of Midazolam does not violate the Eighth Amendment and this Court should follow the United States Supreme Court.  This Court should find that Mississippi's three-drug protocol is constitutional.

Moreover, Loden cannot prove a substantial likelihood of success on his Eighth Amendment claim because he has presented no evidence that the State's three-drug protocol "creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives."  *Glossip*, 576 U.S. at 878. Instead, he merely relies on the allegations in the First Amended Complaint. That is plainly insufficient to justify the entry of a preliminary injunction. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("Although the district court may employ informal procedures and rely on generally inadmissible evidence [in issuing a preliminary injunction], the record must nevertheless support the district court's decision."); *Collins v. Bank of Am.*, 2012 WL 13027435, at *11 (N.D. Tex. Dec. 19, 2012) (denying preliminary injunction where plaintiffs merely relied on allegations in complaint).  The Court cannot simply accept the allegations regarding the risk of pain in the operative complaint as true.  Defendants dispute those allegations and present for the Court's consideration the Declaration of Joseph Antognini, M.D., M.B.A, attached hereto as Exhibit 2. Dr. Antognini's declaration demonstrates that the State's three-drug protocol does not present a substantial risk of serious pain.

Loden has also not identified an alternative method of execution that is feasible, readily implemented, and that significantly reduces the risk of harm.  He suggests that the State should use a single dose of pentobarbital, but he has not identified any supplier who is willing to sell pentobarbital to MDOC for use in executions.  As noted above, MDOC has made multiple attempts to obtain pentobarbital but all of those efforts have proved unsuccessful.  *See* Exhibit 1 at pp.11-

18. The fact that the State cannot obtain pentobarbital is a legitimate penological reason for not using that drug. *See Glossip*, 576 U.S. at 878 (affirming district court's finding "that both sodium thiopental and pentobarbital are now unavailable to Oklahoma's Department of Corrections").

Plaintiffs further claim that, because Texas, Georgia, and Missouri have carried out executions with a single dose of pentobarbital, pentobarbital is a feasible and readily implemented alternative. But this Court has already rejected this argument. Doc. 221 at 5 ("The fact that another state may have obtained pentobarbital at any point is not persuasive evidence that Mississippi could obtain it in a timely fashion to execute these Plaintiffs."). So have other courts. *See In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (rejecting argument that "because other states have been reported to have obtained compounded pentobarbital for use in executions," a barbiturate-only protocol was a feasible alternative); *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268, 1302 (11th Cir. 2016) ("We expressly hold that the fact that other states in the past have procured [compounded pentobarbital] . . . does not make it available to the ADOC for use in lethal injections in executions."), *abrogated on other grounds by Bucklew*, 139 S.Ct. at 1127–29. Even were pentobarbital available, Loden has not shown that the use of pentobarbital in a single-drug protocol would significantly reduce the alleged risk of pain posed by MDOC's three-drug protocol. Again, Loden cannot prove that he has a strong likelihood that he will be successful on the merits of this Eighth Amendment challenge to Mississippi's protocol.

Furthermore, the other preliminary injunction factors do not weigh in Loden's favor. The United States Supreme Court has recognized that States have a strong interest in enforcing their criminal judgments without undue interference from federal courts. *Hill,* 547 U.S. at 584; *Nelson,* 541 U.S. at 650.

14

## **CONCLUSION**

Loden argues that this Court should enjoin the State from setting an execution date or that, in the alternative, this Court should enjoin the State from executing him or any of the other Plaintiffs in this case. He relies upon the All Writs Act for the vehicle under which this Court can enter an injunction. However, for the reasons set forth above, Loden is wrong. The All Writs Act cannot be used to delay a state execution. Instead, Loden must satisfy the requirements for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure.

Loden claims that he has satisfied the requirements for a preliminary injunction. Again, Loden is wrong. He cannot establish a strong likelihood that his Eighth Amendment challenge to the State's death penalty protocol will be successful nor can he establish that the equities in this case override the State's strong interest in enforcing their criminal judgments without undue interference from federal courts. Accordingly, this Court should not hesitate to deny Loden's motion.

THIS the 28th day of October, 2022.

By:  **LYNN FITCH**
     ATTORNEY GENERAL
     STATE OF MISSISSIPPI

By:  */s/ Gerald L. Kucia*
     Gerald L. Kucia, MSB No. 8716
     Wilson Minor, MSB No. 102663
     SPECIAL ASSISTANT ATTORNEYS GENERAL
     ATTORNEYS FOR DEFENDANTS

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-4072
Telefax: (601) 359-2003
gerald.kucia@ago.ms.gov

## CERTIFICATE OF SERVICE

  This is to certify that I, Gerald L. Kucia, Special Assistant Attorney General for the State of Mississippi, served a copy of the foregoing document via email upon all counsel of record.

  This the 28th day of October, 2022.

            <u>/s/ Gerald L. Kucia</u>
            Gerald L. Kucia