

**ATTORNEY GENERAL**

CIVIL LITIGATION DIVISION

November 23, 2022

**VIA E-MAIL**
Honorable Henry T. Wingate
501 East Court Street, Suite 6.750
Jackson, MS 39201
wingate_chambers@mssd.uscourts.gov

      RE:   *Richard Jordan, et al. v. Burl Cain, et al.*, Civil Action No. 3:15-cv-00295-HTW-LGI, in the United States District Court for the Southern District of Mississippi, Northern Division

Dear Judge Wingate:

In accordance with the Court's November 21, 2022 Order [Doc. 267], Defendants submit the following responses to the questions raised by the Court in its Order.

## I. How have federal courts applied the Anti-Injunction Act's exception for injunctions "where necessary in aid of jurisdiction" in cases seeking a stay of execution, if at all?

The All Writs Act states, "the Supreme Court and all Courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The All Writs Act must be read in conjunction with the Anti-Injunction Act, which prohibits a federal court from enjoining a proceeding in a state court unless that action is "expressly authorized by Acts of Congress, or where necessary in aid of jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2238.

As discussed in the Defendants' response to the Plaintiffs' motion [Doc. #260, 264], the United States Supreme Court directly addressed the issue of whether the All Writs Act can be used to enjoin a death penalty inmate's execution in *Dunn v. McNabb*, 138 S. Ct. 369 (2017). The Court rejected the position that the All Writs Act can be used to enjoin an execution. The Court held, "inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. . . . The All Writs Act does not excuse a court from making these findings." *Dunn*, 138 S. Ct. at 369 (citation omitted). Other federal courts have reached the same conclusion as *Dunn*. *United States v. Johnson*, 838 Fed. Appx. 765 (4th Cir. 2021) (to obtain a stay of execution an inmate must show that he has a significant possibility of success on the merits); *Lecroy v. United States*, 975 F. 3d 1192, 1197 (11th Cir. 2020) (All Writs Act does not

absolve inmate from making necessary showing to obtain a stay); *Cooey II v. Strickland*, 589 F. 3d 210, 234 (6th Cir. 2009) (there is no reason why the All Writs Act can or should be used to thwart the proper application of the TRO factors); *Lambert v. Buss*, 498 F. 3d 446 (7th Cir. 2007) (same applies for Anti-Injunction Act).

Specifically addressing whether the federal district court would be deprived of jurisdiction by executing one condemned inmate in a case involving multiple death row inmates, the trial court in *Cooey* declared, "An injunction staying Biros's execution is not necessary to preserve this Court's jurisdiction over this matter because, as draconian as it may sound, this action may proceed even in Biros's absence." *Cooey v. Strickland*, No. 2:04-CV-1156, 2009 WL 4842393, at *101 (S.D. Ohio Dec. 7, 2009).

## II. Please brief the most up-to-date case law applying the All Writs Act and Anti-Injunction Act that is applicable to this case.

The Defendants incorporate their response to the Plaintiffs' motion [Doc. 260, 264]. The Defendants maintain that cases rejecting the application of the All Writs Act and Anti-Injunction Act to executions include *Dunn v. McNabb*, 138 S.Ct. 369 (2017); *Lecroy v. United States*, 975 F. 3d 1192, 1197 (11th Cir. 2020); *Cooey II v. Strickland*, 589 F. 3d 210 (6th Cir. 2009); and *Lambert v. Buss*, 498 F. 3d 446 (7th Cir. 2007).

## III. Does the Defendants' participation in the instant litigation over the course of the past several years without seeking an execution date for any of the Plaintiffs weigh in favor of issuing a writ staying execution, in light of the equitable nature of the remedy?

No. That the State could have moved to set Loden's execution date at an earlier date does not weigh in favor of staying his execution. Loden has not shown and cannot show that he has been prejudiced in any way by the fact that the State did not immediately move to set his execution date after he exhausted all of his federal and state post-conviction remedies. If anything, Loden has benefited from the delay–he has not been executed—and he has had more time to litigate his claims in this case.

