**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**RICHARD JORDAN and RICKY CHASE**                                        **PLAINTIFFS**

**VS.**                                   **CIVIL ACTION NO.: 3:15CV295-HTW-LGI**

**BURL CAIN, Commissioner,**
**Mississippi Department of Corrections, in**
**his Official Capacity; MARC MCCLURE,**
**Superintendent, Mississippi State**
**Penitentiary, in his Official Capacity;**
**THE MISSISSIPPI STATE**
**EXECUTIONER, in his Official Capacity;**
**and UNKNOWN EXECUTIONERS, in**
**their Official Capacities**                                                **DEFENDANTS**

**THOMAS EDWIN LODEN, JR.,**
**ROBERT SIMON, and ROGER ERIC THORSON**                        **INTERVENORS**

---

**MEMORANDUM OPINION AND ORDER**

---

PREAMBLE

On December 14, 2022, Thomas Edwin Loden, Jr. ("Loden") is scheduled to be executed

by lethal injection by the State of Mississippi.  Back in 2000, Loden was indicted for capital

murder, rape, and four counts of sexual battery for kidnapping and murdering, by asphyxiation, a

sixteen-year-old young lady after he had sexually abused her for hours.  During this horrific attack,

Loden's depraved mindset convinced him to videotape most of the sordid activity.  Following his

arrest, on September 21, 2011, Loden waived his right to a jury trial. He pled guilty to all six counts

of his indictment. The Circuit Court of Itawamba County, Mississippi, accepted Loden's pleas,

found Loden guilty on each count, and sentenced Loden to death.

1

Loden then began his appellate trek, first through the state court system, and later through the federal procedural appellate path. He lost his bid to overturn his convictions in both the state and federal venues.

By state law, the Attorney General for the State of Mississippi was directed under Miss. Code Ann. § 99-19-106[1] to petition the Mississippi Supreme Court to set an execution date for Loden, since he had exhausted all appeals, state and federal. The Mississippi Attorney General did not immediately submit this petition to the Mississippi Supreme Court, supposedly because the State of Mississippi lacked the execution drugs, but was avidly seeking such from willing and proper vendors.

Meanwhile, on May 20, 2015, Loden petitioned this court for permission to join in this lawsuit, which was attacking Mississippi's lethal injection execution protocol under the Eighth Amendment's proscription against cruel and unusual punishment. The State's Attorney General's Office voiced no objection to Loden's request to intervene. Loden, now, has been accorded plaintiff status in this lawsuit for over seven years[2].

---

[1] When judgment of death becomes final and a writ of certiorari to the United States Supreme Court has been denied or the time for filing such petition has expired, the court shall set an execution date for a person sentenced to the death penalty. Within sixty (60) days following the appointment of post-conviction counsel, upon declaration by counsel that he deems post-conviction review to be meritorious and that he intends to file an application for post-conviction review, the court may stay execution pending the disposition of the post-conviction proceeding. In the event no application for post-conviction relief is filed within one (1) year of the date of the disposition of the petition for writ of certiorari or the time for certiorari has expired, any stay entered by the court will automatically vacate. The filing of a declaration by counsel that he deems post-conviction review to be meritorious and intends to file an application for post-conviction review shall in no manner constitute the filing of an application for post-conviction review that would toll the running of any statute of limitations. Setting or resetting the date of execution shall be made on motion of the state that all state and federal remedies have been exhausted, or that the defendant has failed to file for further state or federal review within the time allowed by law.

Miss. Code. Ann. § 99-19-106 (West).

[2] This court expounds upon this case's procedural chronology, and various unavoidable delays, on pages 6-11.

On October 4, 2022, the State of Mississippi filed a Motion to Set Execution Date in the Mississippi Supreme Court. *See* Motion to Set Execution Date, *Loden v. State of Mississippi*, No. 2002-DP-00282-SCT (Miss. Oct. 4, 2022).[3] Notably, the State petitioned the Mississippi Supreme Court to set an execution date for Loden even though the parties, who are nearing the end of discovery and beginning motion practice to lead to a civil trial, have not received a ruling from this court on the very method the State has selected for Loden's execution, lethal injection.

By a vote of seven to two, the Mississippi Supreme Court has set Loden's execution date for December 14, 2022. The two dissenters, Justice Leslie D. King, and Justice James W. Kitchens, campaign for a stay of Loden's execution, so that Loden possibly can profit from his challenge to Mississippi's lethal injection protocol. If Mississippi is prevented from using the three-drug "cocktail" under its lethal injection protocol, Mississippi can still seek to execute Loden under Mississippi's execution scheme of Miss Code Ann. § 99-19-51(1), which authorizes executions by the alternative means of nitrogen hypoxia, electrocution and firing squad. The seven-member majority of Justices on the Mississippi Supreme Court, apparently unimpressed by the minority's ethical arguments for not setting an execution date, without addressing the arguments, but in obedience to Miss. Code Ann. § 99-19-106's declaration that "…the court ***shall***" set an execution date for a person sentenced to the death penalty… "on motion of the state that all state and federal remedies have been exhausted…" went ahead and set the execution date.

---

[3] According to the statute, "[w]hen a judgment of death becomes final and a writ of certiorari to the United States Supreme Court has been denied or the time for filing such petition has expired, the [Mississippi Supreme Court] shall set an execution date for a person sentenced to the death penalty." MISS. CODE ANN. § 99-19-106. "Setting . . . the date of execution shall be made on motion of the state that all state and federal remedies have been exhausted, or that the defendant has failed to file for further state or federal review within the time allowed by law." *Id.* The relevant statutes do not provide a time frame for execution following the Mississippi Supreme Court's order. Rather, the execution procedures statute provides: "Whenever any person shall be condemned to suffer death for any crime . . . , such punishment shall be inflicted at 6:00 p.m. or as soon as possible thereafter within the next twenty-four (24) hours at an appropriate place designated by the Commissioner" of MDOC. MISS. CODE ANN. § 99-19-55(1).

Before this court, now, is Plaintiffs' Motion for Order under the All Writs Act, Title 28 U.S.C. §1651(a)[4] [Docket no. 260], asking this court to order Defendants to withdraw their motion seeking an execution date from the Mississippi Supreme Court and/or enjoin the Defendants from executing any of the Plaintiffs in this case while litigation remains pending.

