**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**Civ. No. 3:15-cv-00295-HTW-LGI**

|  |  |
|---|---|
| **RICHARD JORDAN, et al.,** | ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) |
| ***v.*** | ) |
|  | ) |
| **BURL CAIN, Commissioner, Mississippi** | ) |
| **Department of Corrections, et al.,** | ) |
|  | ) |
| **Defendants.** | ) |

**REBUTTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR EXTENSION OF TIME TO FILE RESPONSE**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants'[1] opposition[2] to Plaintiffs'[3] motion for an extension of time[4] within which to

respond to their summary judgment motion[5] is riddled with misstatements and overbroad

generalizations.

---

[1] The Defendants in this case are Mississippi Department of Corrections ("MDOC") Commissioner Burl Cain, Mississippi State Penitentiary ("Parchman") Superintendent Marc McClure, the Mississippi State Executioner, and Unknown Executioners, all sued in their official capacity.

[2] Doc. 286, Defendants' Objection to Plaintiffs' Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment ("Def. Obj.").

[3] The Plaintiffs are Richard Jordan and Ricky Chase, both death-sentenced prisoners at Parchman. The Plaintiff-Intervenors, also death-sentenced prisoners at Parchman, are Roger Thorson and Robert Simon. In response to a direct question from the Court at the January 19, 2023 status conference, Defendants' counsel acknowledged that each of the four prisoners were litigating collateral challenges to their convictions and/or sentences, which prevented the setting of execution dates at this time under Miss. Code Ann. § 99-19-106.

[4] Doc. 283 (Plaintiffs' Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment) ("Ptfs. Time Mot."), Doc. 285 (Memorandum in Support of Plaintiffs' Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment) ("Ptfs. Time Mem.").

[5] Doc. 280 (Defendants' Motion for Summary Judgment), Doc. 281 (Defendants' Memorandum in Support of Motion for Summary Judgment) ("Def. S. J. Mem.").

1.     **Defendants misrepresent Plaintiffs' allegations regarding the known, available alternatives that would mitigate the risks posed by Defendants' three-drug protocol.**

Sixteen separate times in their ten-page opposition, Defendants stake their arguments on the basis that Plaintiffs' proposed alternative method of execution is "a single dose of pentobarbital or some other <u>FDA-approved ultra short-acting</u> barbiturate."[6] Plaintiffs have never limited the drug they contend would mitigate the serious risk of severe harm posed by Defendants' three-drug protocol to FDA-approved (that is, commercially manufactured) pentobarbital or another FDA-approved ultra short-acting barbiturate. Rather, Plaintiffs have been precise in describing the "known, available alternative" method of execution they assert in this case: a <u>single-drug anesthetic-only</u> protocol,[7] using, in descending order depending on availability, the following drugs:

- an FDA-approved, ultra short-acting barbiturate;[8]
- an FDA-approved short- or intermediate-acting barbiturate;[9]
- an ultra short-acting barbiturate, compounded by a duly licensed compounding pharmacy, tested for integrity, purity, and potency by a laboratory unaffiliated with the compounding pharmacy industry or a department of corrections;[10]
- a short- or intermediate-acting barbiturate, compounded by a duly licensed compounding pharmacy, tested for integrity, purity, and potency by a laboratory unaffiliated with the compounding pharmacy industry or a department of corrections.[11]

---

[6] Def. Opp. 2 (twice), 3, 4 (three times), 5, 6 (three times), 7 (twice), 8 (twice), 9 (emphasis added).

[7] Doc. 50, First Amended Complaint (FAC), at 41-42 ¶¶ 224-27; FAC at 45-46 ¶¶ 247-49.

[8] <u>Id</u>. at 41 ¶ 225; 45-46 ¶ 249.

[9] <u>Id</u>. at 41-42 ¶ 226; 45-46 ¶ 249.

[10] <u>Id</u>. at 42 ¶ 227; 45-46 ¶ 249.

[11] <u>Id</u>. at 42 ¶ 227; 45-46 ¶ 249.

