IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RICHARD JORDAN,** *et al.*                                                                 **PLAINTIFFS**

**v.**                                                         **CIVIL ACTION NO. 3:15-CV-295-HTW-LGI**

**BURL CAIN,** *et al.*                                                                      **DEFENDANTS**

### ORDER

For the reasons provided below, this Court **DENIES** Plaintiffs' Motion for Reconsideration [290].

**I.    Background**

Plaintiffs, inmates Richard Jordan and Ricky Chase, initiated this case in 2015, challenging the constitutionality of Mississippi's method of execution. The Court's initial scheduling Order [49] set April 29, 2016, as the parties' discovery deadline. On February 5, 2016, Defendants herein: Marshall L. Fisher, the Commissioner of the Mississippi Department of Corrections,;Earnest Lee, the Superintendent of the Mississippi State Penitentiary; the Mississippi State Executioner; and Unknown Executioners (collectively, "the State" or "Defendants")[1], filed an unopposed Motion [62] seeking a brief extension of the discovery deadline to May 16, 2016.

On April 21, 2016, in response to the parties' joint *ore tenus* motion, the Court entered an Amended and Supplemental Scheduling Order [70] which set August 8, 2016, as the parties' discovery deadline. On August 31, 2016, in response to the parties' joint *ore tenus* motion, the

---

[1] Defendant Marshall L. Fisher has been replaced by Burl Cain as the current Commissioner of Mississippi Department of Corrections. Likewise, Defendant Earnest Lee has been replaced with Timothy Morris, the current Interim Superintendent of Mississippi State Penitentiary. All Defendants herein, including the Mississippi State Executioner and Unknown Executioners are represented by the Mississippi Attorney General's Office ("the State").

Court entered a Second Amended and Supplemental Scheduling Order [93], which set March 3, 2017, as the parties' discovery deadline.

On February 18, 2017, Plaintiffs filed a Motion [99] seeking a six-month extension of the discovery deadline. Plaintiffs represented that the parties had not set or conducted any depositions, and that certain third parties had failed to respond to subpoenas duces tecum. Plaintiffs did not indicate that they had attempted to enforce the subpoenas in an appropriate court. *See* FED. R. CIV. P. 45(c), (d). On March 1, 2017, the Court entered an Agreed Supplemental Scheduling Order [107] granting the motion and extending the discovery deadline to September 1, 2017.

On July 27, 2017, the Court held a status conference with the parties. Plaintiffs asserted that the discovery deadline should be extended because the State had failed to provide complete discovery responses. Specifically, Plaintiffs claimed that the State wrongfully had withheld the names and communications of those attempting to acquire lethal injection drugs. Notably, the State asserted it had clearly informed Plaintiffs since the onset of this litigation that it would not disclose the identity of drug suppliers, members of the execution team, or anyone involved in obtaining drugs or preparing for an execution. Likewise, the State asserted that it had served discovery responses in June 2016 which withheld the names of such parties, but Plaintiffs had not filed a motion to compel. The Court ordered [123] that Plaintiffs were permitted fourteen days to file a motion to compel and/or a motion to extend the discovery deadline.

On August 14, 2017, the State filed a Motion for Protective Order [125], asking the Court to forbid any and all discovery and/or disclosure of 1) the identities of MDOC's lethal injection drug suppliers or anything that could be used to identify such suppliers; and 2) the identities of any person who has been or may be involved with the procurement, purchase, custody, transportation, and/or storage of lethal injection drugs or anything that could be used to identify such person.

Among other things, the State argued that disclosure of such information would subject third parties to harassment and retaliation, citing federal courts' acknowledgment of such harassment by those who oppose the death penalty. *See, e.g. Glossip v. Gross*, 576 U.S. 863, 869-71, 135 S. Ct. 2726, 192 L. Ed. 2d 761 (2015). Indeed, the State cited the previous "outing" of specific suppliers in Mississippi.

