# Exhibit A

# Letter of James Craig to
# The Honorable Henry T. Wingate
# U.S. District Judge
# June 16, 2025



**Roderick and Solange MacArthur Justice Center**
4400 S. Carrollton Avenue
New Orleans, Louisiana 70119

macarthurjustice.org

**James W. Craig**
Attorney (Licensed in Mississippi and Louisiana)
Director, Louisiana Office

jim.craig@macarthurjustice.org

June 16, 2025

The Honorable Henry T. Wingate
United States District Judge
Southern District of Mississippi

Via email to "wingate_chambers@mssd.uscourts.gov"

Re: Jordan, et al. v. Cain, et al., No. 3:15-cv-295-HTW-LGI

Dear Judge Wingate,

On behalf of Plaintiff Richard Jordan, we write to respond to Mr. Minor's letter earlier today. The question posed by the Court during Saturday's hearing was: "Would you agree that if there is a failure of that test to show consciousness of pain, that before a second attempt is made for the execution, that that matter has to be brought before the Court so the parties can come to the Court and make their argument as to what the next step should be? Do you have a problem with that?"[1]

Mr. Minor's letter states: "in the event that the IV Team leader informs the Commissioner that the inmate remains conscious after performing the consciousness check, the Commissioner will, as the protocol allows, restart the execution, and the inmate will be administered another 500 mg dose of midazolam." Mr. Minor goes on to say that if, after a second consciousness check, Mr. Jordan shows signs of consciousness, "the Commissioner will stop the execution and notify the Court and counsel opposite in writing not later than the following day."

Somewhat buried in this language is the fact that the Commissioner's answer to the Court's question is "No." Instead, the Commissioner insists that the MDOC Protocol gives him "the discretion to restart the execution, and he should be allowed to exercise that discretion, and all other discretion under the State's execution protocol."

This ignores the context of the Court's question: "And you understand why I'm asking it, because the State has now stated this morning -- this afternoon, that it will, as part of its protocol for execution, apply that test that you enunciated, but that test is to determine the consciousness, but it says nothing about if there is a failure of the test and it shows that there's a consciousness of pain. And so, this Court is concerned that without that protocol [the procedure set out in the Court's question], and with the matter being left entirely in the hand of the commissioner, that that might be too much discretion."[2]

---

[1] Transcript of June 14, 2025 Hearing at 66:9-14.
[2] Transcript 66:20-67:4.

The Court is correctly concerned about the consequences of allowing Commissioner Cain unbridled discretion.[3] Under Mr. Cain, after all, the "consciousness check" language of the MDOC Protocol has been changed three different times: Nov. 12, 2021,[4] Dec. 12, 2022,[5] and May 25, 2025.[6] The 2022 Protocol moved the "consciousness check" from four minutes before the injection of the first drug to four minutes after injection of the third drug, despite the fact that the third drug, potassium chloride, "interferes with the electrical signals that stimulate the contractions of the heart, inducing cardiac arrest."[7] The notion that the consciousness check would be performed after cardiac arrest demonstrates a profound lack of understanding about the reason for the check.

And whenever the protocol directed that it be performed, no "medically appropriate and approved" consciousness check was performed in David Cox's execution on Nov. 17, 2021, or in Thomas Loden's execution on Dec. 14, 2022.[8] Neither Mr. Cain nor either of the IV Team Members saw any problem with these failures to adhere to established protocol, showing that they cannot be trusted with the discretion to decide what to do if Mr. Jordan shows signs of consciousness four minutes after the injection of midazolam. More broadly, as asserted on Saturday, this also shows that the representations of future conduct cannot mitigate the risks Plaintiffs have advanced regarding the current three-drug protocol.

Two brief additional points: first, as discussed in Plaintiffs' Reply Brief, the Oklahoma protocol requires far more than the one "sternum rub" first proposed by Commissioner Cain in his June 10, 2025 declaration.[9] Second, because of the ceiling effect of midazolam as discussed at length by Dr. Stevens, injecting an additional 500 mg will not have any impact on Mr. Jordan's consciousness.

Plaintiff maintains his request that the Court issue a preliminary injunction barring Defendants from executing Mr. Jordan with the three-drug protocol (midazolam, chemical paralytic, and potassium chloride) until after the Court has rendered final judgment in this case.

---

[3] Although the current protocol (Doc. 310-2) does not detail how, or under what circumstances, an execution would be "restarted," counsel opposite's letter makes clear that regardless of the specific circumstances of the execution, the Commissioner has already pre-determined that a second attempt will be made.

[4] Doc. 310-4 at 8-9.

[5] Doc. 310-3 at 8-9.

[6] Doc. 310-2 at 8-9.

[7] Baze v. Rees, 553 U.S. 35, 44 (2008).

[8] June 12, 2025 Declaration of Dr. Heath, Doc. 322-1 at 1, ¶¶ 3-6.

[9] Doc. 322 at 12-13.

Regards,

James W. Craig
Emily M. Washington
Jack M. Stephens

Counsel for Plaintiffs Richard Jordan and Ricky Chase

cc:    All counsel of record