# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

RICKY CHASE                                                    PLAINTIFF

v.                                        CIVIL ACTION NO. 3:15-CV-295-HTW-LGI

BURL CAIN, Commissioner, Mississippi
Department of Corrections, in his Official
Capacity; MARC MCCLURE, Superintendent,
Mississippi State Penitentiary, in his Official
Capacity; THE MISSISSIPPI STATE
EXECUTIONER, in his Official Capacity;
and UNKNOWN EXECUTIONERS, in their
Official Capacities                                           DEFENDANTS

**ROBERT SIMON and ROGER ERIC THORSON**               **INTERVENORS**

## MEMORANDUM OPINION AND ORDER

Plaintiff[1] and Intervenors[2] ("Plaintiffs") are inmates on death row awaiting execution by

the State of Mississippi. They filed this § 1983[3] lawsuit challenging the constitutionality of

Mississippi's method of execution. Defendants ("the State") filed a Motion for Summary Judgment

[280]. For the reasons provided below, the Court grants the motion in part and denies it in part.

## I. BACKGROUND[4]

Plaintiffs are inmates on death row awaiting execution by the State of Mississippi. They

claim that Mississippi's method of execution violates the Eighth Amendment's prohibition of cruel

---

[1] Richard Jordan (executed) and Ricky Chase were the original named Plaintiffs in this case.

[2] Robert Simon, Thomas Edwin Loden, Jr. (executed), and Roger Eric Thorson intervened.

[3] *See* 42 U.S.C. § 1983 (providing a civil action for deprivation of rights secured under federal law).

[4] The Court incorporates its discussion of the background of this case from its Memorandum Opinion and Order [277] entered December 7, 2022, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI, 2022 WL 17543344, at *3-*6 (S.D. Miss. Dec. 7, 2022), and its Memorandum Opinion and Order [327] entered June 20, 2025, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI, 2025 WL 1728266, at *1-*5 (S.D. Miss. June 20, 2025).

and unusual punishment.[5] Defendants are the Commissioner of the Mississippi Department of Corrections ("MDOC") and the Superintendent of the Mississippi State Penitentiary. When Plaintiffs initiated this case, Mississippi law provided that those condemned to death should be executed by "continuous intravenous administration of a lethal quantity of an ultra short-acting barbiturate or other similar drug in combination with a chemical paralytic agent until death is pronounced." 2016 Miss. Laws Ch. 452.

The Mississippi legislature amended this statute in 2022. Its current version permits the State to choose among four different methods of execution: "(a) intravenous injection of a substance or substances in a lethal quantity into the body; (b) nitrogen hypoxia; (c) electrocution; or (d) firing squad, until death is pronounced . . . ." MISS. CODE ANN. § 99-19-51(1).

Mississippi's current lethal injection protocol requires a series of three injections: an anesthetic to render the prisoner unconscious; a paralytic agent; and potassium chloride to stop the prisoner's heart. *See* Ex. 1a to Mot. for P.I. [310-2], at 6-10.[6] The protocol specifies that MDOC personnel first must establish an intravenous ("IV") in each of the inmate's arms, with one serving as a contingency in case of a malfunction with the other IV. *Id.* at 9. Sodium pentothal is to be the first injection. If that drug is not available, MDOC must use pentobarbital. *Id.* at 6. If pentobarbital is not available, MDOC must use 500 mg of midazolam. *Id.* Four minutes after the first injection is given, MDOC personnel must determine whether the inmate is unconscious and confirm that the IV line is still functioning properly. *Id.* at 9-10. If the inmate is still conscious, the MDOC

---

[5] *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

[6] The record contains multiple versions of MDOC's "Capital Punishment Procedures." *See* Exs. 1a, 1b, 1c, 1d to Mot. for P.I. [310-2, 310-3, 310-4, 310-5]. In recent filings, Plaintiffs informed the Court that MDOC revised its "Capital Punishment Procedures" on three separate occasions since 2017. The Court examined the various versions of the execution procedures, and it does not appear to be any changes material to Plaintiffs' claims as pleaded in the First Amended Complaint [50]. Likewise, Plaintiffs have not argued any material difference between them; rather, Plaintiffs argue that they are all constitutionally deficient because they employ a three-drug lethal injection protocol.

Commissioner decides whether to start the execution over or stop it, but the protocol does not provide the criteria applied in making this determination.[7] *Id.* at 10.

If the inmate is rendered unconscious, the execution team administers the second injection – pavulon. *Id.* at 6. If pavulon is not available, either vecuronium bromide or rocuronium bromide must be used. *Id.* at 7.

The last injection is potassium chloride. *Id.* Throughout the entire execution process, MDOC personnel are required "continually [to] monitor the inmate using all available means to ensure that the inmate remains unconscious and that there are no complications." *Id.* at 10.

Plaintiffs' Amended Complaint [50] asserts five causes of action. *See* Amended Complaint [50], at 39-55. The Intervenor Complaint [208] relies upon these same five causes. *See* Intervenor Complaint [208], at 28-40. In Count IA, Plaintiffs claim that Defendants' use of compounded pentobarbital as the anesthetic in a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States[8] and Mississippi[9] Constitutions. *See* Amended Complaint [50], at 39-43.

---

[7] This Court, in its Memorandum Opinion and Order [327] of June 20, 2025, modified the protocol by ordering the State to halt the execution if the consciousness check reveals that the inmate remains conscious/sensate after the first dose of midazolam. *Jordan*, 2025 WL 1728266 at *16. If the consciousness check reveals that the inmate is unresponsive, the execution may continue. *Id.*

[8] *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."), amend. XIV § 1 (". . . nor shall any state deprive any person of life, liberty, or property, without due process of law . . . .").

