IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RICHARD JORDAN and RICKY CHASE**                                    **PLAINTIFFS**

**v.**                                    **CIVIL ACTION NO. 3:15-CV-295-HTW-LGI**

**BURL CAIN, Commissioner, Mississippi
Department of Corrections, in his Official
Capacity; MARC MCCLURE, Superintendent,
Mississippi State Penitentiary, in his Official
Capacity; THE MISSISSIPPI STATE
EXECUTIONER, in his Official Capacity;
and UNKNOWN EXECUTIONERS, in their
Official Capacities**                                    **DEFENDANTS**

**ROBERT SIMON and ROGER ERIC THORSON**                     **INTERVENORS**

## ORDER

Plaintiff[1] and Intervenors[2] ("Plaintiffs") are inmates on death row awaiting execution by

the State of Mississippi. They filed this § 1983[3] lawsuit challenging the constitutionality of

Mississippi's method of execution. For the reasons provided below, the Court grants in part and

denies in part their Motion to Compel [302] supplementation of Defendants' discovery responses.

## I. BACKGROUND[4]

Plaintiffs are inmates on death row awaiting execution by the State of Mississippi. They

claim that Mississippi's method of execution violates the Eighth Amendment's prohibition of cruel

---

[1] Richard Jordan (executed) and Ricky Chase were the original named Plaintiffs in this case.

[2] Robert Simon, Thomas Edwin Loden, Jr. (executed), and Roger Eric Thorson intervened.

[3] *See* 42 U.S.C. § 1983 ("Every person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

[4] The Court incorporates its discussion of the background of this case from its Memorandum Opinion and Order [277] entered December 7, 2022, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI, 2022 WL 17543344, at *3-*6 (S.D. Miss. Dec. 7, 2022), and its Memorandum Opinion and Order [327] entered June 20, 2025, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI, 2025 WL 1728266, at *1-*5 (S.D. Miss. June 20, 2025).

and unusual punishment.[5] Defendants are the Commissioner of the Mississippi Department of Corrections ("MDOC") and the Superintendent of the Mississippi State Penitentiary.

When Plaintiffs initiated this case, Mississippi law provided that those condemned to death should be executed by "continuous intravenous administration of a lethal quantity of an ultra short-acting barbiturate or other similar drug in combination with a chemical paralytic agent until death is pronounced." 2016 Miss. Laws Ch. 452.

The Mississippi legislature amended this statute in 2022. Its current version permits the State to choose among four different methods of execution: "(a) intravenous injection of a substance or substances in a lethal quantity into the body; (b) nitrogen hypoxia; (c) electrocution; or (d) firing squad, until death is pronounced . . . ." Miss. Code Ann. § 99-19-51(1).[6] Mississippi's current lethal injection protocol requires a series of three injections: an anesthetic to render the prisoner unconscious; a paralytic agent; and potassium chloride to stop the prisoner's heart. *See* Ex. 1a to Mot. for P.I. [310-2], at 6-10.

Plaintiffs' Amended Complaint [50] and the Intervenors' Complaint assert five causes of action. *See* Amended Complaint [50], at 39-55; Intervenor Complaint [208], at 28-40. To wit: In Count IA, Plaintiffs claim that Defendants' use of compounded pentobarbital as the anesthetic in a three-drug lethal injection protocol violates their right to be free from cruel and unusual

---

[5] *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

[6] Absent from the current operative statutes is a previously approved mode of execution: namely hanging. Electrocution was the sole approved method in Mississippi from 1940 to 1955. Originally, the executions were performed in the Mississippi county of conviction. In 1955, the situs for all executions was moved to the State Penitentiary at Parchman, Mississippi. Hanging was the approved method of execution from 1818 until 1940, and as for electrocution, originally it was performed in the courthouse of the county of conviction. *See* Donald A. Cabana, *The History of Capital Punishment in Mississippi: An Overview*, MISSISSIPPI HISTORY NOW (Oct. 2004), mshistorynow.mdah.ms.gov/issue/history-of-capital-punishment-in-mississippi-an-overview.

punishment under the United States and Mississippi Constitutions.[7] *See* Amended Complaint [50], at 39-43.

In Count IB, Plaintiffs claim that Defendants' use of midazolam as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions. *Id.* at 43-46.

In Count II, Plaintiffs claim that Defendants' failure to use an ultra short-acting barbiturate or other similar drug as the killing drug in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions. *Id.* at 46-49.

In Count III, Plaintiffs claim that Defendants' continued use of the three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions. *Id.* at 49-52.

