IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RICKY CHASE                                                          PLAINTIFF

v.                                          CIVIL ACTION NO. 3:15-CV-295-HTW-LGI

BURL CAIN, Commissioner, Mississippi
Department of Corrections, in his Official
Capacity; MARC MCCLURE, Superintendent,
Mississippi State Penitentiary, in his Official
Capacity; THE MISSISSIPPI STATE
EXECUTIONER, in his Official Capacity;
and UNKNOWN EXECUTIONERS, in their
Official Capacities                                                 DEFENDANTS

ROBERT SIMON and ROGER ERIC THORSON                                 INTERVENORS

## MEMORANDUM OPINION AND ORDER

Plaintiff[1] and Intervenors[2] ("Plaintiffs") are inmates on death row awaiting execution by the State of Mississippi. They filed this § 1983[3] lawsuit challenging the constitutionality of Mississippi's method of execution. Defendants Burl Cain, Marc McClure, the Mississippi State Executioner, and Unknown Executioners ("the State") filed a Motion for Consolidation [333] of this case with another § 1983 case, *Crawford v. Cain*, No. 3:25-CV-479-DPJ-ASH. For the reasons provided below, the Court denies the motion.

---

[1] Richard Jordan (executed) and Ricky Chase were the original named Plaintiffs in this case.

[2] Robert Simon, Thomas Edwin Loden, Jr. (executed), and Roger Eric Thorson intervened.

[3] *See* 42 U.S.C. § 1983 (providing a civil action for deprivation of rights secured under federal law).

## I. BACKGROUND[4]

Plaintiffs are inmates on death row awaiting execution by the State of Mississippi. They claim that Mississippi's method of execution violates the Eighth Amendment's prohibition of cruel and unusual punishment.[5] Defendants are the Commissioner of the Mississippi Department of Corrections ("MDOC"), the Superintendent of the Mississippi State Penitentiary, the Mississippi State Executioner, and Unknown Executioners. When Plaintiffs initiated this lawsuit, Mississippi law provided that those condemned to death should be executed by "continuous intravenous administration of a lethal quantity of an ultra short-acting barbiturate, or other similar drug in combination with a chemical paralytic agent until death is pronounced." 2016 Miss. Laws Ch. 452.

The Mississippi legislature amended this statute in 2022. Its current version permits the State to choose among four different methods of execution: "(a) intravenous injection of a substance or substances in a lethal quantity into the body; (b) nitrogen hypoxia; (c) electrocution; or (d) firing squad, until death is pronounced . . . ." MISS. CODE ANN. § 99-19-51(1)[6].

Mississippi's current lethal injection protocol requires a series of three injections: an anesthetic to render the prisoner unconscious; a paralytic agent; and potassium chloride to stop the prisoner's heart. *See* Ex. 1a to Mot. for P.I. [310-2], at 6-10.[7] The protocol specifies that MDOC

---

[4] The Court incorporates its discussion of the background of this case from its Memorandum Opinion and Order [277] entered December 7, 2022, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI, 2022 WL 17543344, at *3-*6 (S.D. Miss. Dec. 7, 2022); its Memorandum Opinion and Order [327] entered June 20, 2025, *Jordan v. Cain*, No. 3:15-CV-295-HTW-LGI, 2025 WL 1728266, at *1-*5 (S.D. Miss. June 20, 2025); and its Memorandum Opinion and Order [332] entered August 11, 2025, *Chase v. Cain*, No. 3:15-CV-295-HTW-LGI, 2025 WL 2313223, at *1-5 (S.D. Miss. Aug. 11, 2025).

[5] *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

[6] Historically and currently, the primary statute governing the methodologies and mechanics of capital punishemtn in Mississippi is Miss. Code Ann. § 99-19-51. Prior execution methodologies under Miss. Code Ann § 99-19-51 included hanging and lethal gas/cyanide gas.

[7] The record contains multiple versions of MDOC's "Capital Punishment Procedures." *See* Exs. 1a, 1b, 1c, 1d to Mot. for P.I. [310-2, 310-3, 310-4, 310-5]. During this litigation, Plaintiffs informed the Court that MDOC had revised its

personnel first must establish an intravenous ("IV") in each of the inmate's arms, with one serving as a contingency in case of a malfunction with the other IV. *Id.* at 9. Sodium pentothal is to be the first injection. If that drug is not available, MDOC must use pentobarbital. *Id.* at 6. If pentobarbital is not available, MDOC must use 500 mg of midazolam. *Id.* Four minutes after the first injection is given, MDOC personnel must determine whether the inmate is unconscious and confirm that the IV line is still functioning properly. *Id.* at 9-10. If the inmate is still conscious, the MDOC Commissioner decides whether to start the execution over or stop it, but the protocol does not provide the criteria to be applied in making this determination.[8] *Id.* at 10.

If the inmate is rendered unconscious, the execution team administers the second injection – pavulon. *Id.* at 6. If pavulon is not available, either vecuronium bromide or rocuronium bromide must be used. *Id.* at 7.