Moreover, Defendants in this case have never stipulated or agreed that the State would not move to set any of the Plaintiffs' execution dates during the pendency of this litigation. Therefore, the Court should reject Plaintiffs' argument that their executions should be stayed until the conclusion of this case based on Defendants' "years of acquiescence" and "cooperation" in this "lengthy litigation." [Doc. 261 at 35]; *see Smith v. Dunn*, 568 F. Supp. 3d 1244, 1265 (M.D. Ala. 2021) (rejecting similar argument because plaintiff cited "nothing in the record indicating that the Defendants informally agreed or even represented to him that the State would not move to set his execution until his case is over" and offered "no persuasive reason why the State would not be able to take concurrent action to set his execution while this case is pending").

Moreover, the balance of the equities weighs heavily in favor of Defendants and against a stay. The Supreme Court has recognized that both the "State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Hill v. McDonough*, 547 U.S.

573, 584 (2006). Further, "a stay of execution is an equitable remedy," and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*; *cf. Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment."). The State and the family of Leesa Marie Gray, Loden's murder victim, have waited over twenty-one years to see Loden's death sentence carried out. This Court should not further delay the enforcement of Loden's sentence.

IV. **Does the fact that the Mississippi Supreme Court has now set an execution date render moot Plaintiffs' argument that they need not satisfy the four-factor stay analysis provided in *Nken v. Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009), and *Buntion v. Lumpkin*, 31 F. 4th 952 (5th Cir. 2022)?**

Yes. Plaintiffs argued that the Court should enjoin and order Defendants, their attorneys, and Attorney General Lynn Fitch to withdraw the motion to set Loden's execution date that was filed by the Attorney General's Office with the Mississippi Supreme Court. [Doc. 261 at 26]. According to the Plaintiffs, the Court could grant this relief under the All Writs Act without applying the four-factor preliminary injunction test. [Doc. 261 at 22-23]. Now that the Mississippi Supreme Court has granted the State's motion to set execution date following Loden's response in opposition, this request for relief has been rendered moot.

V. **Do intervening factual developments and/or case law alter the applicability of the United States Supreme Court's opinion in *Glossip v. Gross*, 576 U.S. 863, 135 S. Ct. 2726, 192 L. Ed. 2d 761 (2015), to the Plaintiffs' claim that any three drug lethal injection protocol violates the Eighth Amendment to the United States Constitution? How should this Court apply more recent Circuit Court precedents addressing three drug protocols, such as *Middlebrooks v. Parker*, 22 F. 4th 621 (6th Cir. 2022)?**

In *Glossip*, the United States Supreme Court upheld the use of Oklahoma's three-drug death penalty protocol. *Glossip*, 576 U.S. at 884. Like Mississippi's three-drug protocol, Oklahoma's protocol sanctioned the use of Midazolam followed by a paralytic agent and potassium chloride. *Glossip*, 576 U.S. at 871. *Glossip* continues to be the law and has been followed in numerous jurisdictions. *Johnson v. Hutchinson*, 44 F. 4th 1116 (8th Cir. 2022); *In re Ohio Protocol*, 860 F. 3d 881 (6th Cir. 2017); *Whitaker v. Collier*, 862 F. 3d 490 (5th Cir. 2017); *Grayson v. Warden*, 869 F. 3d 1204 (11th Cir. 2017); *Miller v. Parker*, 909 F.3d 827 (6th Cir. 2018).

*Glossip* established the framework for an inmate's challenge to a state's method of execution. The inmate must initially prove that the State's death penalty protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to known and available alternatives. *Glossip*, 576 U.S. at 877-88. Additionally, the inmate must also establish the existence of a known and available alternative method of execution that would entail a significantly less risk. *Id.* at 878.

*Glossip* must be read in conjunction with *Bucklew v. Precythe,* 139 S. Ct. 1112 (2019), which examines the second prong of an inmate's Eighth Amendment method of execution claim. In *Bucklew,* the United States Supreme Court clarified the second prong of a method of execution claim and held, ". . . an inmate must show his proposed alternative method is not just theoretically 'feasible' but also 'readily implemented.' This means the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out 'relatively easily and reasonably quickly." *Bucklew,* 139 S. Ct at 1129 (internal citations omitted).

Applying the *Glossip/Bucklew* analysis to this case requires that this Court first determine whether the Plaintiffs have established that Mississippi's three-drug protocol, involving the use of Midazolam, creates a demonstrated risk of severe pain. *Glossip* answers this question in the negative and expressly sanctions the use of a three drug protocol that uses Midazolam as one of the drugs. Therefore, the Plaintiffs cannot satisfy the first element of their Eighth Amendment method-of-execution claim.