<u>PARTIES</u>

Plaintiffs/Intervenors in this civil action are inmates on death row awaiting execution by the State of Mississippi.  On April 16, 2015, Richard Jordan and Ricky Chase, two condemned inmates, initiated this lawsuit by filing their Complaint for Preliminary and Permanent Injunctive Relief under Title 42 U.S.C. § 1983[5], challenging the constitutionality of Mississippi's method of execution, lethal injection. Robert Simon, Roger Thorson, and Loden, thereafter, intervened in the case. Plaintiffs Ricky Jordan and Ricky Chase filed the Motion *sub judice*, along with Intervenor Loden (collectively, Loden and the original plaintiffs are referred to as "Plaintiffs" throughout this Opinion).

The defendants currently[6] are: Burl Cain, in his official capacity as Commissioner of the Mississippi Department of Corrections ("MDOC"); Marc McClure, in his official capacity as the Superintendent of the Mississippi State Penitentiary ("MSP"); and the Mississippi State

---

[4] (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C.A. § 1651 (West).

[5] Title 42 U.S.C.A. §1983 states:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[6] Since the inception of this §1983 action, individual defendants, acting in official capacities on behalf of Mississippi state agencies have changed periodically.

Executioner, in his official capacity (collectively, defendants herein are referred to as "the State" or "Defendants").

Plaintiffs seek an Order from this Court enjoining the Defendants, their counsel, and anyone in active concert with them: (1) to withdraw the Motion to Set Execution Date filed by Attorney General Lynn Fitch on behalf of the State of Mississippi in *Thomas Edwin Loden, Jr. v. State of Mississippi*, Nos. 2002-DP-00282-SCT and 2006-CA-00432-SCT,4 and/or (2) to refrain from executing Intervenor Loden, or any of the Plaintiffs and Intervenors until the litigation in this case is completed.

<u>JURISDICTION</u>

Plaintiffs invoked the jurisdiction of this federal court under Title 28 U.S.C. §1331, which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff's causes of action, as stated *infra*, arise under: Title 42 U.S.C. §1983[7] , for alleged and threatened violations of Plaintiffs' rights to due process and to be free from cruel and unusual punishment under the Eighth[8] and Fourteenth[9] Amendments to the United States Constitution; Title 28 U.S.C. §1367(a)[10] ;and the Mississippi State Constitution.

---

[7] See Footnote 4.

[8] U.S. Const. amend. VIII states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[9] U.S. Const. amend. XIV, § 1 states: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[10] Title 28 U.S.C. §1367(a) provides: Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

PERTINENT BACKGROUND

Plaintiffs herein do not challenge their respective death penalty sentences; rather, the Plaintiffs challenge the manner in which the State plans to carry out their executions. In 2015, when Plaintiffs initially filed this challenge to Mississippi's execution protocol, Mississippi utilized a three-drug lethal injection protocol, adopted in March, 2012. Mississippi's execution law provided that executions should take place by "continuous intravenous administration of lethal quantity of an ultra short-acting barbiturate or other similar drug in combination with a chemical paralytic agent until death is pronounced." 2016 Miss. Laws Ch. 452. Sodium pentothal was originally used as the first drug in this three-drug "cocktail", until that drug became unavailable. Later, the Defendants resorted to pentobarbital, and eventually to midazolam as the first drug. This court, thereafter, permitted the Plaintiffs herein to amend their Complaint to attack the use of these drugs. Plaintiffs filed their Amended Complaint on September 28, 2015 [Docket no. 50].

Plaintiffs, by way of their Amended Complaint, clarified that "the lethal injection protocol promulgated by the MDOC is not at issue in this lawsuit[; rather,] this civil action challenges the use of compounded drugs (including but not limited to compounded pentobarbital) and midazolam in lethal injection executions conducted by MDOC." [Docket no. 50, ¶ 6]. Plaintiffs asserted that Mississippi's use of this death penalty protocol violates the Eighth Amendment ban against cruel and unusual punishment.

Plaintiffs alleged the following claims: 1) Defendants' use of compounded pentobarbital or midazolam in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions; 2) Defendants'

---

Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

failure to use an "ultra short-acting barbiturate or other similar drug" violates Plaintiffs' right to be free from cruel and unusual punishment and right to due process under the United States and Mississippi Constitutions; 3) Defendants' continued use of any three-drug protocol violates their right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions; 4) Defendants' plan to use undisclosed compounds or ingredients in the lethal injection protocol violates Plaintiffs' right to notice of the intended method of execution under the United States and Mississippi Constitutions; and 5) Defendants' failure to disclose the identities of the manufacturer and/or supplier of lethal injection drugs violates Plaintiffs' right of access to the courts under the United States and Mississippi Constitutions. *See* First Amended Complaint at 39-55, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI (S.D. Miss. Sept. 28, 2015), Docket no. 50; Intervenor Complaint at 28-40, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI (S.D. Miss. June 12, 2020), Docket no. 208.

Plaintiffs previously have sought and obtained a preliminary injunction from this court. After MDOC revised the protocol to allow for the use of midazolam because it could no longer obtain pentobarbital or sodium pentothal, Plaintiffs, on June 5, 2015, sought a preliminary injunction from this court, arguing that: 1) Mississippi's use of compounded pentobarbital in a three-drug lethal injection protocol creates a substantial risk of serious harm and severe pain in violation of Supreme Court precedents interpreting and applying the Eighth Amendment; 2) Mississippi's use of compounded pentobarbital violates Mississippi law, the Eighth Amendment, and the Fourteenth Amendment; and 3) Mississippi's use of any three-drug lethal injection protocol violates the Eighth Amendment because it does not conform to evolving standards of decency. *See* Memorandum in Support of Motion for Preliminary Injunction at 27-38, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI (S.D. Miss. June 3, 2015), Docket no. 22. This court granted

the motion, finding that Plaintiffs had satisfied their burden of demonstrating a substantial likelihood of success on the merits of their claim that Defendants' failure to use an "ultra short-acting barbiturate or other similar drug" as then required by Miss. Code Ann. § 99-19-51 violated the Eighth Amendment. *Jordan v. Fisher*, 2015 WL 13119074, at *3 (S.D. Miss. Aug. 26, 2015). The Court enjoined the State "from using pentobarbital, specifically in its compounded form, or midazolam, [and] from executing any death row inmates . . . ." *Id.*

On June 27, 2016, the United States Court of Appeals for the Fifth Circuit vacated this court's preliminary injunction. The Court, however, pointed out that "[t]he district court has not yet considered the Plaintiffs' First Amendment access to courts claim, Eighth Amendment cruel and unusual punishment claim, and Fourteenth Amendment notice claim. These claims may be considered in the first instance on remand."*Jordan v. Fisher*, 823 F.3d 805, 809 n.3 (5th Cir. 2016). Plaintiffs, thereafter, did not re-urge their motion for a preliminary injunction, and the parties have proceeded with discovery.