Defendants' misstatement is no mere oversight; it is an attempt to obscure the fact that, whatever superficial steps they took to portray an effort to obtain pentobarbital from 2017 to the present, those efforts focused on FDA-approved pentobarbital.[12] That can hardly be "ordinary transactional effort," given that Defendants knew that, from at least 2015 forward, "the manufacturer of Nembutal, the only FDA-approved name brand of injectable pentobarbital, blocked the sale of the drug to States for use in executions."[13]

AG 1, who was heavily involved in Defendants' efforts to secure execution drugs from at least 2017 through 2020, "did not have a particular interest in obtaining an API unless all resources were exhausted to obtain pentobarbital in an injectable form."[14] As AG 1 understood, API (active pharmaceutical ingredients) are required to compound a drug;[15] thus, not having "a particular interest" in obtaining API meant that Defendants were only seeking FDA-approved pentobarbital.

Consequently, in all contacts between Defendants and potential execution drug suppliers from 2017 to the present, whenever the topic of the availability of either FDA-approved ("injectable" or "manufactured") pentobarbital or compounded pentobarbital was discussed, Defendants never pursued the latter. In August 2017, Supplier 3 told former Commissioner Hall that it could supply compounded pentobarbital on an as-needed basis (that is, when an execution had been scheduled).[16] Supplier 3 never retracted that offer;[17] but nobody from MDOC has made any effort to contact Supplier 3 since October 2017.[18]

---

[12] Ptfs. Time Mem. at 11-26 (detailing discovery on Defendants' purported attempts).

[13] Doc. 26, Defendants' Memorandum of Authorities in Support of Motion to Dismiss and in Opposition to Motion for Preliminary Injunction, at 4, citing David Jolly, Danish Company Blocks Sale of Drug for U.S. Executions, N.Y. Times (July 1, 2011), nyti.ms/1HOSzj2.

[14] AG 1 Dep. 37:20-22.

[15] AG 1 Dep. 13:20-15:8.

[16] Hall Dep. 57:18-58:2.

[17] Id., 72:8-13.

[18] Id., 73:21-74:8.

In July 2020, Supplier 4 told MDOC 5 that it could not obtain pentobarbital "per manufacturer." MDOC 5 never advised Supplier 4 that MDOC would be willing to buy compounded (that is, non-manufactured) drugs or the API from which drugs could be compounded.[19] Nor did MDOC 5 ask Supplier 4 about its ability to compound lethal injection drugs for MDOC.[20] MDOC 5 was not directed to follow up with Supplier 4 after that date, nor is MDOC 5 aware of any follow-up with Supplier 4 by anyone else affiliated with MDOC after that date.[21] Supplier 4 had never said it was unwilling to provide execution drugs to MDOC, only that its "manufacturer" could not provide them at the time of MDOC 5's outreach.[22]

In September 2020, MDOC 5 discussed execution drugs with Supplier 5,[23] but did not ask if Supplier 5 could compound lethal injection drugs for MDOC, did not ask if it could obtain compounded drugs, and did not discuss whether Supplier 5 could obtain the API from which execution drugs could be compounded.[24] After September 21, 2020, neither Supplier 5 nor anyone else affiliated with MDOC contacted Supplier 5 again.[25]

Finally, Defendant Cain, who led Defendants' efforts from 2020 forward, did not ask any supplier about the availability of compounded pentobarbital.[26] In fact, since July 2021, Cain has only asked suppliers about the availability of potassium chloride.[27]

By misrepresenting the alternative method of execution pled by Plaintiffs, then, Defendants seek to misdirect the Court from their failure to make any effort – let alone "ordinary transactional

---

[19] MDOC 5 Dep. 68:8-15 ("I don't even know what API is").
[20] MDOC 5 Dep. 68:16-18.
[21] MDOC 5 Dep. 69:11-19.
[22] MDOC 5 Dep. 69:20-70:4.
[23] MDOC 5 Dep. 75:14-22.
[24] MDOC 5 Dep. 78:23-79:9.
[25] Cain Dep. 79:10-15, 79:23-80:1.
[26] Cain Dep. 49:21-50:8; 63:23-64:1.
[27] Cain Dep. 69:1-19 (in November 2022, Cain contacted Supplier 1 about potassium chloride only); id. 56:21-57:22, 58:8-21 (in November 2022, Cain contacted Supplier 6 about potassium chloride only).

effort" – to obtain two of the four categories of barbiturates that Plaintiffs allege are "known, available alternatives" for use in a one-drug protocol.