On the same day, Plaintiffs filed a Motion to Compel and for Sanctions [127] and a Motion to Amend the Scheduling Order [130]. Among other things, Plaintiffs objected to 1) the State's failure to produce any documents or communications between MDOC and drug suppliers, and 2) the State's failure to identify its employees/agents who acquired drugs or the drug suppliers. Plaintiffs asked the Court to 1) compel Defendants to provide full, unredacted supplemental discovery responses; 2) extend the discovery deadline; and 3) award Plaintiffs' fees as a sanction for Defendants' misconduct.

On September 6, 2017, the Court extended the discovery deadline to October 6, 2017, in light of the pending motions which needed to be briefed and addressed, but the Court reserved ruling on the disputed information addressed in Defendants' Motion for Protective Order [125] and Plaintiffs' Motion to Compel [127].

On November 8, 2017, after a round of briefing, the Court heard oral argument on the pending motions. On March 29, 2018, the Court entered its Memorandum Opinion and Order [168] addressing them. First, the Court granted Defendants' Motion for Protective Order [125], holding that disclosure of the information sought by Plaintiffs would submit the State, its agents, and its suppliers to undue hardship and danger. The Court granted in part and denied in part Plaintiffs' Motion to Compel and for Sanctions [127], ordering Defendants to submit any documents withheld solely on the basis of attorney-client privilege to the Court for *in camera* inspection but denying

the motion in all other respects. Finally, the Court granted in part and denied in part Plaintiffs' Motion for Amendment to Scheduling Order [130] and extended the discovery deadline to July 28, 2018.

On July 12, 2018, Plaintiffs filed an Unopposed Motion to Continue Trial Setting [170], asking the Court to continue the August 2018 trial setting until the United States Supreme Court issued its opinion in *Bucklew v. Precythe*[2], No. 17-8151, a case which presented a question relevant to this case. On July 27, 2018, the Court granted [175] the motion and administratively closed the case until the parties provided notice of the Supreme Court's decision in *Bucklew*. On May 28, 2019, Plaintiffs provided notice [177] that the Supreme Court had issued its opinion in *Bucklew* and asked the Court to schedule a status conference to discuss discovery and a scheduling order. The Court reopened the case [178], scheduled a status conference, and directed the parties to provide *ex parte* letter-briefs on the effect of *Bucklew* in this case. After the status conference, the Court entered a Revised Scheduling Order [179] on December 12, 2019. Among other things, the Court set a discovery deadline of March 31, 2020.

On December 12, 2019, the State filed a Motion to Establish Deposition Protocols and Clarify Existing Protective Order [180]. Therein, the State asked the Court to order 1) that depositions of any parties identified by a pseudonym or whose identity otherwise falls within the scope of the protective order be taken solely by written questions and answers, 2) that any person deposed in this case be ordered to not disclose any material that would identify suppliers of lethal-injection drugs or persons involved in the execution process, and 3) that any person involved in the depositions be forbidden from disclosing such information or the identities of witnesses.

---

[2] In *Bucklew v. Precythe*, 139 S. Ct. 1112, 2013 L. Ed. 2d 521 (2019) the United States Supreme Court issued a 5-4 Opinion denying Plaintiff Russell Bucklew's claim that Missouri's lethal injection protocol would violate the Eighth Amendment. The Court held that Plaintiff had failed to demonstrate a feasible and readily implemented alternative method of execution that would significantly reduce the risk of severe pain.

On the same day, Plaintiffs filed a Motion to Depose Lay Witnesses and for 30(b)(6) Deposition [182], in which they asked to depose the following individuals and entities: 1) former MDOC Commissioner Marshall Fisher; 2) then-current MDOC Commissioner Pelicia Hall; 3) Mississippi State Penitentiary Superintendent Marshal Turner; 4) the persons identified in Defendants' discovery responses as MDOC 1, MDOC 2, MDOC 3, and AG 1; 5) any other persons who may be identified in supplemental discovery responses as having contacted, or attempted to contact, actual or potential lethal injection drug suppliers; and 6) the Mississippi Department of Corrections.

On March 17, 2020, the parties filed a Joint Motion for Modification of Revised Scheduling Order [196], asking the Court to suspend all pending deadlines and set a ninety-day discovery period to commence after the Court ruled on the pending motions [180, 182]. Among other things, the COVID-19 outbreak complicated the parties' discovery efforts.