[9] *See* MISS. CONST. art. III, § 28 ("Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed."), § 14 ("No person shall be deprived of life, liberty, or property except by due process of law.").

In Count IB, Plaintiffs claim that Defendants' use of midazolam as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States[10] and Mississippi[11] Constitutions. *Id.* at 43-46.

In Count II, Plaintiffs claim that Defendants' failure to use an ultra short-acting barbiturate or other similar drug as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States Constitution.[12] *Id.* at 46-49.

In Count III, Plaintiffs claim that Defendants' continued use of a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States[13] and Mississippi[14] Constitutions. *Id.* at 49-52.

In Count IV, Plaintiffs claim that Defendants' use of undisclosed compounds or ingredients in the lethal injection protocol violates Plaintiffs' right to notice of the method of execution under the United States[15] and Mississippi[16] Constitutions. *Id.* at 52-54.

---

[10] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[11] *See* MISS. CONST. art. III, §§ 14, 28.
[12] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[13] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[14] *See* MISS. CONST. art. III, §§ 14, 28.

[15] *See* U.S. CONST. amend. XIV.

[16] *See* MISS. CONST. art. III, § 14.

Finally, in Count V, Plaintiffs claim that Defendants' failure to disclose the identities of the manufacturer and/or suppliers of lethal injection drugs violates Plaintiffs' right of access to the courts under the United States[17] and Mississippi[18] Constitutions. *Id.* at 54-55.

Plaintiffs previously sought and obtained a preliminary injunction. The Court found that Plaintiffs had satisfied their burden of demonstrating a substantial likelihood of success on the merits of their claim that Defendants' failure to use an "ultra short-acting barbiturate or other similar drug" as then required by Miss. Code Ann. § 99-19-51 violated the Eighth Amendment. *Jordan v. Fisher*, No. 3:15-CV-295-HTW-LRA, 2015 WL 13119074, at *3 (S.D. Miss. Aug. 26, 2015). The Court enjoined Defendants "from using pentobarbital, specifically in its compounded form, or midazolam, [and] from executing any death row inmates . . . ." *Id.* On appeal, the Court of Appeals vacated this Court's decision and remanded for further proceedings. *Jordan v. Fisher*, 823 F.3d 805, 814 (5th Cir. 2016). Plaintiffs, though, never re-urged the motion for a preliminary injunction, and the parties proceeded with discovery.

In the fall of 2022, upon the State's motion, the Mississippi Supreme Court set a date for the execution of Thomas Loden, an Intervenor-Plaintiff in this case. *See En Banc Order, Loden v. State of Mississippi*, No. 2002-DP-00282-SCT (Miss. Nov. 17, 2022).[19] Plaintiffs filed a Motion

---

[17] *See* U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom . . . to petition the government for a redress of grievances."), amend. XIV.

[18] *See* Miss. Const. art. III, § 14, § 24 ("All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.").

[19] According to the relevant Mississippi statute, "[w]hen a judgment of death becomes final and a writ of certiorari to the United States Supreme Court has been denied or the time for filing such petition has expired, the [Mississippi Supreme Court] shall set an execution date for a person sentenced to the death penalty." MISS. CODE ANN. § 99-19-106. "Setting . . . the date of execution shall be made on motion of the state that all state and federal remedies have been exhausted, or that the defendant has failed to file for further state or federal review within the time allowed by law." *Id.* The relevant statutes do not provide a time frame for execution following the Mississippi Supreme Court's order. The execution procedures statute provides: "Whenever any person shall be condemned to suffer death for any crime . . . , such punishment shall be inflicted at 6:00 p.m. or as soon as possible thereafter within the next twenty-four (24) hours at an appropriate place designated by the Commissioner" of MDOC. MISS. CODE ANN. § 99-19-55(1).

for Order under the All Writs Act[20] [260], asking this Court to enjoin Defendants from executing them. Plaintiffs argued that there was a strong likelihood that they would succeed on the merits of Count III of the First Amended Complaint. They claimed that Mississippi's continued use of a three-drug protocol ran contrary to the nationwide trend toward a single-drug protocol and, therefore, violated "evolving standards of decency," citing *Trop v. Dulles*, 356 U.S. 86, 101-02 (1958), and *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

After receiving briefs and hearing argument from the parties, this Court issued a Memorandum Opinion and Order [277] denying Plaintiffs' Motion for Order under the All Writs Act [260]. *Jordan*, 2022 WL 17543344, at *17. The Court observed that the line of cases applying the "evolving-standards-of-decency" test did not concern challenges to particular methods of execution; rather, the cases cited by Plaintiffs involved challenges to death sentences on the basis of either the offender's characteristics, or the nature of the offense. *Id.* *12-*13 (citing *Trop v. Dulles*, 356 U.S. 86, 101-02 (1958); *Kennedy v. Louisiana*, 554 U.S. 407, 420-21 (2008); *Graham v. Florida*, 560 U.S. 48, 59 (2010)).

This Court held that the appropriate standard to apply when a prisoner challenges a state's method of execution was articulated in *Baze v. Rees*, 553 U.S. 35, 52 (2008), and *Glossip v. Gross*, 576 U.S. 863, 877 (2015). *Id.* at *12. The *Baze-Glossip* analysis requires Plaintiffs to demonstrate that the risk posed by Mississippi's three-drug lethal injection protocol "creates a demonstrated risk of severe pain," and that "the risk is substantial when compared to the known and available alternatives." *Id.* at *13 (quoting *Glossip*, 576 U.S. at 877-78).