In Count IV, Plaintiffs claim that Defendants' use of undisclosed compounds or ingredients in the lethal injection protocol violates Plaintiffs' right to notice of the method of execution under the United States and Mississippi Constitutions. *Id.* at 52-54.

Finally, in Count V, Plaintiffs claim that Defendants' failure to disclose the identities of the manufacturer and/or suppliers of lethal injection drugs violates Plaintiffs' right of access to the courts under the United States and Mississippi Constitutions. *Id.* at 54-55.

In March 2018, this Court addressed various discovery disputes among the parties. *See* Memorandum Opinion and Order [168]. Plaintiffs filed a Motion to Compel [127] Defendants to provide discovery responses regarding communications between MDOC personnel and parties

---

[7] *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); MISS. CONST., Art. III, § 28 ("Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed.").

supplying execution drugs to the State, arguing that the information was relevant to Claims I and III of the First Amended Complaint [50].

Defendants filed a Motion for a Protective Order [125], arguing that disclosing the identities of MDOC personnel and the drug supplier would violate state law[8] and endanger their ability to carry out executions because the supplier had represented that any disclosure of its identity would result in a future refusal to provide drugs to the State.

This Court, in its ruling Order, reasoned that the intent and spirit of Miss. Code Ann. § 99-19-51(6)(a)-(c)[9] were unambiguously stated and, more, that to rule contrary to this statute could compromise the State's reliance upon the three-drug cocktail mode of execution and destroy the confidentiality suppliers required when furnishing death drugs to the State for executions, properly fearing that death penalty foes would organize boycotts against their business and all products they sold. Thus, balancing the hardships, this Court held that Defendants are entitled to withhold from discovery any material that would identify suppliers of lethal injection drugs or persons involved in the execution process. *See* Memorandum Opinion and Order [168], at 17-18.

Consistent with this ruling, this Court closely has monitored the discovery process, even to the point of instituting deposition protocols to protect the identity of certain witnesses. *See, e.g.* Order [205]; Memorandum Opinion and Order on Depositions of Lay Witnesses [221]; Memorandum Opinion and Order on Plaintiff's Motion to Compel [234].

---

[8] *See* MISS. CODE ANN. § 99-19-51(6)(c) ("The identities of all members of the execution team, [and] a supplier of lethal injection chemicals . . . shall at all times remain confidential, and the information is exempt from disclosure under the provisions of the Mississippi Public Records Act of 1983.").

[9] Subsequent to the Court's ruling, the Mississippi legislature amended the statute, but it still contains the same operative provisions. *See, e.g.,* MISS. CODE ANN. § 99-19-51(4).

On May 14, 2025, Plaintiffs filed the current Motion to Compel Supplementation of Defendants' Written Discovery Responses and Production of Documents [302]. The motion now is ripe for the Court's review.

## II. DISCUSSION

In their Motion to Compel [303], Plaintiffs assert that Defendants have not supplemented their written discovery responses for almost four years. Plfs. Mem. [303], at 3-4. In broad terms, Plaintiffs seek supplemental responses to interrogatories and requests for production related to 1) the executions of David Cox on November 17, 2021, and Thomas Loden on December 14, 2022; 2) the State's inventory of lethal injection drugs; and 3) redactions to previously-produced inventory lists of lethal injection drugs. *Id.* at 4-10.

In response, Defendants represent that they have supplemented their written discovery responses after the filing of Plaintiff's Motion to Compel. *See* Defs. Mem. [307], at 2; Exs. 1-3 [307-1, 307-2, 307-3]. They argue that this has rendered Plaintiffs' motion "largely moot," and that the motion otherwise should be denied. Defs. Mem. [307], at 1, 7.

Plaintiffs acknowledge the supplemental discovery responses in their rebuttal brief. *See* Plfs. Reply [308], at 2. Plaintiffs, however, argue that the supplemental responses did not resolve all the issues raised by Plaintiffs' motion, and that the productions included redactions that were not authorized by the Court in its Memorandum Opinion and Order [168] of March 29, 2018. The Court will address all these issues.

### A. *Lethal Injection Protocol Revisions*

After filing their opposition [307] to Plaintiffs' Motion to Compel [302], Defendants produced two documents related to the Cox and Loden executions: a revised lethal injection protocol dated November 12, 2021 (enacted prior to the execution of David Cox), and a revised

lethal injection protocol dated December 12, 2022 (enacted prior to the execution of Thomas Loden). *See* Plfs. Reply [308], at 3; Ex. 5 [308-1]; Ex. 6 [308-2]. Then – after briefing on the Motion to Compel [302] was complete – Defendants revised the lethal injection protocol once again on May 28, 2025 (enacted prior to the execution of Richard Jordan), and subsequently produced a copy of the revised protocol to Plaintiffs. *See* Plfs. Mem. in Support of Mot. for P.I. [313], at 1; Ex. 1a to Mot. for P.I. [310-2].