The last injection is potassium chloride. *Id.* Throughout the entire execution process, MDOC personnel are required "continually [to] monitor the inmate using all available means to ensure that the inmate remains unconscious and that there are no complications." *Id.* at 10.

Plaintiffs' Amended Complaint [50] asserts five causes of action. *See* Amended Complaint [50], at 39-55. The Intervenor Complaint [208] relies upon these same five causes. *See* Intervenor Complaint [208], at 28-40.

---

"Capital Punishment Procedures" on three separate occasions since 2017. The Court examined the various versions of the execution procedures and discerned no changes material to Plaintiffs' claims as pleaded in the First Amended Complaint [50]. Likewise, Plaintiffs have not argued any material differences between them; rather, Plaintiffs argue that the procedures are all constitutionally deficient because they employ a three-drug lethal injection protocol.

[8] This Court, in its Memorandum Opinion and Order [327] of June 20, 2025, modified the protocol by ordering the State to halt the execution and notify this Court if the consciousness check reveals that the inmate remains conscious/sensate after the first dose of midazolam. *Jordan*, 2025 WL 1728266 at *16. If the consciousness check reveals that the inmate is unresponsive, the execution may continue. *Id.*

In Count IA, Plaintiffs claim that Defendants' use of compounded pentobarbital as the anesthetic in a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States[9] and Mississippi[10] Constitutions. *See* Amended Complaint [50], at 39-43.

In Count IB, Plaintiffs claim that Defendants' use of midazolam as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions. *Id.* at 43-46.

In Count II, Plaintiffs claim that Defendants' failure to use an ultra short-acting barbiturate or other similar drug as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States Constitution. *Id.* at 46-49.

In Count III, Plaintiffs claim that Defendants' continued use of a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions. *Id.* at 49-52.

In Count IV, Plaintiffs claim that Defendants' use of undisclosed compounds or ingredients in the lethal injection protocol violates Plaintiffs' right to notice of the method of execution under the United States and Mississippi Constitutions. *Id.* at 52-54.

---

[9] *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."), amend. XIV § 1 (". . . nor shall any state deprive any person of life, liberty, or property, without due process of law . . . .").

[10] *See* MISS. CONST. art. III, § 28 ("Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed."), § 14 ("No person shall be deprived of life, liberty, or property except by due process of law.").

Finally, in Count V, Plaintiffs claim that Defendants' failure to disclose the identities of the manufacturer and/or suppliers of lethal injection drugs violates Plaintiffs' right of access to the courts under the United States[11] and Mississippi[12] Constitutions. *Id.* at 54-55.

Plaintiffs previously sought and obtained a preliminary injunction. The Court found that Plaintiffs had satisfied their burden of demonstrating a substantial likelihood of success on the merits of their claim that Defendants' failure to use an "ultra short-acting barbiturate or other similar drug" as then required by Miss. Code Ann. § 99-19-51 violated the Eighth Amendment. *Jordan v. Fisher*, No. 3:15-CV-295-HTW-LRA, 2015 WL 13119074, at *3 (S.D. Miss. Aug. 26, 2015). The Court enjoined Defendants "from using pentobarbital, specifically in its compounded form, or midazolam, [and] from executing any death row inmates . . . ." *Id.* On appeal, the Court of Appeals vacated this Court's decision and remanded for further proceedings. *Jordan v. Fisher*, 823 F.3d 805, 814 (5th Cir. 2016). Plaintiffs, though, never re-urged the motion for a preliminary injunction, and the parties proceeded with discovery.

In the fall of 2022, upon the State's motion, the Mississippi Supreme Court set a date for the execution of Thomas Loden, an Intervenor-Plaintiff in this case. *See* En Banc Order, *Loden v. State of Mississippi*, No. 2002-DP-00282-SCT (Miss. Nov. 17, 2022).[13] Plaintiffs filed a Motion

---

[11] *See* U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom . . . to petition the government for a redress of grievances."), amend. XIV.

[12] *See* Miss. Const. art. III, § 14, § 24 ("All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.").

[13] According to the relevant Mississippi statute, "[w]hen a judgment of death becomes final and a writ of certiorari to the United States Supreme Court has been denied or the time for filing such petition has expired, the [Mississippi Supreme Court] shall set an execution date for a person sentenced to the death penalty." MISS. CODE ANN. § 99-19-106. "Setting . . . the date of execution shall be made on motion of the state that all state and federal remedies have been exhausted, or that the defendant has failed to file for further state or federal review within the time allowed by law." *Id.* The relevant statutes do not provide a time frame for execution following the Mississippi Supreme Court's order. The execution procedures statute provides: "Whenever any person shall be condemned to suffer death for any crime . . . , such punishment shall be inflicted at 6:00 p.m. or as soon as possible thereafter within the next twenty-four (24) hours at an appropriate place designated by the Commissioner" of MDOC. MISS. CODE ANN. § 99-19-55(1).