Were this Court to somehow conclude that Plaintiffs have met the first prong of their method of execution claim, *Glossip* and *Bucklew* require that Plaintiffs prove that their proposed alternative method of execution, a single dose of pentobarbital, could be readily implemented by the State. To meet their burden, Plaintiffs must demonstrate that the State could obtain pentobarbital relatively easily and reasonably quickly. This Court has held that this requires Plaintiffs to "show that pentobarbital could be obtained by the State through 'ordinary transactional effort[.]" [Doc. Doc. 221 at 4]. Like the first element of their claim, the Plaintiffs cannot satisfy this element. The Plaintiffs have presented no evidence that the State could obtain pentobarbital relatively easily or through ordinary transactional effort.

The Plaintiffs have not identified a single supplier willing and able to sell pentobarbital to the State for use in executions. Instead, they merely argue that the State could obtain pentobarbital because a handful of other States have reportedly carried out executions with a single dose of pentobarbital. As Defendants argued in their response to Plaintiffs' motion, that is insufficient to satisfy the second prong of *Glossip* and *Bucklew*. *See In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017); *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268, 1302 (11th Cir. 2016) *abrogated on other grounds by Bucklew*, 139 S. Ct. at 1127–29. Moreover, MDOC has made multiple attempts to obtain pentobarbital in the last five years but has been unable to acquire the drug. Because MDOC cannot acquire pentobarbital, the Court should find that Plaintiffs' proposed method of execution is not feasible and cannot be readily implemented.

*Middlebrooks v. Parker* is factually and legally distinguishable. In *Middlebrooks*, the Sixth Circuit Court of Appeals reviewed a Rule 12(b)(6) dismissal by a trial court based upon res judicata. *Middlebrooks,* 15 F. 4th at 789. The *Middlebrooks* Court noted, "The only issue in this appeal is whether Middlebrooks' facial and as-applied claims are barred by res judicata. . ." *Id.* Because the *Middlebrooks* Court had to determine whether the trial court properly granted the 12(b)(6) motion, the court was required to accept the allegations of the Plaintiff's Complaint as true. *Id.* at 790. The *Middlebrooks* Court then had to decide whether res judicata applied or whether there had been a plausible change of facts or circumstances from an earlier case

involving the same claims and the same parties. *Id.* The *Middlebrooks* Court ruled that res judicata did not apply to the case before it. *Id.* at 790-91.

Here, the Court is not confronted with a Rule 12(b)(6) motion and therefore not bound to accept the allegations of the complaint as true. Instead, the Plaintiffs have had approximately seven years to establish that their alternative proposal can be readily implemented by the State. Despite ample opportunity through discovery, Plaintiffs have failed to present any evidence to this Court that pentobarbital is available to the State. Nor does this case involve the application of res judicata. Instead, this case more closely resembles the gamesmanship played by inmates and noted by Judge Thapar in his opinion in *Middlebrooks v. Parker*, 22 F. 4th 621 (6th Cir. 2022) ("Middlebrooks has made a career out of exploiting these gaps. Kerrick Majors' family and the legal system deserve better").

VI.   **How Should this Court Apply *Whitaker v. Collier*, 862 F. 3d 490 (5th Cir. 2017), and *Wood v. Collier*, 836 F. 3d 534 (5th Cir. 2016), to Plaintiffs' claim that use of compounded pentobarbital in a three drug protocol violates Plaintiffs' right to be free from cruel and unusual punishment?**

The Plaintiffs' claim regarding the use of compounded pentobarbital is moot. The State will not use compounded pentobarbital in Plaintiff Loden's executions because the State cannot obtain pentobarbital, as evidenced by MDOC's multiple, unsuccessful efforts to locate a supplier of the drug.

With respect to the application of *Whitaker* and *Wood*, Defendants maintain that applying both cases must lead this Court to conclude that Plaintiffs' method of execution claims are time-barred.

In *Whitaker*, the Fifth Circuit ruled that the statute of limitations for a §1983 method of execution claim is the same as the personal injury limitations for the state of conviction. *Whitaker*, 862 F. 3d at 494. A method of execution claim accrues on the date direct review of a plaintiff's conviction and sentence is complete. *Id.*

*Whitaker* also addressed the effect of changes in a state's death penalty protocol and the applicable statute of limitations. *Id.* at 495. The Fifth Circuit found that to reset the accrual date, a change to an execution protocol must be substantial, and any new accrual date is applicable only to the portion of the protocol that changed. *Id.* The Court noted, "we cannot say that the use of any injectable substance that causes death is always an insignificant change, because there could be substances that do create a "substantial risk of serious harm." *Id.; see also Grayson v. Warden*, 672 Fed. Appx. 956, 963 (11th Cir. 2016); *Brooks v. Warden*, 810 F. 3d 812, 823 (11th Cir. 2016) (switch to Midazolam did not constitute substantial change in death penalty protocol).