On July 12, 2018, Plaintiffs, joined by Intervenors and unopposed by Defendants, advised the Court of the Supreme Court's grant of certiorari in *Bucklew v. Precythe*, No. 17-8151, and moved to stay this case pending the decision in *Bucklew*. This court granted this motion on July 27, 2018, finding: The parties in this case agree that this is "one of the most heavily contested issues that the Court will be required to decide." This court held that it would not be an effective use of judicial resources to try this case while the question presented in *Bucklew* was pending.

In 2019, the Mississippi Supreme Court denied Loden's second successive petition for post-conviction relief. On April 1, 2019, less than a month after the Mississippi Supreme Court denied Loden's state post-conviction petition, the United States Supreme Court issued its opinion in *Bucklew*.  Defendants contend that upon this denial, Loden's pursuit of state and federal relief

from his death penalty sentence came to an end. Following the finality of Loden's appellate journey, the State contends that it still could not have petitioned the Mississippi Supreme Court to set Loden's execution date because they state did not have the requisite execution drugs until 2021. Further, because of the COVID-19 pandemic, this court had to continue proceedings in this lawsuit for approximately two years. In 2021, this court established a deposition protocol.

This court assisted the parties in establishing deposition protocol for pseudonymous witnesses, ordering that such depositions would be conducted in separate rooms at the United States Courthouse for the Southern District of Mississippi. The parties agreed that a system would be used that disguises the witnesses' voices. The parties identified such a system and selected a vendor. This court spent significant time with the parties to conduct technology "walk-throughs" ensuring proper implementation of the established depositions protocol. The parties have diligently engaged in the depositions of pseudonymous witnesses, under this court's supervision, through the present date.

In 2022, Mississippi's execution statute was amended, and under its current version, the State of Mississippi may choose among four different methods of execution, as follows:

> (1) At the discretion of the Commissioner, the Deputy Commissioner for Finance and Administration and the Deputy Commissioner for Institutions of the Mississippi Department of Corrections, the manner of inflicting the punishment of death shall be by one of the following: (a) intravenous injection of a substance or substances in a lethal quantity into the body; (b) nitrogen hypoxia; (c) electrocution; or (d) firing squad, until death is pronounced by the county coroner where the execution takes place or by a licensed physician according to accepted standards of medical practice. Upon receipt of the warrant of execution from the Mississippi Supreme Court, the Commissioner of Corrections shall, within seven (7) days, provide written notice to the condemned person of the manner of execution. It is the policy of the State of Mississippi that intravenous injection of a substance or substances in a lethal quantity into the body shall be the preferred method of execution.

Miss. Code. Ann. § 99-19-51 (West).

On October 4, 2022, before discovery had been completed, the Mississippi Attorney General's Office filed a motion before the Mississippi Supreme Court to set Loden's execution date. On October 7, 2022, Loden provided this Court with notice of the state-court motion and requested a status conference. *See* Notice of Filing in State Court Litigation and Request for Status Conference, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI (S.D. Miss. Oct. 7, 2022), ECF No. 256.

The Court held a status conference on October 12, 2022, and Plaintiffs' counsel[11] argued that the Court should enjoin the Mississippi Supreme Court from setting an execution date, order Defendants to withdraw the motion, and enjoin Defendants from executing any of the Plaintiffs. The court observed that Loden had neither filed a motion requesting such relief in this court, nor filed a response in state court opposing the motion to set an execution date. Loden's counsel stated they intended to do so.

On October 14, 2022, Loden filed a response in opposition to the state-court motion. *See* Response to Motion to Set Execution Date, *Loden v. State of Mississippi*, No. 2002-DP-00282-SCT (Miss. Oct. 14, 2022). A few days later, he filed the motion which the court now addresses: a Motion for Order under the All Writs Act [260], asking this Court to order Defendants to withdraw their motion seeking an execution date from the Mississippi Supreme Court and/or enjoin them from executing any of the Plaintiffs in this case.

On November 17, 2022, the Mississippi Supreme Court granted the State's Motion to Set Execution Date. *See* En Banc Order, *Loden v. State of Mississippi*, No. 2002-DP-00282-SCT (Miss. Nov. 17, 2022). The Court ordered that "[t]he execution of the death sentence imposed upon Thomas Edwin Loden, Jr., shall take place in a manner provided by law on Wednesday, December

---

[11] Although the Intervenor Plaintiffs have separate representation than the original Plaintiffs, the original Plaintiffs' counsel has presented argument on behalf of all Plaintiffs with respect to the present motion. None of the Intervenor Plaintiffs has objected to this arrangement, and Intervenor Plaintiff Loden's counsel of record has explicitly consented to it on the record.

14, 2022, at 6:00 p.m. C.S.T., or as soon as possible thereafter within the next twenty-four (24) hours." *Id.* A dissenting opinion was filed two weeks later by two of the nine justices. *See* Order with Separate Statement, *Loden v. State of Mississippi*, No. 2002-DP-00282-SCT (Miss. Dec. 1, 2022).

On or about November 23, 2022, MDOC Commissioner Cain sent a letter to Loden advising him that "the manner of execution will be an intravenous injection of a substance or substances in lethal quantity into the body." [Docket no. 271-4].

After the Mississippi Supreme Court established Loden's execution date, this court set a supplemental hearing on the Motion for Order under the All Writs Act [Docket no. 260] for November 28, 2022, for the parties to present all supplemental argument and/or evidence they wished to present on the motion. The court also ordered the parties to provide letter briefs ahead of the hearing which specifically addressed certain issues of interest to the court. [Docket nos. 267, 268, and 270].

On November 28, 2022, this court held the scheduled hearing, and the parties presented their arguments. The court advised the parties that this would be their only chance to provide further argument and evidence on the pending motion to stay executions, but the court relaxed this statement later when the court remembered that the parties intended to take the deposition of Commissioner Cain on November 30, 2022. Accordingly, the court permitted the parties to submit any pertinent, supplemental disclosures revealed during Commissioner Cain's deposition, and to address the recently-filed dissenting opinion of the two justices.  Plaintiffs responded. [Docket nos. 271, 272, 274, and 275].