> ### 2. Contrary to Defendants' conclusory statements to the contrary, Plaintiffs have presented detailed information regarding the discovery requested and the relevance of that discovery to Plaintiffs' opposition to summary judgment.

Defendants claim that "[t]he proposed discovery that the Plaintiffs seek to conduct would not add any evidence to whether pentobarbital or another FDA-approved ultra short-acting barbiturate is available to the State Defendants."[28] Once the scope of Plaintiffs' proposed alternative method is understood, the relevance of the requested discovery to Plaintiffs' opposition to Defendants' summary judgment motion is apparent. Contrary to Defendants' argument that Plaintiffs have provided only "vague assertions that discovery will produce some unrelated, unspecified facts,"[29] Plaintiffs have made a detailed showing of the relevance of the discovery requested.[30]

> #### a. Supplementation of Discovery

Plaintiffs seek "the supplementation of Defendants' Answers to Interrogatories, Responses to Requests for Production of Documents, and accompanying responsive documents, including identification of potential execution drug suppliers who were solicited by Defendants but did not provide any execution drugs to MDOC."[31] To date, Defendants have still not responded to

---

[28] Def. Opp. at 4. Defendants also repeatedly state that Plaintiffs have "presented no evidence," or similar phrasing, to support their Eighth Amendment claims. Plaintiffs have not been required to "present" evidence to the Court up to this point, and Defendants' conclusory and premature assertions to the contrary are misleading. And in any event, Plaintiffs have, in their opening memorandum, submitted substantial evidence to rebut Defendants' arguments. Ptfs. Time Mem. at 11-26, 30-33.

[29] Id. at 5, quoting Wichita Falls Office Assoc. v. Banc One Corp., 978 F.2d 915, 919 (5th Cir. 1992).

[30] The relevance to Plaintiffs' summary judgment opposition of Defendants' supplemental interrogatories, supplemental written responses to requests for production of documents, supplemental production of documents, the completion of the deposition of Defendant Cain, and the 30(b)(6) deposition are all discussed at length at Ptfs. Time Mem. at 26-29, 35-38.

[31] Ptf. Time Mem. at 3.

Plaintiffs' demands for supplementation of their discovery responses or for a discovery conference to discuss their refusal to supplement.[32]

Defendants' most recent responses to certain of Plaintiffs' interrogatories (in response to this Court's order to compel more complete answers) was served on November 23, 2021.[33] Defendants' most recent written responses to Plaintiffs Requests for Production of Documents was served on August 5, 2021.[34] On the afternoon of November 30, 2022, after the conclusion of the deposition of Defendant Cain (limited on the demand of Defendants to any efforts on his part as "MDOC 6" to obtain pentobarbital), Defendants produced some additional documents[35] and a privilege log,[36] but did not serve any written responses to Plaintiffs' Requests for Production of Documents nor provide a full supplementation of the standing Requests for Production.

Nor, contrary to Defendants' argument,[37] does it matter whether they have supplemented discovery once, six times, or sixty. Rather, Defendants are required to supplement their initial disclosures or their responses to any of Plaintiffs' interrogatories and requests for production of documents "in a timely manner" upon learning information that renders their previous responses incomplete or incorrect.[38] Given that none of Defendants' written discovery responses discuss (1) Defendant Cain's (or MDOC's)  efforts since July 2021 to obtain execution drugs, (2) the

---

[32] Doc. 270-8, Plaintiffs' Demand for Supplementation of Discovery (August 23, 2022); Doc. 284-12, Email from Plaintiffs' Counsel to Defendants' Counsel re Non-Pseudonymous Depositions (August 23, 2022); Doc. 284-2, Plaintiffs' Second Demand for Supplementation of Discovery (January 18, 2023); Doc. 284-19, Email from Plaintiffs' Counsel to Defendants' Counsel Seeking Discovery Conference (January 23, 2023).

[33] Doc. 280-2, Defendants' Sixth Supplemental Answers to Interrogatories.

[34] Doc. 229, Defendants' Notice of Service of Third Supplemental Responses to Plaintiffs' Requests for Production of Documents (August 5, 2021); Doc. 230, Defendants' Notice of Service of Fifth Supplemental Privilege Log (August 5, 2021).