On April 17, 2020, the Court entered a Memorandum Opinion and Order on Discovery Motions [197]. The Court believed that telephonic depositions with voice modulation were the best available option, but it asked the parties to submit suggestions. The Court scheduled a telephonic conference to discuss the matter. After the teleconference, the Court entered an Order [205] providing that the depositions would be held telephonically. The Court held:

> This Court has studied the submitted protocols for depositions of witnesses, mindful throughout that any court-ordered protocol must scrupulously protect the identity of the deponents and the identity of any drug supplier. This Court, therefore, is persuaded that the best protocol answering these security questions, along with ensuring Plaintiffs' opportunity to conduct meaningful examinations, is that of telephonic depositions.

The Court acknowledged, however, that certain logistical considerations had to be finalized, such as the location of the depositions, a protocol for court reporters, pitch modulation devices, and a third-party technician. This Court gave the parties thirty days to reach an agreement on these issues

5

and held the parties' Joint Motion for Modification of Revised Scheduling Order [196] in abeyance. The Court further discussed these deposition protocols with the parties in conferences on April 28, July 28, August 17, and November 20, 2020.

On February 11, 2021, the Court entered its Memorandum Opinion and Order on Depositions of Lay Witnesses [221]. The Court provided certain details concerning the protocol for depositions. The Court also addressed which State defendants could be deposed, and the specific topics the Plaintiffs could explore during depositions.. As noted above, Plaintiffs had specified the persons/entities they wished to depose in their Motion to Depose Lay Witnesses and for 30(b)(6) Deposition [182]. The Court observed that "[t]he dispute at the basis of this Motion is whether the alternative method of execution proposed by the Plaintiffs – the administration of a single dose of pentobarbitol or other, similar barbiturate – is feasible and readily implemented," and that the "parties agreed that, in order to satisfy this standard, the Plaintiffs must show that pentobarbitol could be obtained by the State through 'ordinary transactional effort,' a phrase that has been used in several execution challenge cases . . . ."

Although Rule 26 permits broad discovery, the Court noted its concomitant discretion appropriately to tailor the scope of discovery to the circumstances of a case. The Court held:

> It is critical to know whether the State is currently able, through ordinary transactional effort, to obtain pentobarbitol to use in the execution of these Plaintiffs. Whether the proposed witnesses put forth effort nine years ago that the Plaintiffs would deem suitable is not, finally, the point. Even if, through some greater effort, the State could have obtained pentobarbitol at that earlier date, it is possible that the supply would have expired by now. The fact that another state may have obtained pentobarbitol at any point is not persuasive evidence that Mississippi could obtain it in a timely fashion to execute these Plaintiffs.
> 
> The Court does not intend to put the Defendants on trial to determine whether their attempts to procure pentobarbitol have amounted to "ordinary transactional effort." If the Plaintiffs wish to show that the Defendants can obtain pentobarbitol, they can investigate for themselves the willingness of any supplier to provide it. However, the Court will permit the Plaintiffs to depose any of the witnesses listed above, or any other agents or employees of the Defendants who

> participated in efforts to obtain pentobarbitol during the time frame of 2017 to the present. Proposed deponents whose efforts ended prior to that date are not required to testify. Similarly, heretofore unnamed agents or employees who participated in efforts to obtain pentobarbitol from 2017 to the present are subject to being deposed.

Memorandum Opinion and Order on Depositions of Lay Witnesses, at 5, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI (S.D. Miss. Feb. 11, 2021), ECF No. 221. In a subsequent order [222], the Court granted the parties' Joint Motion for Modification of Revised Scheduling Order [196] and suspended the existing case deadlines until the parties could visit the courthouse to finalize a deposition protocol once the health concerns caused by the COVID-19 pandemic permitted.

On July 21, 2021, the Court held a status conference to discuss outstanding discovery issues. It instructed the parties to confer in good faith and file a motion to compel if they were unable to reach an agreement. On July 29, 2021, Plaintiffs filed a Motion to Compel [225], arguing that Defendants should supplement their written discovery responses before depositions commenced. Specifically, Plaintiffs wanted Defendants to identify specific communications with actual or potential drug suppliers by exact or approximate date, the means of communication, the subject matter of the communication, the MDOC individuals involved in each communication, actual or potential suppliers contacted, and the result of each communication.