Plaintiffs made no attempt to satisfy this evidentiary burden, apparently convinced by the holdings in multiple federal courts that had upheld three-drug lethal injection protocols. *Id.* at *14

---

[20] *See* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

(citing *Glossip*, 576 U.S. at 878-92; *Jordan*, 823 F.3d at 812; *Price v. Commissioner*, 920 F.3d 1317, 1329-30 (11th Cir. 2019); *In re Ohio Execution Protocol Litigation*, 881 F.3d 447, 452 (6th Cir. 2018); *McGeehee v. Hutchinson*, 854 F.3d 488, 492 (8th Cir. 2017); *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015)). Accordingly, the Court denied Plaintiffs' Motion for Order under the All Writs Act [260], thus declining to stay the execution of Thomas Loden. *Id.* at *17. The State of Mississippi executed Loden on December 14, 2022, without complication or incident, using the three-drug lethal injection protocol that is the subject of this lawsuit. *See* Notice of Withdrawal [278], at 2.[21]

On October 1, 2024, the State asked the Mississippi Supreme Court to set an execution date for Richard Jordan, a Plaintiff in this case. *See* Mot. to Set Execution Date, *Jordan v. State*, No. 1998-DP-901-SCT (Miss. Oct. 1, 2024). On May 1, 2025, the Mississippi Supreme Court granted the motion and scheduled Jordan's execution for June 25, 2025. *See* En Banc Order, *Jordan v. State*, No. 1998-DP-901-SCT (Miss. Oct. 1, 2024).

On June 4, 2025, Plantiffs filed a Motion for Preliminary Injunction [310] in this § 1983 case, asking the Court to issue a preliminary injunction prohibiting Defendants "from executing Richard Jordan using a three-drug protocol consisting of successive injections of midazolam; a chemical paralytic; and potassium chloride." *See* Mot. for P.I. [310], at 4. To demonstrate a likelihood of success on the merits of their case,[22] Plaintiffs relied on Counts IB and III of the First Amended Complaint. *See* Plfs. Mem. [313], at 2-3, 44.

---

[21] Defendants used the same three-drug lethal injection protocol to execute David Cox on November 17, 2021. *See* Exs. 14, 15 to Mot. for P.I. [310-18, 310-19].

[22] *See Johnson v. Collier*, 137 F.4th 376, 381 (5th Cir. 2025) (providing four-factor test to determine if a stay of execution should be granted).

7

After an expedited briefing schedule and hearing, the Court denied Plaintiffs' Motion for Preliminary Injunction [310]. *Jordan*, 2025 WL 1728266 at *16. The Court held that Plaintiffs had not "made a strong showing that they are likely to succeed on the merits of Count IB with respect to the first prong of the *Glossip* analysis, which requires them to prove that Defendants' chosen method of execution presents a risk that is *sure or very likely* to cause serious illness and needless suffering." *Id.* at 12 (quoting *Johnson*, 137 F.4th at 381; *Hoffman v. Westcott*, 131 F.4th 332, 335-36 (5th Cir. 2025)). Specifically, the Court noted that "numerous federal courts have held that a three-drug lethal injection protocol using midazolam as the first drug does not violate the Eighth Amendment." *Id.* at *11 (citing cases). The Court also observed that both Plaintiffs and Defendants had "presented credible expert testimony in support of their respective positions," and in "similar cases of dueling experts, federal courts have found that the party seeking a preliminary injunction had not sufficiently demonstrated [his] likelihood of success on the merits." *Id.* (citing cases). Finally, the Court observed that Defendants had "executed David Cox and Thomas Loden using the same three-drug series they intend to use on Richard Jordan, and the record contains no evidence that neither Cox nor Loden suffered 'serious' pain or 'needless suffering' prior to death." *Id.*[23]

The Court likewise held that Plaintiffs had not made a strong showing that they are likely to succeed on the merits of Count III. *Id.* at *15. Specifically, the Court held that Count III of Plaintiffs' First Amended Complaint [50] – in which they claim that the use of a three-drug lethal injection protocol is prohibited by the Eighth Amendment – is governed by the *Baze-Glossip*

---

[23] The Court also held that the balance of equities weighed against granting a stay of Richard Jordan's execution because almost fifty years had passed since he murdered Edwina Marter, and he already had received the benefit of multiple trials, multiple appellate proceedings, post-conviction proceedings, and a federal habeas proceeding. *Id.* at *16 n. 23 (citing *Jordan v. Epps*, 740 F. Supp. 2d 802, 808-16 (S.D. Miss. 2010)).

analysis, rather than the "evolving-standards-of-decency" analysis from the *Trop-Kennedy* line of cases. *Id.* at *14-*15.

The Fifth Circuit Court of Appeals affirmed this Court's denial of Plaintiffs' Motion for Preliminary Injunction [310]. *Jordan v. Mississippi State Executioner*, 2025 WL 1752391, at *4 (5th Cir. June 24, 2025). The United States Supreme Court then denied Plaintiffs' petition for a writ of certiorari and application for a stay of execution. *Jordan v. Mississippi Executioner*, --- S. Ct. ---, 2025 WL 1751811 (2025). The State of Mississippi thereafter executed Jordan on June 25, 2025, without complication or incident, using the three-drug lethal injection protocol that is the subject of this lawsuit.