Noting the years-long delay in supplementation after the 2021 and 2022 revisions, Plaintiffs argue that the Court should order Defendants to provide notice on the record of any subsequent change or revision to its lethal injection protocol "on the same day any such change or revision is made final." Plfs. Reply [308], at 4.

Defendants did not address the revised lethal injection protocols in their brief [307], despite having produced the revised protocols from 2021 and 2022 shortly after filing it. Likewise, Defendants did not address the 2025 revision which was adopted by MDOC just one day after Defendants filed their brief.

Rule 26 provides:

A party who has made a disclosure . . . or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

FED. R. CIV. P. 26(e).

Although the Federal Rules of Civil Procedure do not provide a definite time in which a party must supplement its incomplete or incorrect discovery responses, this Court's Local Rules

provide that a "party is under a duty to supplement disclosures at appropriate intervals under Fed. R. Civ. P. 26(e)[10] and in no event later that the discovery deadline established by the case management order." L.U.Civ.R. 26(a)(5). Likewise, the Local Rules provide that the "discovery deadline is that date by which all responses to written discovery, including supplementation of responses, . . . must be made . . . ." L.U.Civ.R. (b)(1).

The Court set an initial discovery deadline in its Order [49] of September 10, 2015, shortly after Plaintiffs filed this lawsuit. This Court then amended the discovery deadline several times[11] before the Court administratively closed the case in 2018 in anticipation of the Supreme Court's decision in its then pending case of *Bucklew v. Precythe*, 587 U.S. 119 (2019).[12]

Upon reopening the case, the Court entered a new scheduling order, which included a discovery deadline. *See* Revised Scheduling Order [179]. Pursuant to the parties' motion and in response to the COVID-19 pandemic,[13] the Court suspended all case deadlines, including the discovery deadline. *See* Memorandum Opinion and Order on Joint Motion for Modification of Revised Scheduling Order [222]. The pandemic situation eased in Mississippi. Thereafter, this Court endeavored to get discovery in this litigation back on track, setting out procedures and

---

[10] As quoted above, Rule 26 provides: "A party who has made a disclosure . . . or who has responded to an interrogatory [or] request for production . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . or . . . as ordered by the court." FED. R. CIV. P. 26(e).

[11] *See* Amended Scheduling Order [70]; Second Amended and Supplemental Scheduling Order [93]; Agreed Supplemental Scheduling Order [107]; Order Granting Defendants' Opposed Emergency Motion for Extension of Time [138]; Memorandum Opinion and Order [168].

[12] In *Bucklew*, a death-sentenced plaintiff, citing his unusual medical condition, challenged Missouri's lethal-injection protocol as applied to him. *Id.* at 122. The United States Supreme Court rejected his claim and held that "anyone bringing a method of execution claim alleging the infliction of unconstitutionally cruel pain must meet the *Baze-Glossip* test," *id.* at 140, and that he had failed to do so, *id.* at 144-49.

[13] The parties observed that "[m]anagement of MDOC's response to the pandemic [had] . . . consumed the time and efforts of Defendants and other high-level management of" MDOC, and that the pandemic had hampered the parties' ability to conduct discovery, meet with clients, interview witnesses, and depose lay and expert witnesses. *See* Joint Mot. for Modification of Revised Scheduling Order [196].

deadlines to take depositions of those parties whose identities were to remain confidential. *See* Scheduling Order [236]. The Court, in its Order [292] of March 24, 2025, set a new discovery deadline of June 22, 2025, and later granted the parties' request to extend the deadline to August 29, 2025. *See* Order [331].

On a strict reading of the Local Rules, Defendants' supplemental production of the revised lethal injection protocols from 2021 and 2022 was timely, in that it occurred before the discovery deadline. The Court, however, need not find the production untimely to grant Plaintiffs' requested relief. The Court has inherent power to control the litigation before it, including discovery. *See, e.g. Calsep A/S v. Dabral*, 84 F.4th 304, 311 (5th Cir. 2023); *U.S. for Use of Consol. Elec. Distributors, Inc. v. Altech, Inc.*, 929 F.2d 1089, 1091-92 (5th Cir. 1991). Indeed, Rule 26 contemplates that the Court periodically may order parties to supplement their discovery responses. *See* FED. R. CIV. P. 26(e)(1)(B).