5

for Order under the All Writs Act[14] [260], asking this Court to enjoin Defendants from executing them. Plaintiffs argued that a strong likelihood existed that they would succeed on the merits of Count III of the First Amended Complaint; that Mississippi's continued use of a three-drug protocol ran contrary to the nationwide trend toward a single-drug protocol and, therefore, violated "evolving standards of decency," citing *Trop v. Dulles*, 356 U.S. 86, 101-02 (1958), and *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

After receiving briefs and hearing argument from the parties, this Court issued a Memorandum Opinion and Order [277] denying Plaintiffs' Motion for Order under the All Writs Act [260]. *Jordan*, 2022 WL 17543344, at *17. The Court observed that the line of cases applying the "evolving-standards-of-decency" test did not concern challenges to particular methods of execution; rather, the cases cited by Plaintiffs involved challenges to death sentences on the basis of either the offender's characteristics, or the nature of the offense. *Id.* *12-*13 (citing *Trop v. Dulles*, 356 U.S. 86, 101-02 (1958); *Kennedy v. Louisiana*, 554 U.S. 407, 420-21 (2008); *Graham v. Florida*, 560 U.S. 48, 59 (2010)).

This Court added that the appropriate standard to apply when a prisoner challenges a state's method of execution was articulated in *Baze v. Rees*, 553 U.S. 35, 52 (2008), and *Glossip v. Gross*, 576 U.S. 863, 877 (2015). *Id.* at *12. The *Baze-Glossip* analysis requires Plaintiffs to demonstrate that the risk posed by Mississippi's three-drug lethal injection protocol "creates a demonstrated risk of severe pain," and that "the risk is substantial when compared to the known and available alternatives." *Id.* at *13 (quoting *Glossip*, 576 U.S. at 877-78).

---

[14] *See* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

Plaintiffs, though, made no attempt to satisfy this evidentiary burden, apparently convinced by the holdings in multiple federal courts that had addressed the issue and upheld three-drug lethal injection protocols. *Id.* at \*14 (citing *Glossip*, 576 U.S. at 878-92; *Jordan*, 823 F.3d at 812; *Price v. Commissioner*, 920 F.3d 1317, 1329-30 (11th Cir. 2019); *In re Ohio Execution Protocol Litigation*, 881 F.3d 447, 452 (6th Cir. 2018); *McGeehee v. Hutchinson*, 854 F.3d 488, 492 (8th Cir. 2017); *Warner v. Gross*, 776 F.3d 721, 736 (10th Cir. 2015)). Accordingly, the Court denied Plaintiffs' Motion for Order under the All Writs Act [260], thus declining to stay the execution of Thomas Loden. *Id.* at \*17. The State of Mississippi thereafter executed Loden on December 14, 2022, without complication or incident, using the three-drug lethal injection protocol that is the subject of this lawsuit. *See* Notice of Withdrawal [278], at 2.[15]

On October 1, 2024, the State asked the Mississippi Supreme Court to set an execution date for Richard Jordan, a former Plaintiff in this case. *See* Mot. to Set Execution Date, *Jordan v. State*, No. 1998-DP-901-SCT (Miss. Oct. 1, 2024). On May 1, 2025, the Mississippi Supreme Court granted the motion and scheduled Jordan's execution for June 25, 2025. *See* En Banc Order, *Jordan v. State*, No. 1998-DP-901-SCT (Miss. Oct. 1, 2024).

On June 4, 2025, Plantiffs filed a Motion for Preliminary Injunction [310] in this § 1983 case, asking the Court to issue a preliminary injunction prohibiting Defendants "from executing Richard Jordan using a three-drug protocol consisting of successive injections of midazolam; a chemical paralytic; and potassium chloride." *See* Mot. for P.I. [310], at 4. To demonstrate a

---

[15] Defendants used the same three-drug lethal injection protocol to execute David Cox on November 17, 2021. *See* Exs. 14, 15 to Mot. for P.I. [310-18, 310-19].

likelihood of success on the merits of their case,[16] Plaintiffs relied on Counts IB and III of the First Amended Complaint. *See* Plfs. Mem. [313], at 2-3, 44.

After an expedited briefing schedule and hearing, the Court denied Plaintiffs' Motion for Preliminary Injunction [310]. *Jordan*, 2025 WL 1728266 at *16. The Court held that Plaintiffs had not "made a strong showing that they are likely to succeed on the merits of Count IB with respect to the first prong of the *Glossip* analysis, which requires them to prove that Defendants' chosen method of execution presents a risk that is *sure or very likely* to cause serious illness and needless suffering." *Id.* at 12 (quoting *Johnson*, 137 F.4th at 381; *Hoffman v. Westcott*, 131 F.4th 332, 335-36 (5th Cir. 2025)). Specifically, the Court noted that "numerous federal courts have held that a three-drug lethal injection protocol using midazolam as the first drug does not violate the Eighth Amendment." *Id.* at *11 (citing cases). The Court also observed that both Plaintiffs and Defendants had "presented credible expert testimony in support of their respective positions," and in "similar cases of dueling experts, federal courts have found that the party seeking a preliminary injunction had not sufficiently demonstrated [his] likelihood of success on the merits." *Id.* (citing cases). Finally, the Court observed that Defendants had executed David Cox and Thomas Loden using the same three-drug series they intended to use on Richard Jordan, and the record contained no evidence that either Cox or Loden had suffered "serious" pain or "needless suffering" prior to death. *Id.*[17]

The Court likewise held that Plaintiffs had not made a strong showing that they are likely to succeed on the merits of Count III. *Id.* at *15. Specifically, the Court held that Count III of

---

[16] *See Johnson v. Collier*, 137 F.4th 376, 381 (5th Cir. 2025) (providing four-factor test to determine if a stay of execution should be granted).