*Wood* found that some of the inmate's method of execution claims were time barred. *Wood*, 836 F. 3d at 542.

Applying *Whitaker* and *Wood* to this case, Plaintiff Loden is time-barred from asserting his method of execution claims. Mississippi's personal injury statute of limitation is three years.

Miss. Code Ann. §15-1-49. The lethal injection statute became law in 1984 and has been used since 2002. Mississippi Code Ann. §99-19-51. When Plaintiff Loden received his final conviction and sentence, lethal injection was the method used in carrying out executions in Mississippi.

Loden's conviction and sentence became final on October 6, 2008. His last date to file a method of execution challenge expired on October 6, 2011. He did not intervene in this case until July 20, 2015, nearly four years after the statute of limitations expired. Applying *Whitaker* and *Wood*, Loden's last day to bring his method of execution challenge expired in 2011.

The Plaintiffs may seek to reset the accrual date of their claims by arguing that the State's lethal injection protocol underwent substantial change in 2015 when Midazolam was added to the protocol. However, applying *Whitaker* and *Brooks*, the "substantial risk of serious harm" phrase must be understood "as that 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Glossip*, 576 U.S. at 877.

VII. **Likewise, how should this Court apply *Whitaker v. Collier*, 862 F.3d at 500-01, and *Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013), to Plaintiffs' claims that Defendants' failure to disclose certain information about the method of execution violates Plaintiffs' right to due process and access to the courts?**

Plaintiffs allege that Defendants' refusal to disclose "the manufacturer of the active pharmaceutical ingredients it purchased to make pentobarbital," "the supplier" from which they have purchased "midazolam," and "how, where, and when they intend to try to compound any raw ingredients into sterile injectable solutions for use in executions" violates their right to due process. Am. Compl. at ¶ 293. To the extent Plaintiffs' due process claim is based on the non-disclosure about pentobarbital or the method by which they will compound drugs for use in executions, their claim is moot. MDOC has been unable to acquire pentobarbital since 2014 and does not have any compounded drugs or intend to use any such drugs in upcoming executions.

Plaintiffs' remaining claim regarding Defendants' failure to disclose the State's supplier of midazolam is meritless. In *Whitaker v. Collier*, the Fifth Circuit held that the plaintiff failed to state a claim for a violation of his right to due process based on Texas's alleged failure to disclose information about its method of execution. *Whitaker*, 862 F.3d at 500. The Court concluded that the plaintiff's failure to identify a "cognizable liberty interest" was "fatal" to his due process claim. *Id.* Accordingly, the plaintiff's alleged need for information to challenge the execution protocol's "conformity with the Eighth Amendment" did "not substitute for the identification of a cognizable liberty interest." *Id.* (quoting *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013)). Here, Plaintiffs fail to state a viable due process claim for the same reason: they do not have a cognizable liberty interest in obtaining information about MDOC's supplier of midazolam.

*Whitaker v. Livingston* likewise provides no support for Plaintiffs' due process claim. There, the Fifth Circuit rejected the plaintiff's argument that he was entitled to an injunction staying his execution based on the state's failure to timely disclose certain information regarding the method of execution in violation of his right to due process. 732 F.3d at 467. The Court held that the plaintiff was required to "demonstrate that [he] has a cognizable liberty or property interest" and that his claim was "arguably foreclosed" by *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013), where the Fifth Circuit "held that uncertainty as to the method of execution does not amount to a cognizable liberty interest." 732 F.3d at 467. However, the Court concluded that, even if *Sepulvado* was distinguishable, the plaintiff "would still have to show success at least on the Eighth Amendment claim" to obtain injunctive relief because there is "no case, in the context of executions, in which the Supreme Court has found a liberty interest to exist, based on the contours of the Eighth Amendment, that goes beyond what that Amendment itself protects." *Id.* Because the plaintiff could not show a likelihood of success on his Eighth Amendment claim, the Fifth Circuit denied him a stay of execution. *See id.* at 468-69. Plaintiffs likewise have failed to demonstrate a likelihood of success on their Eighth Amendment claim.