Plaintiffs' Motion for Order under the All Writs Act [Docket no. 260] seeking a stay of their executions until this § 1983 case is completed is now ripe for this court's review.

<u>PLAINTIFFS' POSITION</u>

Loden originally sought an Order from this court to require the Mississippi State Attorney General to withdraw its Motion to Set Execution Date, which was then pending before the Mississippi Supreme Court. That aspect of Loden's motion is now moot. Loden yet asks this court to prohibit MDOC from executing him or any of the other Plaintiffs in this matter until the litigation is completed. Loden claims that this court may grant such relief pursuant to the All Writs Act, 28 U.S.C. §1651(a).

Plaintiffs argue further that under the All Writs Act, even though the State has established an execution date, Count III of their Amended Complaint provides ample justification for the entry of a preliminary injunction to prohibit the execution. This Count III reads, as follows: "Mississippi's Continued Use of a Three-Drug Protocol in the Face of Evolving Standards of Decency Which Require Abandonment of the Use of a Chemical Paralytic Agent and Potassium Chloride, Violates Plaintiffs' Right to be Free from Cruel and Unusual Punishment under the Eighth and Fourteenth Amendments to the United States Constitution and Article 3, Sections 14[12] and 28[13] of the Mississippi Constitution." [Docket no. 50, p. 49].

Plaintiffs argue that Mississippi's continued use of a three-drug lethal injection protocol is contrary to our society's evolving standards of decency and, therefore, violates their right to be free from cruel and unusual punishments under the Eighth Amendment. *See* Intervenor Complaint [208], at 33-36; First Amended Complaint [50], at 49-52. Plaintiffs maintain that this is a separate claim from Count I, where they claim that using midazolam or compounded pentobarbital in a

---

[12] Miss. Const., Art.3, § 14 states: "No person shall be deprived of life, liberty, or property except by due process of law

[13] Miss. Const., Art. 3, § 28 states: "Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed."

three-drug protocol violates the Eighth Amendment because it will create a substantial risk of serious and unnecessary pain. Intervenor Complaint [208], at 28-31; First Amended Complaint [50], at 43-46. They argue that each claim is governed by its own distinct line of cases – Count I by *Glossip*[14] and *Bucklew*,[15] and Count III by *Trop*,[16] *Kennedy*,[17] and *Graham*.[18] Plaintiffs contend that the controlling plurality opinion in *Baze*[19] implicitly distinguishes these two threads of Eighth Amendment reasoning. This court will discuss each of these cases below.

Plaintiffs argue that this "abandonment of the three-drug protocol is evidence of the evolving standards of decency which inform the Eighth Amendment." From 2010 to 2012, say the Plaintiffs, of the 132 executions conducted nationwide, over 70 percent (94 executions) were conducted using a three-drug protocol. Plaintiffs, however, point out that from January 1, 2015, to October 19, 2022, of the 166 executions conducted nationwide, 71 percent (118 executions) were conducted using a one-drug barbiturate protocol, which eliminated the chemical paralytic and potassium chloride. Plaintiffs say that, during "that same time period, only 21 percent in the nation (35 executions) were conducted using a three-drug midazolam protocol."

Plaintiffs argue further that, because three other states, Texas, Georgia, and Missouri, have carried out executions using pentobarbital in a single-drug protocol, MDOC similarly can obtain pentobarbital, and the use of pentobarbital in a single-drug protocol constitutes a feasible and available alternative to MDOC's three-drug protocol.  Plaintiffs urge this court to stay Loden's execution until it reaches a decision on the merits of Plaintiffs' Amended Complaint.

---

[14] *Glossip v. Gross*, 576 U.S. 863, 135 S. Ct. 2726, 192 L. Ed. 2d 761 (2015).
[15] *Bucklew v. Precythe*, --- U.S. ---, 139 S. Ct. 1112, 203 L. Ed. 2d 521 (2019).
[16] *Trop v. Dulles*, 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958).
[17] *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2009).
[18] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).
[19] *Baze v. Rees*, 553 U.S. 35, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008).

<u>DEFENDANTS' POSITION</u>

As stated *supra*, Loden has challenged his conviction and sentence many times. The Mississippi Supreme Court rejected all of his claims on direct appeal in *Loden I*. The Mississippi Supreme Court also denied Loden's petition for post-conviction relief, *Loden v. State*, 43 So. 3d 365 (Miss. 2010) ("Loden II"); his successive petition for post-conviction relief, *Loden v. State*, 222 So. 3d 312 (Miss. 2017) ("Loden V"); and his second successive petition for post-conviction relief in Loden VI. The United States District Court for the Northern District of Mississippi rejected Loden's federal habeas petition, *Loden v. Epps*, 2013 WL 5243670, Civil Action No. 1:10CV311-NBB (N.D. Miss. 2013) ("Loden III"), and the Fifth Circuit affirmed, *Loden v. McCarty*, 778 F.3d 484 (5th Cir. 2015) ("Loden IV").

Defendants contend that the Mississippi Supreme Court's denial of Loden's second successive petition for post-conviction relief signaled the end of Loden's case, as "all state and federal remedies had been exhausted." The §1983 Action pending before this court, argue Defendants, is not an impediment to setting Loden's execution date.

Defendants, in response to Plaintiffs' assertion that pentobarbital (the "one-drug" method), is a viable alternative to the State's current three-drug lethal injection protocol, contend that MDOC has made multiple attempts to obtain pentobarbital, but has been able to acquire pentobarbital in any form. *See* Docket no. 264-1. Accordingly, Defendants state that MDOC will carry out Loden's execution with midazolam, an anesthetic, as the first drug, followed by the sequential administration of vecuronium bromide which is a chemical paralytic agent, and potassium chloride, a chemical that disrupts the electrical signals in the heart, paralyzes the cardiac muscle, and kills the condemnee by cardiac arrest.

Defendants argue that because Loden  has not shown a significant possibility of success on the merits of his claim that the State's use of midazolam would violate his Eighth Amendment rights, this Court should deny his motion for a stay of execution. In order to prevail on his Eighth Amendment challenge to Mississippi's execution protocol, say Defendants, Loden must satisfy two requirements: (1) he must establish that the "State's method of execution presents a substantial risk of serious harm – severe pain over and above death itself" and, (2) he must "identify an alternative method that is feasible, readily implemented, and in fact significantly reduces the risk of harm involved" and that the State has refused to adopt an alternative method without a legitimate penological reason. *Nance v. Ward*, 142 S.Ct. 2214, 2220 (2022); *Glossip*, 576 U.S. at 877-78; *Baze v. Rees*, 553 U.S. 35 (2008). Defendants contend that Plaintiffs cannot satisfy either of these requirements.