[35] Doc. 274-1, Email from Wilson Minor to All Counsel Regarding Defendants' Supplemental Document Production (November 30, 2022).

[36] Doc. 274-7, Defendants' Sixth Supplemental Privilege Log (served November 30, 2022).

[37] Def. Opp. at 2 (referencing the number of times Defendants have supplemented discovery).

[38] Fed. R. Civ. P. 26(e)(1)(A); Riverside Constr. Co., Inc. v. Entergy Mississippi, Inc., Civ. Action Nos. 3:13-CV-876-HTW-LRA, 3:13-CV-879-HTW-LRA, 2014 WL 11513135 t *16 (S.D. Miss. Sept. 2, 2014).

execution of David Cox, or (3) the execution of Plaintiff-Intervenor Thomas Loden, there is no question that Defendants' responses to Plaintiffs' discovery are "incomplete or incorrect." Notably, this Court has already explained to Defendants that "the Plaintiffs are entitled to responses to their Interrogatories, regardless of whether the information could also be sought by deposition."[39]

In particular, given Defendants' argument that Plaintiffs must identify a specific supplier to meet their burden to show that pentobarbital is a "known, available alternative" to the three-drug series beginning with midazolam,[40] Plaintiffs require supplemental interrogatory answers including as to Defendants efforts (if any) to obtain an anesthetic to use in a single drug protocol and as to the identities of the persons or entities who did not supply execution drugs to MDOC (including production of any associated unredacted documents).[41]

In this connection, Defendants rely heavily on a statement in this Court's February 11, 2021 Order that it "does not intend to put the Defendants on trial to determine whether their attempts to procure pentobarbital have amounted to 'ordinary transactional effort.'"[42] But the Court hardly intended that statement to mean that Plaintiffs were not entitled to discovery on Defendants' efforts to obtain pentobarbital;[43] if it had, the discovery conducted throughout 2022

---

[39] Doc. 234 at 2.

[40] To be clear, Plaintiffs do not agree that that this is the correct standard. See Middlebrooks, 14 F.3d at 790-92 (the ability of other state corrections agencies and the Federal Government to obtain pentobarbital, and the potential for importation of execution drugs, is sufficient to meet the availability part of the Bucklew test: "we agree with Middlebrooks that Bucklew makes clear that an inmate can, in some circumstances, sufficiently plead availability by pointing to other states' protocols"). But Plaintiffs are entitled to discovery to show that Defendants are as wrong on the facts as they are on the law.

[41] Ptfs. Time Mem. at 26-30, 35-38.

[42] Doc. 221, Memorandum Opinion and Order on Depositions of Lay Witnesses (February 11, 2021) at 5, cited in Def. Opp. at 8.

[43] Any such prohibition on discovery regarding Defendants' ability to obtain the drug needed to implement Plaintiffs' proposed alternative would run afoul of Bucklew. Bucklew, 139 S.Ct. at 1129 (noting the "extensive discovery to explore the viability of [plaintiff's] alternative"), 1131 (noting that "Mr. Bucklew had ample opportunity to conduct discovery and develop a factual record concerning exactly what procedures the State planned to use").

would not have occurred. Rather, the Court noted Plaintiffs' burden and permitted depositions,

interrogatories, and document production in order to meet it:

> The dispute at the basis of this Motion is whether the alternative
> method of execution proposed by the Plaintiffs – the administration
> of a single dose of pentobarbital or other, similar barbiturate – is
> feasible and readily implemented. The Defendants assert that
> pentobarbital is impossible for them to acquire. To dispute that
> claim, and meet their burden, the Plaintiffs intend to depose all of
> the lay persons earlier named regarding their attempts to acquire
> pentobarbital during the time period from 2012 to the present. The
> parties agree that, in order to satisfy this standard, the Plaintiffs must
> show that pentobarbital could be obtained by the State through
> "ordinary transactional effort," a phrase that has been used in several
> execution challenge cases, but, thus far, undefined by the Supreme
> Court. The Plaintiffs believe that they can meet this burden by
> demonstrating that the State's efforts to obtain the drug have been
> insufficient.[44]
>
> It is critical to know whether the State is currently able, through
> ordinary transactional effort, to obtain pentobarbital to use in the
> execution of these Plaintiffs.[45]

As discussed in Plaintiffs' opening memorandum,[46] this Court's protective order[47] only

permits the Defendants to refuse to disclose the identities of <u>actual</u> suppliers of execution drugs.