On October 21, 2021, the Court granted the motion in part and denied it in part [234]. Specifically, the Court held: "[T]he issue of identity of the persons or the suppliers involved has been resolved by the Memorandum and Opinion entered by this Court on February 11, 2021. Beyond that, the Court finds that the Defendants should provide dates, locations, and the form of the referenced communications, as well as the specific result of each communication, as requested by the Plaintiffs."

On October 25, 2021, the Court and parties conducted a "walk-through" of the deposition protocol to be utilized for lay witnesses.

On April 1, 2022, the Court entered a Scheduling Order [236] which 1) set out the deposition protocol for lay witnesses, 2) directed the State to provide the Court with an *ex parte* list of witnesses to be deposed using this protocol, and 3) directed the parties to confer and reach an agreement on certain details regarding the logistics of the depositions. Plaintiffs subsequently noticed depositions [240] [241] [242] [243] [244] of anonymous witnesses, and the parties provided the Court with status reports [237] [245], notifying the Court that they had agreed on these details. The Court held another "walk-through" with the parties on July 29, 2022, to ensure that everyone was clear on the protocols to be observed during the anonymous, telephonic depositions. The Court described those protocols in an Order [255] on August 26, 2022. Plaintiffs noticed more depositions in October 2022 [257] [258] [259], including one anonymous witness, and the parties conducted depositions of both anonymous and known witnesses in August, September, and November 2022.

On January 18, 2023, Defendants filed a Motion for Summary Judgment [280]. Therein, Defendants made the following arguments:

- Count I.A. of the Amended Complaint is moot because it is undisputed that the State does not possess compounded pentobarbitol, has not been able to acquire pentobarbitol in any form since 2012, and does not intend to use pentobarbitol for executions.

- Count I.B. fails because Plaintiffs have no evidence that the State can obtain pentobarbitol or another barbiturate with ordinary transactional effort, as required to satisfy the second element of the *Baze-Glossip* test.

- Count II is moot because the legislature amended the relevant statute, and it no longer requires use of a barbiturate.

- Count III fails as a matter of law because Plaintiffs' *Trop* analysis has already been rejected by the Court.

- Count IV, concerning the State's failure to disclose its supplier of midazolam is foreclosed by *Sepulvado v. Jindal*, 729 F.2d 413 (5th Cir. 2013).

- Count V, in which Plaintiffs claim that the State is violating their right of access to the courts by not disclosing the drug manufacturers, suppliers, and compounders is moot insofar as it concerns compounded drugs, because the State is not using compounded drugs. It also fails as a matter of law with regard to the manufacturer and supplier of midazolam because Plaintiffs' right of access to the courts does not entitle them to such information.

Memorandum in Support of Motion for Summary Judgment, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI (S.D. Miss. Jan. 18, 2023), ECF No. 281.

On January 19, 2023, the Court held a status conference. During this status conference, Plaintiffs requested an extended time period of twenty-eight (28) days to respond to Defendants' Motion for Summary Judgment, and Defendants objected to the extension. Plaintiffs expressed their desire to conduct additional discovery before responding to the motion, but Defendants argued that no additional discovery was necessary. In a subsequent Order [282], the Court directed Plaintiffs to file a written motion seeking an extension of time to respond to the Motion for Summary Judgment and addressing their request for additional discovery.

On January 27, 2023, Plaintiffs filed a Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment [283]. Therein, they requested that the Court extend their deadline to respond to the motion until thirty (30) days after the later of 1) Defendants' supplementation of certain written discovery requests; 2) the completion of the deposition of Defendant Cain; 3) the completion of a 30(b)(6) deposition of MDOC; or 4) the deposition of a witness to the process of administering the three-drug lethal injection protocol, specifically including the executions of David Cox and Thomas Loden[3].