Defendants now have filed a Motion for Summary Judgment [280] as to each of the causes of action being asserted by the remaining Plaintiffs. Plaintiffs filed a Motion for Extension of Time [283] to respond to the dispositive motion, arguing that they required more time to conduct additional discovery. After receiving the parties' briefs and hearing oral argument, this Court denied the motion and directed Plaintiffs to respond. *See* Order [292]. Defendants' Motion for Summary Judgment [280] is now fully briefed and ripe for the Court's review.

## II. JURISDICTION

Plaintiffs, for subject matter jurisdiction, invoked the jurisdiction of this federal court under Title 28 U.S.C. § 1331, which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs' causes of action, as stated *infra*, arise under: Title 42 U.S.C. § 1983, for alleged and threatened violations of Plaintiffs' rights to due process and to be free from cruel and unusual

punishment under the Eighth[24] and Fourteenth[25] Amendments to the United States Constitution; Title 28 U.S.C. § 1367(a);[26] and the Mississippi State Constitution.

### III. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and

---

[24] U.S. Const. amend. VIII states: "Excessive bail shall not be required, nor excessive fins imposed, nor cruel and unusual punishments inflicted."

[25] U.S. Const. amend. XIV, § 1 states, in relevant part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

[26] Title 28 U.S.C. § 1367(a) provides, in relevant part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A.      Counts II, IV, and V

Plaintiffs conceded in briefing that Counts II, IV, and V of the First Amended Complaint [50] "have been foreclosed by precedent developed after" they were asserted, and that "summary judgment dismissing these claims is appropriate." Plfs.' Mem. of Law [298], at 1. Therefore, the Court grants Defendants' Motion for Summary Judgment [280] as to Counts II, IV, and V of the First Amended Complaint [50].

## B.      Count IA

In Count IA, Plaintiffs allege that Defendants "plan to use a compounded form of pentobarbital made from active pharmaceutical ingredients of unknown origin that may be counterfeit, contaminated, or ineffective." *See* First Amended Complaint [50], at 40. Plaintiffs maintain that Defendants' "decision to use a previously untried form of pentobarbital created with unknown and unregulated ingredients through an unknown and unregulated compounding process creates a substantial and intolerable risk that the pentobarbital will be counterfeit, contaminated, degraded, expired, or sub-potent, resulting in the infliction of cruel and unusual punishment . . . ." *Id.* Plaintiffs thus claim that the use of compounded pentobarbital in a three-drug lethal injection protocol violates their Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 39.

Defendants argue that Count IA should be dismissed as moot. *See* Defs.' Mem. of Law [281], at 11. They contend that it is "indisputable that the State does not possess compounded pentobarbital and has been unable to obtain pentobarbital in any form since 2012," and, therefore, this claim no longer presents a live case or controversy. *Id.* at 12.

In response, Plaintiffs contend that both this Court and the Court of Appeals already have rejected Defendants' argument, holding that the claim is not moot. *See* Plfs.' Mem. of Law [298], at 5. Plaintiffs contend, predictably, that the law of the case precludes summary judgment on this basis, absent a showing of substantial new evidence to support Defendants' position. *Id.* at 6.

In reply, Defendants argue that although the Court rejected this argument over ten years ago, the State's inability in the intervening years to obtain pentobarbital after multiple attempts to do so "conclusively demonstrates" that MDOC does not have any pentobarbital, has not been able to acquire any for over a decade, and "will not execute Plaintiffs with pentobarbital." Defs.' Reply [300], at 2.

"Mootness is a jurisdictional question that goes to the heart of Article III's case-and-controversy requirement." *Crocker v. Austin*, 115 F.4th 660, 667 (5th Cir. 2024).

> The mootness doctrine . . . requires that a plaintiff's interest in a suit exist throughout the proceedings. A case becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party. Thus, when a complaining party manages to secure outside of litigation all the relief he might have won in it, the case is moot.

*Id.* (cleaned up).

Defendants asserted the same mootness argument in their Motion to Dismiss [24]. *See* Defs.' Mem. in Support of Mot. to Dismiss [25], at 7-10. This Court, on August 25, 2015, rejected the argument, holding that "a live controversy exists here because pentobarbital, which is still used in other states to execute inmates, continues to be an option for use by the State of Mississippi." *Jordan*, 2015 WL 13119074, at *3. The Fifth Circuit Court of Appeals agreed, holding: "Because other states retain access to pentobarbital it seems possible that Mississippi could regain access in the future. We are reluctant to conclude the issue is moot . . . ." *Jordan*, 823 F.3d at 809 n. 4 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000)).

"The law of the case doctrine provides that an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006). The Court may only reexamine an issue previously decided on appeal "if (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *Id.* at 897 (punctuation omitted).

In view of this guiding jurisprudence, the interrogatory now is this: Since the Fifth Circuit's holding on February 10, 2016, has any new evidence or law surfaced which would allow a reexamination of the mootness issue sub judice? The State's position is as follows: the law of the case doctrine does not preclude revisiting the question of mootness because the evidentiary record on summary judgment is substantially different than it was when the Court addressed Defendants' Motion to Dismiss [24] back in 2015; at that time, continues the State, the record contained little evidence relevant to the availability of compounded pentobarbital. That paucity of evidence was headlined by the sworn declaration of Marshall Fisher, then the Commissioner of MDOC, dated June 22, 2015;[27] he stated that MDOC had destroyed its supply of pentobarbital in May 2015 because the drugs had expired; and that all MDOC's efforts to obtain a new supply of pentobarbital had been "wholly unsuccessful." *Id.* at 2-3. This Court observes, however, he provided no specific details regarding those efforts.