Defendants' written lethal injection protocol is indisputably relevant to Plaintiffs' claims. In this lawsuit, Plaintiffs have asked the Court to determine the constitutionality of the procedures outlined in the protocol. For example, the details of those procedures and Defendants' adherence to them were a key point in the parties' argument on Plaintiffs' Motion for Preliminary Injunction [310]. That being the case, the Court believes it prudent to grant Plaintiffs partial relief with respect to this issue. Defendants, for the remainder of this litigation, shall provide written notice to Plaintiffs and on the record of any revision to MDOC's "Capital Punishment Procedures" or, as the parties have colloquially referred to them, "lethal injection protocol," within seven (7) days of the revision becoming final.

### B. *Redacted Inventory Lists of Lethal Injection Drugs*

Next, Plaintiffs argue that the Court should compel Defendants to produce partially unredacted inventory lists of lethal injection drugs. Plfs. Reply [308], at 4. Plaintiffs do not seek the disclosure of the identities of any MDOC personnel, *id.*; rather, they want Defendants to disclose specific information regarding the expiration dates and the quantity, volume, and concentration of execution drugs, *id.* at 5.

In some of the inventory lists produced by Defendants, the month of the expiration date is redacted, while the year is disclosed. *See, e.g.* Ex. 7 to Mot. to Compel [308-3], at 2-3, 6, 13-14, 16. Defendants argue that "Plaintiffs have no need for this information" because they can "plainly see that none of the drugs currently in the possession of MDOC [is] about to expire." Defs. Response [307], at 5. Defendants, though, have previously produced inventory lists without redacting the month of expiration. *See, e.g.* Ex. 8 to Mot. to Compel [308-4], at 2-8.

The Rules of Civil Procedure permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). In Count IA, Plaintiffs charge, among other things, that Defendants plan to use "expired" lethal injection drugs, Amended Complaint [50], at 40; therefore, the month of the expiration date is relevant to Plaintiffs' claims and discoverable. Defendants have not articulated any legitimate reason to redact the month of the expiration date. Accordingly, the Court grants this aspect of Plaintiffs' motion.[14]

Defendants also redacted the quantities, volumes, and concentrations of each drug. *See, e.g.* Ex. 9 to Mot. to Compel [308-5]. In briefing, Defendants provided no argument as to why this

---

[14] Defendants assert that the drugs' lot number – "a unique sequence of digits that drug manufacturers use to identify a specific batch of drugs" – could be used to ascertain the identity of MDOC's in-state supplier. Defs. Response [307], at 5. To be clear, Defendants may continue to redact the lot numbers, as well as the names of any personnel, manufacturers, or suppliers, or any other information which could be used to ascertain such parties' identity.

specific information should be redacted. In fact, Defendants argued that, in the event the Court were to grant Plaintiffs' motion, the Court should grant it only as to the quantities, volumes, and concentrations of each drug. Defs. Response [307], at 5. Noticeably, Defendants did not redact this information in previous productions. *See, e.g.* Ex. 10 to Mot. to Compel [308-6].

The concentration and potency of the lethal injection drugs are key foci of concern in this litigation, as demonstrated by the parties' briefing and argument on Plaintiffs' recent Motion for Preliminary Injunction [310]. Count IB, for instance, turns upon the concentration of lethal injection drugs. Plaintiffs, in Count IB, claim that the use of midazolam in a three-drug lethal injection protocol violates their constitutional rights. *See* Amended Complaint [50], at 43-45. Defendants have not articulated any reason to redact this information. Therefore, this Court grants this aspect of Plaintiffs' motion.

### C. *Training Documents*

Finally, Plaintiffs argue that Defendants have not provided a complete response to their Request for Production 15, which states:

> Produce all documents related to and/or evincing any training attended by MDOC's officers, employees, agents, or attorneys related to the conduct of executions by lethal injection. This request includes, but is not limited to, the following:
>
> (a)    Any documents provided to MDOC officers, employees, agents, or attorneys during or as a result of any such training;
>
> (b)    Any sign-in sheets or other document evincing which employees actually attended any such training;
>
> (c)    Any syllabi, training descriptions, or schedule of any such training;
>
> (d)    The names and qualifications of the persons who conducted or taught any such training; and
>
> (e)    Any and all documents evincing certifications of MDOC employees, officers, agents, or attorneys by professional organizations, boards, or

governing bodies related to, or required by, the duties of said persons in lethal injection executions.