[17] The Court also held that the balance of equities weighed against granting a stay of Richard Jordan's execution because almost fifty years had passed since he murdered Edwina Marter, and he already had received the benefit of multiple trials, multiple appellate proceedings, post-conviction proceedings, and a federal habeas proceeding. *Id.* at *16 n. 23 (citing *Jordan v. Epps*, 740 F. Supp. 2d 802, 808-16 (S.D. Miss. 2010)).

Plaintiffs' First Amended Complaint [50] – in which they claim that the use of a three-drug lethal injection protocol is prohibited by the Eighth Amendment – is governed by the *Baze-Glossip* analysis, rather than the "evolving-standards-of-decency" analysis from the *Trop-Kennedy* line of cases. *Id.* at *14-*15.

The Fifth Circuit Court of Appeals affirmed this Court's denial of Plaintiffs' Motion for Preliminary Injunction [310]. *Jordan v. Mississippi State Executioner*, 2025 WL 1752391, at *4 (5th Cir. June 24, 2025). The United States Supreme Court then denied Plaintiffs' petition for a writ of certiorari and application for a stay of execution. *Jordan v. Mississippi Executioner*, --- S. Ct. ---, 2025 WL 1751811 (2025). The State of Mississippi thereafter executed Jordan on June 25, 2025, without complication or incident, using the three-drug lethal injection protocol that is the subject of this lawsuit.

Defendants filed a Motion for Summary Judgment [280] as to each of the causes of action being asserted by the remaining Plaintiffs. Plaintiffs filed a Motion for Extension of Time [283] to respond to the dispositive motion, arguing that they required more time to conduct additional discovery. After receiving the parties' briefs and hearing oral argument, this Court denied the motion and directed Plaintiffs to respond. *See* Order [292].

After the Motion for Summary Judgment [280] was fully briefed, the Court granted it in part and denied it in part. *Chase*, 2025 WL 2313223 at *12. Specifically, the Court granted the motion as to Counts II, III, IV, and V, but it denied the motion as to Counts IA and IB. *Id.* Therefore, the only claims remaining in this case are Plaintiffs' claim that Defendants' use of compounded pentobarbital as the anesthetic in a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions (Count IA); and Plaintiffs' claim that Defendants' use of midazolam as the anesthetic

in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions (Count IB). *See* Amended Complaint [50], at 39-46.

After the Court addressed Defendants' Motion for Summary Judgment [280], Plaintiffs' counsel contacted the Court to schedule the anonymous depositions of two members of the State's execution team according to the protocols previously set by the Court.[18] On September 10, 2025, the Court held a status conference to discuss the motion, and the parties plan to take these final depositions – concluding discovery in this case – in early November 2025. This case is currently ready to be tried.

In July 2025 – over ten years after the initiation of this case – a different group of death-sentenced plaintiffs (the "*Crawford* Plaintiffs"), represented by the same attorney who had represented the recently-executed Richard Jordan, filed another Complaint in this District. *See* Complaint, *Crawford v. Cain*, No. 3:25-CV-479-DPJ-ASH (S.D. Miss. July 1, 2025), ECF No. 1 [hereinafter *Crawford*]. There, the named plaintiffs Charles Crawford,[19] Jason Keller,[20] Blayde

---

[18] The Court and parties have expended substantial time and resources addressing discovery issues in this case, and the Court instituted novel deposition protocols to protect the identity of certain witnesses. *See, e.g.* Memorandum Opinion and Order [168]; Order [205]; Memorandum Opinion and Order on Depositions of Lay Witnesses [221]; Memorandum Opinion and Order on Plaintiff's Motion to Compel [234].

[19] The United States District Court for the Northern District of Mississippi denied Crawford's habeas petition over a decade ago. *Crawford v. Epps*, No. 3:04-CV-59-SA, 2008 WL 5095993 (N.D. Miss. Nov. 25, 2008); *Crawford v. Epps*, No. 3:04-CV-59-SA, 2012 WL 3777024 (N.D. Miss. Aug. 29, 2012), *aff'd* 531 F.App'x 511 (5th Cir. 2013). The Mississippi Supreme Court scheduled his execution for October 15, 2025. *See* En Banc Order, *Crawford v. Mississippi*, No. 94-DP-1016-SCT (Miss. Sept. 12, 2025). Crawford filed a petition for a writ of certiorari and an application for a stay of execution in the United States Supreme Court on October 1, 2025. Petition for a Writ of Certiorari, *Crawford v. Mississippi*, No. 25-385 (Oct. 1, 2025); Emergency Application for Stay of Execution, *Crawford v. Mississippi*, No. 25A378 (Oct. 1, 2025), 2025 WL 2806834. The Supreme Court denied the petition and stay application on October 15, 2025, *Crawford v. Mississippi*, 146 S. Ct. 33, 223 L. Ed. 2d 143 (2025), and the State executed Crawford later that day without any complications.