Plaintiffs' access-to-the courts claim fares no better. In *Whitaker v. Livingston*, the Fifth Circuit held that condemned inmates are "not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker*, 732 F.3d at 467. Instead, they "must show some likelihood of success on the merits of the Eighth Amendment claim." *Id.* Thus, a plaintiff "cannot argue that if only he had infinite time—or even just a little bit more time—*then* he might be able to show a likelihood of success." *Id.* (emphasis in original). The Court reasoned that, "[t]o hold otherwise would be to eviscerate the first requirement of the standard for preliminary injunctions." *Id. Whitaker v. Collier* similarly held that, where a condemned inmate fails to plead sufficient facts to state an Eighth Amendment method-of-execution claim, his claim that he has been denied access to the courts based on an inability to obtain information about the method of execution "necessarily fails as well." *Whitaker*, 862 F.3d at 501.

Because Plaintiffs have failed to demonstrate a likelihood of success on their Eighth Amendment claim, their claim that they have been denied access to the courts by Defendants' refusal to disclose MDOC's supplier of midazolam lacks merit. Indeed, this argument is foreclosed by the protective order this Court entered in 2018. [Doc. 168]. In that order, the Court held that "Defendants are entitled to withhold from discovery any material that would identify suppliers of lethal injection drugs" because MDOC's "drug supplier has made it clear that it will discontinue selling the necessary drugs if its identity is revealed." [Doc. 168 at 18]. As the Court found, "the hardship to the Defendants of preventing them from obtaining lethal execution drugs outweighs the Plaintiffs' need for this information." [Doc. 168 at 17].

VIII. **What is the method of execution that the State intends to use on Plaintiff-Intervenor Loden, and if it is lethal injection, what is the specific protocol? Is Count IV moot if Defendants disclose the method and protocol that the State intends to use? Are Counts I and II moot if Defendants do not intend to use compounded pentobarbital?**

The State intends to use lethal injection in the Loden execution. MDOC will carry out Loden's execution with Midazolam as the first drug followed by the sequential administration of vecuronium bromide and potassium chloride.

Yes, Count IV is moot because the State has disclosed the method and protocol the State intends to use in the Loden execution. Counts IA and II are also moot because the State does not intend to use compounded pentobarbital in the Loden execution. Count II is further mooted because of amendments made by the Mississippi Legislature to Mississippi Code Ann. §99-19-51.

No. Count IB is not moot. That count involves the drug Midazolam. While not moot, this Count is directly controlled by *Glossip* and should be decided in the State's favor.

IX. **Is Count II moot in light of the Mississippi legislature's 2022 amendment of Miss. Code Ann. § 99-19-51?**

Yes. In Count II of their Amended Complaint, Plaintiffs alleged that they "have a life and liberty interest created by the requirement of an 'ultra short-acting barbiturate or other similar drug' in Section 99-19-51." Am. Compl. at ¶ 256. According to Plaintiffs, midazolam is not a barbiturate, and therefore its use in their execution would be "in clear violation of Miss. Code Ann. § 99-19-51" and their alleged Fourteenth Amendment right "to not be executed except in accordance with Section 99-19-51." *Id.* at ¶¶ 263-66. As the Court has recognized, in 2022, the Mississippi Legislature amended Section 99-19-51. *See* Miss. Laws 2022, Ch. 414 (H.B. No. 1479), § 1, eff. July 1, 2022. The phrase "ultra short-acting barbiturate or other similar drug" no longer appears in Section 99-19-51. The statute now reads, in relevant part, as follows: "the manner of inflicting the punishment of death shall be by one of the following: (a) intravenous injection of a substance or substances in a lethal quantity into the body . . ." Miss. Code Ann. § 99-19-51(1) (Rev. 2022). Accordingly, Count II of the Amended Complaint—which is expressly predicated on the phrase "ultra short-acting barbiturate or other similar drug"—is now moot.

            **LYNN FITCH**
            ATTORNEY GENERAL
            STATE OF MISSISSIPPI

By: _/s/ Gerald L. Kucia_
            Gerald L. Kucia, MSB No. 8716
            Wilson Minor, MSB No. 102663
            SPECIAL ASSISTANT ATTORNEYS GENERAL
            ATTORNEYS FOR DEFENDANTS