<u>COGENT JURISPRUDENCE</u>

1. Standard For Preliminary Injunction

The prerequisites for obtaining a preliminary injunction are well established in the jurisprudence of the Fifth Circuit. The court may issue a preliminary injunction if the movant establishes (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that irreparable injury will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to defendant; and (4) the issuance of the preliminary injunction will not disserve the public interest. *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Mississippi Power & Light v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985) (quoting *Canal Auth.); Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008).

A preliminary injunction will only be granted if the movant carries its burden on all four requirements. *Nichols v. Alcatel USA, Inc.,* 532 F.3d 364, 372 (5th Cir. 2008); *Southern Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 186 (5th Cir.1982) ("A preliminary injunction may not issue unless the movant carries the burden of persuasion as to all four prerequisites."); *Spiegel v. City of Houston,* 636 F.2d 997, 1001 (5th Cir.1981) ("In order to prevail plaintiff must carry the burden on all four elements.").

The issuance of a preliminary injunction is an extraordinary remedy.  It is to be treated as the exception rather than the rule. *Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line,* 760 F.2d 618, 621 (5th Cir. 1985); *Nichols v. Alcatel USA, Inc.,* 532 F.3d 364, 372 (5th Cir. 2008).

2. The All Writs Act

The All Writs Act states, "the Supreme Court and all Courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Loden asserts correctly that the All Writs Act must be read along with the Anti-Injunction Act which bars a federal court from enjoining a proceeding in a state court unless that action is "expressly authorized by Acts of Congress, or where necessary in aid of jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2238.

 Under the Anti-Injunction Act, any doubts about the propriety of a federal injunction should be resolved in favor of permitting the state courts to proceed, and the explicit wording of the Act implies as much. *Smith v. Bayer Corporation*, 564 U.S. 299, 307 (2011); *Aptim Corporation v. McCall*, 888 F.3d 129, 143 (5th Cir. 2018); *United States v. Billingsley*, 615 F. 3d 404, 409 (5th Cir. 2010). The Anti-Injunction Act, thus, encourages respect for state courts. *Bayer*

*Corporation,* 564 U.S. at 306; *IDs Property Casualty Insurance Company v. Meeks*, 537 Fed. Appx. 513, 517 (5th Cir. 2013).

The United States Supreme Court addressed the issue of whether the All Writs Act can be used to enjoin a death penalty inmate's execution in *Dunn v. McNabb*, 138 S.Ct. 369 (2017). The Court in *Dunn* held that "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all the requirements for a stay, including a showing of a significant possibility of success on the merits. . .  The All Writs Act does not excuse a court from making these findings." *Dunn*, 138 S.Ct. at 369 (citation omitted). The Supreme Court, accordingly, vacated an injunction entered under the All Writs Act because the district court "enjoined respondent's execution without finding that he has a significant possibility of success on the merits." *Id*. See also *Lecroy v. United States*, 975 F. 3d 1192, 1197 (11th Cir. 2020) (All Writs Act cannot be used to evade the requirements for a preliminary injunction).

*Dunn* relied upon *Hill v. McDonough*, 547 U.S. 573 (2006), as controlling the issue of whether a death penalty inmate could obtain an injunction under the All Writs Act absent a showing of a significant possibility of success on the merits. In *Hill*, a death row inmate filed a §1983 action challenging the constitutionality of Florida's three-drug protocol. *Hill*, 547 U.S. at 578. The inmate sought to enjoin the State from executing him. *Id*. Justice Kennedy, writing for the Supreme Court, ruled that the filing of a §1983 action did not entitle a complainant to an order staying an execution as a matter of course. *Hill*, 547 U.S. at 584. Instead, like other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits. *Id*.

17

The Court emphasized that "a stay of execution is an equitable remedy," and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*. The Court "must also apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id*.  This court again notes that "any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting state courts to proceed in an orderly fashion . . . ." *Fulford v. Transp. Servs. Co.*, 412 F.3d 609, 613 (5th Cir. 2005).

3.  Evolving Standards of Decency

Plaintiffs challenge Mississippi's continued use of the three-drug protocol for lethal injection executions because "the practice of the majority of executing jurisdictions, which now utilizes a single-drug barbiturate protocol, represents the evolving sense of decency which underpins the Eighth Amendment."

The United States Supreme Court in *Trop v. Dulles*, 356 U.S. 86 (1958), established that the courts must apply the "evolving standards of decency" standard when analyzing Eight Amendment claims. In other words, in order for a punishment not to be deemed "cruel and unusual", it must coincide with contemporary societal standards of "decency". *Id*.

In determining the content of the Eighth Amendment, first "the Court has been guided by objective indicia of society's standards, as expressed in legislative enactments and state practice with respect to executions." *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). Such objective indicia may determine "whether there is a national consensus against the sentencing practice at issue." *Graham v. Florida*, 560 U.S. 48, 58 (2010), citing *Kennedy* at 419. Although the Court has relied on indicators such as jury sentencing outcomes and international norms, historically, the

Court has looked to States' legislative trends as the most consistent barometers. See, e.g. *Atkins v. Virginia*, 536 U.S. 304, 311-12 (2002) (applying the "evolving standards" doctrine to bar execution of intellectually-disabled offenders).

The Court next applies its "own judgment to bear upon this standard of "evolving decency", asking whether any of the established purposes for punishment (retribution, deterrence, incapacitation, or rehabilitation), justify the use of the punishment at issue. See, e.g. *Kennedy* and *Graham, supra.*

Germaine to the lawsuit *sub judice*, this court notes that the Supreme Court has used the "evolving standards of decency" doctrine in holding that the Eighth Amendment bars death sentences for rapes[20], certain felony murder crimes[21], intellectually-disabled offenders[22], juvenile offenders[23], and juvenile sentences imposed for non-homicide crimes.[24]

Plaintiffs allege that the United States Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008) took this "evolving standards" approach in the majority opinion, with respect to the lethal injection protocol used by Kentucky in 2008:

> Thirty-six States that sanction capital punishment have adopted lethal injection as the preferred method of execution. The Federal Government uses lethal injection as well.
>
> This broad consensus goes not just to the method of execution, but also to the specific three-drug combination used by Kentucky. Thirty States, as well as the Federal Government, use a series of sodium thiopental, pancuronium bromide, and potassium chloride, in varying amounts.