The identities of <u>potential suppliers</u> who have been contacted by MDOC but have <u>not</u> provided

execution drugs to the Department are not protected by this Order. The deposition testimony of

Pelicia Hall, Tommy Taylor, Burl Cain/MDOC 6, MDOC 5, and AG 1 makes clear that Defendants

consider the following suppliers to be unwilling or unable to supply execution drugs: (a) Suppliers

3, 4, and 5; (b) the suppliers who were sent letters from former Commissioner Taylor and did not

respond; and (c) the suppliers who were contacted before 2017 and did not supply execution

---

[44] Doc. 221, Memorandum Opinion and Order on Depositions of Lay Witnesses (February 11, 2021), at 4.
[45] <u>Id</u>. at 5.
[46] Ptfs. Time Mem. at 28-29.
[47] Doc. 168.

drugs.[48] The depositions establish that MDOC has abandoned these suppliers as possible sources of execution drugs, and therefore their identities are not protected from disclosure. This outstanding discovery is directly related to Plaintiffs' burden to show that the single-drug anesthetic-only alternative is available to Defendants, and therefore there is no valid penological reason for Defendants not to utilize Plaintiffs' proposed method.[49]

> **b.    Completion of Discovery**

Although the Court and the parties agreed that <u>Bucklew</u> would further interpret "one of the most heavily contested issues that the Court will be required to decide,"[50] Defendants now claim that <u>Bucklew</u> did no such thing. They are wrong. <u>Bucklew</u> expressly held that the two parts of <u>Glossip</u> are <u>one</u> "necessarily comparative exercise," because "[t]o decide whether the State has cruelly superadded pain to the punishment of death isn't something that can be accomplished by examining the State's proposed method in a vacuum, but only by comparing that method with a viable alternative."[51]

Indeed, it appears that, despite acknowledging both sides of the standard established by <u>Glossip</u> and <u>Bucklew</u>,[52] Defendants refuse to participate in any further discovery about either the risks of  Mississippi's current method or the availability of alternatives to that method; rather, Defendants apparently have taken it upon themselves to unilaterally declare that discovery is stayed pending resolution of their summary judgment motion, or even that discovery is closed

---

[48] Ptf. Time Mem. at 11-23 (detailed discussion of Defendants' abandonment of these suppliers, who never provided execution drugs to MDOC).

[49] <u>Glossip v. Gross</u>, 576 U.S. 863 (2015); <u>Bucklew v. Precythe</u>, 139 S.Ct. 1112 (2019).

[50] Doc. 175, Order (July 27, 2018),  at 2. The issue referred to is the Question Presented added by the Supreme Court when it granted certiorari in <u>Bucklew</u>: "Whether Petitioner met his burden under Glossip v. Gross, 576 US. ___ (2015) to prove what procedures would be used to administer his proposed alternative method of execution, the severity of pain likely to be produced, and how they compare to the State's method of execution." <u>Id</u>.

[51] <u>Bucklew</u>, 139 S.Ct. at 1126 (citations omitted).

[52] Def. Opp. at 3.

without prior notice. This Court's Amended Scheduling Order did not set deadlines for discovery or dispositive motions.[53] Defendants have not moved or otherwise requested the entry of a new Scheduling Order setting deadlines for discovery or dispositive motions. And, as discussed in Plaintiffs' opening brief, Defendants have expressly acknowledged Plaintiffs' request for a 30(b)(6) deposition of MDOC[54] and the completion of Defendant Cain's deposition.[55]

Plaintiffs expressly based their motion for time on both Local Rule 7(b)(4) and Federal Rule of Civil Procedure 56(d), and briefed the application of these two rules separately.[56] Defendants' opposition does not make a single reference to Local Rule 7(b)(4). Consequently, Defendants do not address the delay inherent in their apparent insistence that discovery not be completed before their summary judgment motion is decided, nor any other of the Plaintiffs' showings of "good cause" for an extension of time under the Local Rule.