---

[3] Thomas Loden was an Intervenor Plaintiff in the subject case. The State of Mississippi executed Loden via lethal injection on December 14, 2022. David Cox was not a party to this matter; he was executed by the State on November 17, 2021, via lethal injection.

In broad terms, Plaintiffs argued that 1) Defendants had failed to supplement discovery responses as required by the Rules of Civil Procedure, 2) Defendants had refused to identify non-party drug suppliers who are no longer considered by MDOC to be a potential source of lethal-injection drugs, 3) Defendants had earlier agreed to a complete deposition of MDOC Commissioner Burl Cain, 4) Defendants had failed to respond to Plaintiffs' requests for a 30(b)(6) deposition of MDOC, and 5) none of the deponents thus far had any knowledge of the process by which MDOC administers the three-drug lethal injection protocol.

Defendants opposed the motion [286]. They argued that Plaintiffs' requested additional discovery was not necessary because the information sought relates to the first prong of the *Baze-Glossip* analysis, while Defendants' motion is based on the second prong of the analysis. Thus, Defendants contend that none of the additional information sought by Plaintiffs could create a genuine dispute of material fact relevant to the pending Motion for Summary Judgment.

On April 6, 2023, the Court entered an Order [289] denying Plaintiffs' Motion for an Extension of Time [283] as moot. The Court noted that it had been over two months since Plaintiffs filed the motion, providing them with ample time to conduct their desired discovery. The Court assumed that the parties had continued with discovery, as the Court had not entered a stay order and Plaintiffs had not filed a motion to compel. The Court directed Plaintiffs to respond to the Motion for Summary Judgment.

On April 18, 2023, Plaintiffs filed a Motion for Reconsideration [290]. Therein, they noted that the Court had mentioned a potential oral argument on the Motion for an Extension of Time [283] during the status conference held on January 19, 2023, and they stated this was why they had not conducted any more discovery or filed a motion to compel. They requested that the Court

stay the new deadline for a response to the Motion for Summary Judgment and hold an oral argument on the Motion for an Extension of Time [283].

The Court held a hearing on May 3, 2023, providing the parties with an opportunity to argue any issues they wished to address, including the Motion for an Extension of Time [283] and Motion for Reconsideration [290].

## II.   Discussion

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting FED. R. CIV. P. 54(b)). Under this rule, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* Thus, Rule 54(b)'s standard of review is "flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). However, "this power is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Lafayette City-Parish Consol. Gov't v. United States*, 622 F. Supp. 3d 257, 262 (W.D. La. 2022).

Although Rule 54(b) is "less exacting" than Rules 59(e) and 60(b), courts "still look to the latter rules for guidance." *Id.* Accordingly, when exercising its broad discretion under Rule 54(b), the Court "should consider whether there are manifest errors of law or fact upon which judgment is based, whether new evidence is available, whether there is a need to prevent manifest injustice, or whether there has been an intervening change in controlling law." *Id.* (punctuation omitted); *see also Hernandez v. Causey*, 2022 WL 4594023, at *10 (S.D. Miss. Sept. 29, 2022).

11

In their Motion for Summary Judgment [280], Defendants argue that Plaintiffs' Count I.B. fails because Plaintiffs have no evidence to support the second element of the *Baze-Glossip* test. That is, they argue that Plaintiffs cannot create a genuine dispute of material fact as to whether the State can obtain pentobarbitol or another barbiturate with an ordinary transactional effort. Plaintiffs contend that they need to conduct more discovery to respond to this argument.

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may ... defer considering the motion or deny it...." FED. R. CIV. P. 56(d)(1). Rule 56(d) motions "are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). "[C]ontinuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course," but "the party seeking additional discovery must first demonstrate how that discovery will create a genuine issue of material fact." *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009). They must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Prospect Capital Corp. v. Mutual of Omaha Bank*, 819 F.3d 754, 757 (5th Cir. 2016); however, "[w]hile the discovery rules are liberally tilted toward production, this . . . does not . . . permit a plaintiff to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Kean v. Jack Henry & Assocs.*, 577 F. App'x 342, 347 (5th Cir. 2014).