Plaintiffs, at the time, provided no evidence relevant to this issue, relying on news articles, websites, and the absence of specific evidence to corroborate Fisher's declaration. *See* Plfs.' Mem. in Opp. to Mot. to Dismiss [31], at 3-5.

---

[27] *See* Exhibit 1 to Mot. to Dismiss [25-1].

Defendants say they, this time, have presented substantially more evidence on the mootness issue[28] in support of their Motion for Summary Judgment [280]. They have attached deposition testimony from AG-1, a representative of the Mississippi Attorney General's Office; Pelicia Hall, the former Commissioner of MDOC; Tommy Taylor, the interim Commissioner of MDOC; MDOC-5, a representative of MDOC; and Burl Cain, the current Commissioner of MDOC. *See* Exhibits 3, 4, 5, 6, 7 [280-3, 280-4, 280-5, 280-6, 280-7]. Defendants also have presented written discovery responses from themselves and Plaintiffs. *See* Exhibits 2, 8 [280-2, 280-8]. All this evidence – say Defendants – chronicles in detail MDOC's efforts to obtain pentobarbital over the last decade.

We turn now to the State's proclamation of what an overview of the historical facts now show:

MDOC purchased pentobarbital from a Mississippi pharmacy in May 2012. Exhibit 2 [280-2], at 7. Three years later, that supply of pentobarbital expired, and Marshall Fisher, then MDOC's Commissioner, ordered that it be destroyed. Exhibit 1 to Mot. to Dismiss [25-1], at 2. The Mississippi Bureau of Narcotics destroyed the expired pentobarbital on June 8, 2015. *Id.*

In 2014, AG-1 called the pharmacy that had supplied pentobarbital in 2012, but it was "not willing to continue supplying MDOC with lethal injection drugs." Exhibit 2 [280-2], at 7. In 2015, AG-1 telephoned over ten different pharmacies in Mississippi seeking the drugs listed in Mississippi's execution protocol, including an injectable form of pentobarbital. Exhibit 3 [280-3],

---

[28] Early in this litigation, the parties locked in combat over a sensitive discovery issue: whether the Plaintiffs were entitled to know the identities of the past, present, and potentially future suppliers of the death drugs at issue, and which individuals with the AG's office and MDOC had made the contacts. The State said it feared reprisals, boycotts, and retaliation towards any individuals and/or entities identified. The Plaintiffs argued they had a right to this information. When this court later allowed depositions, the State was permitted to present these persons/entities confidentially under the use of pseudonyms, such as AG; MDOC; and Supplier. This Court's resolution of this dispute between the parties is found in prior Court Orders [*See generally*, Docket].

at 35-36. A "good many . . . did not wish to participate," and many "did not have pentobarbital available, could not get it." *Id.* at 35. That same year, MDOC-1 contacted a pharmacy that previously had sold MDOC execution drugs, seeking pentobarbital, but the pharmacy "called MDOC-1 back a week later and stated that it would not be able to accommodate MDOC's request." Exhibit 2 [280-2], at 8.

In 2016-2017, AG-1 contacted Supplier 1, which indicated that it would be willing to provide MDOC pentobarbital for use in executions. *Id.* at 10; Exhibit 3 [280-3], at 40, 42. AG-1 sent Supplier 1 a copy of the State's execution protocol, which lists pentobarbital among the potential drugs to be used, but "[a]t that time frame, pentobarbital had become unavailable across the country, not just at MDOC, but unavailable everywhere." Exhibit 3 [280-3], at 43-44, 46. Supplier 1 initially indicated it "might be possible" to obtain the active pharmaceutical ingredients ("API") to compound pentobarbital, but that the manufacturers of the API had enacted "controls" to limit their distribution. *Id.* at 47. Eventually, Supplier 1 informed AG-1 that it "could not obtain the API" to compound pentobarbital. *Id.* at 48. MDOC ultimately purchased "80 units of midazolam, 6 units of vecuronium bromide, and 20 units of rocuronium bromide" from Supplier 1. *Id.* at 59. But AG-1 gave Supplier 1 a "standing order" to keep an eye out for pentobarbital, in the event it again became available. *Id.* at 61-62.

In 2017, Pelicia Hall – then the MDOC Commissioner – sent a letter to the Association of State Correctional Administrators ("ASCA") asking if any other states could either provide MDOC with pentobarbital for use in executions or identify a supplier from whom MDOC could obtain it. Exhibit 4 [280-4], at 11, 24-25. The letter was transmitted to the ASCA "listserv for all commissioners, directors, [and] secretaries of departments of correction nationwide." *Id.* at 11, 25.

Hall received a response from "one state correctional department," who identified a "pharmacist in . . . Mississippi." *Id.* at 11, 14, 25.

Hall called the pharmacist, Supplier 3, which stated that "it could not obtain pentobarbital in an injectable form . . . because it is no longer manufactured in that form;"[29] but Supplier 3 "could obtain and would be willing to provide, compounded pentobarbital to MDOC for use in executions, but only if its identity remained confidential." Exhibit 2 [280-2], at 11; Exhibit 4 [280-4], at 17, 25. Hall later "made multiple, repeated attempts to contact Supplier 3 by telephone to follow up regarding the possibility of Supplier 3 supplying MDOC with compounded pentobarbital for use in executions," but it did not respond to Hall's communications. Exhibit 2 [280-2], at 13; Exhibit 4 [280-4], at 18. Accordingly, Hall concluded that Supplier 3 was "no longer willing to be a supplier for the Department." Exhibit 4 [280-4], at 20.

In March 2020, Tommy Taylor, the interim Commissioner of MDOC, sent a letter to 42 different pharmacies in Mississippi asking if they would be willing to sell MDOC drugs for use in executions, including pentobarbital. Exhibit 6 [280-6], at 21-24, 107; Exhibit 5 [280-5], at 8-9; Exhibit 2 [280-2], at 13. Only two pharmacies responded to the letter: Supplier 4 and Supplier 5. Exhibit 6 [280-6], at 21; Exhibit 2 [280-2], at 14. Supplier 4 initially told MDOC "that it would be willing and able to purchase and supply MDOC with all of the drugs listed in the March 10 letter," but it later informed MDOC that "the manufacturer would not sell the drugs to it." Exhibit 2 [280-2], at 14; Exhibit 6 [280-6], at 66-67, 108. An attorney contacted MDOC on Supplier 5's behalf, "stating that Supplier 5 has the ability to supply MDOC with . . . pentobarbital . . . ," but Supplier 5 later informed MDOC that "the drugs sought by MDOC are not available." Exhibit 2 [280-2], at

---

[29] Exhibit 2 [280-2], at 11; Exhibit 4 [280-4], at 25.

14-15; Exhibit 6 [280-6], at 71-72, 77-78. MDOC has had no further communications with either Supplier 4 or Supplier 5. Exhibit 2 [280-2], at 14-15; Exhibit 6 [280-6], at 69, 79.

Taylor also sent letters to the correctional departments of Arizona, Delaware, Florida, Georgia, Idaho, Missouri, Ohio, Oklahoma, South Carolina, South Dakota, and Texas, asking if they were willing to provide pentobarbital or identify a supplier. Exhibit 6 [280-6], at 80-81, 113; Exhibit 2 [280-2], at 15; Exhibit 5 [280-5], at 11-12. Only one state responded, but its representative told MDOC "that he could not provide any drugs." Exhibit 6 [280-6], at 82, 86; Exhibit 2 [280-2], at 15.

In July 2021, MDOC Commissioner Burl Cain met with Supplier 6 to discuss MDOC's need to obtain drugs for use in the execution of David Neal Cox. Exhibit 7 [280-7], at 12. Viewing MDOC's execution protocol, Supplier 6 said he could not obtain all the drugs. *Id.* at 15. Ultimately, MDOC was only able to acquire vecuronium bromide and potassium chloride from Supplier 6. Exhibit 2 [280-2], at 17. Supplier 6 recommended MDOC contact Supplier 1, from whom MDOC already had purchased some drugs in 2017. *Id.* Cain met with Supplier 1, showed it the execution protocol, and asked whether Supplier 1 could supply any of the listed drugs. Exhibit 7 [280-7], at 18. Supplier 1 was able to sell MDOC midazolam, potassium chloride, and vecuronium bromide. *Id.* at 19. Neither Supplier 1 nor Supplier 6 was able to sell MDOC pentobarbital. *Id*. at 20. Cain testified that MDOC has not attempted to identify potential suppliers of drugs outside Mississippi, beyond the efforts already discussed above. *Id.* at 11.

Plaintiffs' written discovery responses also contained information relevant to this claim. Defendants propounded an interrogatory to Plaintiffs asking them to "identify with particularity . . . each duly licensed pharmacy, compounding pharmacy, or other supplier from which Defendants can legally obtain a FDA-approved form of [pentobarbital] for use in executions." Exhibit 8 [280-

8], at 15. Plaintiffs stated "that to their current knowledge, all manufacturers of FDA-approved (manufactured) pentobarbital have implemented distribution and end-use agreements prohibiting the sale of their products for use in lethal injection executions in the United States." *Id.* at 16. Plaintiffs added:

> [T]he States of Texas, Missouri, and Georgia have all executed prisoners with a single dose of pentobarbital from 2014 to the present. Indeed, 48 of the 66 executions from January 2015 to [October 2017] have involved a single-drug protocol using pentobarbital, including seven pentobarbital-only executions in 2017. Texas . . . secured a new supply of eight vials of pentobarbital in [2017].

*Id.* Plaintiffs "do not know whether these jurisdictions obtained FDA-approved pentobarbital in violation of" the manufacturer's distribution and end-use agreements, or are using compounded pentobarbital. *Id.* at 16, 18. Plaintiffs listed 8 companies purportedly offering the API for pentobarbital for purchase by compounding pharmacies, and 69 compounding pharmacies purportedly able to compound those API into injectable drugs. *Id.* at 18-22. Plaintiffs did not assert that these providers were willing and able to provide MDOC with pentobarbital for use in executions.

All this evidence, with the sole exception of Fisher's declaration [25-1], proclaims the State, is new. When the Court previously considered the question of mootness, the parties had not conducted any discovery. Overall, say the Defendants, the "evidence in the current record is substantially different than the evidence in the record before remand." *Comeaux v. Sutton*, 496 F. App'x 368, 371 n. 1 (5th Cir. 2012). This "substantially different" evidentiary posture, say Defendants, manifests that the law of the case doctrine does not preclude the Court from revisiting the question of mootness, and case authority supports as much. *Id.* (where several new depositions were added to the evidentiary record after remand, law of the case doctrine did not apply); *United States v. Ortega*, 719 F. App'x 319, 327 n. 2 (5th Cir. 2018); *Morgan v. Hubert*, 459 F. App'x 321,

325 n. 2 (5th Cir. 2012) (appeal from summary judgment ruling was based on a substantially different evidentiary record than appeal from decision based on facts as alleged in complaint, and law of the case doctrine did not apply).

The raw definition of mootness bears repeating: "a case becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party. Thus, when a complaining party manages to secure outside of litigation all the relief he might have won in it, the case is moot." *Crocker*, 115 F.4th at 667. Plaintiffs deny this pentobarbital-acquisition issue is moot; Plaintiffs instead want the Court to issue a permanent injunction forbidding Defendants from using compounded pentobarbital in a three-drug lethal injection protocol.

Case law from the past few years indicates that other states and the federal government have obtained some form of pentobarbitol, despite manufacturers' prohibiting sale of the drug for use in executions. *See, e.g., Barr v. Lee*, 591 U.S. 979, 979-80 (2020); *Pizzuto v. Tewalt*, 2025 WL 563768, at *1-*2 (D. Idaho Feb. 19, 2025); *Nance v. Oliver*, 2025 WL 494618, at *1-*2 (N.D. Ga. Feb. 13, 2025); *Bixby v. Stirling*, 2024 WL 4627451, at *2-*3 (D.S.C. Oct. 30, 2024); *Dorsey v. Foley*, 2024 WL 1283288, at *1 (E.D. Mo. Mar. 26, 2024); *Brant v. Allen*, 2024 WL 21970, at *1-*2, *4 (M.D. Fla. Jan. 2, 2024).[30] Plaintiffs also have cited public records from the Federal Bureau of Prisons,[31] Arizona Department of Corrections,[32] Idaho Department of Corrections,[33] and

---

[30] *But see Glossip*, 576 U.S. at 871 (Oklahoma unable to acquire pentobarbital).

[31] *See* Plfs.' Mem. of Law [298], at 12-14.

[32] *Id.* at 14-16.

[33] *Id.* at 17.

Tennessee Department of Corrections[34] demonstrating that they were able to obtain pentobarbital in recent years for use in executions.[35]

Indeed, Defendants do not deny that other states have managed to obtain pentobarbital for use in executions. In fact, they presented evidence that MDOC's interim Commissioner, Tommy Taylor, contacted other states to ask for pentobarbital. Exhibit 6 [280-6], at 80-81, 113; Exhibit 2 [280-2], at 15; Exhibit 5 [280-5], at 11-12. Defendants argue, rather, that other states' ability to obtain pentobarbital is irrelevant to Mississippi's ability to obtain pentobarbital.

When addressing a motion for summary judgment, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. Applying this standard, the Court concludes that there exists a genuine dispute of material fact as to whether the Defendants could still obtain compounded pentobarbital. Accordingly, this Court denies Defendants' Motion for Summary Judgment [280] as to Count IA of the First Amended Complaint.[36]

## C.    Count IB

In Count IB, Plaintiffs claim that the use of midazolam in a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States

---

[34] *Id.* at 19.

[35] The Court may take judicial notice of public records. *See George v. SI Group, Inc.*, 2021 WL 5095981, at *3 n. 3 (5th Cir. Nov. 2, 2021) (citing FED. R. EVID. 201(b); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 518-19 (5th Cir. 2015)). Regardless, Defendants have not opposed the consideration of these materials, opting instead to dispute their relevance.

[36] In briefing, Defendants effectively stipulated that they will not use pentobarbital in any form to execute Plaintiffs. Defendants represented, "[T]he State will use midazolam to carry out Plaintiffs' executions, as it did in the last two executions." Defs.' Mem. of Law [281], at 12. Indeed, the State has used midazolam – rather than pentobarbital, compounded or otherwise – in the last three executions (David Cox, Thomas Loden, and Richard Jordan). The parties did not brief whether Defendants' representation that it will not use compounded pentobarbital renders this claim moot, and the Court, therefore, will not address it in the context of the current motion. However, if Defendants are willing to stipulate that they will not use compounded pentobarbital to execute the remaining Plaintiffs, then the Court is hard-pressed to imagine any good-faith reason Plaintiffs would have to continue litigating this claim.

and Mississippi Constitutions. First Amended Complaint [50], at 43. Plaintiffs contend that Defendants' plan to use midazolam as the first drug in a three-drug protocol "creates a substantial and intolerable risk that [they] will not be anesthetized and insensate prior to the administration of the second and third drugs, resulting in . . . a torturous death by . . . suffocation and cardiac arrest." *Id.* at 44. Benzodiazepines such as midazolam, say Plaintiffs, have a "ceiling effect" which "restricts the magnitude of pharmacological effects" they produce. *Id.* at 45. Therefore, according to Plaintiffs, an increased dose of midazolam, such as that prescribed by MDOC's execution protocol, would not increase the efficacy of the drug, and it "cannot be relied upon to render a person anesthetized and insensate to pain." *Id.* Plaintiffs propose the use of an "ultra short-acting barbiturate" in a single-drug protocol as a feasible and available alternative which would significantly reduce the substantial risk of severe pain presented by MDOC's use of midazolam in a three-drug protocol. *Id.* at 41, 45.

The Fifth Circuit has often discussed Plaintiffs' burden of proof applicable to this cause of action:

> For a method of execution to be held unconstitutional under the Eighth Amendment, a prisoner must meet two requirements. First, the prisoner must prove that the method of execution presents a risk that is *sure or very likely* to cause serious illness and needless suffering. Second, the prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason. Failure on either requirement dooms the prisoner's challenge.

*Hoffman*, 131 F.4th at 335-36.

Defendants argue that the Court should grant summary judgment as to Count IB because Plaintiffs have no evidence demonstrating that their proposed alternative method of execution – a single-drug protocol using pentobarbital – is feasible and could be readily implemented. *See* Defs.' Mem. of Law [281], at 13.

21

In response, Plaintiffs point to the evidence discussed above regarding the availability of pentobarbital and argue that there is a genuine dispute of material fact as to "whether the one-drug pentobarbital protocol is feasible and readily implemented." *See* Plfs.' Mem. of Law [298], at 41.

As discussed above, Plaintiffs presented evidence that other states have been able to obtain pentobarbital for use in executions, and federal courts have held that such evidence can create a genuine dispute of material fact as to a drug's availability for use in executions. *See Grayson v. Warden, Comm'r ADOC*, 869 F.3d 1204, 1226-27 (11th Cir. 2017); *cf. Middlebrooks v. Parker*, 15 F.4th 784, 790-91 (6th Cir. 2021) (allegation that other states had obtained pentobarbital for executions was sufficient to plead its availability). When addressing a motion for summary judgment, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. Accordingly, the Court finds that there exists a genuine dispute of material fact as to whether the Defendants could obtain pentobarbital and, therefore, as to whether a one-drug pentobarbital lethal injection protocol is feasible and able to be readily implemented. The Court therefore denies Defendants' Motion for Summary Judgment [280] as to Count IB of the First Amended Complaint.

## D.    *Count III*

In Count III, Plaintiffs claim that Mississippi's continued use of a three-drug protocol violates their right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions. *See* First Amended Complaint [50], at 49. More specifically, Plaintiffs contend that Mississippi's continued use of a three-drug protocol "runs contrary to the trend towards single-drug anesthetic-only protocols employed successfully by other states in recent years." *Id.* at 50. Plaintiffs claim that "forty-seven of the fifty states punish murder without undertaking the risk of conscious, torturous pain and suffocation which is raised by the use of a

22

chemical paralytic agent and potassium chloride in the three-drug protocol." *Id.* at 51. Thus, Mississippi's continued use of a three-drug protocol, continue Plaintiffs, violates the "evolving standards of decency that mark the progress of a maturing society" in violation of the Eighth Amendment. *Id.* at 49.

Defendants argue that Count III fails as a matter of law. *See* Defs.' Mem. of Law [281], at 17. Defendants contend that the Court already has expressly rejected the legal theory underlying this claim in its Memorandum Opinion and Order [277] of December 7, 2022. *Id.* at 18; *see also Jordan*, 2022 WL 17543344, at *10-*13. Defendants further point out that Plaintiffs cannot demonstrate that Mississippi's three-drug protocol violates the Eighth Amendment because they have not identified a feasible and readily implemented alternative method of execution. Defs.' Mem. of Law [281], at 18.

In response, Plaintiffs argue that the facts underlying their claim are undisputed, and that those facts demonstrate a clear nationwide trend toward a one-drug execution protocol. Plfs.' Mem. of Law [298], at 42. They represented that only Alabama, Oklahoma, and Mississippi currently employ a three-drug protocol to execute prisoners sentenced to death. *Id.* at 44. Citing *Trop v. Dulles*, 356 U.S. 86 (1958), Plaintiffs argue that the Court should apply "evolving standards of decency" as embodied by the nationwide move away from a three-drug protocol. *Id.* at 48. Effectively, Plaintiffs are repeating the same argument this Court rejected when it declined to stay the executions of Thomas Loden and Richard Jordan. *See Jordan*, 2025 WL 1728266, at *12-*15; *Jordan*, 2022 WL 17543344, at *10-*13. The applicable law has not changed.

For the same reasons provided in the Court's Memorandum Opinion and Order [277] of December 7, 2022, and its Memorandum Opinion and Order [327] of June 20, 2025, this Court

finds that *Trop v. Dulles* and the line of cases applying its "evolving-standards-of-decency" analysis do not apply to § 1983 challenges to a method of execution. *Id.*

Again, to succeed on a § 1983 claim that Mississippi's three-drug lethal injection protocol violates the Eighth Amendment, Plaintiffs must satisfy the following standard:

> For a method of execution to be held unconstitutional under the Eighth Amendment, a prisoner must meet two requirements. First, the prisoner must prove that the method of execution presents a risk that is *sure or very likely* to cause serious illness and needless suffering. Second, the prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason. Failure on either requirement dooms the prisoner's challenge.

*Hoffman*, 131 F.4th at 335-36. The Supreme Court and multiple Courts of Appeals recently have applied this standard in similar cases.[37] Therefore, the Court grants Defendants' Motion for Summary Judgment [280] as to Count III of the First Amended Complaint.

## IV. CONCLUSION

For all these reasons, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [280]. Specifically, the Court grants the motion as to Counts II, III, IV, and V of the First Amended Complaint [50], but it denies the motion as to Counts IA and IB.

IT IS SO ORDERED on this, the 11th day of August 2025.

/s/HENRY T. WINGATE
HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

---

[37] *See, e.g. Nance v. Ward*, 597 U.S. 159, 164 (2022); *Hoffman*, 131 F.4th at 335-36; *Creech v. Tewalt*, 94 F.4th 859, 863 (9th Cir. 2024); *Smith v. Comm'r, Ala. Dept. of Corr.*, No. 24-10095, 2024 WL 266027, at *6 (11th Cir. Jan. 24, 2024); *Johnson v. Hutchinson*, 44 F.4th 1116, 1118-19 (8th Cir. 2022); *Middlebrooks v. Parker*, 22 F.4th 621, 624 (6th Cir. 2022); *Jones v. Crow*, No. 21-6139, 2021 WL 5277462, at *5-*6 (10th Cir. Nov. 12, 2021).