Ex. 2 to Mot. to Compel [307-2], at 11-12.

Defendants provided the following response to the discovery request:

The State objects to this Request on the grounds that it seeks documents containing information that would identify or may be used to identify the State Executioner, members of the Execution Team, and MDOC employees and/or agents involved in assisting with executions. The disclosure of such documents could subject the affected individuals to annoyance, embarrassment, oppression, harassment, retaliation, including potentially endangering their safety and/or wellbeing. Moreover, these individuals' identities are confidential and protected from disclosure by Miss. Code Ann. § 99-19-51, as amended by Miss. S.B. 2237. The State further objects to this Request on the grounds that it seeks information that is not relevant to any claim or defense of any party and to the extent it seeks disclosure of information only relevant to Count II of the First Amended Complaint, which the Fifth Circuit held is barred by the State's sovereign immunity and not actionable under the Fourteenth Amendment. The State also objects to this Request to the extent it seeks documents that are protected by the attorney-client privilege, the work product doctrine, and/or which would otherwise disclose the mental impressions, conclusions, opinions, or legal theories of defense counsel and MDOC's attorneys. Without waiving, and subject to those objections, the State will produce any relevant, non-privileged documents responsive to this Request with all confidential information redacted.

\*\*\*

. . . Defendants further object to this Request to the extent it seeks documents or information that are protected from disclosure by the Court's Protective Order [Doc. 168] and Memorandum Opinion and Order on Discovery Motions [Doc. 197]. Without waiving, and limited by those objections, Defendants supplement their previous response as follows: Defendants will produce mock execution rosters with all confidential information redacted. Defendants have no other documents responsive to this request.

\*\*\*

. . . Without waiving, and limited by those objections, Defendants supplement their previous response as follows: *See* mock execution rosters, execution training rosters, and duty post activation schedules, which are being produced, and Defendants' Fifth Supplemental Privilege Log.

\*\*\*

11

. . . Without waiving, and limited by those objections, Defendants will produce documents that are responsive to this Request and have been created since Defendants' last supplemental document production [in June 2021].

*Id.* at 12-14.

Plaintiffs seek production of materials responsive to this request that have been created since June 2021. Plfs. Reply [308], at 6. In their reply brief, Plaintiffs stated: "Defendants' counsel have represented that these documents will be produced by the end of the week." *Id.* at 7. The materials in question are relevant to Plaintiffs' claims, in that the training and qualifications of the personnel conducting a lethal injection execution are factors that federal courts have considered when evaluating the constitutionality of an execution method, as discussed in the parties' briefing and the Court's opinion on Plaintiffs' recent Motion for Preliminary Injunction [310]. *See, e.g. Jordan v. Cain*, 2025 WL 1728266, at *12 (S.D. Miss. June 20, 2025). Therefore, if Defendants have not already produced these documents as Defendants' counsel represented they would, *see* Plfs. Reply [308], at 6, the Court grants this aspect of Plaintiffs' motion, subject to the limitations provided by its previous discovery orders.

Plaintiffs also want the Court to order Defendants to state on the record whether the parties responsible for injecting the execution drugs – whether referred to as the state executioner, deputy executioner, IV team, or execution team – received training. This request exceeds the scope of a request for production. *See, e.g.* FED. R. CIV. P. 34(a)(1)(A). Plaintiffs have had the opportunity to serve interrogatories on Defendants and conduct depositions. If Defendants have no documents responsive to a request for production, then they should state as much, but the Rules of Civil Procedure do not require them to treat a request for production as if it is an interrogatory or deposition question. The Court denies this aspect of Plaintiffs' motion.

12

### III. Conclusion

For these reasons, the Court **grants in part and denies in part** Plaintiffs' Motion to Compel [302]. Defendants shall, for the remainder of this litigation, provide written notice to Plaintiffs and on the record of any revision to MDOC's "Capital Punishment Procedures" or, as the parties have colloquially referred to them, "lethal injection protocol" within seven (7) days of the revision becoming final. Moreover, the Court grants the motion as to 1) the months of the execution drugs' expiration dates; 2) the execution drug quantities, volumes, and concentrations; and 3) documents responsive to Plaintiffs' Request for Production 15 that have been created since June 2021. The Court denies the motion in all other respects. Nothing in this order shall be construed as lifting any discovery restrictions previously imposed by the Court.

IT IS SO ORDERED on this, the 26th day of March, 2026.

       /s/   Henry T. Wingate
      HENRY T. WINGATE
      UNITED STATES DISTRICT JUDGE