[20] *See Keller v. Cain*, No. 1:21-CV-134-KHJ, 2024 WL 4268134 (S.D. Miss. Sept. 23, 2024) (denying habeas petition).

Grayson,[21] Alan Walker,[22] and Willie Manning[23] filed a class action against MDOC's Commissioner, Deputy Commissioner of Administration and Finance, and Deputy Commission of Institutions, as well as the Superintendant of the Mississippi State Penitentiary, the Mississippi State Executioner, and Unknown Executioners. *Crawford*, at 1. *Crawford*'s putative class members are "all persons who are now, or who may be in the future, held in the custody of MDOC under sentence of death, and who are not currently plaintiffs in *Jordan, et al. v. Cain, et al.*, No. 3:15-CV-295-HTW-LGI in the United States District Court for the Southern District of Mississippi." *Id.* at 4, 30. The Court will discuss the *Crawford* plaintiffs' claims in greater detail below.

On September 29, 2025, the State filed a Motion for Consolidation [333] of *Crawford* with this case for all purposes, pursuant to Rule 42.[24] Plaintiffs oppose the motion, arguing that the *Crawford* plaintiffs' claims are dissimilar to their own, that the two cases are in drastically different procedural postures, and that consolidation would unduly delay resolution of their claims. *See* Plfs. Mem. in Opp. [336], at 9-14.

## II. JURISDICTION

Plaintiffs, for subject matter jurisdiction, invoked the jurisdiction of this federal court under Title 28 U.S.C. § 1331, which states: "The district courts shall have original jurisdiction of all civil

---

[21] *See Grayson v. Fitch*, No. 1:04-CV-708-CWR, 2024 WL 1218568 (S.D. Miss. Mar. 21, 2024) (denying habeas petition).

[22] *See Walker v. Fitch*, No. 1:97-CV-29-KS, 2025 WL 2735609 (S.D. Miss. Sept. 25, 2025) (denying amended habeas petition); *Walker v. Epps*, No. 1:97-CV-29-KS, 2012 WL 1033467 (S.D. Miss. Mar. 27, 2012) (denying habeas petition).

[23] *See Manning v. Epps*, 695 F. Supp. 2d 323 (N.D. Miss. 2009) (denying habeas petition); *Manning v. Epps*, 688 F.3d 177 (5th Cir. 2012) (dismissing habeas petition).

[24] Fed. R. Civ. P. 42(a) states, in relevant part: "Consolidating actions in a district court is proper when the cases involve common questions of law and fact and the district court finds that it would avoid unnecessary costs or delay."

actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs' causes of action, as stated *infra*, arise under: Title 42 U.S.C. § 1983,[25] for alleged and threatened violations of Plaintiffs' rights to due process and to be free from cruel and unusual punishment under the Eighth[26] and Fourteenth[27] Amendments to the United States Constitution; Title 28 U.S.C. § 1367(a);[28] and the Mississippi State Constitution.

### III. DISCUSSION

Rule 42(a) permits the Court to consolidate actions which "involve a common question of law or fact." FED. R. CIV. P. 42(a). In broad terms, "[c]onsolidating actions in a district court is proper when the cases involve common questions of law and fact and the district court finds that it would avoid unnecessary costs or delay." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 (5th Cir. 1992). "Consolidation is inappropriate, however, if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (5th Cir. 1998). The Court considers a variety of factors when addressing a motion to consolidate, including:

> (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is a risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, (5) whether consolidation will conserve judicial resources, (6) whether consolidation will result in an unfair advantage, (7) whether consolidation will reduce the time for resolving

---

[25] *See* 42 U.S.C. § 1983 (providing a civil action for deprivation of rights secured under federal law).

[26] U.S. Const. amend. VIII states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[27] U.S. Const. amend. XIV, § 1 states, in relevant part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

[28] Title 28 U.S.C. § 1367(a) provides, in relevant part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."

the cases, and (8) whether consolidation will reduce the cost of trying the cases separately.

*Webb v. SE Grocers, LLC*, 2022 WL 610828, at *2 (S.D. Miss. Mar. 1, 2022). The "party moving for consolidation" has the burden of "showing the commonality of factual and legal issues in the different actions, and a district court must examine the special underlying facts with close attention before ordering a consolidation." *In re Repetitive Stress Injury Litigation*, 11 F.3d 368, 373 (5th Cir. 1993).

The Court's "managerial power is especially strong and flexible in matters of consolidation." *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977). In fact, the Court may "order the consolidation of cases despite the opposition of the parties." *Id.* Rule 42(a), however, "should be used to expedite trial and eliminate unnecessary repetition and confusion." *Miller v. USPS*, 729 F.2d 1033, 1036 (5th Cir. 1984). In simpler terms, the "stated purpose of Rule 42(a) is to 'avoid unnecessary costs or delay.'" *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (quoting FED. R. CIV. P. 42(a)).

The Court will address each of the factors listed above in turn. Two of the factors do not merit substantial discussion, as they plainly do not weigh against consolidation. Both cases are pending in this District, and no party would gain an unfair advantage if the cases are consolidated.

This case and *Crawford* share common Defendants. *Compare Crawford*, at 1, *to* Amended Complaint [50], at 1. The Plaintiffs, however, are different. The *Crawford* plaintiffs specifically excluded those who are "currently plaintiffs [here] in *Jordan, et al. v. Cain, et al.*, No. 3:15-CV-295-HTW-LGI" from the putative class. *Crawford*, at 2, 30. Therefore, the Court finds that this factor weighs only slightly in favor of consolidation.

As for common causes of action, the Court explained above in its recounting of the history of this case that Plaintiffs' only remaining causes of action are Counts IA and IB. In Count IA,

13

Plaintiffs claim that Defendants' use of compounded pentobarbital as the anesthetic in a three-drug lethal injection protocol violates their right to be free from cruel and unusual punishment under the United States[29] and Mississippi[30] Constitutions. *See* Amended Complaint [50], at 39-43. In Count IB, Plaintiffs claim that Defendants' use of midazolam as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States[31] and Mississippi[32] Constitutions. *Id.* at 43-46.

The *Crawford* plaintiffs asserted six causes of action, and each has sub-claims. In Count 1, they claim that Mississippi's death-penalty statute,[33] 2025 Execution Protocol,[34] and Defendants' unwritten practices combine to violate their right to be free from cruel and unusual punishment under the United States Constitution.[35] *Crawford*, at 38-41. Specifically, the *Crawford* plaintiffs claim that Mississippi's execution scheme violates the Constitution because 1) the statute[36] permits Defendants to use any substance whatsoever in a lethal injection execution protocol, *Crawford*, at 39; 2) the 2025 Execution Protocol[37] requires the use of midazolam as the first in a three-drug series, along with a chemical paralytic agent and potassium chloride, creating a substantial risk of serious harm and severe pain, *Crawford*, at 40; 3) Defendants have not adopted safeguards which

---

[29] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[30] *See* MISS. CONST. art. III, §§ 14, 28.

[31] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[32] *See* MISS. CONST. art. III, §§ 14, 28.

[33] MISS. CODE ANN. § 99-19-51.

[34] Ex. 1a to Mot. for P.I. [310-2].

[35] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[36] MISS. CODE ANN. § 99-19-51.

[37] Ex. 1a to Mot. for P.I. [310-2].

have been enacted in other jurisdictions to mitigate the risk of serious harm or substantial pain, *id.*; 4) Defendants have not observed the safeguards required by their own execution protocols, *id.*; and 5) a single, lethal dose of a barbiturate manufactured under Food and Drug Administration ("FDA") approval is a feasible and readily available alternative method of execution which would significantly reduce the risk of serious harm or severe pain, *id.* at 40-41.

In Count 2, the *Crawford* plaintiffs claim that Defendants' continued use of a three-drug lethal injection execution protocol "in the face of evolving standards of decency" violates their right to be free from cruel and unusual punishment under the United States Constitution.[38] *Crawford*, at 41-43. Specifically, the *Crawford* plaintiffs claim that most states have moved toward using a single-drug execution protocol. *Id.* at 42-43.

In Count 3, the *Crawford* plaintiffs claim that execution by nitrogen hypoxia[39] would violate their right to be free from cruel and unusual punishment under the United States Constitution[40] because 1) Defendants' failure to develop a protocol for, or conduct training, in the use of nitrogen hypoxia creates a substantial risk that they will suffer serious and needless pain and suffering during an execution, *Crawford*, at 44; and 2) the use of nitrogen hypoxia creates a substantial risk of serious harm or severe pain, in comparison to a feasible and readily implemented alternative method of execution, *id.* at 44-45.

In Count 4, the *Crawford* plaintiffs claim that execution by electrocution would violate their right to be free from cruel and unusual punishment under the United States Constitution[41]

---

[38] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[39] According to the *Crawford* plaintiffs, "[n]itrogen hypoxia is a method of execution that forces nitrogen gas inhalation, depriving the condemned prisoner of oxygen and causing asphyxiation." *Id.* at 20.

[40] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[41] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

because 1) the history of botched executions by electrocution causing most states to move away from electrocution as a method of execution, demonstrates that it creates a substantial risk of serious harm and severe pain that could be mitigated by a feasible and readily implemented alternative method of execution, *Crawford*, at 46; and 2) Defendants' failure to develop a protocol for training in the use of electrocution as a method of execution would create a substantial risk that the *Crawford* plaintiffs will suffer serious harm and needless pain and suffering, *id.* at 46-47.

In Count 5, the *Crawford* plaintiffs claim that execution by firing squad would violate their right to be free from cruel and unusual punishment under the United States Constitution[42] because: 1) botched executions and states' movement away from firing squad as a method of execution demonstrate that this mode of execution creates a substantial risk of serious harm and severe pain that could be mitigated by a feasible and readily implemented alternative method of execution, *Crawford*, at 48; and 2) Defendants' failure to develop a protocol for the use of a firing squad and/or the failure to conduct training in the use of a firing squad as a method of execution would create a substantial risk that the *Crawford* plaintiffs will suffer serious harm and needless pain and suffering, *id.* at 48-49.

Finally, in Count 6, the *Crawford* plaintiffs claim that Mississippi's execution statute[43] violates their right to due process and access to the courts guaranteed by the United States Constitution[44] because 1) the statute requires the MDOC Commissioner to give the condemned prisoner notice of the method of execution only seven days after receipt of the execution warrant from the Mississippi Supreme Court, *Crawford*, at 50; and 2) if the MDOC Commissioner selects

---

[42] *See* U.S. CONST. amend. VIII, amend. XIV § 1.

[43] MISS. CODE ANN. § 99-19-51.

[44] *See* U.S. CONST. amend. XIV.

lethal injection as the method of execution, the statute does not require him to notify the condemned prisoner of the specific lethal substance to be injected into his body, *id.*

Only one sub-claim from *Crawford* overlaps with the remaining causes of action in the case *sub judice*. The *Crawford* plaintiffs' Count 1 includes the claim that Mississippi's lethal injection execution protocol violates the Constitution because the use of midazolam as the first in a three-drug series, along with a chemical paralytic agent and potassium chloride, creates a substantial risk of serious harm and severe pain. *Crawford*, at 40.

Similarly, the Plaintiffs here claim in Count IB that Defendants' use of midazolam as the anesthetic in a three-drug lethal injection protocol violates Plaintiffs' right to be free from cruel and unusual punishment under the United States and Mississippi Constitutions, Amended Complaint [50] (at 43-46); however, the *Crawford* plaintiffs modified their claim by further asserting that Mississippi's death-penalty statute;[45] MDOC's 2025 Execution Protocol;[46] and Defendants' unwritten practices combine to violate their constitutional rights, *Crawford*, at 38-41. Defendants, they add, have not adopted sufficient safeguards or followed the safeguards they have adopted, *id.* at 40.

The overlap between the *Crawford* plaintiffs' Count 1 and this case's Count IB creates a danger of inconsistent rulings if the cases are not consolidated; but, that danger is slight.

Counts 3, 4, and 5 of the *Crawford* plaintiffs' pleading contain factual claims wholly dissimilar from any presented in this case. *Id.* at 44-49. The Plaintiffs here did not address the possibility the Defendants might select nitrogen hypoxia, electrocution, or firing squad in lieu of lethal injection. Although the same general analysis may apply to all claims that a method of

---

[45] MISS. CODE ANN. § 99-19-51.

[46] Ex. 1a to Mot. for P.I. [310-2].

execution violates the Eighth Amendment,[47] the factual issues presented by the *Crawford* plaintiffs' Counts 3, 4, and 5 would differ from any claims presented in the Plaintiffs' lawsuit. Likewise, the legal analysis would differ in that this Court would have to apply general principles of law to the specific practices challenged there.

Similarly, although the *Crawford* plaintiffs' Count 1 mirrors Count IB from this case in some respects, it also presents issues that were not raised in this case's operative pleading. For example, the *Crawford* plaintiffs complain that Mississippi's execution statute[48] permits Defendants to use any substance whatsoever in a lethal injection execution protocol, but the Plaintiffs here did not address that issue. *Contrast Crawford*, at 39, *with* Amended Complaint [50], at 39-55. The *Crawford* plaintiffs also claim that Defendants have not adopted safeguards which have been enacted in other jurisdictions to mitigate the risk of serious harm or substantial pain, and that they have not observed the safeguards required by their own execution protocols. *Crawford*, at 39. The Plaintiffs here did not assert a claim premised on Defendants' failure to observe specific safeguards, *see* Amended Complaint [50], at 39-55, although the issue has come up in briefing various motions, *see, e.g.* Plfs. Mem. [313], at 11.

The *Crawford* plaintiffs' Count 2 mirrors Count III from this case, *compare Crawford*, at 41-43, *to* Amended Complaint [50], at 49-52; but this Court already has granted Defendants' Motion for Summary Judgment [280] as to Count III. *Chase*, 2025 WL 2313223, at *11-12. Consolidation would, therefore, revive at least one issue upon which the Court has already rendered judgment.

---

[47] *See, e.g. Baze*, 553 U.S. at 52; *Glossip*, 576 U.S. at 877.

[48] MISS. CODE ANN. § 99-19-51.

The key factors in addressing the present motion are the conservation of judicial resources, reduction of costs, and the delay in resolution of these cases. This case was filed in 2015, and over the past ten years the parties and Court have worked steadily to bring it to resolution. The Court has managed a complex and challenging discovery process. See, e.g. Memorandum Opinion and Order [168]; Order [205]; Memorandum Opinion and Order on Depositions of Lay Witnesses [221]; Memorandum Opinion and Order on Plaintiff's Motion to Compel [234]. MDOC has had four different Commissioners during the pendency of this action. Parties have intervened. *See* Order [29]; Order [71]; Order [106]. Parties have been executed. The case weathered a global pandemic and its effects on this Court's operations and the parties' ability to conduct discovery. Now, after a decade of concerted effort from all parties to resolve this dispute, the discovery and motions deadlines have expired, and the case is ready for trial. *See* Order [331]; Order [292], at 14-15. Indeed, the parties represented to the Court during the status conference held on September 10, 2025, that they were prepared to go to trial, despite the unexpected need to conduct two out-of-time depositions.

In contrast, *Crawford* is still in its infancy. The *Crawford* defendants received service of process on September 26, 2025.[49] The parties just participated in a Case Management Conference on June 17, 2026,[50] and the Magistrate Judge entered a Case Management Order on June 18, 2026.[51] Complicating matters further, *Crawford* was filed as a class action, imposing additional procedural hurdles and potential delays. *See, e.g.* FED. R. CIV. P. 23; L.U. Civ. R. 23.

---

[49] *See* Summons Returned Executed, *Crawford v. Cain*, No. 3:25-CV-479-DPJ-ASH (S.D. Miss. Sept. 29, 2025), ECF Nos. 3, 4, 5, 6, 7, 8.

[50] *See* FED. R. CIV. P. 16(b); L.U. Civ. R. 16.

[51] *See* Case Management Order, *Crawford v. Cain*, No. 3:25-CV-479-DPJ-ASH (S.D. Miss. June 18, 2026), ECF No. 15.

19

The only potential benefit of consolidating this case with *Crawford* is to eliminate the possibility of conflicting decisions on essentially one overlapping issue. But the Fifth Circuit has rejected arguments in favor of consolidation premised upon "the spectre of conflicting decisions, and . . . a lack of uniformity" where consolidation would not serve the purpose of avoiding unnecessary costs or delay. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993). It is indisputable that consolidating the present case with *Crawford* would delay the resolution of this case. This case essentially is ready to go to trial, while *Crawford*, in its infancy, is potentially years away from trial. Consolidation unnecessarily also would complicate this case after a years-long litigation process, while not substantially benefiting the parties to either case. The parties here would have their trial delayed, after a decade of work to bring the case to this point. The *Crawford* plaintiffs have asserted numerous claims that were not addressed here, and unless they intend to forego the normal discovery and motions process with respect to those claims, they would still have to go through the normal course of litigation and discovery, even if the cases were consolidated, mitigating any potential benefit to them from consolidation.

For all these reasons, this Court finds that consolidation of this case with *Crawford v. Cain*, No. 3:25-CV-479-DPJ-ASH, would not, in fact, "avoid unnecessary costs or delay." *Gentry*, 487 at 581 (quoting FED. R. CIV. P. 42(a)). Consolidation, instead, would delay a resolution of this case, which is ready for trial; would see the presence of new parties, with their new motion challenges; the possibility of new alien claims spawned by unmentioned and different perspectives; and  years of focused litigation that would be wasted by a marriage of consolidation. Consolidation of these cases, in this Court's eye, would birth an organ antagonistic to the whole, disrespectful to its parts and disdainful to the purpose of its juridical roots. Once the slight risk of

20

conflicting decisions on overlapping claims is gauged against all the other factors listed above, this Court is persuaded that these two cases should remain on their separate paths.[52]

### IV. CONCLUSION

For all these reasons, the Court **denies** Defendants' Motion for Consolidation [333] of this case with *Crawford v. Cain, et al.*, No. 3:25-CV-479-DPJ-ASH.

IT IS SO ORDERED on this, the 29th day of June, 2026.

/s/HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

---

[52] *See St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 990 (5th Cir. 1983) (where cases were at different stages of preparedness for trial, with one ready for trial and over a decade old and the other still in discovery, delay of the case ready for trial justified denial of consolidation); *Huddleston v. Cooper Tire & Rubber Co.*, 2024 WL 4557674, at *2 (N.D. Miss. Oct. 23, 2024) (consolidation not appropriate where one case had been "pending for a significant period of time" and consolidation would delay trial); *Webb*, 2022 WL 610828, at *2-*3 (consolidation was inappropriate where, among other factors, discovery was complete in the older case, while the newer case was only a few months old); *EEOC v. Faurecia Auto. Seating, LLC*, 2018 WL 3118705, at *2 (S.D. Miss. June 25, 2018) (consolidation was inappropriate where parties in the older case had "already conducted a significant amount of discovery," and consolidation would entail another discovery period, increasing costs and delaying resolution).