*Id.*at 35.  The *Baze* plurality also found it significant that "[n]o State uses or has ever used the one-drug protocol belatedly urged by petitioners." *Id*. It concluded that: "[T]he Commonwealth's continued use of the three-drug protocol cannot be viewed as posing an objectively intolerant risk

---

[20] *Kennedy*, 554 U.S. at 441-46
[21] *Enmund v. Florida*, 458 U.S. 782, 788 (1982).
[22] *Atkins*, 536 U.S. at 311-312.
[23] *Roper v. Simmons*, 543 U.S. 551, 578 (2005).
[24] *Graham*, 560 U.S. at 82.

when no other State has adopted the one-drug method and petitioners proffered no study showing that [the one-drug method] is an equally effective manner of imposing a death sentence." *Id.*

In the controlling plurality opinion, Chief Justice Roberts wrote: "[T]o prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846, and n. 9, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). In other words, "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 842).

Accordingly, "a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Id.* at 51. Rather, the challenged execution method must present "a 'substantial risk of serious harm,'" and the proposed "alternative procedure must be feasible, readily implemented, and, in fact, significantly reduce a substantial risk of severe pain." *Id.* at 52. Applying this analysis to the facts, Chief Justice Roberts found that the petitioners had not shown "that the risk of an inadequate dose of the first drug is substantial," or that the "Eighth Amendment require[d] Kentucky to adopt the untested alternative procedures petitioners . . . identified." *Id.* at 54. Therefore, the petitioners had not "carried their burden of showing that the risk of pain from maladministration of a concededly humane lethal injection protocol, and the failure to adopt untried and untested alternatives, constitute cruel and unusual punishment." *Id.* at 41.

ANALYSIS

When a prisoner seeks a stay of execution, this court must consider the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009). "The All Writs Act does not excuse a court from making these findings." *Dunn v. McNabb*, 138 S. Ct. 369, 199 L. Ed. 2d 274 (2017); *see also Hill*, 547 U.S. at 584; *Buntion v. Lumpkin*, 31 F.4th 952, 958 (5th Cir. 2022).

Plaintiffs argue that there is a strong likelihood that they will succeed on the merits of Count III of the First Amended Complaint and Intervenor Complaint. This court notes that Plaintiffs were adamant in both briefing and at oral argument that they are proceeding in the current motion only on Count III, and they expressly denied relying on the likelihood of success on Count I.

In *Baze*, addressed *supra*, the petitioners argued that Kentucky's lethal injection protocol was "unconstitutional under the Eighth Amendment's ban on 'cruel and unusual punishments,' because of the risk that the protocol's terms might not be properly followed, resulting in significant pain. They propose[d] an alternative protocol, one that they concede[d] ha[d] not been adopted by any State and ha[d] never been tried." *Id.* at 41. Here, Plaintiffs argue that Chief Justice Roberts' plurality opinion in *Baze* relied on *Kennedy v. Louisiana*'s appeal to the "evolving standards of decency that mark the progress of a maturing society." *See Kennedy*, 554 U.S. at 419.

21

This court disagrees. While Chief Justice Roberts noted as an aside that "[t]hirty states, as well as the Federal Government, use[d]" the same execution protocol challenged by the petitioners, and that no state had ever used the alternative protocol they proposed, he explicitly stated: "This consensus is probative but not conclusive with respect to that aspect of the alternatives proposed by petitioners." *Baze*, 553 U.S. at 53. Instead, the Court held that to successfully challenge a state's method of execution, a condemned prisoner must show that the challenged method of execution presents "a substantial risk of serious harm," and that there is an "alternative procedure" that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* at 52. The phrase "evolving standards of decency" does not appear in the controlling plurality opinion. *See id.* at 40-62.

Moreover, the Supreme Court summarized *Baze*'s holding in a later case:

> The controlling opinion in *Baze* outlined what a prisoner must establish to succeed on an Eighth Amendment method-of-execution claim. . . . [It] first concluded that prisoners cannot successfully challenge a method of execution unless they establish that the method presents a risk that is "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." To prevail on such a claim, "there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment" . . . [P]risoners "cannot challenge a State's method of execution merely by showing a slightly or marginally safer alternative." Instead, prisoners must identify an alternative that is "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain."

*Glossip*, 576 U.S. at 877 (punctuation and citations omitted) (quoting *Baze*, 553 U.S. at 50-52).

In *Glossip*, the United States Supreme Court upheld the use of Oklahoma's three-drug death penalty protocol. Like Mississippi's three-drug protocol, Oklahoma's protocol sanctioned the use of midazolam followed by a paralytic agent and potassium chloride. Glossip, 576 U.S. at

871. When upholding Oklahoma's use of midazolam in executions, Justice Alito, writing for the Court, noted, "this Court has never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment." *Glossip*, 576 U.S. at 869. See also *Bucklew*, 139 S.Ct. at 1124 (United States Supreme Court has yet to hold a State's method of execution qualifies as cruel and unusual punishment).

In order to succeed on a § 1983 method-of-execution claim, therefore, a prisoner must establish "that the State's lethal injection protocol creates a demonstrated risk of severe pain. And he must show that the risk is substantial when compared to the known and available alternatives." *Id.* at 877-78 (quoting *Baze*, 553 U.S. at 61); *see also Bucklew*, 139 S. Ct. at 1125. The Fifth Circuit has consistently applied this test to § 1983 challenges to a method of execution. *See, e.g. Whitaker v. Collier*, 862 F.3d 490, 497 (5th Cir. 2017); *Wood v. Collier*, 836 F.3d 534, 540 (2016); *Bible v. Davis*, 739 F. App'x 766, 771-72 (5th Cir. 2018).

The cases cited by Plaintiffs in support of their proposed "evolving-standards-of-decency" analysis do not address § 1983 challenges to a method of execution. In *Trop*, the Supreme Court addressed "whether or not denationalization may be inflicted as a punishment" on a United States citizen for desertion during a time of war. *Trop*, 356 U.S. at 94. The Supreme Court found that the "soldier committed a crime for which he should be and was punished, but he did not involve himself in any way with a foreign state," and there "was no dilution of his allegiance to this country." *Id.* at 92. It held: "[D]eprivation of citizenship is not a weapon that the Government may use to express its displeasure at a citizen's conduct, however reprehensible that conduct may be." *Id.* at 92-93. Alternatively, the Court held that the "use of denationalization as a punishment is barred by the Eighth Amendment." *Id.* at 101. The Court noted that the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing

society," and that "civilized nations of the world are in virtual unanimity that statelessness is not to be imposed as punishment for crime." *Id.* at 101-02.

In *Kennedy*, the Supreme Court held that the Eighth Amendment barred a state from imposing the death penalty on a prisoner convicted of raping a child, where the crime did not result, and was not intended to result, in the child's death. *Kennedy*, 554 U.S. at 412. The Court cited *Trop*'s language regarding the "evolving standards of decency that mark the progress of a maturing society," *id.* at 419, and noted its previous holding "that the death penalty can be disproportionate to the crime itself where the crime did not result, or was not intended to result, in death of the victim." *Id.* at 420 (citing *Coker v. Georgia*, 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977)). The Court reasoned that it was "guided by 'objective indicia of society's standards, as expressed in legislative enactments and state practice with respect to executions.'" *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 563, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). However, "[c]onsensus is not dispositive. Whether the death penalty is disproportionate to the crime committed depends as well upon the standards elaborated by the controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose." *Id.* at 421.

Finally, in *Graham*, the Supreme Court summarized the *Trop-Kennedy* line of cases. There, the Court held that the Eighth Amendment "prohibits the imposition of a life-without-parole sentence on a juvenile offender who did not commit homicide." *Graham*, 560 U.S. at 82. The Court noted that there were two lines of cases in which it had "consider[ed] punishments challenged not as inherently barbaric, but as disproportionate to the crime." *Id.* at 59. "The first involves challenges to the length of term-of-years sentences given all the circumstances in a

particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty." *Id.*

The second line of cases, involving the death penalty, can be further broken down into "two subsets, one considering the nature of the offense, the other considering the characteristics of the offender." *Id.* at 60. In the first subset, the Court has forbidden imposition of the death penalty "for nonhomicide crimes against individuals." *Id.* at 61. In the second subset, the Court "has adopted categorical rules prohibiting the death penalty for defendants who committed their crimes before the age of 18, or whose intellectual functioning is in a low range." *Id.* "In the cases adopting categorical rules the Court . . . considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice,' to determine whether there is a national consensus against the sentencing practice at issue." *Id.* "Next, guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." *Id.*

In summary, neither *Trop*, *Kennedy*, nor *Graham* involved a claim challenging a particular method of execution; rather, they each involved a challenge to a sentence. In contrast, *Baze*, *Glossip*, and *Bucklew* each involved a challenge to a method of execution – rather than the death sentence – and they make clear that "[a] stay of execution may not be granted . . . unless the prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. And he must show that the risk is substantial when compared to the known and available alternatives." *Glossip*, 576 U.S. at 877-78 (quoting *Baze*, 553 U.S. at 61); *see also Bucklew*, 139 S. Ct. at 1125; *Whitaker*, 862 F.3d at 497; *Wood*, 836 F.3d at 540; *Bible*, 739 F. App'x at 771-72. Therefore, Count III of Plaintiffs' First Amended Complaint and Intervenor Complaint – in which

they claim that the use of a three-drug lethal injection protocol is prohibited by the Eighth Amendment – is governed by the *Baze-Glossip* analysis.

Here, Plaintiffs have not demonstrated that Mississippi's three-drug lethal injection protocol "creates a demonstrated risk of severe pain" that is "substantial when compared to the known and available alternatives." *Glossip*, 576 U.S. at 877-78. In fact, Plaintiffs have not even attempted to do so, instead relying on an inapplicable analysis.

This court notes that a three-drug lethal injection protocol was expressly upheld by the United States Supreme Court as recently as seven years ago. *See Glossip*, 576 U.S. at 878-92; *see also Jordan*, 823 F.3d at 812 ("The three-drug protocol and the particular drugs Mississippi proposes to use (midazolam, a paralytic, and potassium chloride) are typical for those states that use lethal injection and were recently upheld in the face of a constitutional challenge."). Multiple Courts of Appeals have approved three-drug midazolam protocols. *See, e.g. Price v. Commissioner*, 920 F.3d 1317, 1329-30 (11th Cir. 2019); *In re Ohio Execution Protocol Litigation*, 881 F.3d 447, 452 (6th Cir. 2018); *McGehee v. Hutchinson*, 854 F.3d 488, 492 (8th Cir. 2017); *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015).

Plaintiffs have not identified an alternative method of execution that is feasible, readily implemented, and that significantly reduces the risk of harm. Plaintiffs suggest that the State should use a single dose of pentobarbital, but they have not identified any supplier who is willing to sell pentobarbital to MDOC for use in executions. As noted above, MDOC has made multiple attempts to obtain pentobarbital, but all of those efforts have proved unsuccessful. The fact that the State cannot obtain pentobarbital is a legitimate penological reason for not using that drug. See *Glossip*, 576 U.S. at 878 (affirming district court's finding "that both sodium thiopental and pentobarbital are now unavailable to Oklahoma's Department of Corrections").

Plaintiffs further claim that, because Texas, Georgia, and Missouri have carried out executions with a single dose of pentobarbital, pentobarbital is a feasible and readily implemented alternative. The court, however, previously has rejected this argument. [Docket no. 221 at 5] ("The fact that another state may have obtained pentobarbital at any point is not persuasive evidence that Mississippi could obtain it in a timely fashion to execute these Plaintiffs."). This court also is not persuaded by Plaintiffs' argument that statistical data in support of other states' election to use a one-drug protocol should move this court to enjoin Mississippi from using its three-drug protocol. This court does not have before it sufficient evidence revealing the various states' motives for amending their respective execution protocols[25].

Defendants point this court to other courts, that have followed suit. See *In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (rejecting argument that "because other states have been reported to have obtained compounded pentobarbital for use in executions," a barbiturate-only protocol was a feasible alternative); *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268, 1302 (11th Cir. 2016) ("We expressly hold that the fact that other states in the past have procured [compounded pentobarbital] . . . does not make it available to the [Alabama Department of Corrections] for use in lethal injections in executions."), abrogated on other grounds by *Bucklew*, 139 S.Ct. at 1127–29. This court agrees with Defendants that, even if pentobarbital was available, Plaintiffs have not shown that the use of pentobarbital in a single-drug protocol would significantly reduce the alleged risk of pain posed by MDOC's three-drug protocol.

Importantly, the State of Mississippi executed David Neal Cox approximately one year ago, using a three-drug midazolam protocol. This court has before it no evidence that the State incurred any problems in carrying out Cox's execution using its lethal injection protocol.

---

[25] This court notes, for example, that other states may have had difficulties obtaining the requisite drugs for various reasons.

This court further notes that Plaintiff's survey of "botched" three-drug-protocol executions over the past five years indicates that four out of the ten were problems with intravenous access, which would likewise be a problem with Plaintiffs' desired method of execution, one dose of an FDA-approved ultra short-acting barbiturate. [Docket no. 272 at 2-5].

This court, accordingly, finds that based on the evidence before it, Plaintiffs have not shown a significant possibility of success on the merits of their claim that the State's use of midazolam would violate their Eighth Amendment rights.   This court, therefore, must deny Plaintiff's Motion [Docket no. 260]. Furthermore, the other preliminary injunction factors outlined above do not weigh in Plaintiffs' favor. This court, in lockstep with the United States Supreme Court, recognizes that States have a strong interest in enforcing their criminal judgments without undue interference from federal courts. *Hill*, 547 U.S. at 584; *Nelson*, 541 U.S. at 650.

Finally, although the Plaintiffs' failure to demonstrate that they are likely to succeed on the merits is dispositive, this court believes it prudent to address some equitable considerations. Plaintiffs strenuously argue that it is inequitable for the State to execute Loden – or any of them – after the State actively has participated in this § 1983 litigation for several years.

As noted above, however, "[f]iling an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course." *Hill*, 547 U.S. at 583-84. That Loden is an Intervenor in the case now provides him with no additional rights. In *Glossip*, Charles Warner was one of Oklahoma's four death penalty inmates who moved for a preliminary injunction to block his execution. Oklahoma nonetheless successfully executed him before the conclusion of the litigation in *Glossip*. *Glossip*, 576 U.S. at 871-72. The United States Supreme Court expressed no objection to Oklahoma's course of action.

This court agrees with Plaintiffs' contention that the State could have previously petitioned the Mississippi Supreme Court for an execution date. The State represents that the reasons it did not do so were: 1) Loden's successive post-conviction petition was only just resolved in 2018-2019; 2) delays caused by the COVID-19 pandemic; 3) the execution of David Neal Cox last year; and 4) the unavailability of more execution drugs until the summer of 2021.

Acquiescence in this litigation by the State does not enlarge Plaintiffs' rights, nor does it serve as a shield to Loden's execution. This court finds that none of the Plaintiffs has been prejudiced by the State's participation in the § 1983 case, and that "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*. Plaintiffs have not demonstrated that their interests outweigh that of "the State and the victims of crime . . . in the timely enforcement of a sentence." *Id.* at 584.

CONCLUSION

Loden contends that since he is a plaintiff in this underlying lawsuit challenging Mississippi's lethal injection mode of execution, the same procedure Mississippi intends to use to put him to death, he should not be executed before a decision on the constitutionality is rendered. Should this court adopt that reasoning, Loden's future execution date would be uncertain, but years away. If this court were to rule that the lethal injection mode is unconstitutional, Mississippi could still resort to his execution under one of three alternative modes of execution, which chosen procedure would surely be attacked in a new lawsuit.

Loden, however, cannot convincingly argue that his involvement in this §1983 lawsuit has somehow expanded his rights and provided him a shield against execution. He has exhausted all his state and federal appellate rights. Section 1983, a civil matter, in this context, is not among the

panoply of approaches which should be construed as falling within the embrace of "unexhausted state and federal appeals."

Miss Code Ann. § 99-19-106 obligates the Mississippi Attorney General to "make a motion [alerting the Mississippi Supreme Court] that all state and federal remedies have been exhausted". This motion triggers the Mississippi Supreme Court's duty that it "shall" set or reset the inmate's date of execution. Even if the Attorney General failed timely to act (although her office says she could not because the State lacked the appropriate drugs to put Loden to death), that omission would not enlarge Loden's rights, as he has been condemned to death without any remaining challenges to his guilt under either state or federal law.

Then, Loden argues that his planned execution using the three-drug "cocktail" under lethal injection would violate his rights under Eighth Amendment because the practice of the majority of executing jurisdictions now uses a single-drug protocol. This shift to a one-drug method, argues Loden, represents the "evolving standard of decency" standard. This court simply is not persuaded that Loden (or the other Plaintiffs) has shown a substantial likelihood of success on this contention. The statistics relied upon by Loden could point to a number of other factors, for instance, the inability to secure the death drugs in sufficient quantities.

This court has applied the factors for injunctive relief to Plaintiffs' arguments and has found that Plaintiffs' arguments fail to satisfy those standards. They have not shown a substantial likelihood of success on the merits. They have overlooked the State's interest in enforcing its laws. Thus, Plaintiffs have failed in their obligation to prevail on all four of the injunction standards.

Although this Motion is styled as a motion for relief concerning all plaintiffs in this action, this Motion, as briefed and argued by counsel, primarily concerned the planned execution of Thomas Edwin Loden, Jr. Although much of the jurisprudence discussed in this Opinion seemingly

would embrace the other plaintiffs, nevertheless, these plaintiffs are currently not in the same status as Loden: the Mississippi Attorney General has not requested the Mississippi Supreme Court to set an execution date for these other plaintiffs; thus, the Mississippi Supreme Court has not set such a date for any of them. Furthermore, according to Plaintiffs, discovery is incomplete. Next, the State of Mississippi has not declared any plans to proceed with executions of the other condemned inmates. This court, thus, will reserve its ruling on these other plaintiffs until the court has heard their specific arguments and objections from their respective counsel.

**IT IS, THEREFORE, ORDERED that Plaintiffs' Motion for Order Under the All Writs Act [Docket no. 260] hereby is DENIED. This court, accordingly, declines to stay the execution of Thomas Edwin Loden scheduled for December 14, 2022, at 6:00 PM C.S.T.**

**IT IS FURTHER ORDERED that this court shall conduct a hearing with all other Plaintiffs/Intervenors in this § 1983 action on the issue of an indefinite stay of execution on January 19, 2023, at 9:30 AM.**

**SO ORDERED this the 7th day of December, 2022.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**