There is no reason to stay discovery until after the Rule 56 motion is briefed, argued, and adjudicated. If (as Plaintiffs believe will happen) the Court denies summary judgment, discovery will have to resume before the case can be set for trial. While Defendants have not conceded that their three-drug midazolam-first protocol presents serious risks of severe harm, or that Plaintiff's proposed alternative of a one-drug anesthetic-only protocol would mitigate those risks, they are unilaterally blocking Plaintiffs' ability to secure discovery relevant to those issues. Given that this Court denied issuance of an order enjoining Defendants from executing Plaintiff-Intervenor Loden before his Eighth Amendment claims could be adjudicated, Plaintiffs and the remaining Plaintiff-

---

[53] Doc. 236, Scheduling Order (April 1, 2022).

[54] Doc. 191, Defendants' Memorandum in Opposition to Motion to Depose Lay Witnesses and for 30(b)(6) Deposition, at 6 ("As for Plaintiffs' request for leave to depose MDOC under Fed. R. Civ. P. 30(b)(6), Defendants do not oppose this request").

[55] Doc. 280-7, Deposition of Commissioner Burl Cain ("Cain Dep."), 4:10-5:5, 29:16-23, 72:12-16; see also Doc. 275, Defendants' Response to Court's Question, at 2 ("Defendants agreed that Commissioner Cain would give a broader deposition in his role as Commissioner for the Mississippi Department of Corrections at a later date").

[56] Ptf. Time Mem. at 4-6 (discussing Local Rule 4(b)(7)).

Intervenors could be subject to similar fates without the opportunity to develop and prove their case.

It is far more efficient for the parties to complete discovery, regardless of the "prong" to which it relates, so that trial can be had soon after the Court's decision on the summary judgment motion.[57] As another judge in this District explained:

> If the Court were to issue a stay and subsequently deny the dismissal motion, the resolution of the Plaintiff's federal and state law claims against Dr. Saunders, via summary judgment or trial, would be further delayed while the parties went back and conducted discovery on the claims. Even if the Court dismissed the Plaintiff's state law claims, her remaining federal causes of action would likely necessitate some additional discovery. The Court is not inclined to further delay proceedings by issuing an unnecessary stay given the length of time this action has been pending.[58]

Defendants have not even moved for a stay of discovery. They should not be allowed to obtain a stay by refusing to participate in discovery.

### 3.    Conclusion

Plaintiffs request that this Court enter its Order extending the deadline for their opposition for thirty (30) days after the later of:

(1)    the supplementation of Defendants' Answers to Interrogatories, Responses to Requests for Production of Documents, and accompanying responsive documents, including identification of potential execution drug suppliers who were solicited by Defendants but did not provide any execution drugs to MDOC;

(2)    the completion of the deposition of Defendant Cain;

---

[57] Time Ins. Co. v. White, Civ. Action No. 1:08cv16-HSO-JMR, 2008 WL 11440690 at *2 (S.D. Miss. Nov. 12, 2008) ("To freeze the discovery process under the circumstances present here would cause unnecessary delay in the resolution of any claims remaining after disposition of the pending dispositive Motions").

[58] Stark v. Univ. of Southern Miss., Civ. Action No. 2:13cv31–KS–MTP, 2014 WL 1342973 at *3 (S.D. Miss. April 3, 2014).

(3)     the completion of a Rule 30(b)(6) deposition of the Mississippi Department of Corrections ("MDOC"); and

(4)     the deposition of a witness with knowledge of the process of administering the three-drug lethal injection series to a condemned prisoner, specifically including the November 17, 2021 execution of David Cox and the December 14, 2022 execution of Thomas Loden.

In the alternative only, Plaintiffs request that the Court extend the date for responding to the summary judgment motion until at least fourteen (14) days from the Court's ruling on this Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court enter its Order extending the time for Plaintiffs to respond to Defendants' Motion for Summary Judgment as set forth above.

Respectfully submitted,

/s/ James W. Craig
James W. Craig, MSB # 7798
Emily M. Washington (pro hac vice)
Roderick & Solange MacArthur Justice Center
4400 South Carrollton Ave.
New Orleans, LA 70119
Telephone:     (504) 620-2259
Facsimile:     (504) 208-3133
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

*Attorneys for Plaintiffs Richard Jordan
and Ricky Chase*

Dated: February 17, 2023