Plaintiffs have the burden of proving that Defendants can obtain pentobarbitol or another barbiturate with ordinary transactional effort. *Glossip*, 576 U.S. at 877 (quoting *Baze v. Rees*, 553 U.S. 35, 50-52, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008)); however, Plaintiffs' desired discovery

12

appears to be related to whether Defendants made a good faith effort to obtain pentobarbitol or another barbiturate. Even if Plaintiffs are correct that Defendants did not make a good-faith effort to obtain pentobarbitol or another barbiturate, that does not necessarily mean that Defendants *can* obtain pentobarbitol or another barbiturate. Therefore, the information sought by Plaintiffs is irrelevant to the second element of the *Baze-Glossip* analysis, upon which Defendants' dispositive motion is based.

More specifically, Plaintiffs assert that MDOC Commissioner Burl Cain's actions/role in securing lethal-injection drugs is relevant to whether MDOC can obtain pentobarbitol or other barbiturates with ordinary transactional effort; however, whatever Cain's role was or is, it has no bearing on whether MDOC *can* get Plaintiff's preferred drugs with ordinary transactional effort. Even if MDOC or Cain himself made no attempt to obtain pentobarbitol or another barbiturate, that does not prove that MDOC can obtain Plaintiffs' preferred drugs with ordinary transactional effort. Indeed, as Defendants noted during oral argument, the easiest way for Plaintiffs to prove that Defendants can obtain pentobarbitol or another barbiturate with ordinary transactional effort is to go find a vendor who will provide Plaintiffs' desired lethal-injection drugs and present proof of such to the Court.

Plaintiffs also strenuously argued during oral argument that they are entitled to know the identities of third-parties who would not or could not supply lethal-injection drugs to Defendants. Plaintiffs argue that the Court's rationale for maintaining the confidentiality of such vendors does not apply to those who will not or can not provide the drugs, in that there is no danger of "outing" a potential vendor if they have already declined Defendants' inquiries. The Court disagrees.

First, if non-suppliers are disclosed, Plaintiffs could then use process of elimination to narrow its list of potential suppliers in the State of Mississippi, compromising the third parties'

13

confidentiality. Second, if non-suppliers are disclosed, it likely forecloses the State's ability to ever use them in the future. Third, there is no likely scenario in which the disclosure of non-suppliers provides Plaintiffs with evidence relevant to Defendants' Motion for Summary Judgment. If Plaintiffs contact the non-suppliers, there are only two possible outcomes: either the non-suppliers cannot/will not supply the drugs, or they will/can supply them. If the non-suppliers will not supply the drugs, as Defendants have asserted, then Plaintiffs will not have gained any evidence to carry their burden of proving that the drugs are available with ordinary transactional effort. Likewise, if Plaintiffs learn that the alleged non-suppliers will, in fact, supply the drugs, then the third-party suppliers will have been publicly disclosed or "outed," likely foreclosing their ability and/or willingness to supply the drugs. Therefore, no matter what the result of Plaintiff's hypothetical investigation of the non-suppliers, it is not likely to provide them with any helpful evidence.

As for Plaintiffs' desired discovery related to the Cox and Loden executions, Plaintiffs admitted during oral argument that it was irrelevant to the issues presented by Defendants' Motion for Summary Judgment.

### III.  Conclusion

For these reasons, the Court denies the pending Motion for Reconsideration [291]. Plaintiffs shall file a response to Defendants' Motion for Summary Judgment [280] within two weeks of the entry of this order, or no later than April 7, 2025.  Defendants may file a reply brief within one week of the filing of Plaintiffs' response, or no later than April 14, 2025.

The Court also notes that there is currently no scheduling order in place. Accordingly, the Court orders that all discovery in this case must be completed within ninety (90) days of the entry of this order, or by June 22, 2025. If the parties wish to file any dispositive motions or *Daubert* motions, they must do so no later than 30 days after Discovery has been completed. This case is

hereby set for trial on this Court's calendar starting on December 1, 2025. A final pretrial conference shall be conducted prior to the trial.

It is further ordered that this matter is STAYED pending resolution of the Motion for Summary Judgment [280].

IT IS SO ORDERED on this, the 24th day of March, 2025.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE